Leah C. Schwartz (7-5019)
PARSONS BEHLE & LATIMER
lschwartz@parsonsbehle.com
20 East Simpson Ave.
P.O. Box 3890
Jackson, WY 83001
Telephone: 307.733.5130

Julian W. Kleinbrodt (*pro hac vice* pending)
GIBSON, DUNN & CRUTCHER LLP
jkleinbrodt@gibsondunn.com
One Embarcadero Center Suite 2600,
San Francisco, CA 94111
Telephone: 415.393.8382

*Attorneys for Defendant Apple Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **Coronavirus Reporter Corporation, Calid Inc.**<br><br>*on behalf of themselves and all others similarly situated.*<br><br>　　　Plaintiffs,<br>v.<br><br>**Apple Inc.**<br>　　　Defendant. | **DEFENDANT APPLE INC.'S MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)**<br><br>Civil No. 24-CV-00053 |

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................................. 1

II. BACKGROUND ............................................................................................................................. 1

    A.    The Northern District Of California Has Significant Experience With Antitrust Challenges To Apple's App Store Business Model ................................ 1

    B.    Plaintiffs' Previous Cases Were Transferred To The U.S. District Court For The Northern District of California And Later Dismissed ............................. 2

    C.    This Case Is a Facsimile Of *Coronavirus I* ................................................................ 3

II. ARGUMENT .................................................................................................................................. 4

    A.    Plaintiffs Agreed To A Mandatory Forum-Selection Clause Requiring Litigation In The Northern District of California ..................................................... 4

        1.    Plaintiffs agreed to be bound by the DPLA's forum-selection clause ............ 5

        2.    The DPLA's forum-selection clause is mandatory ........................................ 6

        3.    Plaintiffs admit their claims fall within the scope of the forum-selection clause ........................................................................................... 6

        4.    Under Section 1404(a), the DPLA's forum-selection clause must be enforced .......................................................................................................... 7

    B.    The Interests Of Justice And Convenience Support Transfer To The Northern District Of California Under § 1404(a) ................................................... 7

        1.    Public interest factors support transfer ........................................................... 8

        2.    Private interests support transfer .................................................................. 10

III. CONCLUSION ........................................................................................................................... 10

# I. INTRODUCTION

This case does not arrive in this Court on a blank slate. For over a decade, Apple has been litigating antitrust challenges concerning the App Store in the Northern District of California. Those include *Coronavirus Reporter et al. v. Apple Inc.*, No. 21-cv-5567 (N.D. Cal.) (*Coronavirus I*), a near carbon-copy of this case in which Apple prevailed. The losing parties in that case have now filed this lawsuit not because of any meaningful connection to Wyoming but for the admitted purpose of evading the adverse judgment in *Coronavirus I*. Three other federal district courts have already rejected this tactic, transferring prior suits by Plaintiffs (or developers affiliated with them) to the Northern District of California. This case too should be transferred under 28 U.S.C. § 1404(a) because Plaintiffs agreed to a forum-selection clause requiring litigation of their claims in that venue and because the interests of justice and witness convenience demand it.

# II. BACKGROUND

**A.     The Northern District Of California Has Significant Experience With Antitrust Challenges To Apple's App Store Business Model**

Apple operates the App Store, a platform for app developers to distribute apps to iPhone and iPad users. To provide a curated ecosystem that protects users' privacy and security, Apple's App Review team—led from the company's headquarters in California—reviews every app before distribution on the App Store to ensure it complies with the company's guidelines. Declaration of M. Rollins ("Rollins Decl.") ¶¶ 3–5, 9; *see Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 966–67 (9th Cir. 2023). As a result, consumers enjoy access to an enormous selection of apps and benefit from security and privacy protections that surpass those of Apple's competitors. *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 944, 1002–07, 1038 (N.D. Cal. 2021).

Nevertheless, some plaintiffs have challenged Apple's App Store policies under the antitrust laws. For more than ten years, Apple has been litigating such challenges in the Northern

District of California, including lawsuits brought by app developers and consumers. *See*, *e.g.*, *Pepper v. Apple Inc.*, No. 11-cv-6714, Dkt. 1 (N.D. Cal. Dec. 29, 2011); *Cameron v. Apple Inc.*, No. 19-cv-3074, Dkt. 1 (N.D. Cal. June 4, 2019); *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-5640, Dkt. 1 (N.D. Cal. Aug. 13, 2020). One such case was tried in 2021, involving over 900 exhibits and dozens of witnesses. *Epic*, 559 F. Supp. 3d at 921–22 & n.2. Apple prevailed on all antitrust claims in the district court, *id.* at 921–22, and on appeal, 67 F.4th at 966.

**B.  Plaintiffs' Previous Cases Were Transferred To The U.S. District Court For The Northern District of California And Later Dismissed**

Plaintiffs Calid Inc. and Coronavirus Reporter Corporation ("Plaintiffs") are entities related to Jeffrey Isaacs, a former physician who has spent the past three years filing lawsuit after lawsuit against Apple in courts across the nation. *See* Declaration of J. Kleinbrodt ("Kleinbrodt Decl.") ¶ 2. In 2021, his entities filed cases against Apple in New Hampshire, Maine, and California asserting substantially the same antitrust, fraud, RICO, and contract claims stemming from Apple's 2020 rejection of the COVID-tracking app "Coronavirus Reporter." *See Coronavirus Reporter v. Apple Inc.*, No. 21-cv-47, Dkt. 1 (D.N.H. Jan. 19, 2021); *Primary Prods. LLC v. Apple Inc.*, No. 21-cv-137, Dkt. 1 (D. Me. May 17, 2021); *Coronavirus Reporter v. Apple Inc.*, No. 21-cv-5567-EMC, Dkt. 1 (N.D. Cal. July 20, 2021); *see also* Kleinbrodt Decl. Exs. 1–3.

The New Hampshire and Maine suits were ordered transferred to the Northern District of California pursuant to a forum-selection clause. *Coronavirus Reporter v. Apple Inc.*, 560 F. Supp. 3d 632 (D.N.H. 2021); *Primary Prods. LLC v. Apple Inc.*, 2021 WL 3610507 (D. Me. Aug. 13, 2021). Anyone wishing to distribute an app through the App Store must agree to the Developer Program License Agreement ("DPLA"). Rollins Decl. ¶ 5. The DPLA governs distribution of apps through the App Store and grants Apple "sole discretion" to decide which apps make it onto the store. *See id.* Ex. A § 3.2(g). As Plaintiffs admit, the DPLA has a forum-selection clause:

> Any litigation . . . between You and Apple (other than a challenge to a patent right before a patent office) arising out of or relating to this Agreement, the Apple Software, or Your relationship with Apple will take place in the Northern District of California, and You and Apple hereby consent to the personal jurisdiction of and exclusive venue in the state and federal courts within that District[.]

Rollins Decl. Ex. A § 14.10; *see* Dkt. 1 ("Compl.") ¶ 21.  Plaintiff Calid Inc., the Coronavirus Reporter app's developer of record, first signed the DPLA in 2017 and has repeatedly accepted its terms.  Rollins Decl. ¶¶ 6–8; *see* Compl. ¶ 146 (Calid paid Apple's DPLA fee in October 2023).

Following transfer, Plaintiffs' cases merged into one action in the Northern District of California.  *See Coronavirus Reporter v. Apple Inc.*, 2021 WL 5936910, *5 (N.D. Cal. Nov. 30, 2021) (describing procedural history).  The Court dismissed all claims with prejudice in November 2021, finding Plaintiffs' antitrust claims failed on the merits on multiple, threshold grounds.  *Id.* at *1, 3–6.  The Ninth Circuit affirmed the dismissal order across the board.  *See Coronavirus Reporter v. Apple Inc.*, 85 F.4th 948 (9th Cir. 2023).  The Supreme Court denied Plaintiffs' request for certiorari.  *See* Kleinbrodt Decl. Ex. 12.  Since then, Isaacs has moved the district court for relief from the final judgment—a motion set for argument on September 26, 2024.  *See id.* Exs. 13–14.

**C.    This Case Is a Facsimile Of *Coronavirus I***

This case is brought by the same Plaintiffs as *Coronavirus I.  Compare* Compl. ¶¶ 23–24, *with* Kleinbrodt Decl. Ex. 7 ("*CR* FAC") ¶¶ 27–28.  It also presses the same fundamental theory.  This case, like *Coronavirus I*, challenges Apple's decision to reject the Coronavirus Reporter app for distribution through the App Store pursuant to a Guideline requiring that apps about COVID-19 be submitted by a recognized health entity such as a medical institution.  Compl. ¶¶ 46–82; *CR* FAC ¶¶ 39–76.  It asserts the same claims that Apple violates federal antitrust laws by allegedly requiring developers to obtain "notary stamps" to distribute apps on iOS devices, Compl. ¶¶ 143–

53, *CR* FAC ¶¶ 163–79; denies access to "essential facilities" by "den[ying] notary stamps to developers" like Coronavirus Reporter and Calid, Compl. ¶¶ 163–64, *CR* FAC ¶¶ 185–86; and "unreasonably restrain[s] competition in the institutional app marketplaces" via the DPLA, Compl. ¶¶ 173–84, *CR* ¶¶ 195–206. *See also* Compl. ¶¶ 185–215; *CR* FAC ¶¶ 207–240 (alleging almost identical "ranking suppression," tying, and "fee illegality" claims). And it likewise reiterates the theory that Apple's "anticompetitive censorship" of apps like Coronavirus Reporter is unlawful. *E.g.*, Compl. ¶¶ 1, 11, 91, 114; *CR* FAC ¶¶ 2, 9.

Plaintiffs admit not only that Calid agreed to Apple's forum-selection clause, but also that they filed in this district to avoid "Ninth Circuit" law that would "prevent redress from ever occurring." Compl. ¶ 127. That echoes a previous forum-shopping attempt in which "The Coring Co.," another entity associated with Isaacs, filed a copycat suit in the Southern District of Florida following dismissal of *Coronavirus I*, in the "hope[] [that] Eleventh Circuit law" would be more favorable. Kleinbrodt Decl. Ex. 9 (*Coring* Compl.) ¶¶ 97, 171. That case was transferred to the Northern District of California over the plaintiff's objections. *See* Kleinbrodt Decl. Ex. 10 (*Coring* Transfer Order). Thus, three separate federal courts in New Hampshire, Maine, and Florida have concluded that the antitrust claims at issue in this case belong in the Northern District of California.

## II. ARGUMENT

This case should be transferred for two independent reasons. First, Plaintiffs agreed to a mandatory forum-selection clause. Second, the interests of justice and the convenience of witnesses and the parties will be best served in the Northern District of California.

**A.    Plaintiffs Agreed To A Mandatory Forum-Selection Clause Requiring Litigation In The Northern District of California**

A forum-selection clause may be enforced through 28 U.S.C. § 1404(a). *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49, 62 (2013). Because a

forum-selection clause "represents the parties' agreement as to the proper forum," it "should be given controlling weight in all but the most exceptional cases." *Id.* Here, Plaintiffs (1) agreed to be bound by (2) a mandatory forum-selection clause that (3) covers their antitrust claims, and (4) no "exceptional" circumstances overcome that agreement. This Court should enforce the forum-selection clause—just as another court did in identical circumstances. *Coronavirus Reporter*, 560 F. Supp. 3d at 639–41; *see also APT Systems, Inc. v. Apple Inc.*, 2022 WL 226812, *11 (E.D. Pa. Jan. 26, 2022) (enforcing Apple's DPLA's forum-selection clause).

### 1. Plaintiffs agreed to be bound by the DPLA's forum-selection clause

The Complaint concedes that Plaintiff Calid, which submitted the Coronavirus Reporter app, entered into the DPLA. Compl. ¶¶ 81, 146; *see also* Rollins Decl. ¶¶ 6–7. The DPLA instructs developers to "carefully" read its terms and conditions, which "constitute a legal agreement between You and Apple." *Id.* Ex A at 1. Those terms and conditions include a forum-selection clause. *Id.* § 14.10. Calid accepted all terms and conditions, including the forum-selection clause, when it (repeatedly) executed the DPLA.

As the New Hampshire court held, the DPLA's forum-selection clause also binds Coronavirus Reporter. *See Coronavirus Reporter*, 560 F. Supp. 3d at 639 & n.6. "[A] non-signatory can be subject to a forum-selection clause" when it "is 'closely related to the dispute such that it becomes foreseeable that it will be bound.'" *Presbyterian Healthcare Servs. v. Goldman, Sachs & Co.*, 122 F. Supp. 3d 1157, 1211 (D.N.M. 2015) (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)). That standard is met here. Plaintiffs admit that Calid "submitted the Coronavirus Reporter [app]" to Apple and that the app's alleged creator, Dr. Roberts, served as Calid's chief medical officer "pending incorporation" of Plaintiff Coronavirus Reporter. Compl. ¶¶ 40, 81, 83. Plaintiff Coronavirus Reporter has also represented that it "previously transacted business

under the name Calid." Kleinbrodt Decl. Ex. 4 (D.N.H. Compl.) ¶ 14. Coronavirus Reporter cannot claim it could not foresee that it would be bound by Calid's execution of the DPLA.

### 2. The DPLA's forum-selection clause is mandatory

The forum-selection clause is mandatory. As the Tenth Circuit has held, language designating a given venue as "the exclusive forum" is mandatory. *See Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428 F.3d 921, 926–27 (10th Cir. 2005). The DPLA's forum-selection clause provides that any litigation arising out of the agreement "***will take place*** in the Northern District of California" and that parties "consent to the personal jurisdiction of and ***exclusive venue*** in the state and federal courts within that District." Rollins Decl. Ex. A § 14.10 (emphases added). This "plain language establishes that the [forum-selection clause] is mandatory," *Coronavirus Reporter*, 560 F. Supp. 3d at 640, because it "show[s] that jurisdiction is appropriate only in the designated forum," *Excell, Inc. v. Sterling Broiler & Mech. Inc.*, 106 F.3d 318, 321 (10th Cir. 1997); *see also Kilts Contracting, Inc. v. Anadarko Petroleum Corp.*, 2014 WL 11510240, *2 (D. Wyo. Dec. 4, 2014) (holding that a "must be brought" clause is mandatory).

### 3. Plaintiffs admit their claims fall within the scope of the forum-selection clause

Plaintiffs' claims fall within the mandatory forum-selection clause because they "aris[e] out of" and "relat[e] to" the DPLA and Plaintiffs' "relationship with Apple." Rollins Decl. Ex. A § 14.10. Plaintiffs admit as much, stating that enforcing the DPLA would "move ***this dispute*** to the Ninth Circuit." Compl. ¶ 127 (emphasis added). They are correct. At bottom, Plaintiffs complain that Apple did not approve their app while allowing others. *E.g.*, Compl. ¶¶ 46–76, 88, 92, 128, 164. The DPLA squarely governs the challenged conduct, namely, Apple's "[s]election" of apps for "distribution via the App Store." Rollins Decl. Ex. A §§ 3.1(g), 6.9. Here, Plaintiffs take aim at this discretionary review process, which they allege Apple "conduct[s] under purported authority of the DPLA." Compl. ¶ 177; *see also id.* ¶¶ 120, 127. Plaintiffs also challenge parts of

6

the DPLA itself as an unlawful restraint of trade. *Id.* ¶¶ 173–84. These claims "plainly" arise out of the DPLA and Plaintiffs' relationship with Apple and thus "are within the scope of the forum-selection clause." *Coronavirus Reporter*, 560 F. Supp. 3d at 640–41.

### 4. Under Section 1404(a), the DPLA's forum-selection clause must be enforced

Plaintiffs cannot demonstrate that there are "exceptional" circumstances to overcome the DPLA's mandatory forum-selection clause. *See Atl. Marine*, 571 U.S. at 64. Given the parties' agreement on the appropriate forum, the Court may not consider "arguments about the parties' private interests" relevant to transfer, and Plaintiffs' "choice of forum merits no weight." *Id.* at 62–63. And the "public-interest factors," which "will rarely defeat a transfer motion," *id.* at 64, only underscore the need for transfer here as explained below. *See infra* § II.B.1.

Nor can Plaintiffs make the "strong showing" required to declare the clause unenforceable. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Plaintiffs appear to claim the forum-selection clause is unenforceable because it "is itself subject to [antitrust] review." Compl. ¶ 21; *see id.* ¶ 146. But the Complaint contains no facts suggesting the forum-selection clause *itself* harms competition. And to the extent Plaintiffs claim that pleading antitrust claims renders the forum-selection clause unenforceable, courts have "considered" and "squarely rejected that theory." *Coronavirus Reporter*, 560 F. Supp. 3d at 639 (citing cases).

## B. The Interests Of Justice And Convenience Support Transfer To The Northern District Of California Under § 1404(a)

Transfer is also warranted even without the forum-selection clause. A Court may transfer when (1) the action "might have been brought" in another district and (2) transfer there will enhance "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In considering a motion to transfer, courts weigh various public and private interest factors. *Atl. Marine*, 571 U.S. at 62 n.6; *see, e.g., Jensen v. Solvay Am., Inc.*, 2007 WL 1791268, *1 (D. Wyo.

7

June 14, 2007) (discussing factors). It is beyond dispute that this case "might have been brought" in the Northern District of California, 28 U.S.C. § 1404(a); Apple is not only headquartered in Cupertino, California, but a substantial part of the alleged events also took place there, Compl. ¶ 25; Rollins Decl. ¶¶ 3, 9–11; *see also* 28 U.S.C. § 1391(b)(1)–(2). Because the balance of factors also favors transfer, the Court should transfer this case to the Northern District of California.

   **1.  Public interest factors support transfer**

"[T]he interests of justice strongly favor" transfer when "related litigation is pending" in another district. *Assoc. Wholesale Grocers, Inc. v. Koch Foods, Inc.*, 2018 WL 4361188, *8 (D. Kan. Sept. 13, 2018); *see Newton Family LLC v. Cathcart*, 2007 WL 9709761, *2 (D. Wyo. Aug. 3, 2007). Such interests are amplified when "collateral estoppel is at issue" because "transferring a case to the district that originally litigated the issue … conserves judicial resources and expedites decisionmaking." *Hartford Cas. Ins. Co. v. Trinity Universal Ins. Co. of Kan.*, 2014 WL 12635757, *15 (D.N.M. Sept. 26, 2014) (collecting cases). At minimum, there is a substantial issue whether "the final judgment" in *Coronavirus I* "prevents [Plaintiffs] from litigating" these claims, as Apple will argue. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017). After all, this case involves the same plaintiffs asserting almost identical claims over the same rejected app—including theories that Apple denied access to the same "essential facility" of "notary stamps," unreasonably restrained trade based on the same provisions of the DPLA, and so on. *Compare* Compl. ¶¶ 141–215 *with CR* FAC ¶¶ 160–240.

The Northern District of California, which "already [has] a strong grasp of the factual and legal issues that the parties likely will relitigate" here, is therefore the most logical venue to resolve Plaintiffs' claims. *Koch Foods*, 2018 WL 4361188, at *8; *see also, e.g.*, *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 57 (D.D.C. 2000) (the "[transferee court] is in the best position to determine

8

which claims or issues in the instant complaint are precluded by its own decision"). Moreover, the pending motion to reopen the final judgment—which, all agree, presents "overlapping issues" with this case, *see* Kleinbrodt Decl. Ex. 14 at 2—further supports transfer. *Koch Foods*, 2018 WL 4361188, at *7. Like the last time Plaintiffs' affiliate filed suit in a distant district to evade the final judgment in *Coronavirus I*, "the existence of a previous Northern District of California action involving Plaintiff's principal and similar claims … support[s] transfer in this case." Kleinbrodt Decl. Ex. 10 (*Coring* Transfer Order) at 5.

Other public interest factors likewise favor transfer. Although Plaintiffs are Wyoming Corporations, they have not alleged a single event occurring in Wyoming and instead challenge alleged conduct that took place exclusively in the Northern District of California. *See* Compl. ¶¶ 11, 145, 147; Rollins Decl. ¶¶ 9–11. Their principal, Isaacs, purports to reside in Florida. *See* Kleinbrodt Decl. Ex. 14 at 1. This case therefore has "no material relation or significant connection to" Wyoming, so Plaintiffs' forum choice deserves "little weight." *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010). The Northern District of California, by contrast, "has a substantial interest in adjudicating controversies involving a corporation employing hundreds of California residents." *Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1229 (S.D. Fla. 2016); *see* Rollins Decl. ¶ 3. In addition, "the policy against forum shopping … weighs heavily in favor" of transfer here, *Wyoming v. U.S. Dep't of Interior*, 2008 WL 11335154, *3 (D. Wyo. May 14, 2008), as Plaintiffs admit they sued in Wyoming to avoid unfavorable "Ninth Circuit law." Compl. ¶ 127; *see also Terra Partners v. AG Acceptance Corp.*, 2015 WL 4567257, *5 (D.N.M. July 24, 2015) (granting transfer when "Plaintiffs may be forum shopping").[1]

---

[1] Plaintiffs have asked the Judicial Panel on Multidistrict Litigation to consolidate this case with multidistrict litigation in New Jersey concerning Apple's alleged monopolization of a smartphone market. *See In re Apple Inc. Smartphone Antitrust Litig.*, MDL No. 3113, Dkt. 124 (June 25, 2024). Apple will oppose this request as Plaintiffs' theories about alleged censorship and notary stamps are factually and

9

### 2. Private interests support transfer

Private interests also favor transfer. *See Atl. Marine*, 571 U.S. at 62 n.6 (listing private interest factors). First, witness convenience—"the most important factor in deciding a motion under § 1404(a)," *Bartile Roofs*, 618 F.3d at 1169—clearly favors transfer. Apple has no facilities or offices in Wyoming; most witnesses likely would be Apple employees who live and work in the Northern District of California. Rollins Decl. ¶¶ 9–11, 13. It would be burdensome for them to travel to Wyoming to testify in this case. *Id.*; *see, e.g.*, *Dworkin v. Hustler Magazine, Inc.*, 647 F. Supp. 1278, 1280 (D. Wyo. 1986) (ordering transfer where "the vast majority" of witness resided outside Wyoming). Second, "much of Apple's relevant documentary evidence is located in its Cupertino headquarters," where Apple designs products and makes policy decisions. *In re Apple Inc.*, 602 F.3d 909, 914 (8th Cir. 2010) (granting mandamus where court refused to transfer monopolization case to Northern District of California); Rollins Decl. ¶¶ 9, 12. Finally, the Northern District of California is more convenient for the parties' lead counsel, neither of whom is based in Wyoming. *Dworkin*, 647 F. Supp. at 1282; *see* Kleinbrodt Decl. ¶ 1 & Ex. 3.

In sum, the Northern District of California is the more convenient forum in which the interests of justice will be served most efficiently. *See* 28 U.S.C. § 1404.

### III. CONCLUSION

For the foregoing reasons, Apple respectfully requests that this case be transferred to the U.S. District Court for the Northern District of California.

---

legally distinct from those alleged in the New Jersey suits. Plaintiffs' notice is yet another attempt to evade the binding *Coronavirus I* judgment, and does not prevent this Court from granting Apple's motion. *See* Rules of Procedure, U.S. Judicial Panel on Multidistrict Litig., Rule 2.1(d) ("The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court."). If anything, Plaintiffs' request strengthens the case for transfer because their "willingness to transfer" the lawsuit "diminish[es]" any deference owed to their forum choice. *Sheldon v. Khanal*, 605 F. Supp. 2d 1179, 1189 (D. Kan. 2008).

Dated: June 28, 2024.

                    Respectfully submitted,

                    By: /s/ *Leah C. Schwartz*

                    Leah C. Schwartz (7-5019)
                    PARSONS BEHLE & LATIMER
                    lschwartz@parsonsbehle.com
                    20 East Simpson Ave.
                    P.O. Box 3890
                    Jackson, WY 83001
                    Telephone: 307.733.5130

                    Julian W. Kleinbrodt (*pro hac vice* pending)
                    GIBSON, DUNN & CRUTCHER LLP
                    jkleinbrodt@gibsondunn.com
                    One Embarcadero Center Suite 2600,
                    San Francisco, CA 94111
                    Telephone: 415.393.8382

                    *Attorneys for Defendant Apple Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2024, I electronically filed the foregoing with the Clerk of Court using the electronic filing system, which will send notification of such filing to all registered CM/ECF users.

                    **PARSONS BEHLE & LATIMER**

                    */s/ Leah C. Schwartz*
                    Leah C. Schwartz