Keith Mathews
*Pro Hac Vice*
American Wealth Protection
1000 Elm Street, Suite 800
Manchester, NH 03105
(603) 622-8100
keith@awplegal.com

Melissa R Theriault #6-4266
Woodhouse Roden Ames & Brennan, LLC
1912 Capitol Ave. Suite 500
Cheyenne, WY 82001
(307) 432-9399
melissa@wrablaw.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| **Coronavirus Reporter Corporation, Calid Inc., Greenflight Venture Corporation** *on behalf of themselves and all others similarly situated.* Plaintiffs, v. **Apple Inc.** Defendant. | **PLAINTIFFS' RESPONSE TO APPLE'S MOTION TO ENTER BRIEFING SCHEDULE AND CROSS-MOTION FOR JUDICIAL ESTOPPEL** Civil No. 1:24-CV-00053-SWS |

Plaintiffs submit this Opposition to Defendant Apple Inc.'s Motion to Enter Briefing Schedule and Cross-Motion for Determination on Judicial Estoppel. A briefing schedule is unnecessary because the circumstances underlying Apple's motion have significantly changed since its filing, rendering the motion moot. Plaintiffs assert Apple is judicially estopped from re-

filing an amended venue transfer motion on the purported basis of *res judicata*. On June 28, 2024, Apple filed a Motion to Transfer Venue to the Northern District of California (Dkt. 19). Plaintiffs filed a First Amended Complaint ("FAC") on July 21, 2024 (Dkt. 30), introducing significant changes, including the addition of new plaintiff Greenflight Venture Corporation ("Greenflight"), and aligning the claims with the Department of Justice's pending antitrust case against Apple, notably including the government's allegations that forum selection and other DPLA elements constitute an anti-competitive contract of adhesion. Plaintiffs then filed a Motion for a More Definite Statement regarding Apple's Motion to Transfer Venue ("MTV") on August 1, 2024 (Dkt. 32), arguing that Apple's motion is based on outdated and moot[1] assertions, particularly concerning Greenflight and the DPLA. On August 5, 2024, the Court stayed the proceedings pending the Judicial Panel on Multidistrict Litigation's ("JPML") decision on Plaintiffs' petition to join MDL No. 3113 *In Re Apple Smartphone Antitrust Litigation*. On October 3, the JPML denied transferring this action to the MDL, relying upon Apple's undisclosed *res judicata* claim as weighing against transfer.[2] Apple now moves for what is essentially a request deny the Motion for More Definitive Statement, filed under the misnomer of a Briefing Schedule. Apple's proposed schedule is improper because it prohibits Plaintiffs from opposing the MTV. Pursuant to the cross-motion for judicial estoppel, any new venue motion would be futile, and additionally would contravene the intention of Wyoming's Long-Arm statute.

### WYOMING'S LONG-ARM STATUTE WEIGHS AGAINST TRANSFER

Wyoming is a neutral venue ideally suited for adjudicating this matter, which concerns how one company censors and controls every American's methods of communication. Wyoming

---

[1] Under Rule 11, Apple would face considerable difficulty refiling the current Motion to Transfer Venue in light of the new operative complaint and their recent concession that related case 24-cv-786-TNM (DC District) is *not* subject to the DPLA mandatory forum selection clause.

[2] Apple has not yet formally disclosed any basis for *res judicata*, other than telling the Joint Panel on Multidistrict Litigation it pertains to "unique circumstances." Plaintiffs assert that Apple is judicially estopped from asserting *res judicata* because Defendant unambiguously acknowledged that 21-cv-5567-EMC was a developer's *pro se* case with no corporate entities subject to relief. Resolution of this matter is now front-and-center as Apple has successfully paraded its *res judicata* claim to fundamentally narrow active MDL proceedings, and now seeks an urgent venue change to the Ninth Circuit on the same tenuous basis.

is neither the home territory of Defendant Apple, nor of the Plaintiffs' founders, providing an impartial forum for all parties. That being said, there exists meaningful connection to the Tenth Circuit and convenience for locating in this region. Arizona-based Dr. Robert Roberts—a renowned NASA cardiologist who served during John Glenn's final shuttle mission—founded CRC with his son, a New Mexico emergency department physician, hence both served on the COVID front lines in the Rocky Mountains region.

Wyoming has become an increasingly significant jurisdiction for domiciling corporate entities due to its progressive business laws. Under Wyoming statute, it is both permissible and appropriate for this Court to adjudicate business disputes involving Wyoming corporations. Wyoming Statutes Annotated § 5-1-107 provides: "A Wyoming court may exercise jurisdiction on any basis not inconsistent with the Wyoming or United States constitution. When the exercise of personal jurisdiction is authorized by this section, service may be made outside this state in the manner provided by the Wyoming Rules of Civil Procedure." This statute indicates the Legislature's intent for Wyoming courts to exercise jurisdiction to the fullest extent permitted by due process under the Wyoming and United States Constitutions. By adopting such a broad statute, Wyoming ensures that its courts are available to adjudicate disputes involving its corporations, even when nonresident defendants are involved.

Wyoming courts have consistently interpreted the long-arm statute to extend personal jurisdiction to the maximum extent allowed by constitutional due process. This statute has been held to have extended the jurisdiction of the Wyoming state courts to the constitutional permissible limit. *First Wyoming Bank, N.A., Rawlins v. Trans Mountain Sales Leasing, Inc.*, Wyo., 602 P.2d 1219 (1979). "In other words, the statute authorizes the state courts of Wyoming to exercise personal jurisdiction over an individual or a business organization only so long as it would not offend or violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Markby v. St. Anthony Hosp. Systems*, 647 P.2d 1068 (Wyo. 1982).

Apple conducts substantial business activities that affect Wyoming residents and corporations, including transactions with Wyoming-based developers and entities. Plaintiffs'

claims relate directly to Apple's anticompetitive conduct impacting Wyoming corporations and its citizens. Apple's global presence and substantial resources mean that defending a suit in Wyoming does not impose an undue burden. Wyoming has a strong interest in providing a forum for disputes involving its corporations. Allowing such cases to be heard in Wyoming courts ensures that corporations domiciled in Wyoming have access to their home courts. It also upholds state sovereignty and respects Wyoming's right to regulate and adjudicate matters involving entities formed under its laws. This aligns with the broad jurisdictional reach granted by Wyoming's long-arm statute.

Apple has litigated numerous cases in neutral corporation-friendly venues across the country, including other corporate domiciles such as District of Delaware. In *Blix Inc. v. Apple Inc.,* No. 19-1869-LPS (D. Del.), Apple litigated an antitrust case in the District of Delaware, demonstrating that states have rights to adjudicate their own corporations' proceedings. Delaware's Chancery courts are well established venues for resolving complex corporate litigation, recently hearing high profile California-based Tesla CEO Elon Musk compensation matters. By analogy, Wyoming courts have a similar right and responsibility to adjudicate disputes involving Wyoming corporations like Plaintiffs. There is no compelling reason for Wyoming to accede to Apple's preference for litigating in its "home court" in the Northern District of California, especially when doing so would undermine the neutrality of the forum and potentially disadvantage the Plaintiffs[3].

Apple's reliance on a forum-selection clause in its Developer Program License Agreement ("DPLA") mandating litigation in the Northern District of California undermines Wyoming's interests. Enforcing this clause contradicts Wyoming's Legislative intent and negates the broad

---

[3] Apple has indicated intent to consolidate the 24-cv-786-TNM case with this 'facsimile' case. Exhibit B. Apple previously assented to the District of Columbia venue for that case. Wyoming hence avoids an improper attempt to move the DC case to California via consolidation.

jurisdictional reach intended by Wyoming's long-arm statute, thereby reducing costs and logistical burdens.

**A BRIEFING SCHEDULE IS NOT IN THE INTEREST OF JUDICIAL ECONOMY**

A motion to transfer venue under 28 U.S.C. § 1404(a) should be evaluated based on the facts and circumstances present in the operative complaint at the time the court decides the motion. Courts have consistently held that when an amended complaint is filed, it supersedes the original complaint and becomes the operative pleading in the case. An amended pleading "supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified." *Gilles v. United States,* 906 F.2d 1386, 1389 (10th Cir.1990) (en banc); *see Mink v. Suthers,* 482 F.3d 1244, 1254 (10th Cir.2007) ("an amended complaint super[s]edes an original complaint and renders the original complaint without legal effect." Consequently, any motions directed at the original complaint are rendered moot upon the filing of the amended complaint. Courts have routinely denied motions as moot when they are directed at superseded pleadings.

Therefore, any motion to transfer venue must consider the allegations and parties as set forth in the most recent amended complaint. Courts have consistently held that an amended complaint supersedes the original complaint. As a result, motions directed at the original complaint are typically rendered moot. This principle has been applied in various contexts, including motions to dismiss and motions for summary judgment.

Apple's MTV was filed prior to Plaintiffs filing their First Amended Complaint. The FAC introduces significant changes. It adds Greenflight Venture Corporation as a plaintiff, bringing new parties into the litigation who were not present in the original complaint. The FAC aligns the claims with the Department of Justice's antitrust action against Apple, incorporating allegations about Apple's monopolistic practices and anticompetitive conduct that were not previously asserted. The FAC includes new legal theories directly alleging DPLA as an improper forum

selection contract, requesting relief from that clause. Apple has apparently conceded this (See Footnotes 1,3). Because the FAC supersedes the original complaint, Apple's MTV, which addresses the original complaint, is now moot. The motion does not account for the new parties, claims, or allegations, and thus fails to address the operative facts of the case.

By refusing to update its outdated Motion to Transfer Venue to address the FAC, Apple prejudices Plaintiffs, who cannot adequately respond to a motion that does not consider the current allegations and parties. By setting a briefing schedule, the Court would expend time and effort on a motion that does not reflect the present state of the case, leading to inefficiency. This Court should be wary of such tactics that arguably delay and complicate the litigation process. Plaintiffs deserve a fair and timely adjudication of their claims, and before any venue matter is raised, it is more pressing to resolve whether Apple's *res judicata* assertions possess any merit.

### APPLE ASSERTS JUDICIALLY ESTOPPED *RES JUDICATA* CLAIMS

This is the second United States Court, after the JPML, where Apple has raised vague suggestions of *res judicata* to gain early strategic venue determinations. In the JPML, Apple stated "Plaintiffs' claims are subject to a unique and dispositive *res judicata* defense." Apple's claim of unique factors – notably without any elaboration whatsoever – succeeded to narrowly restrict that landmark MDL, covering the largest monopoly in history, to iPhone pricing. Matters of Big Tech control and censorship – central to the DOJ case – will apparently not be a component of the MDL. As best as Plaintiffs can ascertain, Apple claims that Wyoming-registered Coronavirus Reporter Corporation ("CRC") is identical to the legal non-entity "Coronavirus Reporter", which is the name of an iPhone application (the "CR App") subject to prior litigation involving the app's software developer. This assertion is directly contrary to Apple's previous unequivocal position in the Ninth Circuit and the Northern District of California ("CAND") that CR App was a non-

existent entity. Judicial estoppel, and related doctrine pertaining to sanctity of the oath, prevents a party from taking such inconsistent positions to gain an unfair advantage in litigation.

Apple was unequivocal in its position before the Ninth Circuit, and in communications with undersigned counsel Mathews, that "Coronavirus Reporter" was a non-entity incapable of suing or being sued, and more importantly to Apple, being owed damages. In its Answering Brief filed with the Ninth Circuit, Apple stated **"As far as Apple can tell, there is no actual 'Coronavirus Reporter' entity—meaning Apple is being sued by at least one null party to whom no relief could be awarded."** (Apple's Answering Brief, Ninth Circuit Case No. 22-15166, dated 10/14/22, Exhibit A). Mathews' sought clarification, to which Apple Counsel at Gibson Dunn replied:

---

**RE: Coronavirus Reporter v. Apple**
1 message

**Brass, Rachel S.** <RBrass@gibsondunn.com>      Thu, Oct 27, 2022 at 8:03 PM
To: Keith Mathews <Keith@awplegal.com>
Cc: "Jeffrey D. Isaacs" <jeffrey.isaacs.wg03@wharton.upenn.edu>

Mr. Mathews,

The statement in Apple's brief is true. As far as Apple is aware, there is no extant entity "Coronavirus Reporter" to which relief could be granted. To the extent that you are referring to the company listed in Wyoming corporate records as "Coronavirus Reporter Corporation," that is not the entity listed on the operative complaint or on any of your briefs, and you have not filed corporate disclosures identifying Coronavirus Reporter Corp. as the appellant in this case—despite our repeated requests that you comply with Local Rules and file such a disclosure below. There is no basis for Apple to retract its brief or meet-and-confer. If you wish to dispute the statement, the proper place to do so is in your reply brief.

Best,

Rachel

Rachel S. Brass
Partner

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8293 • Mobile +1 415.264.5998
RBrass@gibsondunn.com • www.gibsondunn.com

Apple instructed Mathews that the proper place to register any dispute would be in the Ninth Circuit reply Closing Brief. Mathews did not further contest the matter and waived any right to object to Apple's Answering Brief[4] position. Apple prevailed in the Ninth Circuit and the law of the case is determined. 'Coronavirus Reporter' is an iPhone App name, rather than a legal entity.

Judicial estoppel is an equitable doctrine that prevents a party from assuming a position in a legal proceeding that is contrary to a position it successfully asserted in a prior proceeding. This doctrine protects the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee,* 156 U.S. 680, 689 (1895). The Tenth Circuit has also applied judicial estoppel when:

> 1. A party's new position is clearly inconsistent with its former position;
> 2. The party succeeded in persuading a court to accept its former position;
> 3. The party would derive an unfair advantage, or impose an unfair detriment on the opposing party if not estopped.
>
> *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005).

In this case, all three elements are squarely met. Apple's current assertion that CRC is identical to the app name is clearly inconsistent with its prior position that the CR App was a non-entity. Apple succeeded in persuading a court to accept its earlier position, as part of a broad campaign to discredit the CR App developer lawsuit as amateur "Frankenstein" copying-and-pasting, leading to its dismissal. Allowing Apple to change its position now would unfairly

---

[4] Apple's Answering Brief made the unusual declaration "Censorship is not an antitrust injury." That statement was not scrutinized by the Appellate Court.

prejudice Plaintiffs by potentially barring their claims under the doctrine of *res judicata*, thus imposing an unfair detriment on Plaintiffs, particularly the Roberts shareholders who Apple specifically alleged were *not* a party to the 2022 CAND lawsuit. Therefore, Apple should be judicially estopped from asserting that CRC is identical to a non-entity iPhone app.

Apple's prior representations were not limited to the nuances of the CR App label. Apple filed multiple motions arguing that Roberts and other shareholders were not a part of the case. Apple clearly articulated—which was the subject of a denied motion for sanctions—that the N.D. California action had "no relation to the medical field" other than the involvement of its computer programmer. Hence Apple took the clear position that the case did not involve Dr. Robert Roberts, the world-renowned cardiologist who saved millions of lives with the MBCK invention, and who is major shareholder of CRC along with his family. In citations too numerous to list, Apple took a deliberate, strategic position that the CR app had no recognized medical credentials (despite Dr. Roberts' letter from University of Arizona), and that the Court should treat the piecemeal complaint as a software developer's attempt at litigating. In the interest of justice, Apple cannot be allowed to reverse gears and now claim CRC, Greenflight, and the Roberts shareholders were, in fact, always properly behind the CAND lawsuit.

Evidencing their strategic litigation stance, Apple's Motion to Dismiss the CR App case narrated a supposed *fifteen* scattershot Sherman relevant markets, stemming from a purported *ten* amended complaints. Apple's position on the *three* null corporate entities was part and parcel of this attempt to discredit the developer's independent case. Apple characterized the case as one levied by an amateur antitrust enforcer, failing at fifteen markets, over a plethora of complaints, and failing to identify three putative corporate plaintiffs correctly. The District Court and Ninth

Circuit agreed – the case was ultimately dismissed, and affirmed by appellate review, on grounds that it would be futile to afford another amendment opportunity.

Apple's position regarding the null entities was not a minor technicality or slight nuance. It was part of an overall – and successful – attempt to achieve the heightened, disfavored threshold for a 12(b)(6) dismissal. It is important to note at the time, there was no government case in sight, and media coverage for *two entire years* about Apple antitrust largely centered on two cases: the CR App, and *Epic*. After spending over $80 million prosecuting its case, *Epic* lost its Sherman claim, just prior to Judge Chen's ruling on CR App. Given the public importance of the Apple antitrust matter, the Ninth Circuit held oral arguments – in which the developer was permitted to provide the closing arguments. Apple faced a non-trivial risk that the Ninth Circuit would reconsider the CR App verdict. Its position that the developer couldn't spell corporate names correctly, or get a single (of fifteen) Sherman Act right ultimately prevailed. The Ninth Circuit affirmed the CR App complaint made *no effort* whatsoever to define a Sherman market with regard to price elasticity and interchangeability, required elements under *Brown Shoe*.

That's a far different world from the present case: CRC, a Wyoming corporation with Roberts family owning a major share of the company, and Greenflight Venture Corporation, were both never mentioned in the CAND case. The Corporate Entity Plaintiffs are represented by qualified antitrust counsel, including a former AUSA assigned to antitrust matters in Wyoming.

**EQUITABLE ESTOPPEL AND JUDICIAL ADMISSIONS DOCTRINES APPLY**

Due to its prior representations, Apple is also equitably estopped from asserting that CRC participated in prior litigation. Counsel for Apple, Rachel Brass, explicitly informed Keith Mathews, counsel for CRC, via email that "Coronavirus Reporter" was not an extant legal entity capable of suing or being sued. Mathews relied upon her assertion, presuming it was a reasonable

factual representation pertaining to an iPhone app, and consequently did not contest this point in the Ninth Circuit reply brief. Had Apple not made this representation, Mathews could have addressed the issue differently on appeal. This reliance satisfies the elements of equitable estoppel, as Mathews accepted Apple's seemingly straightforward assertion of a fact, and it would be unjust to allow Apple to change its position now, simply because Apple no longer benefits from the obvious conclusion.

Furthermore, Apple's statements in its Ninth Circuit brief constitute judicial admissions. In the brief, Apple asserted that "there is no actual 'Coronavirus Reporter' entity—meaning Apple is being sued by at least one null party to whom no relief could be awarded." As this was presented in the context of a Rule 12(b)(6) motion, where facts are viewed in the light most favorable to the plaintiff, such factual assertions by Apple are binding. Apple cannot now contradict its prior admission by disputing their previous factual allegations. The 12(b)(6) process, and subsequent appeal, was no place for opinions or unverified factual assertions contrived by Apple's counsel. The non-entity status was an accepted factual assertion. Judicial admissions are conclusive and prevent a party from prevailing in subsequent litigation by asserting positions contrary to those previously taken.

Additionally, Apple's conduct raises serious concerns regarding the duty of candor owed to the court. By initially asserting that "Coronavirus Reporter" was not a legal entity and then reversing its position for strategic advantage, Apple may have misled both the court and opposing counsel. Such actions undermine the integrity of the judicial process and violate professional ethical obligations requiring attorneys to be truthful and not misrepresent facts. The duty of candor is paramount in ensuring fair proceedings, and violating this duty should preclude Apple from benefiting from its inconsistent positions.

In light of these factors, Apple should be precluded from asserting that CRC's claims are barred by res judicata. Allowing Apple to alter its position now would result in unfair prejudice to CRC, reward inconsistent and misleading representations, and contravene the principles of equity and justice fundamental to the legal system.

## JOINDER OF GREENFLIGHT MANDATES DUE PROCESS FOR NEW PARTY

In light of the fact that CRC did not exist as a corporate entity at the time of the alleged censorship violations by Apple Inc., and considering that the monetary funding of the CR App was primarily underwritten by Greenflight Venture Corporation, it is clear that Greenflight possesses priority standing to pursue legal action in this matter. As a financial backer of the CR App, Greenflight directly suffered the alleged harms resulting from Apple's conduct. Consequently, Greenflight meets the constitutional requirements for standing under Article III, having sustained an injury in fact that is concrete, particularized, and directly traceable to Apple's actions, which can be redressed by a favorable court decision.

Furthermore, the doctrine of *res judicata* does not bar Greenflight's current claims because Greenflight was not a party in the 2021 CAND Litigation. Greenflight specifically opted out of participating in that prior action, thereby preserving its legal rights and remedies. Under federal law, *res judicata* requires that the prior action involved the same parties or their privies, resulted in a final judgment on the merits, and encompassed the same claims or causes of action. None of these elements are satisfied with respect to Greenflight. The company did not have a formal legal relationship that would warrant preclusion, which is standard legal practice for investors, and its interests were not represented or adjudicated in that proceeding. In *Richards v. Jefferson County*, 517 U.S. 793 (1996) the Supreme Court emphasized that precluding a nonparty from litigating claims violates due process unless the nonparty had a full and fair opportunity to litigate in the

prior proceeding. Given these considerations, Greenflight's should be allowed to proceed. The company's decision to opt out of the 2021 CAND Litigation evidences its intent to litigate its claims independently.

In light of the foregoing, it is evident Apple has no legal basis to presume *res judicata* in justifying a venue transfer for Greenflight. Apple's refusal to update its Motion to Transfer Venue to consider the new plaintiffs and claims is without legal basis and suggests an attempt to sidestep legitimate concerns. Under Federal Rule of Civil Procedure 11(b), attorneys must ensure that filings are not presented for any improper purpose, such as to cause unnecessary delay, or needlessly increase the cost of litigation. By refusing to file an updated Motion to Transfer Venue that addresses the FAC and the new plaintiffs like Greenflight, Apple is attempting to bypass significant allegations derived from the DOJ complaint. Given the substantial changes in the operative complaint and the addition of new plaintiffs and claims, Plaintiffs have a right to have the prior Motion to Transfer Venue stricken. While Plaintiffs, out of an abundance of caution, stated that the Court may consider their Motion for a More Definite Statement as an objection to the Motion to Transfer Venue, they prefer full briefing on this. Apple's attempt to force such an alternative circumvents proper procedure.

**PLAINTIFFS ATTEMPTED TO RESOLVE RES JUDICATA AND JUDICIAL ESTOPPEL ISSUES IN APPLE'S PREFERRED VENUE, BUT APPLE DECLINED**

Undersigned counsel made concerted efforts to work collaboratively with Apple to bring this matter to an efficient resolution, either in this Court or before Judge Chen in the Northern District of California. Recognizing the importance of addressing the foundational issues of *res judicata* and judicial estoppel promptly, Plaintiffs proposed several mechanisms to resolve these matters efficiently. Apple declined all proposals.

On October 6, 2024, a CRC representative reached out to Apple's counsel proposing a collaborative approach:

> *"I propose, if Apple is agreeable, that Judge Chen's court adjudicate any res judicata argument Apple may have, alongside the Rule 60 matters currently under consideration."*

Apple' response declined such a narrow approach, insisting on a prompt venue transfer:

> *"Apple is glad all sides appear to agree that transfer of the Wyoming action to the Northern District of California is warranted so that Judge Chen can address the merits of that action, including any arguments that the Wyoming action is barred by res judicata."*

However, Apple mischaracterized Plaintiffs' position, as Plaintiffs did not agree to the transfer but instead sought to address *res judicata* and judicial estoppel issues first. Plaintiffs clarified this misunderstanding in subsequent communications. On October 8, 2024, Plaintiffs' counsel, Keith Mathews, reiterated:

> *"To clarify, CRC wishes to stay the Wyoming district litigation, rather than assent to Apple's MTV. The venue matter doesn't need to be decided until after Rule 60 and Res Judicata. All of us agree that these more pressing matters should be heard in the Honorable Judge Chen's court."*
> *"It is noteworthy that Apple raised the non-entity argument in its prevailing Ninth Circuit Answering Brief, which Appellants did not contest on those grounds. Therefore, both Judge Skavdahl and Judge Chen are equally well-positioned to adjudicate this matter that is novel to either District Court. However, considering the pending Rule 60 motion before Judge Chen, we believe there is added efficiency in addressing these combined issues in his court through a Rule 24/Rule 60 motion.*

Despite Plaintiffs' attempts to prioritize the resolution of *res judicata* and judicial estoppel issues, Apple declined to cooperate. This appears to cause unnecessary delay and motion practice: if Apple is judicially estopped from asserting *res judicata*, it is evident this case should proceed in Wyoming, in light of recent precedent disfavoring the forum selection clause, conceded by Apple. In the alternative, the Wyoming FAC would serve as evidence of non-futility of amendment, a matter before Judge Chen in a pending Rule 60 motion by the developer.

Moving the case to another court before resolving whether *res judicata* applies allows Apple to build momentum to its judicially estopped arguments in a yet another forum. This needlessly prolongs the litigation process. Undersigned counsel firmly believes that the *res judicata* and judicial estoppel matters should be adjudicated—and, ideally, resolved—before proceeding with further motions. Addressing these foundational issues first would clarify the scope of the case and inform subsequent proceedings, avoiding futile venue motions.

**APPLE REAPS BENEFITS FROM TWO DECADES OF STALLED ANTITRUST ENFORCEMENT**

Apple's conduct in this litigation is emblematic of a broader pattern aimed at delaying reform. Recent reports highlight that Apple has employed "stall tactics" in the government's antitrust case, with over 200 days passing since the case was filed without significant progress. According to the Tech Oversight Project, "the case has been mired by inaction and stall tactics from Apple," and "justice has been anything but swift." (Kate Irwin, *Advocacy Group Accuses Apple of 'Stall Tactics' in DOJ Antitrust Case*, PCMag, Oct. 8, 2024).

This pattern extends to other enforcement actions. The Ninth Circuit's ruling under California's Unfair Competition Law in *Epic Games, Inc. v. Apple Inc.* has faced over a year of "malicious compliance" by Apple, now under court review. Similarly, Apple's response to the European Union's Digital Markets Act has been characterized by delays and non-compliance, undermining the effectiveness of regulations intended to curb anticompetitive practices.

Even the United States Senate is not immune from Apple's immense influence, with wealth that surpasses most countries. As noted by Senator Amy Klobuchar, "I have two lawyers, they have a thousand," highlighting the resource imbalance that tech giants exploit to wear down opposition (Senate Judiciary Committee Hearing Transcript, April 21, 2021). Apple successfully

blocked Senator Klobuchar's bipartisan Big Tech legislation: despite having over 70% popular support, for mysterious reasons, Senate Majority Leader Chuck Schumer (CA) never brought her bill to vote.

In light of this, the Court should view Apple's current motion as yet another attempt to subvert antitrust enforcement, particularly with respect to the Tenth Circuit. Apple's insistence on transferring this case away from Wyoming—a neutral and appropriate forum—serves only to delay proceedings and hinder the timely resolution of serious antitrust allegations. Such tactics are detrimental to the public interest, as they allow Apple to continue practices that harm our nation. Although Plaintiffs hold out hope for meaningful reform from the *United States v. Apple* and *Epic v. Apple* litigation, the stark reality is that Apple has demonstrated a proven ability to circumvent Senators, Courts, and the entire European Union. It is certainly within the realm of possibility that diligent oversight by the Tenth Circuit prevents another decade lost to Big Tech. That appears to concern Apple, and explain why Defendant maneuvers for an unopposed motion out of Wyoming.

For over two decades, Big Tech companies like Apple have wielded unprecedented influence over our nation's culture, economy, and daily lives. They have monetized, censored, and controlled essential aspects of human interaction, often without accountability. Every year that litigation is delayed is another year that these companies inflict harm. For once a monopoly embeds itself into the societal fibre to the extent Apple has, dislodging it often comes at a prohibitive cost.

As the Tech Oversight Project aptly noted, Apple's actions are "not a victimless crime." Irwin, *supra*. With each passing day of delay, Apple "continues to rake in billions of dollars—obtained because it breaks the law to get ahead." *Id*. The Court has an opportunity to prevent further delay tactics by denying Apple's Motion to Enter Briefing Schedule, striking or requiring withdrawal of its outdated Motion to Transfer Venue, and granting Plaintiffs' Cross-Motion for

Determination on Judicial Estoppel. By doing so, the Court will ensure that antitrust laws are enforced without undue obstruction or delay.

Make no mistake, Apple's strategy apparently seeks a one-way express ticket out of Wyoming at any cost, without addressing the foundational issues that impact this case. Despite Plaintiffs' efforts to bring a limited, focused *res judicata* matter before Judge Chen in the Northern District of California for expedited review—as a concession to align with what Apple previously claimed it wanted—Apple now reveals its true intentions. It declines to resolve the more pressing matters first, such as whether it is judicially estopped from asserting that Plaintiffs are identical to those in the 2022 CAND lawsuit, which they are not, and instead pushes for procedural complexity to obscure its vague arguments on undisclosed "unique" circumstances warranting transfer.

The Court should recognize this for what it is: a deliberate attempt by Apple to once again isolate individuals advocating for freedom and choice. By sidestepping critical issues and obtaining collateral procedural wins, Apple continues its long-standing practice of dividing and discrediting any challenger to its Sherman-prohibited conduct. This represents part of a broader pattern where Big Tech companies like Apple, the largest monopoly in world history, have had a two decade free reign to censor, control, and profit from nearly ever basic human interaction. Twenty years is enough.

In accordance with Local Rule 7.1(b)(1)(A), Plaintiffs have conferred in good faith with opposing counsel. Apple indicated it is not judicially estopped from asserting *res judicata*, and objected to judicial determination of the matter in either this Court or Judge Chen's CAND court, prior to a venue change to CAND.

WHEREFORE Plaintiffs requests that the Defendant's MTV be denied as moot, and this Court determine that Apple is judicially estopped from altering its 2022 position that the "Coronavirus Reporter" app is a null, non-extant, non-entity.

Respectfully submitted,

Plaintiffs
By their Attorney:

Date:  10/15/2024         /s/ Keith A. Mathews
Keith A. Mathews, Esquire
NH Bar No. 20997
AWP Legal
1000 Elm Street, Suite 800
Manchester, NH 03101
Ph. 603-622-8100
keith@awplegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date that a copy of the foregoing Objection and Cross Motion was provided to all interested parties through the CMECF system.

/s/ Keith A. Mathews
Keith A. Mathews, Esq.