Keith Mathews
*Pro Hac Vice*
American Wealth Protection
1000 Elm Street, Suite 800
Manchester, NH 03105
(603) 622-8100
keith@awplegal.com

Melissa R Theriault #6-4266
Woodhouse Roden Ames & Brennan, LLC
1912 Capitol Ave. Suite 500
Cheyenne, WY 82001
(307) 432-9399
melissa@wrablaw.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| **Coronavirus Reporter Corporation, Calid Inc., Greenflight Venture Corporation** *on behalf of themselves and all others similarly situated.* <br><br> Plaintiffs, <br><br> v. <br><br> **Apple Inc.** <br><br> Defendant. | **PLAINTIFFS' RESPONSE BRIEF TO APPLE'S MOTION TO TRANSFER VENUE** <br><br><br> Civil No. 1:24-CV-00053-SWS |

Apple's supplemental briefing makes clear the Defendant's attempt to move this case is not grounded in considerations of witness convenience, fairness, or efficiency, but represents a calculated effort to find a forum that will dismiss the Plaintiffs' claims without due consideration. This is evident from the fact that Apple's proposed venue previously dismissed the *Coronavirus I* case under Rule 12(b)(6), without engaging in the necessary fact-finding processes emphasized described by the Supreme Court in *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962).

Apple acknowledges that "the most important factor in deciding a motion under §1404(a) is 'the convenience of witnesses.'" *Cook v. Atchison, Topeka & Santa Fe Ry. Co*. Plaintiffs identified key witnesses located near Wyoming, rendering it a more convenient forum. The witnesses include physicians with demanding schedules, and individuals with disabilities, thereby making travel to the Northern District of California burdensome. Both Dr Robert Roberts, CRC's Chief Medical Officer, and his son, a co-founder, are full time physicians treating patients in the Rocky Mountains region. CRC's third founder is located on the east coast, is disabled, and as a result has been unable to travel by airplane for the past six years. Wyoming is several days closer by car for this disabled witness, saving nearly a week round-trip for hearings or trials.

A plaintiff's choice of forum should rarely be disturbed unless the balance of factors strongly favors the defendant. *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1515 (10th Cir. 1991). Here, the balance of factors weighs in favor of a Wyoming venue. When analyzing the convenience of the witnesses, it is indisputable that current technology reduces the burden of distance. Depositions and court appearances can often be conducted remotely, mitigating concerns about witness travel and evidence logistics. Apple will almost certainly be employing digital records archiving and remote depositions for their MDL case in New Jersey, as well as an "identical" case proceeding in the DC District. It is expected the witnesses and discovery files for both of those cases will be instrumental in this case. Wyoming is geographically closer to both of these pending antitrust

cases. With regard to convenience, the MTV only vaguely mentions that relevant employees are based in the Northern District of California, Dkt. 21 ¶¶ 9–12. That doesn't tip the scales, in light of the aforementioned facts. Compounding this, Apple concedes it argued for MDL consolidation in New Jersey, rather than California, in a case involving a near-identical operative complaint.

Apple's reliance upon *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) is misplaced. Although the Supreme Court upheld the forum-selection clause, it acknowledged that such clauses could be invalidated if they were fundamentally unfair or the result of overreaching. *Carnival* concerned pricing, where consumers had a choice in cruise lines. In the present case, a developer has no choice but to sign the overreaching DPLA, if they wish to distribute apps to 80% of the population. Authoritative concerns surrounding Apple's restrictive DPLA policies have already been briefed to the Court in the FAC and other filings. By upholding the forum-selection clause at the outset, Apple is asking the Court to ignore substantiated concerns of misconduct, and effectively short-circuit the judicial process. The Court should recognize that the DPLA is likely a contract of adhesion at this point, rather than treat it as gospel, as Apple wishes. The DPLA is a standard-form contract presented on a take-it-or-leave-it basis, indicating a bargaining power disparity.

Apple's motion is rife with inconsistencies which fundamentally alter the analysis for transfer. First and foremost, Apple is precluded from supporting its motion by relying on *Coronavirus I*. That case, in Apple's own words, involved non-entities incapable of suing or being sued, in addition to a *pro se* Plaintiff. Apple's supplemental briefing repeatedly mentions this present case has the same allegations, same theories, and same markets as *Coronavirus I*. That is impossible. *Coronavirus I* was dismissed, according to the Ninth Circuit, for making "no effort" to define markets with reference to price elasticity and interchangeability. In contrast, the FAC makes substantial efforts in this regard,

based upon meticulous research by the United States Department of Justice. The Court may deny Apple's motion because it relies upon these incorrect representations.[1]

Citing *Taylor v. Sturgell*, Apple claims that the plaintiffs have already been "adequately represented by someone with the same interests" in *Coronavirus I*. But that inconsistent argument doesn't withstand scrutiny. *Coronavirus I*, as Apple argued repeatedly, was *pro se* litigation. It is black-letter law that a non-lawyer cannot adequately – or legally – represent any of the three corporate plaintiffs in this case. And Apple cannot now claim *Coronavirus I* involved corporate entities, as Gibson Dunn successfully represented otherwise to the Ninth Circuit. It would be improper to bind the CRC corporate plaintiffs to *pro se* litigation.

**Apple's Motivation for Transfer Seeks to Evade Adjudication on the Merits**

Apple admits it seeks to transfer this case in order to terminate it. Apple does not wish to adjudicate on the merits through summary judgment, a bench trial, or a jury verdict. Instead, a *res judicata* application of a 12(b)(6) dismissal is sought, under the Ninth Circuit authority *Hicks v. PGA Golf,* 897 F.3d 1105 (9th Cir. 2018).  Apple centers its motion on the paradoxical claim that the CAND court possesses deep familiarity, yet it dismissed the case at the starting gate[2].  Apple only

---

[1] Because Apple's supplemental briefing declined to respond to Plaintiffs' cross-motion for judicial estoppel, it is within the Court's discretion to either a) determine the matter forfeited, or b) issue a show-cause order requiring Apple to brief why this case should be linked to a legal non-entity.

[2] Apple argues in support of transfer that the Northern District of California is intimately familiar with this case. However, this assertion is overstated. CAND's limited involvement in *Coronavirus I* case does not justify transfer. The prior case was dismissed at the Rule 12(b)(6) stage based on failure to define a relevant market under the Sherman Act. The court did not delve into issues of corporate ownership, privity, or the specific identities of the parties involved. The current case involves new plaintiffs, including CRC and Greenflight Venture Corporation, who were not parties in the prior litigation. Issues of corporate identity were not addressed in the prior case. The operative FAC reads much closer to the DOJ's complaint than it does the complaint in *Coronavirus I*, weighing against transfer. The CAND court's familiarity was confined to the insufficiency of a *pro se* complaint's supposed fourteen relevant market definitions. Apple's attempt to transfer the case to CAND under the guise of judicial efficiency appears rather to be a strategic move to obtain a favorable forum. By asserting that the California court is familiar with matters it did not consider, Apple is effectively seeking to forum shop, which is disfavored in legal proceedings.

briefly discusses the convenience of witnesses, which is not truly under consideration by this Court, because there are no witnesses in a 12(b)(6) dismissal.

At its heart, Defendants' motion to transfer venue is premised on the idea that *Hicks* – Ninth Circuit law never accepted by the Supreme Court – is so uniquely important to the interests of justice and fairness as to warrant transfer. This raises a non-trivial public policy concern. Should a Wyoming Court be required to transfer an antitrust case concerning the largest monopoly in history, which has evaded every regulation attempt thus far, to California for immediate termination? The answer, Plaintiffs submit, is a resounding "No."

Significant criticism exists of courts dismissing antitrust cases under Rule 12(b)(6) due to alleged flaws in market definition at the pleading stage, particularly in cases like *Hicks v. PGA Tour, Inc.* In *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001), the Second Circuit emphasized that market definition is a deeply fact-intensive inquiry: "Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market." The authoritative Areeda & Hovenkamp, Antitrust Law, ¶ 307a (4th ed. 2013) treatise argues that market definition often requires rigorous economic analysis and factual evidence, which is *generally unsuitable for resolution at the pleading stage*.

The Tenth Circuit recognizes the need for factual development to determine plausibility, permitting pleading-stage dismissal in only exceptional circumstances. Plaintiffs are unaware of a case where the Tenth Circuit was willing to engage in *Hicks*-style detailed economic analysis of the alleged market at the pleading stage. In *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188 (10th Cir. 2009), the court emphasized the need for detailed factual allegations (absent in that case) but acknowledged that market definition is typically a question of fact. The distinction between Ninth and Tenth Circuit precedent on Sherman Act market pleading is illustrated by comparing *Hicks v. PGA Tour, Inc.* and *Christy Sports, LLC v. Deer Valley Resort Co.* In *Hicks*, the Ninth Circuit engaged

4

in a detailed assessment of the plausibility of the alleged market for caddie endorsement services, ultimately determining that the market was implausible based on economic realities, and affirmed dismissal at the pleading stage. Conversely, in *Christy Sports*, the Tenth Circuit dismissed the antitrust claim because it failed to allege a relevant market with any specifics whatsoever, but acknowledged that market definition is typically a question of fact unsuitable for resolution at the pleading stage unless the alleged market is facially unsustainable.

Thus, while both circuits require the existence of a plausible relevant market and may affirm dismissal where the market is inadequately defined, the Ninth Circuit in *Hicks* appears to have taken it a step further by engaging in an in-depth evaluation of the economic viability of the pleaded market at the pleading stage. This is precisely what happened in *Coronavirus* I, where the economic viability of notarization services was determined in a 12(b)(6) motion. This approach permits improper judicial assessment of economic factors and market realities without the benefit of discovery, encroaching on factual analysis and expert opinion that should be reserved for later stages of litigation, as emphasized in *Brown Shoe Co. v. United States*. The Tenth Circuit, on the other hand, recognizes the fact-intensive nature of market definition and is generally more cautious about dismissing antitrust claims at the pleading stage when a plausible market is alleged.

The Tenth Circuit's precedent demonstrates a recognition that antitrust claims often involve complex factual issues unsuitable for 12(b)(6) resolution. The Tenth Circuit's approach aligns with the principle that plaintiffs should not be deprived of the opportunity to present evidence supporting their claims. This Circuit appears inclined to allow antitrust cases to proceed; ensuring that claims are evaluated on a complete factual record, promoting fairness and justice. The Supreme Court on the subject is clear "the proper market definition in this case can be determined only after a factual inquiry into the commercial realities faced by consumers." *Eastman Kodak Co. v. Image Technical Services,*

5

*Inc.,* 504 U.S. 451 (1992). Legal scholars and commentators generally agree that market definition is a fact-intensive inquiry requiring detailed analysis, making premature dismissal inappropriate.

Viewing Apple's motion for what it is, it seeks a favorable venue based on prior dismissal of *Coronavirus I*. This constitutes forum shopping, which is disfavored by courts because it undermines the integrity of the judicial system. Granting a transfer to enable a defendant to obtain a dismissal contravenes public policy that favors allowing parties to have their claims heard on the merits. Transferring the case would effectively deny the Plaintiffs access to justice by subjecting them to a jurisdiction that has unique case law permitting a dismissal at the pleading stage without full consideration of the factual complexities involved. Transferring the case would expose Plaintiffs to a significant risk of dismissal without the chance to develop necessary facts, effectively denying them their day in court. Under 28 U.S.C. § 1404(a), the court may consider 'the interest of justice' when deciding whether to transfer a case to another venue. Courts have denied transfers where the change in law due to the transfer would significantly prejudice the plaintiff. *Burnett v. Wyeth Laboratories, Inc.*, 691 F. Supp. 644 (E.D. Tex. 1988), the court denied the defendant's motion to transfer a product liability case from Texas to Kansas. The court found that transferring the case would deprive the plaintiff of the benefit of Texas's longer statute of limitations, effectively barring her claim. The court held that 'the interest of justice weighs heavily in favor of retaining this action in this district' because the transfer would significantly prejudice the plaintiff. Similarly, in *GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharmaceutical Corp.*, No. 05 C 898, 2005 WL 2237598 (N.D. Ill. Sept. 13, 2005), the court denied the defendant's motion to transfer and considered that the differing legal standards between the Seventh Circuit and the Third Circuit could prejudice Glaxo.

**Exceptional Circumstances Exist Pursuant to *Kelvion***

In *Kelvion*, the Tenth Circuit Court of Appeals addressed the enforceability of a forum-selection clause in a contract between Kelvion, Inc., a U.S. corporation, and PetroChina Canada Ltd.,

6

a Canadian company. The court reaffirmed that forum-selection clauses are presumptively valid and should be enforced unless the party resisting enforcement can show that the clause is invalid due to fraud or overreaching, enforcement would contravene a strong public policy, or the chosen forum is seriously inconvenient for the trial of the action[3]. *Kelvion* involved a dispute between two corporations of relatively equal bargaining power and did not involve antitrust violations.

The present case involves allegations that the DPLA itself is anti-competitive and that enforcing the forum-selection clause would perpetuate the alleged antitrust conduct. Enforcing the forum-selection clause would undermine public policy[4] interests by allowing antitrust claims to be heard in a forum that is not unduly influenced by the defendant's home-court advantage. Enforcing the clause would contravene strong public policy interests in preventing anti-competitive practices and ensuring access to justice for antitrust claims.

Under Wyoming law, a contract may be deemed unconscionable if it is both procedurally and substantively unfair. *See* Wyo. Stat. Ann. § 34.1-2-302; *Durdahl v. Nat'l Safety Assocs., Inc.*, 988 P.2d 525, 528-29 (Wyo. 1999). The DPLA meets criteria under Wyoming Law for unconscionable agreements, when the FAC's allegations are properly construed. Historically, developers could produce software for any platform. Now, as detailed in the FAC, they must seek permission from Apple, and even pay Apple $99 each year to Sherlock their ideas, censor them, then fund or otherwise assist competitors such as TikTok. While this has become the 'accepted' status quo – if one told a

---

[3] Compared to the Wyoming docket, the CAND docket is significantly congested by any measure, disfavoring transfer.

[4] In *Marsh v. Alabama*, 326 U.S. 501 (1946), the Supreme Court held that constitutional protections of free speech could apply to private entities performing functions traditionally associated with government, such as operating a company town. The Court recognized that when private property is opened to the public, the owners cannot abridge fundamental liberties. The Defendant, by exerting absolute control over its App Store—a modern-day public square—has effectively placed a lock on the doors of free expression, deciding unilaterally who may distribute software, which governs inherent speech. The technology in question is not merely a platform but a gatekeeper of information and ideas, impacting millions who rely on these channels for communication, innovation, and access to vital information. The plaintiffs, including two esteemed physicians, endeavored to share critical health information with the public, during times of crisis. Their right to reach people over the internet has been unjustly obstructed by the defendant's censorship, stifling voices that aim to contribute valuable insights and potentially save lives. The Ninth Circuit accepted "censorship" is not antitrust conduct.

computer developer (or user) this scenario in 1984, they would balk at it as unconscionable. At the very least the practice is inherently unfair, coercive and/or fraudulent, as no reasonable person would voluntarily choose to pay this fee. This conduct has resulted in Apple last week announcing record "services" revenue of $100 billion, which is their financial reporting term for taxes levied on developers. Beyond the economic implications, there exist vast cultural and social damages from Apple's monetization policies, recently prompting Australia to ban social media for individuals under the age of sixteen. Antitrust enforcement in this country is dangerously stalled, and all reasonable attempts at reform should be considered by the courts.

If there is ever a case for public policy exception, it is the present. Apple is not only the largest monopoly in history, but the first company ever to possess a technology that controls fundamental aspects of daily life. Two decades of efforts to curtail the monopoly have failed. As briefed to the Court already, bipartisan senate bills were thwarted. Apple is in non-compliance with the entire EU DMA. Even the US copyright office was blatantly circumvented, which first weighed in on app store freedom in 2010. The very fabric of our nation is under significant control by Big Tech, and an overwhelming majority of people support reform. There exists no public policy argument in support transferring of this case to terminate it.[5]

**Selective Enforcement and Waiver of the Forum-Selection Clause**

---

[5] The CAND Court had been reviewing a *pro se* Rule 60 motion to address the market for Notary Stamps in *Coronavirus I*. According to that motion, the 12(b)(6) dismissal of notary stamps was erroneous, in retrospect, because Apple has subsequently used notarization to evade the *Epic* UCL ruling and the EU DMA. Judge Chen denied the motion, negating any potential efficiencies in transfer, despite Apple's claim Plaintiffs "agree" to transfer. To the contrary, Judge Chen did not address the notarization issue in last month's Rule 60 order, essentially asserting his hands were tied by Ninth Circuit disfavor of single-brand markets. This matter deserves to be heard, and itself weighs heavily against transfer.

Apple did not seek to enforce the DPLA's forum-selection clause in *PhantomAlert, Inc. v. Apple Inc.*, allowing that case to proceed in the District of Columbia[6]. Apple has called that case a 'facsimile' of this case, which suggests that witnesses and evidence may have considerable overlap. Since Apple conceded that the DC District is appropriate for that case, it is unclear why Wyoming wouldn't be appropriate for this case. Moreover, Apple advocated for an MDL in New Jersey, rather than California, in a case involving a nearly identical complaint as the FAC.

Apple's selective enforcement of the forum-selection clause suggests that it is not uniformly mandatory and that Apple may have waived its right to enforce it in certain circumstances. This inconsistency undermines the argument that the clause must be enforced in the present case. Courts have held that a party's inconsistent enforcement of contractual rights can result in waiver or estoppel. *Peterson v. Shearson/Am. Exp.*, 849 F.2d 464, 466 (10th Cir. 1988).[7]

**Limitation to Contractual Claims**

The FAC antitrust claims arise from statutory rights under the Sherman Act and are independent of any contractual obligations under the DPLA. The forum-selection clause in the DPLA typically covers disputes "arising out of or related to" the agreement. Courts often interpret such language narrowly when it comes to statutory claims. In *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011), the court held that a forum-selection clause did not apply to tort claims that were not based on rights originating from the contract. The DPLA's forum-selection clause applies to disputes "arising under" the agreement. Statutory claims, such as antitrust violations

---

[6] Given the similarities between CRC and *PhantomAlert*, consolidation remains a possibility. Plaintiffs maintain that they are first-to-file and Wyoming stands as the best venue, should consolidation occur. Because Apple has accepted the DC as a fair venue for that dispute, it would reasonably seem DC should be a compromise consideration for transfer.

[7] Apple's decision to waive the forum-selection clause in similar cases curtails its right to enforce the clause here. Apple's new attempt to distinguish *PhantomAlert*, and an identical forum selection clause, is unavailing and should be disregarded by the Court. See Dkt 44 Footnote 4, which posits an incoherent claim that previous forum waivers "are irrelevant here as Apple has invoked the forum-selection clause these plaintiffs signed, and that clause is binding for this dispute." This response is inadequate and amounts to a forfeiture of the argument. Apple had the opportunity to explain why it did not seek to enforce the forum-selection clause in the *PhantomAlert* case but failed to provide a substantive explanation.

and unfair competition, may not arise under the agreement but instead arise under statutory law. A narrow interpretation of "arising under" limits the clause to contractual disputes. Claims based on statutory rights are outside the scope of the forum-selection clause. Apple does not offer any guidance on why the Court should broadly interpret a forum-selection clause, especially when the DPLA is under considerable scrutiny. In light of these factors, the Court may exercise its discretion to interpret the DPLA in a reasonably narrow fashion. The DPLA, which even contains provisions allowing Apple unilateral rights to litigate elsewhere while binding developers to a specific forum, creates a lack of mutuality of intent. Ambiguous contract terms are interpreted against the drafter.

### Plaintiffs' Choice of Forum Should Be Given Substantial Deference

Plaintiffs have chosen to litigate in the District of Wyoming, their home forum. Courts typically give significant deference to the plaintiff's choice of forum, especially when the plaintiff resides in the chosen district. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). Plaintiffs are Wyoming corporations and investors. The alleged wrongful conduct has effects within Wyoming, further justifying the choice of forum. The burden is on the Defendant to demonstrate that the balance of factors strongly favors transfer, which is not met in this case. *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)). In *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972), the Supreme Court held that a forum-selection clause should be unenforceable if enforcement would be unreasonable or unjust. Enforcing the clause here would be unjust because it would deprive Plaintiffs of a fair opportunity to litigate their claims and would facilitate Defendant's forum shopping.

### Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Transfer Venue. Granting the transfer would contravene public policy and undermine the interests of justice by facilitating a dismissal without full consideration of the merits.

                                          Respectfully submitted,
                                          Plaintiffs
                                          By their Attorney:

Date:  11/14/2024                   /s/ Keith A. Mathews
                                          Keith A. Mathews, NH Bar No. 20997
                                          AWP Legal
                                          1000 Elm Street, Suite 800
                                          Manchester, NH 03101
                                          (603) 622-8100
                                          keith@awplegal.com

                                          Melissa R Theriault #6-4266
                                          Woodhouse Roden Ames & Brennan, LLC
                                          1912 Capitol Ave. Suite 500
                                          Cheyenne, WY 82001
                                          (307) 432-9399
                                          melissa@wrablaw.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on this date that a copy of the foregoing Response Brief to Apple's Motion to Transfer Venue Supplement was provided to all interested parties through the CMECF system.

                                          /s/ Keith A. Mathews

11