Keith Mathews
*Pro Hac Vice*
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORONAVIRUS REPORTER, CALID INC, PRIMARY PRODUCTIONS LLC [non-entities], DR. JEFFREY D. ISAACS, on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>APPLE INC.<br>      Defendant. | Case No. 3:21-cv-5567-EMC<br><br>**OBJECTION TO APPLE'S ADMINISTRATIVE MOTION TO RELATE ACTIONS** |

**OBJECTION TO ADMINISTRATIVE MOTION TO RELATE ACTIONS**

Defendant Apple seeks to relate Coronavirus Reporter Corporation ("*CRC*"), *24-cv-08660*, to a Plaintiff in a case that Apple previously argued – without objection – didn't exist. Apple creates a fictitious[1] sequence "*Coronavirus I & II*" to reconnect a non-entity to reality. Apple unambiguously argued (*Ex. A*) that at least one – and in actuality, all three – of the named corporate Plaintiffs in this case were not properly identified, and therefore, even if a Ninth Circuit appeal overturned the case, Apple would pay nobody. For this reason, this case – properly cited as *Dr. Jeffrey Isaacs (pro se) v. Apple* – has no identity whatsoever to CRC, a Wyoming Corporation owned by Dr. Roberts and other founders. Apple's motion further rests on flawed assumptions and mischaracterizations that fail to meet the standard required by Local Rule 3-12. Apple's motion glosses over meaningful distinctions introduced by *CRC*, assumes without proving that *res judicata* concerns demand relation, and misapplies prior Plaintiff statements to a newly complex scenario. The Local Rules require more than superficial similarity. The Court should therefore decline to relate the two actions, ensuring that the unique aspects of CRC receive the independent judicial scrutiny they warrant. Congress has been clear that the Courts must not underenforce Sherman Act with regards to Big Tech. By relating a near-verbatim DOJ antitrust case to a dismissed *pro se* case, Apple once again evades Sherman Act.

Because the cases involve different entities, and predominantly different subject matter, the Court should deny Apple's motion. Apple similarly overstates the degree of similarity between the two cases. Apple falsely calls CRC a "carbon copy" of this case, which is plainly untrue. For convenience of the Court, Exhibit B highlights differences between the two complaints. At most, fifteen of ninety pages in the CRC complaint concern *similar* – but materially different – subject

---

[1] Counsel is unaware of any other "I, II, III" case law sequence in this circuit or any other federal circuit which equates a non-entity with another, distinct legal entity. Apple counsel Kleinbrodt declined to respond to undersigned counsel's request for explanation of this obviously improper citation method.

matter. The CRC complaint shares over sixty pages verbatim with the DOJ case against Apple, pending in NJD. If there was any case to relate, it was to that case – but Apple disingenuously convinced the JPML that their own consolidation order which directly included developers, somehow didn't apply to this case Apple developer case. The CRC case, when compared to *Isaacs v. Apple*, introduces new parties, including investor entities, and is drawn on the U.S. Department of Justice's antitrust complaint. These amendments are not mere cosmetic changes; they expand the scope and complexity of the claims, thereby distinguishing *CRC* from *Isaacs* in ways that transcend Apple's simplistic narrative of "carbon copy" complaints. It is further noted that this Court determined *Isaacs* had fourteen incomplete relevant market definitions. CRC, on the other hand, invokes the DOJ's comprehensive Smartphone and Superphone (alternative) market definitions. It also details a market for app stores, and notary stamps, in far more detail than ever attempted than Isaacs. In short, CRC has four plausible – to *Isaacs* fourteen – markets. Likewise, *CRC* pleads verbatim the DOJ's five-page antitrust injury theory, thereby distinguishing it from *Isaacs*, which this Court found did not plead such an injury. Finally, CRC pleads California Unfair Competition Law (UCL), which is absent in Isaacs. Apple's attempt to salvage these differences – by citing about a page of *MCI* essential facilities doctrine that overlap between the two cases – is red herring.

Apple's heavy reliance on purportedly identical plaintiffs – which they are judicially estopped from claiming – ignores that the relevant inquiry under Rule 3-12 focuses on whether the actions concern "substantially the same" transactions or events. The presence of new plaintiffs, including investors with distinct interests[2], and the insertion of DOJ-inspired legal theories create new sets of

---

[2] The *Coring* case was transferred to this District and has been held in abeyance awaiting clarity on Apple antitrust jurisprudence, and further illustrates the impracticality of treating any corporate entity as if it were identical to *Isaacs*. Greenflight Venture Corporation, a newly added party in CRC, also took a measured wait-and-see approach for years, monitoring antitrust case developments and coordinating with other shareholders to understand evolving legal standards. This careful, time-spanning approach, mirroring that of *Coring* and *PhantomALERT*, demonstrates that each corporation maintained its own identity and strategy rather than all collapsing into a single interest attributable to one individual's involvement. Apple now tries to lump all entities associated (directly or indirectly) with *Isaacs* into a

transactions, injuries, and potential remedies. These are not simply "the same claims and issues resolved in *Coronavirus I*," as Apple suggests, but a more complex amalgam of old and newly introduced controversies. Even if the rejection of an app is alleged in both complaints, that rejection is also alleged in *PhantomAlert*. But Apple doesn't seek to move this case to DC. This represents forum-shopping and an effort to prevent this matter from ever reaching a determination on the merits.

Apple's invocation of *res judicata* does not justify relating the cases. CRC does not assert as "near-identical arguments" to *Isaacs*. The US Superphone fore-market and downstream leveraging effects, which predominate, were written with the benefit of the DOJ's meticulous research, as well as an AUSA with antitrust experience in Wyoming. The judicial familiarity Apple touts only extends as far as the issues previously litigated, which concentrated on fourteen markets and non-existent antitrust injury. A single concept – notary stamps – has been extensively redeveloped, as has a tying claim. Efficiency is not guaranteed by reassigning the case to the same judge if the new allegations shift the factual and legal nexus well beyond the confines of the old record.

Apple's reliance on *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) as a shield to establish that complete identity of parties is unnecessary for *res judicata* deeply misconstrues both the holding of that case and the procedural reality before this Court. Apple's invocation of *Tahoe-Sierra* aims to minimize the significance of the differences between *CRC* and *Isaacs*. In particular, Apple attempts to apply a doctrine intended to extend *res judicata* to parties with "sufficient commonality of interest" as though that principle were a free pass to ignore fundamental differences in party composition and factual allegations. The attempt falls flat when viewed against the backdrop of Apple's own conduct and arguments—particularly Apple's

---

monolithic group to justify relating actions and claiming *res judicata*. Apple seeks improper judicial shortcuts by asserting that one individual's involvement in multiple, temporally distinct projects transforms them into a unified whole for 12(b)(6) disposition. That was not the intent of Rule 12.

prior insistence that "Coronavirus Reporter" was a non-entity, and its present glossing over the fact that the allegedly "overlapping" plaintiffs or claims do not truly carry over into the second action.

In *Tahoe-Sierra*, the Ninth Circuit held that complete identity of parties is not required for *res judicata* if there is sufficient commonality of interest. However, this presupposes that the entity or party in question existed as a meaningful litigant in the first place. When a new lawsuit involves fundamentally changed parties—here, new investor plaintiffs like Greenflight Venture Corporation, with distinct roles and stakes not present in *Isaacs*—it becomes much harder to argue that there is a straightforward identity or even a commonality of interest with previously named plaintiffs. That difficulty intensifies when one recalls that in the prior appellate proceedings, Apple took the position that "Coronavirus Reporter" was not a real entity capable of owning or asserting legal rights. Apple's prior characterization of "Coronavirus Reporter" as a null plaintiff was central to its effort to discredit the initial litigation. Now Apple pivots 180 degrees, arguing a "non-entity" could form the necessary commonality of interest pursuant to *Tahoe-Sierra*. Apple cannot have it both ways: it cannot first denigrate the plaintiff as not existing and then claim this same "plaintiff" is part of a stable of parties whose interests and identity carry over into the new litigation. This Court should carefully parse what Apple is doing: it is using *Tahoe-Sierra's* relaxed standard on party identity to argue that *CRC* is closely enough related to *Isaacs*, despite acknowledging fundamental shifts in allegations and parties. Furthermore, none of Bitcoin Lottery or CALID App specific factual allegations appear in the new action. The alleged "overlap" Apple invokes thus rests not on actual continuity of real, recognized parties or identical claims, but on a ghost of a plaintiff it previously deemed a "non-entity." The overlap of one app rejection – also in PhantomAlert – is insufficient to relate the cases.

Apple's inconsistent characterizations of "identical" cases expose its opportunistic approach. On one hand, Apple has argued that *CRC* and *PhantomALERT* are identical to *Isaacs*. When Apple wished to avoid MDL consolidation in New Jersey with the DOJ's antitrust proceeding, Apple took

the opposite tack, strenuously insisting the cases were wholly unrelated. Apple thus flips between extremes: calling separate suits "identical" when it suits them to argue for preclusion or relation, and calling obviously similar matters "vastly different" when it wants to avoid MDL consolidation. This pattern cannot be reconciled with a fair and consistent assessment of similarity; it illustrates Apple's ongoing attempts to manipulate procedural arguments to its own advantage, often at odds with the factual truth. Consequently, the Court should treat Apple's claims that *CRC* is identical to *Isaacs* with pronounced skepticism. Even if there is some conceptual overlap between the cases, that overlap rests upon a "non-entity," and thus does not warrant relating the cases or granting Apple's requested relief.

Even setting aside the "non-entity" problem, Apple previously took the stance in *Isaacs* that the case had no meaningful connection to medicine or medical professionals beyond the presence of Dr Jeffrey Isaacs, the *pro se* litigant. By that very argument, Apple disavowed that Coronavirus Reporter Corporation (CRC), which is majority-owned by Dr. Robert Roberts'—an eminent cardiologist— had any hand or stake in *Isaacs*. In other words, by Apple's own account, CRC and its medical-linked shareholders did not factor into *Isaacs* claims or interests. Therefore, not only is there not the "sufficient commonality of interest" that *Tahoe-Sierra* contemplates, but by Apple's own past reasoning, there is no overlap of parties whatsoever in any meaningful sense: two independent reasons preclude "sufficient commonality," neither of which Apple can now refute.  The first action was prosecuted by a *pro se* plaintiff who legally could not and did not represent *CRC* or Dr. Roberts' interests. Black letter law forbids a layperson from representing a corporation or another individual's interests in federal court. Apple cannot now, years later, treat *CRC* and its medical owners as functionally identical to a *pro se* plaintiff they once claimed had no medical or corporate connection. Apple's attempt to equate these distinct entities—particularly after taking precisely the contrary position—is disingenuous. Apple is estopped from now rewriting history and merging CRC into the old litigation. The Court should not permit this brazen, post hoc revision of the facts and parties.

December 9, 2024.

/s/ Keith Mathews
Keith Mathews
Attorney for Coronavirus Reporter Corporation
*Pro Hac Vice*
NH Bar No. 20997
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105

# CERTIFICATE OF SERVICE

I, Keith Mathews, do declare as follows:

I certify that a copy of the foregoing was delivered electronically to all interested parties.

Executed on this 9th day of December, 2024.

/s/ Keith Mathews
Keith Mathews
Attorney for Coronavirus Reporter Corporation
*Pro Hac Vice*
NH Bar No. 20997
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105