RACHEL S. BRASS (SBN 219301)
rbrass@gibsondunn.com
JULIAN W. KLEINBRODT (SBN 302085)
jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
Suite 2600
San Francisco, CA  94111-3715
Telephone:    415.393.8200
Facsimile:    415.393.8306

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Coronavirus Reporter Corporation, Calid Inc., Greenlight Venture Corporation, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>Apple Inc<br><br>Defendant. | CASE NO. 3:24-CV-08660-EMC<br><br>**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: May 22, 2025<br>Time: 1:30 p.m. PT<br>Place: Courtroom 5, 17th Floor<br><br>The Honorable Edward M. Chen |

1

**TABLE OF CONTENTS**

2

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

I.    Plaintiffs' Claims are Barred by Res Judicata (Claims 1–9) .................................. 1

II.    Plaintiffs Lack Antitrust and Article III Standing (Claims 1–9) ............................ 5

A.    Plaintiffs Lack Standing for Their App Rejection and Suppression Claims (5–9) ....................................................................................................... 6

B.    Plaintiffs Lack Standing for Their Smartphone Monopolization Claims (1–4) ................................................................................................................. 7

C.    Plaintiff Greenflight Lacks Standing (1-9) .................................................... 10

III.    Plaintiffs Fail To Plead Antitrust Violations (Claims 1–8) .................................. 10

A.    The FAC Does Not Adequately Allege the Relevant Markets ....................... 10

B.    Plaintiffs' Antitrust Claims Fail For Additional Reasons .............................. 12

IV.    Plaintiffs' State-Law Claims Fail as Well (Claim 9) .............................................. 15

CONCLUSION .................................................................................................................... 15

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:24-CV-08660-EMC

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
836 F.3d 1171 (9th Cir. 2016) ...................................................................................... 13, 14

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
948 F.2d 536 (9th Cir. 1991) ............................................................................................. 8

*Alivecor, Inc. v. Apple Inc.*,
2024 WL 591864 (N.D. Cal. Feb. 13, 2024) ................................................................... 15

*Allen v. Wright*,
468 U.S. 737 (1984) ........................................................................................................... 9

*Am. Ad. Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) ........................................................................................... 7

*Am. President Lines, LLC v. Matson, Inc.*,
2025 WL 870383 (D.D.C. Mar. 19, 2025) ...................................................................... 12

*Arizona v. Tohono O'odham Nation*,
818 F.3d 549 (9th Cir. 2016) ............................................................................................. 4

*Arunachalam v. Fremont Bancorporation*,
2015 WL 12806552 (N.D. Cal. May 4, 2015) ................................................................... 5

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985) ......................................................................................................... 12

*Ass'n of Wash. Public Hosp. Dist. v. Philip Morris, Inc.*,
241 F.3d 696 (9th Cir. 2001) ............................................................................................. 9

*ATL Corp. v. City of Seattle*,
532 F. App'x 673 (9th Cir. 2013) ...................................................................................... 5

*Bakay v. Apple Inc.*,
2024 WL 3381034 (N.D. Cal. July 11, 2024) .................................................................... 9

*Belton v. Comcast Cable Holdings, LLC*,
151 Cal. App. 4th 1224 (2007) ........................................................................................ 15

*Beverage v. Apple Inc.*,
101 Cal. App. 5th 736 (2024) .......................................................................................... 15

*Blue Shield of Virgina v. McCready*,
457 U.S. 465 (1982) ........................................................................................................... 8

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ........................................................................................................... 8

Gibson, Dunn & Crutcher LLP

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984)............................................................................................................14

*Coronavirus Reporter v. Apple Inc.*,
    144 S. Ct. 2526 (2024)........................................................................................................4

*Coronavirus Reporter v. Apple Inc.*,
    2021 WL 5936910 (N.D. Cal. Nov. 30, 2021)................................................. 1, 2, 3, 4, 6, 7, 10

*Coronavirus Reporter v. Apple Inc.*,
    85 F.4th 948 (9th Cir. 2023)..................................................................................4, 6, 10, 11

*In re Dual–Deck Video Cassette Recorder Antitrust Litig.*,
    11 F.3d 1460 (9th Cir.1993) ...................................................................................................2

*Eastman v. Union Pac. R.R. Co.*,
    493 F.3d 1151 (10th Cir. 2007) .............................................................................................4

*Epic Games, Inc. v. Apple Inc.*,
    559 F. Supp. 3d 898 (N.D. Cal. 2021)...........................................................................7, 14

*Epic Games, Inc. v. Apple Inc.*,
    67 F.4th 946 (9th Cir. 2023) ............................................................................................6, 13

*Feitelson v. Google Inc.*,
    80 F. Supp. 3d 1019 (N.D. Cal. 2015).................................................................................8

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ..............................................................................................12

*Gamboa v. Apple Inc.*,
    2025 WL 660190 (N.D. Cal. Feb. 28, 2025) .....................................................................13

*Golden Gate Pharm. Servs. v. Pfizer, Inc.*,
    433 F. App'x 598 (9th Cir. 2011) ........................................................................................11

*In re Gottheiner*,
    703 F.2d 1136 (9th Cir. 1983) ...............................................................................................5

*Harnett v. Billman*,
    800 F.2d 1308 (4th Cir. 1986) ...............................................................................................2

*Hogan v. Amazon.com, Inc.*,
    2025 WL 869202 (9th Cir. Mar. 20, 2025)...........................................................................8

*Int'l Union of Operating Eng'rs-Emps. Constr. Indus. Pension, Welfare & Training
Tr. Funds v. Karr*,
    994 F.2d 1426 (9th Cir. 1993) ...............................................................................................2

*JamSports & Ent., LLC v. Paradama Prods., Inc.*,
    336 F. Supp. 2d 824 (N.D. Ill. 2004) ..................................................................................14

*John Doe 1 v. Abbott Lab'ys*,
    571 F.3d 930 (9th Cir. 2009)........................................................................................10, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) .......................................................................................... 14

*Key v. Qualcomm, Inc.*,
  129 F.4th 1129 (9th Cir. 2025) ......................................................................................... 14

*Kloth v. Microsoft Corp.*,
  444 F.3d 312 (4th Cir. 2006) ............................................................................................... 9

*Lawlor v. National Screen Serv. Corp.*,
  349 U.S. 322 (1955) .............................................................................................................. 2

*LN Mgmt., LLC v. JPMorgan Chase Bank*,
  957 F.3d 943 (9th Cir. 2020) ............................................................................................... 3

*Lunn v. City of L.A.*,
  629 F. Supp. 3d 1007 (C.D. Cal. 2022) .......................................................................... 12

*McPherson v. Toro*,
  2023 WL 7647289 (E.D. Va. Nov. 14, 2023) .................................................................. 2

*Mintz v. Mark Bartelstein & Assocs.*,
  906 F. Supp. 2d 1017 (C.D. Cal. 2012) ............................................................................ 3

*Mpoyo v. Litton Electro-Optical Sys.*,
  430 F.3d 985 (9th Cir. 2005) ............................................................................................... 1

*New Hampshire*, 532 U.S. 749 .................................................................................................. 4

*In re NFL's Sunday Ticket Antitrust Litig.*,
  933 F.3d 1136 (9th Cir. 2019) ............................................................................................. 6

*Nicklas v. Prof. Ass'n, LLC.*,
  2018 WL 8619646 (D. Wyo. Sept. 26, 2018) ............................................................... 15

*Ore. Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*,
  185 F.3d 957 (9th Cir. 1999) ............................................................................................... 8

*PhantomALERT v. Apple Inc.*,
  --- F. Supp. 3d ---, 2025 WL 71888 (D.D.C. Jan. 10, 2025) ............................. 7, 9, 11

*Rutman Wine Co. v. E. & J. Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987) ............................................................................................... 7

*S.E.C. v. Neman*,
  2015 WL 12745802 (C.D. Cal. Dec. 8, 2015) ................................................................ 5

*SaurikIT, LLC v. Apple Inc.*,
  2023 WL 8946200 (9th Cir. Dec. 28, 2023) .................................................................... 2

*In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2022 WL 710192 (W.D. Mo. Mar. 9, 2022) .................................................................. 15

*Solinger v. A. M. Recs., Inc.*,
  718 F.2d 298 (9th Cir. 1983) ............................................................................................. 10

Gibson, Dunn &
Crutcher LLP

*Sonner v. Premier Nutrition*,
    971 F.3d 834 (9th Cir. 2020) ........................................................................................ 15

*Stein v. United Artists Corp.*,
    691 F.2d 885 (9th Cir. 1982) ........................................................................................ 10

*Stromberg v. Qualcomm*,
    14 F.4th 1059 (9th Cir. 2021) .......................................................................................... 6

*Turtle Island Restoration Network v. U.S. Dep't of State*,
    673 F.3d 914 (9th Cir. 2012) ..................................................................................... 1, 3

*United States v. A.H. Fischer Lumber Co.*,
    162 F.2d 872 (4th Cir. 1947) ........................................................................................... 4

*Unlockd Media, Inc. Liq. Trust v. Google LLC*,
    2025 WL 563460 (N.D. Cal. Feb. 20, 2025) .................................................................. 7

*Yniguez v. State of Ariz.*,
    939 F.2d 727 (9th Cir. 1991) ........................................................................................... 4

**Statutes**

15 U.S.C. § 6a ................................................................................................................................ 2

Wyo. Stat. § 40-12-108(a) ........................................................................................................... 15

Wyo. Stat. § 40-12-110(a) ........................................................................................................... 15

**Rules**

Fed. R. Civ. P. 11 .......................................................................................................................... 4

Fed. R. Civ. P. 17 .......................................................................................................................... 4

**INTRODUCTION**

As Plaintiffs would have it, this case asks "whether an iPhone owner truly owns their device or remains perpetually subject to [Apple's] unilateral control over what software can run on it." Opp. 1. But arguing that "smartphone devices" are "the property of the users, the general public, and should exist as a 'common carrier' free from Apple's control" is the theory Plaintiffs tried and lost in *Coronavirus I*. *Coronavirus I*, Dkt. 41 ¶ 78. Faced with a clear *res judicata* bar, Plaintiffs tie themselves in knots: They argue that every entity prosecuting *Coronavirus I* was fake, and the real plaintiffs (with the same names) in this case can assert the same claims because Apple's alleged conduct against other developers has continued. *See* Opp. 3–9. That argument fails as a matter of common sense, logic, and law. And even if Plaintiffs' claims are not precluded, they are once again foreclosed by binding precedent many times over. The Court should dismiss Plaintiffs' claims with prejudice.

**ARGUMENT**

**I.    Plaintiffs' Claims are Barred by Res Judicata (Claims 1–9)**

Plaintiffs offer no basis on which their claims can proceed under the "well-established res judicata test" because there is an identity of claims, a final judgment on the merits, and identity of parties. *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).

**1.** Plaintiffs do not contest the fundamental identity of claims between this case and *Coronavirus I*. *See* Mot. 6–7. They concede, for example, that this case challenges Apple's alleged "lockdown on iOS app distribution," Opp. 1—just as *Coronavirus I* "challenge[d] Apple's allegedly monopolist operation of its 'App Store.'" 2021 WL 5936910, at *1. Plaintiffs also do not dispute that they lifted allegations and claims directly from *Coronavirus I* and assert the same alleged injuries. *See* Mot. 6–7. Thus, their claims "'could conveniently [have been] tried together'" with those in *Coronavirus I*. *Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 918 (9th Cir. 2012).

Plaintiffs insist this case is based on "new, subsequent transactions." Opp. 8. But they do not cite a single paragraph of the Complaint to substantiate that argument. *See id.* This case, like *Coronavirus I*, concerns Apple's alleged suppression or rejection of the Coronavirus Reporter, CALID, and Webcaller apps. FAC ¶¶ 93–114, 119–33; *Coronavirus I*, Dkt. 41 ¶¶ 30, 46–82, 94–102, 105–07. These apps were allegedly either rejected, "abandoned," or suppressed by the time the Court dismissed

*Coronavirus I. Coronavirus I*, 2021 WL 5936910, at \*2 (N.D. Cal. Nov. 302, 2021); FAC ¶¶ 105, 128, 132. Whatever conduct Plaintiffs claim "persisted and materially expanded" involved *other* "developers," Opp. 8–9, the conduct giving rise to *Plaintiffs' claims* "antedate[s] the original action." *Int'l Union of Operating Eng'rs-Emps. Constr. Indus. Pension, Welfare & Training Tr. Funds v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993). That distinguishes this case from *Lawlor v. National Screen Service Corp.*, in which the challenged conduct was "*all* subsequent to" the prior judgment. 349 U.S. 322, 328 (1955) (emphasis added); *see also McPherson v. Toro*, 2023 WL 7647289, at \*5 (E.D. Va. Nov. 14, 2023) (explaining *Lawlor*'s "narrower" holding in rejecting argument akin to Plaintiffs').[1]

Similar is Plaintiffs' assertion that the claims they copied from the Department of Justice's complaint (Claims 1–4) "were unavailable" when they filed *Coronavirus I*. Opp. 9. To the contrary, many of those allegations expressly date back many years before *Coronavirus I* (Dkt. 31-1 ¶¶ 66, 69, 71, 76, 101)—relying on alleged comments made in 2010, 2013, 2016, and 2019 (*id.* ¶¶ 3, 93). Plaintiffs allege no theory of liability that accrued after *Coronavirus I* concluded. That is dispositive because, "[f]or purposes of res judicata, it is not necessary to ask if the plaintiff knew of his present claim at the time of the former judgment, for it is the existence of the present claim, not party awareness of it, that controls." *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986). And again, even if it were true that the allegations borrowed from the Government's case reflect "deeper patterns of . . . conduct" (Opp. 9), that does not change the ultimate fact that Plaintiffs' claims here arise from the same alleged grievance, and seek to redress the same alleged injury, as *Coronavirus I*. *See* Mot. 7.

Plaintiffs gesture at Apple's response to European laws and the *Epic* injunction but fail to show how either matters here. Opp. 9. Plaintiffs allege U.S. markets, FAC ¶¶ 231–37; Apple's business model changes in Europe are well beyond the ambit of this case. *See* 15 U.S.C. § 6a (claims cannot be premised on foreign conduct without a "direct, substantial, and reasonably foreseeable effect" on U.S.

---

[1] Plaintiffs assert they continued to pay an annual $99 developer fee. Opp. 8. But they challenged that fee in *Coronavirus I* too (*Coronavirus I*, Dkt. 41 ¶¶ 231–240), and claims remain precluded where "[d]istinct conduct is alleged only in the limited sense that every day is a new day, so doing the same thing today as yesterday is distinct from what was done yesterday." *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1464 (9th Cir. 1993); *see also SaurikIT, LLC v. Apple Inc.*, 2023 WL 8946200, at \*1 (9th Cir. Dec. 28, 2023) (plaintiffs do not allege a new antitrust violation where the "term in question" of challenged agreement has not changed).

Gibson, Dunn &
Crutcher LLP

commerce).  This case also has nothing to do with the link entitlement program at issue in *Epic*, which Plaintiffs allege merely "serves as evidence that Apple intends to charge . . . for notary stamps and/or notarization services," FAC ¶ 223—a theory litigated in *Coronavirus I*.  2021 WL 5936910, at *4.  Notably, they ignore cases like *Turtle Island*, which reject attempts, like Plaintiffs', to evade *res judicata* by asserting new "'example[s]'" of alleged "long-standing practice[s]."  673 F.3d at 918.  Otherwise, "there would be nothing stopping [Plaintiffs] from bringing a new general challenge" to Apple's longstanding practices "based on next year's . . . decisions, and every year from now on."  *Id.* at 919.

**2.** Acknowledging that a dismissal with prejudice is a final judgment on the merits, Plaintiffs argue that *Coronavirus I* is not preclusive because "jurisdiction never attache[d]."  Opp. 5.  That is wrong: Even accepting Plaintiffs' null-entity argument (which is wrong, *see infra* at 3–5), some plaintiffs were properly named (*e.g.*, Jeffrey Isaacs).  The Court therefore had jurisdiction to decide *Coronavirus I*, and its dismissal is a final judgment with preclusive effect.  *See LN Mgmt., LLC v. JPMorgan Chase Bank*, 957 F.3d 943, 952 (9th Cir. 2020) (recognizing that while "a plaintiff without legal existence" lacks Article III standing, jurisdiction attaches if there is "'*a* real plaintiff at the inception of the suit'" (emphasis added)).  The lone case Plaintiffs cite to suggest otherwise is a contract and tort suit, *Mintz v. Mark Bartelstein & Assocs.*, 906 F. Supp. 2d 1017, 1024 (C.D. Cal. 2012); it says nothing about a court's jurisdiction over a case involving a "misnamed" entity.  Opp. 4–5.

**3.** To fend off *res judicata*, Plaintiffs devote most of their brief trying to escape the inescapable: That the parties to this case are the same as, or otherwise bound by, the parties in *Coronavirus I*.  *See* Mot. 9–10.  Neither of their arguments persuade.

*First*, Plaintiffs argue that none of the three corporate plaintiffs in *Coronavirus I* in fact existed and that Apple is judicially estopped from arguing otherwise.  Opp. 3–6.  But the comment on which Plaintiffs seize concerned only one plaintiff (Coronavirus Reporter), and Plaintiffs mischaracterize the statement.  In a footnote, Apple pointed out that Plaintiffs had failed multiple times to file proper corporate disclosure statements, and that "Coronavirus Reporter" did not, strictly speaking, refer to a real entity.  *Coronavirus I*, No. 22-15166, Dkt. 38 at 6, 7 & n.4 (9th Cir.).  Apple's concern—that Plaintiffs could have been obfuscating the real parties in interest (*see*, *e.g.*, *Coronavirus I*, Dkt. 32 at 6)—has borne out in this case.  Regardless, Apple did not seek affirmance based on a lack of jurisdiction over

"Coronavirus Reporter" and had proceeded throughout the litigation on the express assumption that the "Wyoming Corporation" called "Coronavirus Reporter" was "Coronavirus Reporter Corporation." *Id.*

Even if Plaintiffs could characterize Apple's current position as inconsistent with the one it struck in *Coronavirus I*, estoppel does not apply because Apple did not "succeed[] in persuading a court to accept [its] former position." *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007); *see also Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 559 (9th Cir. 2016). Plaintiffs seek to rewrite history by arguing they "conceded" the point and the Ninth Circuit adopted it. Opp. 3. That's fiction. Plaintiffs cite no such concession because there was none. And the Ninth Circuit affirmed the dismissal of *Coronavirus I* because Plaintiffs failed to state a plausible antitrust, contract, fraud, or racketeering claim. 85 F.4th 948, 957–59 (9th Cir. 2023). No court in *Coronavirus I* addressed Apple's complaints that Plaintiffs failed to disclose the real parties in interest as required by Federal and Local Rules. *See Coronavirus I*, 2021 WL 5936910 at *18–20; *Coronavirus I*, 85 F.4th at 959; *Coronavirus I*, 144 S. Ct. 2526, 2526 (2024).[2]

Estoppel aside, Plaintiffs cannot square their current position—that *none* of the entity plaintiffs in *Coronavirus I* existed, Opp. 5—with their scores of representations and course of conduct to the contrary. *See* Mot. 3, 8–9. Plaintiffs' limp rejoinder is that they filed a certiorari petition on behalf of nonexistent entities "in an abundance of caution to reserve all possibilities for curing the defect." Opp. 3 n.1. That explains nothing. Plaintiffs never informed the Supreme Court of this supposed caveat—despite the jurisdictional significance Plaintiffs now ascribe to it. *See* Pet. For Writ of Cert. at 5, *Coronavirus Rep. v. Apple Inc.*, No. 23-1089 (Apr. 3, 2024). It also leaves several problems unanswered: What was the "Wyoming corporation" called "Coronavirus Reporter" if not "Coronavirus Reporter Corporation"? *Coronavirus I*, Dkt. 41 ¶ 27. And if Calid Inc. "lack[s] legal identity," Opp. 3, why is it a plaintiff in this case? "A suit at law is not a children's game, but a serious effort on the part of adult

---

[2] If anyone should be estopped, it is Plaintiffs. The corporate plaintiffs in *Coronavirus I* represented they were "the real party in interest" on whose behalf "[a]n action must be prosecuted." Fed. R. Civ. P. 17; *see also* Fed. R. Civ. P. 11. In so doing, they induced this Court and others to invest "valuable judicial resources evaluating" their claims on the merits. *Yniguez v. State of Ariz.*, 939 F.2d 727, 739 (9th Cir. 1991). And if they were allowed a redo by adding a "Corp." to one entity's name—or by adding another entity that, they now say, is the actual developer of record—they would secure an unfair, second chance to relitigate claims already put to rest. *See New Hampshire*, 532 U.S. at 749–50.

human beings to administer justice." *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947). To maintain that counsel conducted a reasonable investigation yet missed that none of his clients existed makes a mockery of that process—at the Court's and Apple's expense.

*Second*, Plaintiffs argue that *Coronavirus I* was litigated "*pro se*," and a *pro se* party cannot bind a corporation. Opp. 7–8. The premise is false: Plaintiffs do not explain how Calid Inc. or Primary Productions LLC—plaintiffs to *Coronvairus I* represented by counsel—were supposedly misidentified. *See id.* at 4–6. This argument also conflates individual non-lawyers' ability to represent a corporation in federal court (*see id.* at 6–7) and individual litigants' ability to bind corporate entities in subsequent litigation (*see* Mot. 9). The latter is at issue here, and Plaintiffs do not respond to binding precedent holding that individuals and entities share a "'substantial identity'" where "a person owns most or all of the shares in a corporation and controls the affairs of the corporation." *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983); *see also* Mot. 9–10. Contrary to Plaintiffs' assertion (Opp. 6), courts bind corporate plaintiffs in such circumstances. *See, e.g., ATL Corp. v. City of Seattle*, 532 F. App'x 673, 674–75 (9th Cir. 2013); *S.E.C. v. Neman*, 2015 WL 12745802, at *10 (C.D. Cal. Dec. 8, 2015).

Plaintiffs also argue that Isaacs cannot bind Greenflight because he is a mere "shareholder." Opp. 8. But the allegation they cite says Greenflight is one of "*his* controlled entities." *Id.* (brackets removed, emphasis added); *see also Coronavirus I*, Dkt. 41 ¶ 30 (similar). That is consistent with corporate and litigation filings—which Plaintiffs ignore—showing Isaacs owns Greenflight, is its chief and sole officer, and controls the company. *See* Mot. 9. Thus, Greenflight is "so closely related to the interest of [Isaacs] to be fairly considered to have had [its] day in court," and *Coronavirus I* binds it no less than the other *Coronavirus II* plaintiffs. *In re Gottheiner*, 703 F.2d at 1139 (finding privity between corporation and its sole, controlling shareholder); *see also Arunachalam v. Fremont Bancorporation*, 2015 WL 12806552, at *2 (N.D. Cal. May 4, 2015) (similar).

## II. Plaintiffs Lack Antitrust and Article III Standing (Claims 1–9)

Preclusion aside, Plaintiffs lack standing to bring this lawsuit. Plaintiffs do not dispute that they must allege both Article III and antitrust standing. *See* Mot. 10. But the confused arguments in their opposition—which conflate their claims and run afoul of controlling precedent—provide no basis for constitutional or statutory standing. For this reason too, the Court should dismiss Plaintiffs' claims.

1

**A.      Plaintiffs Lack Standing for Their App Rejection and Suppression Claims (5–9)**

2

The "primary focus" of this lawsuit remains the same as *Coronavirus I*: "Apple's control over

3    access to the App Store" and "rejection of Plaintiffs' (and other developers') apps." Dkt. 37 at 2.  That

4    case failed because antitrust claims require "injury to competition in the market as a whole," yet Plain-

5    tiffs' claims over rejected and suppressed apps were "confined to specific harms experienced by Plain-

6    tiffs or a small group of competitors." *Coronavirus I*, 2021 WL 5936910, at *13–16 (quotation marks

7    omitted); *accord Coronavirus I*, 85 F.4th at 956.  Plaintiffs point to no "extraordinary difference" here

8    to change the result. *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1075 (9th Cir. 2021).

9

Plaintiffs' main claim is that by "blocking entire classes of apps and cross-platform services,"

10   Apple "diminishes the total number of meaningful offerings on iOS." Opp. 10.  That is the same

11   theory—that Apple "injures competition by excluding a number of developers from launching"—ped-

12   dled to establish antitrust standing in *Coronavirus I*, 2021 WL 5936910, at *14.  It fails for the same

13   reason.  This is not *antitrust* injury because Apple's curation "may well serve the best interests of

14   consumers" and, in doing so, "increase[] interbrand competition." *Id.*; *In re NFL's Sunday Ticket An-*

15   *titrust Litig.*, 933 F.3d 1136, 1150 (9th Cir. 2019) (harm from "the normal circumstances of free com-

16   petition" is not antitrust injury).  Just as antitrust law doesn't prevent a newspaper "decid[ing] which

17   advertisements may properly be posted or which to accept," *Coronavirus I*, 2021 WL 5936910, at *15,

18   it also does not require Apple to carry any app or "categor[y]" of app.  Even if that reduces "choice,"

19   "output" and "app availability" in some sense, Opp. 10, it is an intrabrand restraint that differentiates

20   Apple and thereby enhances interbrand competition with other platforms—"the primary goal of the

21   antitrust laws." *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 987 (9th Cir. 2023).

22

None of the allegations Plaintiffs cite to "show marketwide harm" differ from those rejected in

23   *Coronavirus I*.  Opp. 10.  Paragraph 88 just identifies Apple's COVID-19 app policy.  FAC ¶ 88.

24   Paragraphs 129–32 are about Apple's alleged rejection and suppression of Plaintiffs' apps, copied al-

25   most verbatim from *Coronavirus I*.  *Compare* FAC ¶¶ 129–32 *with Coronavirus I*, Dkt. 41 ¶¶ 95–97,

26   104–05.  Paragraph 149 does not even mention app rejection, much less Plaintiffs' apps.  FAC ¶ 149.

27   And the allegations that Apple "stifled innovation," reduced "consumer choice," and "disadvantage[ed]

28   developers" (FAC ¶¶ 164–65) are no different from those deemed "conclusory" and "insufficient" in

1    *Coronavirus I*, 2021 WL 5936910, at *14; *see* Mot. 11–12.

2    Nor do Plaintiffs plausibly allege that Apple "reject[s] or bur[ies] rival apps" to "self-prefer-

3    enc[e]" its own. Opp. 11. The Complaint actually alleges that Apple both publishes and promotes

4    apps—including COVID-tracing and video-conferencing apps—that compete with its own. FAC

5    ¶¶ 106, 121, 344. The Complaint acknowledges that there were many such apps, including those de-

6    veloped by other third-party developers. *See id.* That some such apps are rejected means only that the

7    rejection of Plaintiffs' apps shifted sales from one seller to one another. Plaintiffs do not mention,

8    much less distinguish, cases like *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th

9    Cir. 1987), and *Unlockd Media, Inc. Liquidation Tr. v. Google LLC*, 2025 WL 563460, at *4 (N.D.

10   Cal. Feb. 20, 2025), that hold such allegations are not enough to establish standing. *See* Mot. 11–12.

11       **B.    Plaintiffs Lack Standing for Their Smartphone Monopolization Claims (1–4)**

12   Plaintiffs' opposition confirms they lack standing to bring their smartphone-related claims.

13   **1.** First, Plaintiffs do not dispute they may have "antitrust injury" (and thus antitrust standing)

14   only if they "suffer[] [their] injury in the market where competition is being restrained." *Am. Ad.*

15   *Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999); *see also* Mot. 13–14. To try

16   to shoehorn their claims within that rule, Plaintiffs now assert that Apple's restrictions on app creation,

17   distribution, and APIs were "'anticompetitive acts' in the smartphone market" that "directly curtail[]"

18   developers. Opp. 11. Not so. Smartphones are "devices" that "consumers purchase," FAC ¶ 198,

19   whereas APIs and app distribution are technologies or services Apple provides to *developers*. *Id.* ¶¶ 35,

20   40. Whether that happens in the "apps market," the "app distribution" markets, or somewhere else

21   entirely, it certainly is not in the market where "devices" are "independent[ly]" bought and sold—the

22   relevant "area of effective competition" for these claims. FAC ¶¶ 202, 226; *see also Epic Games, Inc.*

23   *v. Apple Inc.*, 559 F. Supp. 3d 898, 1016–21 (N.D. Cal. 2021) (finding mobile game apps transactions

24   market to be relevant market for challenge to restraints on distribution and services to developers).

25   Therein lies the "mismatch" between "the market allegedly controlled by Apple and the market

26   where [Plaintiffs] are allegedly injured." *PhantomALERT v. Apple Inc.*, --- F. Supp. 3d --- , 2025 WL

27   71888, at *6 (D.D.C. Jan. 10, 2025). Courts in this Circuit routinely dismiss antitrust claims premised

28   on alleged harm in a market distinct from the one allegedly restrained. *See Hogan v. Amazon.com,*

*Inc.*, 2025 WL 869202, at *1 (9th Cir. Mar. 20, 2025) (rejecting antitrust claim when injuries occurred in different market from one in which competition was restrained); *see also* Mot. 13–14 (collecting additional cases). Plaintiffs grapple with none of these decisions. They instead invoke *Blue Shield of Virgina v. McCready*, 457 U.S. 465 (1982). Opp. 12. But *McCready* provides an "exceedingly narrow" exception where "injuring the plaintiff is a necessary part of the anticompetitive scheme." *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1028 (N.D. Cal. 2015). Plaintiffs never explain how rejecting their COVID app or de-ranking their video-conferencing apps is a necessary part of "decreasing barriers to switching to another smartphone" in the alleged relevant market. FAC ¶ 13. Plus, Plaintiffs do not dispute they "are neither 'consumers' nor 'competitors' in the [alleged] relevant market." *Ore. Labor-ers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 967 (9th Cir. 1999) (rejecting argument that *McCready* authorizes claims by plaintiff that does not participate in the relevant market).

Plaintiffs try to avoid the mismatch by casting their claims as "leveraging." Opp. 11–12. Monopoly leveraging refers to a theory in which a party with monopoly power in one market uses that power anticompetitively to foreclose, and thereby monopolize, a second market. *See Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 549 (9th Cir. 1991). But in arguing that Apple uses alleged power in the smartphone market to "impose unilateral constraints on third-party developers." Opp. 11–12, Plaintiffs invoke a theory that bears no relation to their allegations. The Complaint has it the other way around: It says Apple "suppress[es] technologies" in one (or more) *non-device* markets to prevent "increased competition among smartphones." FAC ¶¶ 13–15. References to leveraging there-fore solve nothing: Plaintiffs' claims are premised on alleged monopolization of a smartphone market, so alleged "barriers to distribution" and lost opportunity to "launch[] or monetiz[e]" apps, Opp. 11, cannot be antitrust injury as they do not "reflect the anticompetitive effect" of Apple's conduct *on the allegedly monopolized smartphone market*. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *see also* FAC at 104 (seeking damages for lost revenue and sales of suppressed apps). Indeed, Plaintiffs claim to suffer these alleged harms in the "underlying … app markets" *regardless* of whether smartphone prices are higher, phone quality is lower, or fewer phones are sold. Opp. 13; *see also id.* at 10. As *PhantomALERT* explains, "Apple's alleged power in the smartphone market is at best tangential to the injuries" Plaintiffs assert, meaning Plaintiffs suffered "no 'antitrust injury' in the

1   smartphone market." 2025 WL 71888, at *6.[3]

2       **2.** Even if Plaintiffs plead injury causally related to smartphone competition, it is too "specula-

3   tive" and "attenuated" to confer antitrust standing. *Bakay v. Apple Inc.*, 2024 WL 3381034, at *5–7

4   (N.D. Cal. July 11, 2024). As Apple explained, Plaintiffs' theory assumes—against all logic—that had

5   Apple only allowed their COVID and cross-platform apps onto iOS, Android stores would have done

6   the same, consumers would have been empowered to switch to Android devices, their "expectations"

7   and "demand for apps" would have increased, and developers like Plaintiffs would be better off. Mot.

8   14; *see also* FAC ¶ 165. Plaintiffs say it is "improper" to assess these allegations "at the motion stage"

9   because of their "specificity." Opp. 13. But that conflates specificity with attenuation: Even a specific

10  theory can be too attenuated to confer antitrust standing. *See, e.g., Ass'n of Wash. Pub. Hosp. Dists. v.*

11  *Philip Morris, Inc.*, 241 F.3d 696, 703 (9th Cir. 2001) (medical costs too remote from conspiracy to

12  suppress information about smoking harm); *Bakay*, 2024 WL 3381034, at *6 (smartphone prices too

13  remote from mobile web-browser restraints).

14      Regardless, Plaintiffs' theory also "falls short of plausibility." *Bakay*, 2024 WL 3381034, at

15  *6. Plaintiffs do not defend their attenuated chain of implausible inference on inference. *See* Opp. 13.

16  They instead ask the Court to look past their theory's "chain-of-causation leap" and look at developer

17  harm in the "underlying . . . app markets." Opp. 13. That would rewrite their Complaint: This alleged

18  harm in the "underlying app markets," Plaintiffs acknowledge, stems from "Apple's single mandated

19  channel" and "suppress[ion] of apps." *Id.* In other words, this is the theory put forward in Plaintiffs'

20  *other* claims—holdovers from *Coronavirus I*—not the claims concerning alleged monopolization of a

21  smartphone market. And even if Plaintiffs had tried to tie their alleged harm to the challenged

22  smartphone monopolization, such a theory would entail a highly speculative inquiry: Their claim that

23  a different COVID app had "five million daily users" provides no guide to measure their lost "goodwill

24  and revenues," much less that of thousands of diverse developers across the "smartphone ecosystem."

25  Opp. 13–14; *see also Kloth v. Microsoft Corp.*, 444 F.3d 312, 324 (4th Cir. 2006) (no antitrust standing

26  where claims required "entirely speculative" creation of "a technological universe").

27

28

---

[3] For the same reason, Plaintiffs fail to allege "causation" between the "illegal conduct and injury" as
Article III demands. *Allen v. Wright*, 468 U.S. 737, 752 (1984); *see also* Mot. 12–13.

C.     **Plaintiff Greenflight Lacks Standing (1-9)**

Finally, Greenflight independently lacks standing because its only alleged connection to this case is as an investor in the other plaintiffs. FAC ¶¶ 49, 128, 131. Plaintiffs do not deny that investors cannot recover for antitrust harms done to corporations in which they invest. Nor do they dispute that Greenflight seeks damages for the same lost goodwill and revenues as another plaintiff, FAC at 104 E.b—raising the very risk of "double recovery" that the no-shareholder-standing rule guards against. *See Stein v. United Artists Corp.*, 691 F.2d 885, 896–97 (9th Cir. 1982). That is dispositive of Greenflight's standing. *See*, *e.g.*, *id.*; *Solinger v. A. M. Recs., Inc.*, 718 F.2d 298, 299 (9th Cir. 1983).

Plaintiffs claim Greenflight has standing because "[i]ts" Caller-ID app was subject to "ranking suppression." Opp. 14. Setting aside Plaintiffs' past representation that this app belonged to Isaacs, *see supra* at 5, the Complaint's only mention of Caller-ID says it "ranked in the App Store Top-10 for many years"—not that it was suppressed. FAC ¶ 49. Plaintiffs cannot now "amend their complaint through motion practice." *Coronavirus I*, 2021 WL 5936910, at *7. And if Caller ID had been suppressed—as alleged in *Coronavirus I* (*see Coronavirus I*, Dkt. 41 ¶ 30)—then Plaintiffs cannot say, as they now do, that Greenflight "had no direct stockholder stake in" that case. Opp. 7. Nor can Greenflight assert standing because it allegedly paid Apple's $99 developer fee. *See id.* at 14–15. Antitrust injury must be causally connected to "anticompetitive conduct," *Coronavirus I*, 85 F.4th at 957, and "'[s]imply possessing monopoly power and charging monopoly prices does not violate'" the antitrust laws. *John Doe 1 v. Abbott Lab'ys*, 571 F.3d 930, 934 (9th Cir. 2009); *see infra* at 14. Whether or not Greenflight's claims are precluded by *Coronavirus I*, it lacks antitrust standing to bring them.

III.    **Plaintiffs Fail To Plead Antitrust Violations (Claims 1–8)**

A.     **The FAC Does Not Adequately Allege the Relevant Markets**

The plausibility of Plaintiffs' markets was already decided by this Court, 2021 WL 5936910, at *6–13, and affirmed by the Court of Appeals, 85 F.4th at 954–57. Even if Plaintiffs are not estopped from repeating their claims, their market allegations here fail for the same reasons. *See* Mot. 16–18.

To start, Plaintiffs ask the Court to ignore their many references to undefined markets as mere "factual observations." Opp. 19; *see*, *e.g.*, FAC ¶¶ 127, 133, 162. But Plaintiffs' arguments belie that excuse and point up the problem. Elsewhere in their brief, for example, Plaintiffs argue that Apple's

1    conduct "bottleneck[ed] the app market and sub-sectors" and "damage[d] the app markets"—without

2    explaining which "sub-sectors" or "app markets" correspond to which "markets" or "factual observa-

3    tions." Opp. 9–11. Thus, the problem is not, as Plaintiffs now argue, that they are trying to "define

4    more than one market." Opp. 20. To use Plaintiffs' words, it is that "[n]othing in the FAC states or

5    implies that every mention of 'market' is a *standalone antitrust market*." *Id.* at 19; *see Coronavirus I*,

6    85 F.4th at 956 (rejecting antitrust complaint where markets "lack sufficient clarity").

7        In any event, the four markets on which Plaintiffs now focus—"smartphone[s]," "smartphone

8    apps," "app stores," and "iPhone notary stamps," Opp. 18–19—each fail. Start with the alleged

9    smartphone market. Plaintiffs say they lifted these allegations "verbatim" from the Government's

10   complaint. Opp. 19. Even so, that does not change that a smartphone device market is not *relevant*

11   here. As Apple pointed out, *PhantomALERT* considered similar arguments from a developer asserting

12   similar claims and deemed the same exact market irrelevant because it isn't the one from which Plain-

13   tiffs' "asserted harms derive." 2025 WL 71888, at *6. Plaintiffs acknowledge as much and have no

14   response aside from their misplaced allusion to "leveraging." Opp. 12 n.2; *see also supra* at 8.

15       Nor do they patch up the problems with their other alleged markets. To remedy "confusion"

16   about their "U.S. smartphone apps" and "U.S. smartphone app distribution services" markets, Plaintiffs

17   "clarify" that the latter does not include PC apps. Opp. 19. But the Complaint does not refer to a

18   defunct "*former* phone app store," *id.* (emphasis added); it alleges a current "[a]lternative[] to the App

19   Store" (*i.e.*, Microsoft's PC marketplace). FAC ¶ 207. And if "app distribution services" is a single-

20   brand market as Plaintiffs suggest, *id.* ¶ 210, then there should be no "[a]lternatives" at all, *id.* ¶ 207.

21   The notion of an "app market" also remains hopelessly vague and overbroad: To which of Plaintiffs'

22   claims does that market relate, and how are all genres of apps—from mobile gaming to health apps, to

23   COVID-19 trackers—in a single market? *Golden Gate Pharm. Servs. v. Pfizer, Inc.*, 433 F. App'x 598,

24   599 (9th Cir. 2011) (rejecting alleged "pharmaceutical industry" market as too "broad"). As for the

25   "single-brand aftermarket" for "Notary Stamps," Opp. 18–19, Plaintiffs do not point to alleged facts

26   that "iOS consumers lacked awareness" of Apple's alleged notary-stamp restraints "when buying an

27   iPhone"—one of the same problems that doomed this alleged market in *Coronavirus I*, 85 F.4th at 956;

28   *see* FAC ¶¶ 219–30 (failing to allege consumer awareness). There are many dispositive flaws to which

1    Apple pointed, and Plaintiffs simply ignore.  *See* Mot. 17–18.

2        **B.        Plaintiffs' Antitrust Claims Fail For Additional Reasons**

3        Plaintiffs also fail to allege the required "element of anticompetitive conduct," *FTC v. Qual-*

4    *comm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020), for all five of their antitrust theories: (1) refusal-to-deal,

5    (2) tying, (3) excessive pricing, (4) essential facilities, and (5) ranking manipulation.  *See* Mot. 18–23.

6        **1. Refusal to Deal (Claims 1-4).**  Plaintiffs' smartphone monopolization claims, lifted from

7    the Government's complaint, fail under long-established precedent.  Mot. 18–20.  Rather than try to

8    defend those claims, Plaintiffs argue that they can challenge Apple's "refus[al] to distribute Plaintiffs'

9    COVID app," under *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985).  Opp.

10    20.  Apple's rejection of the Coronavirus Reporter app has no bearing on Plaintiffs' theory of

11    smartphone monopolization, which concerns alleged restrictions on "access to APIs that have impeded

12    apps and technologies including . . . super apps, cloud streaming, messaging, wearables, and digital

13    wallets."  FAC ¶¶ 263–86.  Plaintiffs have therefore forfeited their first four claims.  *See Lunn v. City*

14    *of L.A.*, 629 F. Supp. 3d 1007, 1014 (C.D. Cal. 2022) ("'Where a party fails to address arguments

15    against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate.'").

16        *Aspen*'s "limited exception" to the general no-duty-to-deal rule affords Plaintiffs no relief.  Opp.

17    20.  To start, Apple, in its role as a platform operator, is not refusing to deal with Plaintiffs as a com-

18    petitor in the allegedly monopolized market.  *See Am. President Lines, LLC v. Matson, Inc.*, 2025 WL

19    870383, at *15 (D.D.C. Mar. 19, 2025).  Regardless, an alleged monopolist can have a duty to deal

20    only if it "unilaterally terminate[d] a voluntary and profitable course of dealing" and "sacrifice[d] short-

21    term benefits in order to obtain higher profits in the long run" from competitors' exclusion.  *Qualcomm*,

22    969 F.3d at 993–94 (cleaned up).  Apple terminated no preexisting course of dealing when it rejected

23    Plaintiffs' COVID app.  *See* FAC ¶ 102.  And Plaintiffs' claim that Apple sacrificed profits by "relin-

24    quish[ing] immediate developer fees and commissions," Opp. 20, is belied by allegations that they

25    continued to pay the $99 developer fee while offering Coronavirus Reporter as a free app (for which

26    Apple collects no commission).  FAC ¶¶ 96, 252, 352.

27        **2. Tying (Claim 5).**  Plaintiffs argue at length that they challenge a tie subject to the *per se* rule.

28    Opp. 15–16.  They are wrong: Ties involving "highly innovative" "'software that serves as a platform

1   for third-party applications'"—whether integrated into other software or a hardware device—are sub-

2   ject to the rule of reason. *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 997–98 (9th Cir. 2023).  Re-

3   gardless, Plaintiffs have not pleaded a plausible tying claim under any standard. *See* Mot. 20.

4         At the outset, Plaintiffs cannot establish standing to challenge the alleged tie. *See* Mot. 20–21.

5   To suggest they were prevented from entering the alleged tied market (for app stores or notary stamps),

6   Plaintiffs suggest it would be "trivial[]" for them to offer a competing app store.  Opp. 16.  But the

7   allegation to which they point states, in conclusory fashion, that it "would be trivial to launch [such a

8   store] *on their website*," FAC ¶ 292 (emphasis added)—and Plaintiffs maintain now that "desktop PC

9   app storefronts" are *not* a "relevant distribution channel[]."  Opp. 19.  To the extent Plaintiffs mean to

10  suggest that they could offer direct distribution of their own apps on their websites (called "sideload-

11  ing"), that restriction is not the product of any alleged tie but rather a technical limit encoded in iOS.

12  FAC ¶ 323.  As Apple pointed out, alleged losses stemming from the lack of distribution of *Plaintiffs'*

13  apps is not the result of the alleged tie—Apple's inclusion of the App Store on iPhones. *See* Mot. 21.

14        Nor do Plaintiffs salvage the other defects in their tying claim.  Plaintiffs contend, for example,

15  that "Apple's *EULA* and *DPLA*" are the agreements giving rise to the concerted action required to state

16  a Section 1 claim. *See* Opp. 16.  But they point to no actual provision in which Apple supposedly

17  agrees with anyone to preload the App Store onto iPhones. *See* Mot. 21.  And if Plaintiffs contend

18  Apple's prohibition on sideloading is a "negative tie"—an alleged "agreement not to purchase [the tied

19  product] from Apple's rivals," *Gamboa v. Apple Inc.*, 2025 WL 660190, at *5 (N.D. Cal. Feb. 28,

20  2025)—the Complaint says Apple has *unilateral* control over the "sideloading utilities," FAC ¶ 323,

21  that "disallow" alternative distribution, *id.* ¶ 293.  This is the same problem that led Judge Lee in *Gam-*

22  *boa*, 2025 WL 660190, at *5, to dismiss a similar claim asserting Apple tied iCloud to its mobile de-

23  vices, and Plaintiffs offer no reason to reach a different result here.

24        These are far from the only problems.  Plaintiffs also fail to explain how there is separate de-

25  mand for iOS notary stamps—a "hardware constraint" "algorithmically bound" to the iPhone, FAC

26  ¶¶ 219, 295—separate from smartphone devices themselves. *See Aerotec Int'l, Inc. v. Honeywell Int'l,*

27  *Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016) (plaintiff must allege defendant "'tied together the sale of

28  two distinct products or services'").  Nor can Plaintiffs distinguish the Ninth Circuit's recent decision

1    in *Key v. Qualcomm, Inc.*, 129 F.4th 1129 (9th Cir. 2025), as a case with "no potential rival suppliers

2    being excluded." Opp. 18. If "only Apple's proprietary code signature can unlock iOS usage" and

3    "'no other platform in history required a notary stamp,'" *id.* at 19, 22, then no other developer would

4    offer supposed notary stamps absent the alleged tie. *See Key*, 129 F.4th at 1139. That means consumers

5    here only allegedly buy (at no cost) "something that he or she would not buy elsewhere"—with no

6    attendant foreclosure of a supposed market for notary stamps. *Id.*

7        **3. $99 Fees (Claim 6).** Plaintiffs do not dispute that "'[s]imply possessing monopoly power

8    and charging monopoly prices does not violate § 2.'" *John Doe 1*, 571 F.3d at 934. They therefore try

9    to reframe their claim around "restrictions on alternative app channels." Opp. 21–22. That is incon-

10   sistent with their allegations. *See* FAC ¶ 308. It also would simply collapse this claim into the theory

11   put forth in others—and therefore fail for the same reasons.

12       **4. Essential Facilities (Claim 7).** Without disputing the Supreme Court's "skepticism" about

13   essential facilities claims, Plaintiffs maintain that Apple's "notarization control" is an essential facility

14   because it "eliminates *a* direct path to launching applications." Opp. 22 (emphasis added). But that is

15   not the standard: "A facility is not essential even if it is widely preferred by consumers and producers

16   in the market, as long as there is an alternative (albeit inferior) venue." *JamSports & Ent., LLC v.

17   Paradama Prods., Inc.*, 336 F. Supp. 2d 824, 839 (N.D. Ill. 2004). Accordingly, Plaintiffs' recognition

18   of "other distribution channels" is anything but a "straw-man," Opp. 22; those allegations admit that

19   "multiple avenues *do exist* to distribute the content to the consumer"—fatal to their claim. *Epic*, 559

20   F. Supp. 3d at 1050–51. For similar reasons, Apple's supposed control over notary stamps does not

21   "carr[y] with it the power to *eliminate* competition in the downstream market," *Aerotec*, 836 F.3d at

22   1185 (emphasis added), because notary stamps have nothing to do with those alternatives, FAC ¶ 299.

23       **5. Ranking Manipulation (Claim 8).** Plaintiffs also fail to meaningfully engage with Apple's

24   argument that Section 1 claims cannot proceed without an illegal agreement. Mot. 23–24; *see Copper-

25   weld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 775–76 (1984). "Arrangements" that "facilitate Ap-

26   ple's preferential search outcomes," Opp. 23, are not alleged. *See Kendall v. Visa U.S.A., Inc.*, 518

27   F.3d 1042, 1047–48 (9th Cir. 2008) (Section 1 claim requires facts supporting alleged agreement). Nor

28   do Plaintiffs engage with the cases rejected claims like theirs on other grounds. *See* Mot. 24.

IV.    **Plaintiffs' State-Law Claims Fail as Well (Claim 9)**

    **1. California's Unfair Competition Law.**  While Plaintiffs insist that their UCL claim is not "'derivative'" of their antitrust theories, Opp. 24, they adduce no distinct, coherent alternative.  California courts have made clear that "[i]f the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers."  *Beverage v. Apple Inc.*, 101 Cal. App. 5th 736, 751 (2024); *see also*, *e.g.*, *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1240 (2007) (rejecting "attempt to restate . . . tying theory under the unfairness prong" as a "separate inquiry into essentially the same question . . . would only invite conflict and uncertainty").

    Plaintiffs also fail to explain how "$4.2 billion" in damages, Opp. 24, would be inadequate.  *See* Mot. 25.  Plaintiffs point out that "the UCL contemplates injunctive relief," Opp. 24, but the fact a statute authorizes an injunction, and Plaintiffs seek one, does not mean they allege the federal prerequisites to such relief.  *See*, *e.g.*, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  And while Plaintiffs assert (falsely) that "Apple's conduct 'cost lives,'" they cite no "ongoing" injury to themselves.  Opp. 24.  They also fail to explain how their contemplated injunction could be administrable.  *See Alivecor, Inc. v. Apple Inc.*, 2024 WL 591864, at *16 (N.D. Cal. Feb. 13, 2024).

    **2. Wyoming Consumer Protection Act.**  Plaintiffs' WCPA claims also fail for the same reasons as their antitrust claims.  *See* Wyo. Stat. § 40-12-110(a)(i).  Beyond this, Plaintiffs argue not all developers are "commercial entities," Opp. 25, but a consumer under the WCPA is one who "purchase[s] the product for personal use."  *In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2022 WL 710192, at *25 (W.D. Mo. Mar. 9, 2022); *see also* Wyo. Stat. § 40-12-108(a).  According to Plaintiffs' own characterization, app developers are not consumers in that sense because they are procuring technology from Apple to provide apps to users.  Dkt. 30 ¶ 353.  Plaintiffs also ignore the need to allege reliance on a misrepresentation—yet another fatal defect.  *See*, *e.g.*, *Nicklas v. Prof. Assistance, LLC.*, 2018 WL 8619646, at *3 (D. Wyo. Sept. 26, 2018).

**CONCLUSION**

    The Court should dismiss Plaintiffs' First Amended Complaint with prejudice.

Gibson, Dunn &
Crutcher LLP

DATED: April 28, 2025                    Respectfully submitted,

                                         GIBSON, DUNN & CRUTCHER LLP


                                         By: */s/ Julian W. Kleinbrodt*
                                             Julian W. Kleinbrodt

                                             RACHEL S. BRASS
                                             rbrass@gibsondunn.com
                                             JULIAN W. KLEINBRODT
                                             jkleinbrodt@gibsondunn.com
                                             GIBSON, DUNN & CRUTCHER LLP
                                             One Embarcadero Center
                                             Suite 2600
                                             San Francisco, California  94111-3715
                                             Telephone:    415.393.8200
                                             Facsimile:    415.393.8306

                                             *Attorneys for Defendant Apple Inc.*

APPLE'S REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:24-CV-08660-EMC