1  RACHEL S. BRASS
   rbrass@gibsondunn.com
2  JULIAN W. KLEINBRODT
   jkleinbrodt@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   One Embarcadero Center
4  Suite 2600
   San Francisco, California 94111-3715
5  Telephone:    415.393.8200
   Facsimile:    415.393.8306
6
7  *Attorneys for Defendant*

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11 | **Coronavirus Reporter Corporation, Calid Inc., Greenflight Venture Corporation** | CASE NO. 3:24-CV-08660
12 | | **DEFENDANT APPLE INC.'S MOTION FOR SANCTIONS**
13 | *on behalf of themselves and all others similarly situated.* |
14 |                          Plaintiffs, | Date: July 10, 2025
   | | Time: 1:30 p.m. PT
15 |        v. | Place: Courtroom 5, 17th Floor
16 | **Apple Inc.** | The Honorable Edward M. Chen
17 |                          Defendant. |

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2

     **PLEASE TAKE NOTICE** that on July 10, 2025, at 1:30 p.m., or as soon thereafter as the

3 matter may be heard, in the United States District Court, Northern District of California, 450 Golden

4 Gate Ave., San Francisco, Courtroom 5, 17th Floor, Federal Courthouse, Defendant Apple Inc.,

5 through its undersigned counsel, will, and hereby does, move for sanctions against Plaintiffs Corona-

6 virus Reporter Corporation, CALID Inc., and Greenflight Venture Corporation, as well as Plaintiffs'

7 counsel, Keith Mathews pursuant to Federal Rule of Civil Procedure 11, the Court's inherent authority,

8 and 28 U.S.C. § 1927.  This Motion is supported by this Notice of Motion and Motion; the accompa-

9 nying Memorandum of Points and Authorities; the Declaration of Julian W. Kleinbrodt and exhibits

10 thereto; the Proposed Order filed herewith; the pleadings and papers on file herein; and such other

11 matters that may be presented to the Court at the hearing.

12

13                              By: /s/ *Rachel S. Brass*

14                                  Rachel S. Brass

15                              RACHEL S. BRASS
                             rbrass@gibsondunn.com

16                              Julian W. Kleinbrodt
                             jkleinbrodt@gibsondunn.com

17                              GIBSON, DUNN & CRUTCHER LLP
                             One Embarcadero Center

18                              Suite 2600
                             San Francisco, California  94111-3715

19                              Telephone:  415.393.8200
                             Facsimile:   415.393.8306

20                              *Attorneys for Defendant Apple Inc.*

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

## STATEMENT OF ISSUES TO BE DECIDED

2       Whether the Court should impose sanctions on Plaintiffs and Plaintiffs' counsel pursuant to

3    Fed. R. Civ. P. 11, the Court's inherent authority, or 28 U.S.C. § 1927.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3
I. INTRODUCTION...................................................................................................... 1

4
II. BACKGROUND ....................................................................................................... 2

5
   A. THE FIRST THREE CASES: *CORONAVIRUS REPORTER I* ............................... 2

6
   B. PLAINTIFFS ATTEMPT TO BRING THEIR FOURTH CASE AGAINST APPLE................................... 5

7
   C. PLAINTIFFS FILE A FIFTH SUIT AGAINST APPLE........................................................ 6

8
   D. PLAINTIFFS DEFEND THEIR DUPLICATIVE SUIT WITH A FRIVOLOUS CORPORATE-IDENTITY POSITION ................................................................. 7

9
III. LEGAL STANDARD................................................................................................ 9

10
IV. ARGUMENT ........................................................................................................... 10

11
   A. THE COURT SHOULD SANCTION PLAINTIFFS AND THEIR COUNSEL UNDER RULE 11 .............. 10

12
      1. PLAINTIFFS' ASSERTION OF DUPLICATIVE, BARRED CLAIMS VIOLATES RULE 11 ............... 10

13
      2. PLAINTIFFS' "NULL ENTITY DEFENSE" IS INDEPENDENTLY SANCTIONABLE ...................... 15

14
   B. PLAINTIFFS' CONDUCT SHOULD BE SANCTIONED PURSUANT TO THE COURT'S INHERENT AUTHORITY ................................................................. 18

15

16
   C. PLAINTIFFS' CONDUCT SHOULD BE SANCTIONED UNDER 28 U.S.C. § 1927........................... 20

17
   D. THE COURT SHOULD AWARD OF FEES, REVOKE MATHEWS' ADMISSION, AND ENJOIN PLAINTIFFS................................................................. 22

18
V. CONCLUSION ........................................................................................................ 25

19

20

21

22

23

24

25

26

27

28

DEFENDANT APPLE INC.'S MOTION FOR SANCTIONS
CASE NO. 3:24-CV-08660

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Bartholomew v. Pasadena Tournament of Roses Ass'n, Inc.*,
  453 F. App'x 745 (9th Cir. 2011) ................................................................. 12

5

*Brandt v. Schal Assocs., Inc.*,
  960 F.2d 640 (7th Cir. 1992) ...................................................................... 23

6

7

*Buster v. Greisen*,
  104 F.3d 1186 (9th Cir. 1997) ................................................................. 12, 15

8

*Caputo v. Tungsten Heavy Powder, Inc.*,
  96 F.4th 1111 (9th Cir. 2024) ...................................................................... 23

9

*Chambers v. Nasco, Inc.*,
  501 U.S. 32 (1991) ................................................................. 18, 19, 20, 22

10

11

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ................................................................. 9, 18

12

*City of Santa Clarita v. U.S. Dep't of the Interior*,
  249 F. App'x 502 (9th Cir. 2007) ................................................................. 20

13

14

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ................................................................. 10, 15, 22

15

*Coring Co. v. Apple Inc.*,
  2022 WL 22762009 (S.D. Fla. Feb. 18, 2022) ................................................. 6

16

17

*Coronavirus Reporter v. Apple Inc.*,
  2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ................................... 3, 4, 7, 14, 21

18

*Coronavirus Reporter v. Apple Inc.*,
  560 F. Supp. 3d 632 (D.N.H. 2021) ........................................................ 17, 19

19

20

*Coronavirus Reporter v. Apple Inc.*,
  85 F.4th 948 (9th Cir. 2023) ...................................................................... 2, 3

21

*De Long v. Hennessy*,
  912 F.2d 1144 (9th Cir. 1990) ...................................................................... 24

22

23

*Eberhardt v. Walsh*,
  122 F.4th 681 (7th Cir. 2024) ...................................................................... 14

24

*Erickson v. Newmar Corp.*,
  87 F.3d 298 (9th Cir. 1996) ...................................................................... 23

25

26

*Est. of Blue v. Cnty. of L.A.*,
  120 F.3d 982 (9th Cir. 1997) ...................................................................... 1, 11

27

28

Gibson, Dunn &
Crutcher LLP

v

*Fink v. Gomez,*
    239 F.3d 989 (9th Cir. 2001) ................................................................................... 9

*G.C. & K.B. Inv., Inc. v. Wilson,*
    326 F.3d 1096 (9th Cir. 2003) ...................................................................... 9, 10, 13

*Gaskell v. Weir,*
    10 F.3d 626 (9th Cir. 1993) ............................................................................ 11, 22

*Goodyear Tire & Rubber Co. v. Haeger,*
    137 S. Ct. 1178 (2017) ............................................................................. 18, 19, 22

*In re Grantham Bros.,*
    922 F.2d 1438 (9th Cir. 1991) ............................................................................. 15

*In re Hartford Textile Corp.,*
    681 F.2d 895 (2d Cir. 1982) ................................................................................ 24

*Hsu v. UBS Fin. Servs., Inc.,*
    2021 WL 5233238 (N.D. Cal. Nov. 10, 2021) ..................................................... 14

*Indiezone, Inc. v. Rooke,*
    720 F. App'x 333 (9th Cir. 2017) ........................................................................ 20

*Kaass L. v. Wells Fargo Bank, N.A.,*
    799 F.3d 1290 (9th Cir. 2015) ............................................................................. 22

*In re Keegan Mgmt. Co., Sec. Lit.,*
    78 F.3d 431 (9th Cir. 1996) ............................................................................ 18, 20

*Kunimoto v. Fidell,*
    26 F. App'x 630 (9th Cir. 2001) ............................................................... 14, 15, 20

*Lahiri v. Universal Music & Video Distrib. Corp.,*
    606 F.3d 1216 (9th Cir. 2010) ...................................................................19, 20, 23

*Lake v. Gates,*
    130 F.4th 1064 (9th Cir. 2025) ............................................................................ 18

*Mattel, Inc. v. Walking Mountain Prods.,*
    353 F.3d 792 (9th Cir. 2003) ................................................................................. 1

*Methven & Assocs. Pro. Corp. v. Paradies-Stroud,*
    2013 WL 12187701 (N.D. Cal. Dec. 19, 2013) ................................................... 24

*Meyer v. U.S. Bank Nat. Ass'n,*
    792 F.3d 923 (8th Cir. 2015) ............................................................................... 13

*Michel v. City of Santa Rosa*
    601 F. App'x 466 (9th Cir. 2015) ........................................................................ 22

*Missud v. Nevada,*
    861 F. Supp. 2d 1044 (N.D. Cal. 2012) .......................................................... 24, 25

vi

*Montana v. United States*,
440 U.S. 147 (1979).........................................................................................11, 19

*Optyl Eyewear Fashion Intern. Corp. v. Style Cos.*,
760 F.2d 1045 (9th Cir. 1985) .................................................................................10

*Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*,
792 F.2d 797 (9th Cir. 1986) ...................................................................................14

*In re Peoro*,
793 F.2d 1048 (9th Cir. 1986) ............................................................................20, 22

*Perlmutter v. Varone*,
2022 WL 1443426 (E.D. Pa. May 6, 2022)...............................................................25

*Primary Productions LLC v. Apple Inc.*,
2021 WL 3610507 (D. Me. Aug. 13, 2021) ..............................................................19

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006)......................................................................................2

*Ringgold -Lockhart v. Cnty. of L.A.*,
761 F.3d 1057, 1062 (9th Cir. 2014).........................................................................24

*Robles v. City of Berkeley*,
820 F. App'x 529 (9th Cir. 2020) .............................................................................24

*Roundtree v. United States*,
40 F.3d 1036 (9th Cir. 1994) ..............................................................................11, 12

*S. Pac. R. Co. v. United States*,
169 U.S. 1 (1897) .....................................................................................................11

*Schoggen v. Haw. Aviation Cont. Servs., Inc.*,
608 F. App'x 469 (9th Cir. 2015)..............................................................................12

*Sommer v. Unum Life Ins. Co. of Am.*,
35 F. App'x 489 (9th Cir. 2002) ...............................................................................13

*Townsend v. Holman Consulting Corp.*,
929 F.2d 1358 (9th Cir. 1991) .............................................................................12, 14

*Trulis v. Barton*,
107 F.3d 685 (9th Cir. 1995) ...............................................................................21, 22

*Vedatech, Inc. v. St Paul Fire & Marine Ins. Co.*,
2005 WL 1513130 (N.D. Cal. June 22, 2005) ...........................................................21

*Wages v. Internal Revenue Serv.*,
915 F.2d 1230 (9th Cir. 1990) ....................................................................................9

*Wallace v. Hayes*,
2012 WL 12916208 (D. Mont. Mar. 5, 2012)............................................................13

vii

Gibson, Dunn & Crutcher LLP

*Wood v. Santa Barbara Chamber of Com., Inc.*,
    705 F.2d 1515 (9th Cir. 1983) ................................................................................................ 24

*Woodhouse v. Meta Platforms*,
    704 F. Supp. 3d 502 (S.D.N.Y. 2023) ...................................................................................... 25

*Zaldivar v. City of L.A.*,
    780 F.2d 823 (9th Cir. 1986) ................................................................................................... 13

*Zocaras v. Castro*,
    465 F.3d 479 (11th Cir. 2006) ................................................................................................. 18

**Statutes**

28 U.S.C. § 1651 ............................................................................................................................ 24

28 U.S.C. § 1927 ................................................................................................................... 2, 10, 20

**Rules**

Fed. R. Civ. P. 11 ............................................................................................... 2, 9, 10, 12, 15, 17, 23

N.D. Cal. L.R. 11-3(a)(2) .............................................................................................................. 23

N.D. Cal. L.R. 3-15(b)(2) .............................................................................................................. 16

**DOCKET REFERENCE CONVENTIONS**

| Citation | Corresponding Docket |
|---|---|
| Dkt. | *Coronavirus Reporter Corp. v. Apple Inc.*, No. 3:24-cv-08660 (N.D. Cal.) |
| *Coronavirus I*, Dkt. | *Coronavirus Reporter v. Apple Inc.*, No. 1:21-cv-05567 (N.D. Cal.) |
| *Coronavirus I*, No. 22-15166, Dkt. | *Coronavirus Reporter v. Apple Inc.*, No. 22-15166 (9th Cir.) |
| *Coronavirus I*, No. 22-15167, Dkt. | *Coronavirus Reporter v. Apple Inc.*, No. 22-15167 (9th Cir.) |
| *Coring*, Dkt. | *Coring Co. v. Apple Inc.*, No. 9:21-cv-82235 (S.D. Fla.) (after transfer, 3:22-cv-01044 (N.D. Cal.)) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     INTRODUCTION

Over the past four years, Plaintiffs have filed nine duplicative complaints in five lawsuits across seven federal courts.  In each, Plaintiffs claim apps they developed were rejected from Apple's App Store for failure to comply with Apple's guidelines or allegedly "suppressed" on the App Store's search rankings.  This Court rejected Plaintiffs' claims across the board in 2021 in *Coronavirus Reporter v. Apple Inc.*, No. 1:21-cv-05567 (*Coronavirus I*).  The Ninth Circuit affirmed in full.  The Supreme Court denied review.  That should have been the end of this dispute.  But as Apple explained in its pending motion to dismiss, Plaintiffs filed the same claims yet again—this time in Wyoming in an admitted attempt to evade the Court's judgment.  This alone is a sanctionable waste of judicial and party resources as there is "no reasonable basis" on which this case "could proceed."  *Est. of Blue v. Cnty. of L.A.*, 120 F.3d 982, 985 (9th Cir. 1997).

The problem is not just what Plaintiffs have done but how they have done it.  Plaintiffs and their counsel have repeatedly violated the rules of professional conduct and procedure.  Their filings are replete with factual misrepresentations and frivolous legal claims.  To take one example, Plaintiffs sent defective subpoenas to try to summon Apple's executives to a hearing where the Court had not authorized live testimony—another abuse of judicial process that is sanctionable in isolation.  *See, e.g.*, *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003).  Yet this conduct is anything but isolated.  Plaintiffs also moved for multiple preliminary injunctions with no evidence whatsoever, sought a baseless default in clear violation of the Court's Guidelines for Professional Conduct, and made false accusations of "fraud on the court," "RICO violations," "witness intimidation," and much more—despite being warned early on by another court to stop their *ad hominem* attacks.

Plaintiffs' disregard for the facts, law, and rules continues to crescendo.  To maintain their obviously precluded claims, Plaintiffs now assert that the "Coronavirus Reporter" behind *Coronavirus I* is a "non-entity" that cannot bind the plaintiff "Coronavirus Reporter Corp." in this case.  That would mean one of two things: Either counsel signed multiple filings in *Coronavirus I*, all the way to the Supreme Court, on behalf of at least one entity he knew did not exist or, more likely, counsel has repeatedly misrepresented Plaintiffs' corporate identity.  Either is sanctionable.  Apple told Plaintiffs as much and sent them a copy of this motion.  But Plaintiffs have refused to withdraw their case or

correct their filings.  Four years in, Plaintiffs appear no closer to ending their improper tactics to keep this litigation active, and it is clear they will not stop abusing the judicial system until ordered to do so.

Plaintiffs' repeated transgressions provide multiple grounds for sanctions.  First, Plaintiffs have violated Rule 11: This case is harassing and frivolous, and Plaintiffs' defense against *res judicata*— that "Coronavirus Reporter" is a "non-entity" distinct from "Coronavirus Reporter Corporation"— demonstrates a lack of candor.  *See* Fed. R. Civ. P. 11.  Second, Plaintiffs have maintained this case with the express purposes of frustrating and circumventing this Court's judgments, clear proof of bad faith warranting sanctions under the Court's inherent authority.  Third, counsel's cumulative conduct has unreasonably and vexatiously multiplied proceedings in violation of 28 U.S.C. § 1927.  The Court should sanction Plaintiffs and their counsel by ordering them to pay Apple for the costs of defending this litigation, revoking counsel's *pro hac vice* admission, and imposing a pre-filing injunction.

## II.     BACKGROUND

### A.  The First Three Cases: *Coronavirus Reporter I*

In 2020, Apple rejected the submission of the Coronavirus Reporter app to the App Store because it violated Apple's App Review Guidelines regarding COVID-related apps.  *Coronavirus Reporter v. Apple Inc.*, 85 F.4th 948, 957 (9th Cir. 2023).  In response, Plaintiffs' attorney Keith Mathews filed three antitrust lawsuits[1] against Apple on behalf of entities affiliated with Jeffrey Isaacs, whom Mathews also called his "client."  *Coronavirus I*, Dkts. 98-4, 98-5, 98-6, 98-7.  These cases merged into *Coronavirus I*.  *See* Dkt. 62 at 2–3 (describing *Coronavirus I* litigation).

Plaintiffs filed the *Coronavirus I* complaint on July 20, 2021.  By August 23, 2021, Apple notified Plaintiffs that they had failed to file a corporate disclosure statement—as required by Local Rule 3-15 and Federal Rule of Civil Procedure 7.1—or otherwise disclose precisely which entities were suing and who their shareholders were.  *See Coronavirus I*, Dkt. 32 at 6.  Because Plaintiffs had "submitted no evidence concerning the nature of their businesses or the identity of their shareholders," Apple explained that it would proceed on the assumption that the plaintiff "Coronavirus Reporter" was

---

[1] These cases were: *Coronavirus Reporter v. Apple Inc.*, No. 1:21-cv-00047 (D.N.H.); *Primary Productions LLC v. Apple Inc.*, No. 2:21-cv-00137 (D. Me.); *Coronavirus Reporter v. Apple Inc.*, No. 1:21-cv-05567 (N.D. Cal.).  The Court may take judicial notice of filings from these and other federal cases involving the parties.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Gibson, Dunn &
Crutcher LLP

the Wyoming corporation named Coronavirus Reporter Corporation. *Id.*; *Coronavirus I*, Dkt. 33 ¶ 18.

In response, Plaintiffs still did not submit a corporate disclosure and instead filed an Amended Complaint naming four plaintiffs: Jeffrey Isaacs, Calid Inc., Primary Productions, and, still, "Coronavirus Reporter." *Coronavirus I*, Dkt. 41 ¶¶ 27–30. The Amended Complaint stated that "Plaintiff Coronavirus Reporter is a Wyoming Corporation." *Id.* ¶ 27. It also asserted that "Coronavirus Reporter" was a "corporate entity," *id.* ¶ 247, and "also the name of the Plaintiff's iOS application," *id.* ¶ 27; *accord Coronavirus I*, Dkt. 1 ¶¶ 16, 41. Apple therefore continued to litigate against Coronavirus Reporter (and the other plaintiffs) based on the facts alleged—all the while continuing to raise Plaintiffs' failure to file a corporate disclosure in filings and correspondence with Plaintiffs' counsel. *See, e.g.*, Ex. 1 at 1; Ex. 2 at 2; *Coronavirus I*, Dkt. 62 at 6. Plaintiffs never responded to this point or filed the required disclosures, but Mathews continued to submit filings on behalf of "Coronavirus Reporter" in this Court and on appeal. *See, e.g.*, *Coronavirus I*, Dkts. 42, 52, 65, 87 (submissions to this Court); *Coronavirus I*, No. 22-15166, Dkts. 17, 52, 69 (submissions to the Ninth Circuit on appeal from *Coronavirus I*).

While continuing to obscure the identity of the real parties at interest in *Coronavirus I*, Plaintiffs litigated their claims that Apple violated the antitrust (and other) laws by rejecting Plaintiffs' apps or "suppress[ing]" them in search results. *Coronavirus I*, Dkt. 41 ¶¶ 28, 54–56, 85–86, 104–07. This Court dismissed their claims with prejudice. *Coronavirus I*, 2021 WL 5936910, at *20. First, "[t]here [were] several problems . . . with the relevant markets," including Plaintiffs' failure to identify the alleged relevant market with any "clarity" or allege facts that could make them plausible. *Id.* at *8–13. Second, Plaintiffs alleged no antitrust injury, for their "conclusory [allegations] and 'threadbare recitals'" could not salvage claims predicated on "specific [alleged] harms experienced by Plaintiffs or a small group of competitors, rather than harm to the market." *Id.* at 13–15. Third, Plaintiffs' other claims failed for myriad reasons. *Id.* at 15–18. The Ninth Circuit affirmed in full, *Coronavirus I*, 85 F.4th at 956–59, and the Supreme Court denied Plaintiffs' petition for certiorari, 144 S. Ct. 2526 (2024).

Throughout the *Coronavirus I* litigation, Plaintiffs inundated the Court with improper motions and other procedurally irregular filings:

- Without submitting any supporting evidence, Plaintiffs moved for a preliminary injunction

seeking wholesale revision of Apple's App Store and then filed a second motion (also without evidence) before the Court had even decided the first. *Coronavirus I*, Dkt. 20 ¶ 54; *Coronavirus I*, Dkt. 52 ¶¶ 13–20. The Court denied both requests. 2021 WL 5936910, at \*18.

- Plaintiffs purported to serve state-court subpoenas on high-level Apple executives and then-FTC Chair Lina Khan to summon them to a motion hearing for which this Court had not authorized live testimony, as required by the Local Rules. *Coronavirus I*, Dkts. 66, 67, 68.

- Plaintiffs filed a "motion to strike" Apple's motion to dismiss, citing Rule 12(f), on the ground that Apple's motion "fail[ed] to meet the heightened pleading standards of *Twombly/Iqbal*," *Coronavirus I*, Dkt. 51 at 3—which this Court rejected out of hand, 2021 WL 5936910, at \*18.

- Isaacs twice moved for sanctions, alleging "evidence spoliation" and "fraud on the court," despite the lack of substantiating evidence and both motions' being barred by the plain terms of the Local Rules. *Coronavirus I*, Dkt. 96 at 3; *accord Coronavirus I*, Dkt. 97 at 18. The Court denied both summarily. *Coronavirus I*, Dkt. 100.

- Isaacs filed a "Notice" demanding federal law enforcement open a criminal investigation into Apple and its counsel for exerting "undue influence" on Google to suppress internet search results about Isaacs' entities. *Coronavirus I*, No. 22-15167, Dkt. 60-1 at 6–9. That assertion likewise had no supporting evidence, and the Court never entertained it.

- Even as Plaintiffs petitioned the Supreme Court for review, Isaacs asked this Court to set aside the judgment based on the same arguments the Ninth Circuit rejected. *Coronavirus I*, Dkt. 118. The Court dispatched that request under "bind[ing]" precedent. *Coronavirus I*, Dkt. 129 at 3.

Across a 134-entry (and counting) docket in *Coronavirus I*, the Court has denied every substantive motion Plaintiffs have filed. *See, e.g.*, *Coronavirus I*, 2021 WL 5936910, at \*18–19 (granting motion to dismiss while observing the procedural impropriety of Plaintiffs' motion to strike, rejecting as a "nullity" Plaintiffs' "attempt to amend their complaint," and rebuffing as "not relevant" Plaintiffs' request for the Supreme Court to "invoke original jurisdiction and assign a special master").

Not only has the substance of Plaintiffs' filings failed to persuade a court to grant any requested relief, but Plaintiffs have also consistently made unsubstantiated accusations of bad faith, deception, and fraud by Apple and its counsel. For example, at the beginning of *Coronavirus I*, Apple filed a

notice to relate that case to another app developer antitrust case.  *Coronavirus I*, Dkt. 15.  Plaintiffs filed an opposition, accusing Apple's attorneys of "fraud on the Court," *Coronavirus I*, Dkt. 17 at 3, and threatening to move for sanctions, *id.* at 3, 7.  Later, Plaintiffs asserted that Apple's counsel "should be removed from [the] case under California Bar ethics standards" for "repeat RICO violations" in the form of "witness intimidation" because Apple's counsel had sought to communicate through Isaacs' (self-described) counsel rather than directly with Isaacs himself.  *Coronavirus I*, Dkt. 60 at 3; *see also Coronavirus I*, Dkt. 87 at 17; *Coronavirus I*, Dkt. 65 at 2 (further unfounded accusations against Apple's counsel).  Similarly, on appeal, Isaacs accused Apple's counsel of "dishonesty," committing "fraud on the 'machinery of the court,'" and "threaten[ing]" him, *Coronavirus I*, No. 22-15167, Dkt. 8 at 26, 36, even as Plaintiffs repeatedly misstated the record, *see Coronavirus I*, No. 22-15167, Dkt. 38 at 33 n.7, 46–47.

### B. Plaintiffs Attempt to Bring Their Fourth Case Against Apple

After the Court dismissed *Coronavirus I*, Mathews filed another case against Apple in the Southern District of Florida: *Coring Co. v. Apple Inc.*, No. 9:21-cv-82235 (S.D. Fla.).  In this fourth case, *Coring* repeated the allegations in *Coronavirus I* and bluntly acknowledged that the intent of the suit was to circumvent the preclusive effect of *Coronavirus I*.  The Complaint stated the hope that "Eleventh Circuit law can finally bring a proper resolution to this important matter," *Coring*, Dkt. 1 ¶ 97, because "Ninth Circuit law" would "prevent redress," *id.* ¶ 105; *see also id.* ¶ 10.  Though Plaintiffs again refused to comply with their obligations to file corporate disclosure statements in that case, *Coring*, Dkt. 35 at 3, Apple's investigation revealed that Coring Co., the named plaintiff, was a brand-new entity that had only come into existence in January 2022, nearly a month *after* the complaint had been filed in December 2021 (Ex. 4; *see also Coring*, Dkt. 35 at 6), and that it had been incorporated by Isaacs with Mathews' assistance, Ex. 5.

Apple noted those facts and observed that timing of the suit "raise[d] the question of who authorized the initiation of th[e] case and Coring's filings prior to that date."  *Coring*, Dkt. 35 at 6.  Apple also observed "that Coring's counsel appear[ed] to have made at least three false representations to the Court as to Coring's status."  *Id.*  When these facts were brought to the attention of the *Coring* court, it noted the overlap with *Coronavirus Reporter I* and transferred the case to the Northern District of

California. *Coring Co. v. Apple Inc.*, 2022 WL 22762009, at *2–3 (S.D. Fla. Feb. 18, 2022). When the case was assigned to this Court, Coring voluntarily dismissed its case. *Coring*, No. 3:22-cv-1044, Dkt. 49 (N.D. Cal.).

### C. Plaintiffs File a Fifth Suit Against Apple

Throughout these cases, Apple repeatedly stated in filings and in private correspondence to Plaintiffs and their counsel that they were engaging in an impermissible pattern of duplicative, vexatious, and frivolous litigation against Apple that must not persist. *See, e.g.*, *Coronavirus I*, Dkt. 64 at 1–2; Dkt. 74 at 11–13; Exs. 1, 2. Yet persist it did. On March 5, 2024, Plaintiffs Coronavirus Reporter Corporation and Calid Inc., again represented by Mathews, filed this lawsuit, *Coronavirus II*, in the District of Wyoming. Dkt. 1. *Coronavirus II* simply repackages the allegations from *Coronavirus I*. *See* Dkt. 62 at 6–7 (describing how this case replicates *Coronavirus I*'s claims). In both suits, Plaintiffs asserted—often using identical language—that: Apple's operation of the App Store constitutes a monopolistic practice, because Apple restricts developers' access to the App Store infrastructure, which Plaintiffs deem "essential facilities" (*compare Coronavirus I*, Dkt. 41 ¶¶ 180–94 *with* Dkt. 30 ¶¶ 315–31); that Apple's $99 developer fee is an unreasonable restraint of trade (*compare Coronavirus I*, Dkt. 41 ¶¶ 195–206, ¶¶ 231–40 *with* Dkt. 30 ¶¶ 306–314); that Apple engaged in "ranking suppression" (*compare Coronavirus I*, Dkt. 41 ¶¶ 207–12 *with* Dkt. 30 ¶¶ 332–37); and that Apple unlawfully tied the App Store or "notary stamps" to iPhones (*compare Coronavirus I*, Dkt. 41 ¶¶ 213–30 *with* Dkt. 30 ¶¶ 287–305).

After Apple filed a motion to transfer venue to the Northern District of California, Plaintiffs sought to preempt a return to this Court. They amended their Complaint to paste in large verbatim portions of a Department of Justice antitrust complaint against Apple and then moved to transfer this case into multidistrict litigation related to the government's case. *See* Dkt. 26 at 3–4. But the Amended Complaint retained a substantial portion of the original, which itself was largely carried over from *Coronavirus I*. *See* Dkt. 62 at 4–5. The JPML therefore denied Plaintiffs' transfer motion, concluding that the "focus" of Plaintiffs' claims was "significantly different" than those at issue in the MDL. Dkt. 37 at 1. The Wyoming court transferred this litigation to the Northern District of California. Dkt. 44 at 10.

Throughout *Coronavirus II*, Plaintiffs have continued to engage in just the sort of conduct that had characterized *Coronavirus I*:

- After explicitly agreeing in correspondence that this Court is "best positioned to adjudicate these related matters most efficiently" (Dkt. 38-1 at 5), Plaintiffs refused to stipulate to a transfer (Dkt. 38-1 at 3), opposed Apple's motion to transfer (Dkt. 39 at 2–5), and opposed Apple's motion to relate *Coronavirus I* and *Coronavirus II* (*Coronavirus I*, Dkt. 133).

- Notwithstanding a prior court order on the issue, Dkt. 33, Plaintiffs opposed Apple's case-management motion for entry of a briefing order, instead responding with a lengthy, invective-filled "cross-motion for judicial estoppel" that sought to bar Apple from making certain legal arguments.  Dkt. 39 at 5–15.

- Rather than respond to Apple's motion to transfer, Plaintiffs filed a "motion for a more definitive statement" under Rule 12(e), Dkt. 32—even though this Court had already rejected a similar move in *Coronavirus I*, 2021 WL 5936910, at *18 (denying Plaintiffs' Rule 12(f) motion to strike Apple's motion to dismiss).

- Most recently, Plaintiffs sought entry of default against Apple because Apple had not moved to dismiss even though the Court had stayed the case and the Court's Guidelines for Professional Conduct require consultation with the opposing party prior to filing such a request.  *See* Dkt. 55, Dkt. 57 at 3–5.  The Clerk denied Plaintiffs' request.  Dkt. 59.

Plaintiffs' efforts have been marked, as the Wyoming court observed late last year, by a "reliance on hyperbole," including (false) "claims of injustice delivered by the hands of Apple" and a lack of "effort to ground their argument in legal analysis."  Dkt. 44 at 7, 10 n.2; *see also, e.g.*, *Coronavirus I*, Dkt. 17 ¶ 4 (accusing counsel of "fraud on the Court" for filing a related case notice); *Coronavirus I*, Dkt. 20 at 26 n.2 (referencing a non-existent motion to disqualify counsel); *Coronavirus I*, Dkt. 96 at 3–4 (baselessly accusing counsel of "spoliation of critical . . . evidence").

### D.  Plaintiffs Defend Their Duplicative Suit with a Frivolous Corporate-Identity Position

Early in the *Coronavirus II* litigation, Apple disclosed its intent to seek dismissal based on the doctrine of *res judicata*.  Dkt. 20 at 8–9.  In response, Plaintiffs espoused the view that *Coronavirus II* is not precluded by this Court's judgment in *Coronavirus I* because "Coronavirus Reporter" filed

Gibson, Dunn & Crutcher LLP

*Coronavirus I* whereas *Coronavirus II* is brought by "Coronavirus Reporter Corporation." Dkt. 39 at 6. According to Plaintiffs and their counsel, that difference is critical because the *Coronavirus I* plaintiff "Coronavirus Reporter" is not an actual entity, and thus this Court's ruling against it could not bind Coronavirus Reporter Corporation. *Id.* at 6–7. Apple cautioned Mathews that this position was frivolous and contrary to his repeated representations to the Court. Kleinbrodt Decl. ¶¶ 8–9 & Exs. 6, 7.

Undeterred, Plaintiffs and their attorney have made this representation a centerpiece of their opposition to Apple's procedural and substantive motions. In one brief, Plaintiffs asserted that they are not bound by *Coronavirus I* because "Wyoming-registered Coronavirus Reporter Corporation" cannot be identical to "the legal non-entity 'Coronavirus Reporter', which is the name of an iPhone application . . . subject to prior litigation involving the app's software developer." Dkt. 39 at 6. Plaintiffs even tried to change the caption of *Coronavirus I* when Apple sought to relate the two cases:

> IN THE UNITED STATES DISTRICT COURT
>
> FOR THE NORTHERN DISTRICT OF CALIFORNIA
>
>
> CORONAVIRUS REPORTER,                    Case No. 3:21-cv-5567-EMC
> CALID INC,
> PRIMARY PRODUCTIONS LLC [non-entities],
> DR. JEFFREY D. ISAACS,                   **OBJECTION TO APPLE'S**
> on behalf of themselves and all others similarly   **ADMINISTRATIVE MOTION TO**
> situated                                 **RELATE ACTIONS**
>
>                           Plaintiffs,
>
> vs.
>
> APPLE INC.
>
>                           Defendant.

Dkt. 48 (highlighting added). Plaintiffs have defended their assertion by citing to a footnote in Apple's Ninth Circuit brief positing that "Coronavirus Reporter" corresponded to "no actual . . . entity—meaning Apple [was] being sued by at least one null party." Dkt. 39 at 7–8, 11. Plaintiffs say that their counsel "sought clarification" about Apple's position and then "did not further contest the matter," "waiv[ing] any right to object to Apple's . . . position" and choosing to "rel[y] on [Apple's counsel's] assertion." *Id.* at 8, 10; *see also* Dkt. 43 at 2, 3 n.1 (similar); Dkt. 48 at 1 (similar); Dkt. 63 at 3 & n.1 (similar).

On March 6, 2025, Apple moved to dismiss the Amended Complaint as precluded by the

judgment in *Coronavirus I* given the identity of parties and claims in issue.  Dkt. 62 at 5–10.  Apple warned Plaintiffs for a final time that their null-entity argument was a frivolous defense against *res judicata*, citing (among other things) Wyoming Secretary of State records demonstrating that only one Wyoming entity with "Coronavirus Reporter" in its name exists.  Dkt. 62 at 1, 8–10.  In opposition, Plaintiffs nevertheless maintained that not only is Apple "estopped" from raising a *res judicata* defense because of its protestations about Plaintiffs' failure to file corporate disclosures in *Coronavirus I* but also that this Court had "no jurisdiction" over that case because the corporate plaintiffs were "not correctly identified" and "never effectively appear[ed] as [] litigant[s]."  Dkt. 63 at 3–5.

To summarize, then, Plaintiffs advance this duplicative case—their fifth against Apple—on the basis that the "Wyoming Corporation" named "Coronavirus Reporter" (*Coronavirus I*, Dkt. 1 ¶ 41) that litigated in *Coronavirus I* in this Court, the Ninth Circuit, and the Supreme Court of the United States never existed and is not the same as the Wyoming Corporation "Coronavirus Reporter Corporation" that brought this lawsuit.  Dkt. 30 ¶ 47.  That is so, Plaintiffs maintain, even though Mathews had to conduct a "reasonable inquiry into the law and facts before signing pleadings, written motions, and other documents" on behalf of "Coronavirus Reporter" (Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment), *and* he continued to litigate and sign papers on behalf of "Coronavirus Reporter" *after* he supposedly learned it was a "null entity"—which came a full 14 months after Apple first pointed out Plaintiffs' disclosure problem.  *See Coronavirus I*, Dkt. 32 at 6.  Pursuant to Federal Rule of Civil Procedure 11(c)(2), Apple served Plaintiffs a copy of this motion on April 23.  Kleinbrodt Decl. ¶ 12.  Plaintiffs have not dismissed the case, withdrawn their filings, or corrected their arguments.

## III.    LEGAL STANDARD

The Court may sanction litigants and counsel pursuant to three powers.  First, Rule 11 prohibits representations that are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," that advance factual contentions lacking "evidentiary support," or that have "any improper purpose."  Fed. R. Civ. P. 11(b)(2)–(3); *see also G.C. & K.B. Inv., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003).  Second, the Court has inherent authority to sanction parties and counsel whose "conduct constituted or was tantamount to bad faith," *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002) (quotation marks omitted), which

may be inferred from a baseless course of conduct, *see Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (recognizing "bad faith . . . includes a broad range of willful improper conduct").  Third, federal statute provides for sanctions against counsel who "multiplies the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927; *see also Optyl Eyewear Fashion Intern. Corp. v. Style Cos.*, 760 F.2d 1045, 1048 (9th Cir. 1985).

## IV.    ARGUMENT

The courts serve a critical function in resolving valid disputes, but this lawsuit has crossed the line.  It is time to close the courthouse door not only to this case but also to further repeat cases by Plaintiffs and their counsel.  Sanctions are needed to correct and deter this conduct.

### A.  The Court Should Sanction Plaintiffs and their Counsel Under Rule 11

Rule 11 authorizes sanctions against parties and counsel who violate their duty to "conduct[] a reasonable inquiry" and file only "papers . . . [that] are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'"  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *see also* Fed. R. Civ. P. 11(c)(1).  This standard "is objective," determined with reference to what a "reasonable" litigant would do.  *G.C. & K.B. Inv., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003).  Plaintiffs have all but admitted they have violated this rule: Either they have repeatedly misrepresented their corporate identity or their counsel litigated a case all the way to the Supreme Court on behalf of at least one entity he did not confirm was real.  Whichever is true, Plaintiffs and their counsel should be sanctioned because they (1) flouted "the central purpose of Rule 11" by filing a duplicative suit in intentional disregard of this Court's judgment in *Coronavirus I*, *Cooter & Gell*, 496 U.S. at 393, and (2) are seeking to maintain this case through representations that do not "have evidentiary support," Fed. R. Civ. P. 11(b)(3).

### 1.  Plaintiffs' Assertion of Duplicative, Barred Claims Violates Rule 11

By filing duplicative claims, Plaintiffs and their counsel violated Rule 11.  First, "the claims" are clearly barred by *res judicata* and thus are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).  Second, Plaintiffs have maintained this case for the "improper purpose" of harassing Apple.  Fed. R. Civ. P. 11(b)(1).  The Court should impose sanctions under Rule 11 on both grounds.

10

1.  "A fundamental precept of common-law adjudication," is that "a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction [] cannot be disputed in a subsequent suit between the same parties or their privies.'"  *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *S. Pac. R. Co. v. United States*, 168 U.S. 1, 48–49 (1897)).  To that end, "[w]hen a reasonable investigation would reveal that a claim is barred by res judicata or collateral estoppel . . ., Rule 11 sanctions may be imposed."  *Est. of Blue*, 120 F.3d at 985; *see also, e.g.*, *Round-tree*, 40 F.3d at 1040 (upholding Rule 11 sanctions where attorney "br[ought] [his] theory to court time after time and has been told that [it] is wrong"); *Gaskell v. Weir*, 10 F.3d 626, 628 (9th Cir. 1993) (upholding sanctions against attorney for filing "patently frivolous" complaint).

As explained in Apple's motion to dismiss, the application of *res judicata* here is straightfor-ward.  *See* Dkt. 62 at 5–10.  The plaintiffs in this case include the same parties, bringing the same claims against the same defendant on the basis of the same underlying facts, as in *Coronavirus I*.  *See id.* at 8–10.  The original Complaint in *Coronavirus II* even included language copied from *Corona-virus I*'s allegations about the propriety of venue in the Northern District of California—even though Plaintiffs sued in the District of Wyoming.  *See* Dkt. 1 ¶ 21; *Coronavirus I*, Dkt. 1 ¶ 38.[2]  And Plaintiffs *knew* this case was duplicative as they expressly alleged in the Complaint that existing Ninth Circuit case law (*i.e.*, the Ninth Circuit's published opinion upholding this Court's judgment) would "prevent redress" for their claims, Dkt. 1 ¶ 127—just as they had conceded when they brought similarly over-lapping claims in *Coring*.  *See Coring*, Dkt. 1 ¶¶ 10, 97, 105.

Aside from their null-entity defense (discussed *infra* at 12–15), Plaintiffs have argued that *res judicata* does not apply because they added allegations from the Department of Justice's complaint against Apple and because plaintiff Greenflight Ventures was not a party to *Coronavirus I*.  These arguments are wrong.  *See* Dkt. 62 at 5–10.  They are also no defense against sanctions: Coronavirus Reporter and Calid, through their counsel, have reasserted claims based on the same alleged facts about

---

[2] Plaintiffs subsequently blamed this error on a paralegal, who they claimed "accidentally filed the original Complaint with several draft sections from an older antitrust lawsuit clients – including *Coring* and *Primary Productions*."  Dkt. 32 at 6.  That is wholly implausible, as Plaintiffs made no attempt to fix the error for many months.  When they eventually filed an Amended Complaint, they retained the same meritless antitrust claims that had already been rejected by this court in *Coronavirus I*.

DEFENDANT APPLE INC.'S MOTION FOR SANCTIONS
CASE NO. 3:24-CV-08660

Gibson, Dunn & Crutcher LLP

alleged excessive pricing, refusals to deal and access to "essential facilities," search "suppression," and Apple's centralized distribution model—claims this Court rejected in *Coronavirus I*. *See* Dkt. 30 ¶¶ 287–354; Dkt. 62 at 5–10; *see also Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1363 (9th Cir. 1991) (en banc) (Rule 11 sanctions may be imposed even if only some claims are frivolous). As a result, Apple has to brief, and the Court has to adjudicate, the same exact arguments. *See* Dkt. 62 at 5–10. It is beyond reasonable dispute that Plaintiffs have asked the Court to "revisit the claims and theories rejected" in prior litigation—a "patently frivolous" exercise. *Roundtree*, 40 F.3d at 1040.

Courts routinely impose sanctions in cases like this one. In *Buster v. Greisen*, for example, the plaintiff attempted to bring a second action in state court, seeking to relitigate a prior adverse judgment in federal court. 104 F.3d 1186, 1188 (9th Cir. 1997). The Ninth Circuit affirmed the imposition of Rule 11 sanctions because the case involved "the same parties and the same 'transactional nucleus of fact' as the prior suit and it [sought] to relitigate issues that were conclusively resolved in the prior suit." *Id.* at 1190. As such, the Court held "a reasonable and competent inquiry would have led to" the conclusion that the "suit was barred by the *res judicata* and collateral estoppel effects of the prior judgment." *Id.* Sanctions in such circumstances are appropriate against the litigants and their counsel. *Id.*; *see also, e.g.*, *Schoggen v. Haw. Aviation Cont. Servs., Inc.*, 608 F. App'x 469 (9th Cir. 2015) (affirming sanctions against counsel who filed complaint barred by res judicata); *Bartholomew v. Pasadena Tournament of Roses Ass'n, Inc.*, 453 F. App'x 745 (9th Cir. 2011) (affirming sanctions on *pro se* litigant based on filing of barred, successive suits); *Roundtree*, 40 F.3d at 1040 (affirming sanctions against an attorney who brought repeated, similar claims "time after time" even when "told that he is wrong").

**2.** Plaintiffs also should be sanctioned because they filed this case for "an improper purpose"—to harass Apple. Fed. R. Civ. P. 11(b)(1). Because this is an objective inquiry, a "court confronted with solid evidence of a pleading's frivolousness may in circumstances that warrant it infer that it was filed for an improper purpose." *Townsend*, 929 F.2d at 1365. All available evidence indicates Plaintiffs had no legitimate basis to file this suit and did so only to harass Apple.

First, Plaintiffs *admitted* that they filed this case in Wyoming to avoid the preclusive effects of this Court's and the Ninth Circuit's decisions. Dkt. 1 ¶ 127 (describing intent to circumvent transfer

Gibson, Dunn &
Crutcher LLP

to Ninth Circuit, where precedent would "prevent redress").  This mirrored earlier admissions else-where.  *See Coring*, Dkt. 1 ¶¶ 97, 105 (stating purpose of filing in the Southern District of Florida to be avoidance of Ninth Circuit precedent, which would foreclose the plaintiff's claims).  Plaintiffs have thus repeatedly conceded improper purpose insofar as they openly seek to deprive Apple of the repose *Coronavirus I*'s final judgment should convey.  *See Meyer v. U.S. Bank Nat'l Ass'n*, 792 F.3d 923, 928 (8th Cir. 2015) (sanctions appropriate where plaintiff attempted to "repackage their prior unsuccessful lawsuit under a different cause of action" to avoid *res judicata* bar); *Sommer v. Unum Life Ins. Co. of Am.*, 35 F. App'x 489, 491 (9th Cir. 2002) (sanctions appropriate where plaintiff filed a third suit seek-ing "another bite at the apple . . . in the hope of a different result").

Second, "[w]ithout question, successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11." *Zaldivar v. City of L.A.*, 780 F.2d 823, 832 (9th Cir. 1986), *abrogated on other grounds by Cooter & Gell*, 496 U.S. 384 (1990).  As the Ninth Circuit explained, successive lawsuits give rise to such an inference where there is "an identity of parties in-volved in the successive claim, and a clear indication that the proposition urged in the repeat claim was resolved in the earlier one." *Zaldivar*, 780 F.2d at 834.  Here, Plaintiffs have not merely brought one successive action, but many.  They followed the series of lawsuits that became *Coronavirus I* with *Coring*—an admitted attempt to circumvent the Court's judgment. *See supra* 11.  And when that failed, they filed *Coronavirus II* in which *it is undisputed* that (at least some of) the same claims are being disputed.  *See* Dkt. 62 at 5–10.  Under these circumstances, "the only conclusion is that Rule 11 sanc-tions are necessary to deter further harassment through frivolous motions and lawsuits." *Wallace v. Hayes*, 2012 WL 12916208, at *4 (D. Mont. Mar. 5, 2012) (imposing sanctions against party and coun-sel for harassing "successive pleading"); *see also, e.g.*, *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1110 (9th Cir. 2003) (similar).

Third, Plaintiffs' vexatious conduct is further evidence of improper purpose.  All of Plaintiffs' substantive submissions have been meritless (*see supra* 4), often violating the plain text of the Local Rules, *see, e.g.*, *Coronavirus I*, Dkt. 100; the direct admonitions of the District's Professional Conduct Guidelines, *see* Dkts. 57 at 3–5, 59; and blackletter, hornbook law, *see Coronavirus I*, 2021 WL 5936910, at *18.  Some conduct, like issuing defective subpoenas to Apple's executives to give

13

testimony, where none had been authorized, or to initiate criminal investigations into Apple and its counsel for legitimate litigation activity, were facially harassing. *See, e.g.*, *Coronavirus I*, Dkt. 66; *Coronavirus I*, No. 22-15167, Dkt. 60 at 6–9. Courts have recognized that similar "parade[s] of motions" "cumulatively suggest a strategy of harassment." *Kunimoto v. Fidell*, 26 F. App'x 630, 633 (9th Cir. 2001); *see also, e.g.*, *Eberhardt v. Walsh*, 122 F.4th 681, 686 (7th Cir. 2024) (finding plaintiff harassed defendant by filing a dozen motions, including multiple preliminary injunction motions, that were "almost entirely denied"); *Hsu v. UBS Fin. Servs., Inc.*, 2021 WL 5233238, at *2 (N.D. Cal. Nov. 10, 2021) (imposing sanctions for filing "indecipherable and incomprehensible" motions with "duplicative and repetitive arguments").

Fourth, Apple warned Plaintiffs repeatedly and expressly that their conduct was sanctionable. Early in the string of cases preceding this one, one court warned Plaintiffs and their counsel "about the use of *ad hominem* references to opposing counsel." *Primary Productions LLC v. Apple Inc.*, No. 2:21-cv-00137, Dkt. 19 (D. Me. Jul. 20, 2021). Plaintiffs were unmoved. *See Coronavirus I*, Dkt. 17 at 3, 7 (accusing Apple and its counsel two weeks later of "fraud on the court," "arrogance," and "fraud and abuses" against Plaintiffs). Apple stressed to Mathews as early as September 2021 that his and his clients' conduct fell short of their professional obligations. Ex. 1 at 1. And in the three-and-a-half years since, Apple has told Plaintiffs on multiple occasions that it would seek redress if they continued to file duplicative cases and litigate them in a vexatious manner. Ex. 1 at 1; Ex. 7 at 3). Yet Plaintiffs have only doubled down on their frivolous arguments, factual misrepresentations, and vitriolic accusations. *See supra* 7. This pattern, too, is compelling evidence that this case is designed to harass Apple. *See Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.2d 797, 799–801 (9th Cir. 1986) (affirming Rule 11 sanctions where plaintiff "chose to ignore [] warning" and proceeded with suit that it "must have known completely lacked a factual foundation"); *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1361 (9th Cir. 1990) (imposing sanctions where plaintiff ignored affidavits that plainly rendered initial complaint's theory of legal liability baseless and filed frivolous amended complaint repeating the same theory).

Taken together, the record provides more than "ample justification for finding that the complaints were filed for the improper purpose 'of harassing and pressuring the Defendants.'" Kunimoto,

26 F. App'x at 633.  Plaintiffs' long-running campaign of improper, meritless, and harassing litigation should be sanctioned under Rule 11.  *See Buster*, 104 F.3d at 1190 (affirming district court's judgment that successive, duplicative suit "was brought to harass" the defendant and was sanctionable under Rule 11); *In re Grantham Bros.*, 922 F.2d 1438, 1443 (9th Cir. 1991) (affirming imposition of sanctions under Rule 11 on the basis that frivolous collateral attack on prior judgment was intended to "harass or intimidate").

### 2.   Plaintiffs' "Null Entity Defense" Is Independently Sanctionable

Refiling the same claims on behalf of the same parties is precisely the kind of "abusive litigation practice[]" that Rule 11 is designed to prevent.  *Cooter & Gell*, 496 U.S. at 393.  Plaintiffs' defense of their conduct has only added fuel to the fire.  In multiple filings, Plaintiffs and their counsel have advanced the preposterous theory that *Coronavirus I* is not preclusive because the named plaintiff—"Coronavirus Reporter"—is a "non-entity" distinct from the Coronavirus Reporter *Corporation* bringing this case.  Dkt. 39 at 6–10; Dkt. 48 at 1–5.  This, they say, renders *Coronavirus I* a nullity that leaves this case free to proceed.  Dkt. 39 at 10–12; Dkt. 48 at 1; *accord* Dkt. 63 at 4–6.  If true, this would be an extraordinary confession not only of having failed to undertake an adequate investigation before filing *Coronavirus I* but also of having litigated that case in bad faith up to the Supreme Court.  But it is not true:  Overwhelming evidence shows Plaintiffs' argument is a transparent pretext to continue their campaign of harassing litigation against Apple.  *See* Fed. R. Civ. P. 11(b)(3) (providing for sanctions where "factual contentions [do not] have evidentiary support").

From *Coronavirus I*'s inception, Plaintiffs alleged that "Coronavirus Reporter" was "a Wyoming Corporation with officers based in New Hampshire, Vermont, and Upstate NY."  *Coronavirus I*, Dkt. 1 ¶ 41; *see also id.* ¶ 284 (holding out "Coronavirus Reporter" as "Dr. Roberts' . . . organization").  The Amended Complaint echoed that statement.  *Coronavirus I*, Dkt. 41 ¶ 27.  Under Rule 11, each time Mathews signed a filing and submitted it to the Court, he affirmed that the "factual contentions have evidentiary support" based on "an inquiry reasonable under the circumstances."  Fed. R. Civ. P. 11(b), (b)(3).  And even if verifying the identity of his own client had twice escaped a reasonable investigation, Mathews was on notice to verify his client's existence when Apple pointed out Plaintiffs' obligation to file a corporate disclosure on August 23, 2021 (*Coronavirus I*, Dkt. 32 at 6), September

6, 2021 (Ex. 1), September 30, 2021 (Ex. 2), and October 27, 2022 (Dkt. 39 at 7).  Yet in this Court alone, Mathews submitted 14 substantive filings on behalf of "Coronavirus Reporter."

Plaintiffs also made affirmative representations contrary to the position they now advance.  In one filing, Mathews referred to his client as a "corporation, Coronavirus Reporter."  *Coronavirus I*, Dkt. 60 at 3 n.1.  Isaacs similarly argued for sanctions because, he claimed, Apple "falsely claimed that Dr. Isaacs controls all the Plaintiffs in this case" when "Dr. Roberts is his senior at Coronavirus Reporter, and . . . all litigation by *that Corporation* require Dr. Roberts' authorization as he is a near-majority shareholder."  *Coronavirus I*, Dkt. 97 at 11.  And an attachment to the Complaint included purported "Coronavirus Reporter (Wyoming) Officer Minutes."  *Coronavirus I*, Dkt. 1-1 at 3–4; *see also Coronavirus I*, No. 22-15166, Dkt. 2 at 1 (representing "Coronavirus Reporter" was an "app developer[]").  Contrary to their current representations, Plaintiffs at no point in *Coronavirus I* "conceded" that Coronavirus Reporter was a non-entity prosecuting the case.  Dkt. 63 at 3.

Plaintiffs recently have said that Mathews learned that his client was a "null entity" after Apple filed its answering brief in the Ninth Circuit, Dkt. 39 at 7–8, which pointed out in a footnote that there is "no actual 'Coronavirus Reporter' entity" and that Plaintiffs had refused to file the required corporate disclosure.  *Coronavirus I*, No. 22-15166, Dkt. 38 at 6, 7 n.4.  That story strains credulity.  Plaintiffs have not explained why, for example, Mathews took Apple's assertion on faith at that time but never investigated Plaintiffs' failure to perfect their disclosures when Apple had previously pointed them out.  *See* N.D. Cal. L.R. 3-15(b)(2) (requiring disclosure of "any" "entities" that have "a financial interest of any kind" or "any other kind of interest that could be substantially affected" by the litigation).  Nor have Plaintiffs explained why Mathews accepted as true that his client was a "null entity" when he had earlier held himself out as his client's Chief Legal Officer.  Ex. 3.  And those are but a few of the unanswered questions created by Plaintiffs' timeline: Who authorized Mathews to file a suit on behalf of "Coronavirus Reporter" if it was not an entity?  To which entity did Mathews think he was referring given that there is only one Wyoming corporation with "Coronavirus Reporter" in its name?  *See* Dkt. 62-2.  And why did Mathews continue to sign briefs and present oral argument on behalf of

1  "Coronavirus Reporter" even after he purportedly realized it was not a real entity after all?  *See Coro-*

2  *navirus I*, No. 22-15166, Dkts. 52, 63, 65, 69, 73.[3]

3        Plaintiffs' asserted timeline does not excuse their conduct in any event.  For one thing, it all but

4  admits Mathews did not undertake a reasonable investigation before repeatedly referring to "Corona-

5  virus Reporter" as a corporate litigant.  *See, e.g.*, *Coronavirus I*, Dkt. 1 ¶¶ 94, 281, 288, Dkt. 20 ¶ 5,

6  Dkt. ¶¶ 71, 247, Dkt. 87 at 17.  For another, it means Mathews violated his duty of candor after he

7  purportedly learned that his client was a non-entity by filing a reply brief and *en banc* petition in the

8  Ninth Circuit, *Coronavirus I*, No. 22-15166, Dkts. 52, 69, as well as multiple applications and petitions

9  with the Supreme Court on behalf of "Coronavirus Reporter."  *See* Supreme Court Docket Nos.

10  23A718, 23-1089.  Plaintiffs' explanation—that Mathews petitioned the United States Supreme Court

11  "in an abundance of caution to reserve all possibilities for curing the defect," Dkt. 63 at 3 n.1—makes

12  no sense.  Not only did Apple first point out that the corporate plaintiffs had not filed proper disclosures

13  in August 2021, but Mathews also took no steps at any point to "cure" the supposed defect of repre-

14  senting a non-existent party from the time he supposedly learned his client did not exist to when he

15  submitted a certiorari petition in April 2024.  *See supra* 16.  In other words, Plaintiffs purport to *admit*

16  that they did not "certif[y] that to the best of [their] knowledge, information, and belief, formed after

17  an inquiry reasonable under the circumstances," that their "factual contentions ha[d] evidentiary sup-

18  port."  Fed. R. Civ. P. 11(b)(3).  Plaintiffs' argument does not stand up because it is a post-hoc excuse

19  designed to keep this litigation alive when there is no good-faith basis to do so.

20        To make matters worse, Plaintiffs have recently *expanded* their claim to assert that "all three

21  named corporate entities" in *Coronavirus I* were never before the Court.  Dkt. 63 at 4.  Plaintiffs do not

22  explain how Calid Inc. or Primary Productions LLC are null entities too.  *See id.*  But this argument

23  only underscores Plaintiffs' problem: If the "defects" with Plaintiffs' "corporate entities" were "obvi-

24  ous" as they now contend, Dkt. 63 at 4, then any reasonable investigation would have uncovered those

---

25
26  [3] In Plaintiffs' first suit against Apple, the court noted Plaintiffs' evasiveness about corporate identity created "an open question as to whether plaintiff is the real party in interest with standing to bring this action."  *Coronavirus Reporter v. Apple Inc.*, 560 F. Supp. 3d 632, 638 n.5 (D.N.H. 2021).  But that
27  Court took judicial notice of the fact that "Coronavirus Reporter" "share[d] its corporate name" with "Coronavirus Reporter Corporation."  *Id.* at 638.  Plaintiffs have not explained how their counsel read
28  this order—as he must do—yet did not confirm his own client's identity.  *See* Fed. R. Civ. P. 11(b)(3).

Gibson, Dunn & Crutcher LLP

errors before Plaintiffs filed suit—or in any of the dozens of submissions they made in *Coronavirus I*. Indeed, Plaintiffs have not attempted to explain how Mathews, consistent with Rule 11, litigated *Coronavirus I* for years where it was "obvious" that he did not represent *any* actual party. *See id.*

Either Plaintiffs' null entity defense in this case is a lie or Plaintiffs obfuscated their identities in *Coronavirus I* to litigate that case to the Supreme Court on behalf of at least one entity they knew did not exist. The overwhelming evidence indicates that the former is true. But whatever the case may be, Mathews "either failed to conduct the reasonable and factual legal inquiry required under Rule 11, or [] conducted such an inquiry and filed this lawsuit anyway"—and "[i]n either event, . . . no reasonable attorney would have found the complaint to be well-founded." *Lake v. Gates*, 130 F.4th 1064, 1069 (9th Cir. 2025) (cleaned up); *see also Zocaras v. Castro*, 465 F.3d 479, 484 (11th Cir. 2006) ("A trial is not a masquerade party nor is it a game of judicial hide-n-seek where the plaintiff may offer the defendant the added challenge of uncovering his real name" because "Rule 10(a) requires that the name of the parties be disclosed in the complaint [and] Rule 11 forbids lying in pleadings, motions, and other papers filed with the court."). Plaintiffs and their counsel violated Rule 11 and have subjected this Court and Apple to extensive, unwarranted litigation as a result.

**B. Plaintiffs' Conduct Should be Sanctioned Pursuant to the Court's Inherent Authority**

Plaintiffs have not only made specific misrepresentations that violate Rule 11 but also acted in bad faith by filing and defending their frivolous claims. The Court has the inherent power to impose sanctions when a party has engaged in conduct that "constituted or was tantamount to bad faith." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002). This "extends to a full range of litigation abuses," *Chambers v. Nasco, Inc.*, 501 U.S. 32, 46 (1991), including when a "plaintiff initiates a case in complete bad faith." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110 (2017); *see also In re Keegan Mgmt. Co., Sec. Lit.*, 78 F.3d 431, 435 (9th Cir. 1996) (stating that "[t]he filing of a complaint may be sanctioned pursuant to . . . a court's inherent power"). Importantly, courts exercise their inherent authority where a plaintiff not only "filed false and frivolous pleadings" that can be "reached by Rule 11" but also improperly attempted to "deprive th[e] Court of jurisdiction" and engaged in other "tactics of delay, oppression, [and] harassment." *Chambers*, 501 U.S. at 41. That is what Plaintiffs have done here.

1    First, Plaintiffs filed this frivolous case without (or in spite of) any reasonable investigation into

2    its merits. Plaintiffs' claims are barred by *res judicata*—obviously so, *see supra* 10–12—and Plain-

3    tiffs' estoppel arguments are baseless, as explained in Apple's reply in support of its motion to dismiss,

4    Dkt. 62 at 5–10. Plaintiffs' claims also are meritless because they fall prey to the same, threshold flaws

5    this Court adjudicated, and the Ninth Circuit affirmed, in *Coronavirus I*. *See* Dkt. 62 at 10–16. Indeed,

6    Plaintiffs' opposition to Apple's motion to dismiss rehashes many of the same arguments, concerning

7    the same theories of liability, that were advanced, considered, and rejected in *Coronavirus I*. *Compare,*

8    *e.g.*, Dkt. 63 at 9–15 (standing), 15–18 (tying), 20 (refusal to deal), 21–22 ($99 fees), 22–23 (essential

9    facilities), 24–25 (UCL), *with Coronavirus I*, Dkt. 57 at 11–12 (standing), 13–16 (tying), 8–10 (refusal

10   to deal), 8–11 ($99 fees), 10–11 (essential facilities); Dkt. 53 at 1–2 (UCL). This is thus the "excep-

11   tional case" in which "a plaintiff initiates a case in complete bad faith," and "all [of Apple's] legal

12   expenses in the suit [have been] caused solely by [Plaintiffs'] fraudulent and brazenly unethical ef-

13   forts." *Goodyear Tire & Rubber Co.*, 581 U.S. at 110–11 (cleaned up).[4]

14   Second, Plaintiffs filed this case in Wyoming for the express purpose of evading this Court's

15   jurisdiction, where they knew their claims were foreclosed by the Ninth Circuit's binding precedent.

16   Dkt. 1 ¶ 127. They did so despite agreeing to a forum-selection clause to litigate in this Court. *Id.*; *see*

17   *also Coronavirus Reporter*, 560 F. Supp. 3d at 638–42 (applying forum-selection clause in DPLA and

18   transferring case to the Northern District of California); *Primary Prods. LLC v. Apple Inc.*, 2021 WL

19   3610507, at *1–2 (D. Me. Aug. 13, 2021) (same). And when Apple sought to invoke that clause,

20   Plaintiffs even tried to move the case to another jurisdiction, *see* MDL No. 3113, Dkts. 124, 133

21   (J.P.M.L.), despite having no real defense to the enforceability of the parties' agreement, *see* Dkt. 44

22   at 5–11. By "hav[ing] the case assigned to a new judge who would be unfamiliar with the protracted

23   history of th[e] litigation," *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222 (9th

24   Cir. 2010), Plaintiffs betrayed their intent to assault the "central" purpose of civil courts, "the conclu-

25   sive resolution of disputes." *Montana*, 440 U.S. at 153–54.

26

27   ───────────────

     [4] At a minimum, the Court should award Apple its fees incurred in filing its motion to dismiss and all
28   subsequent filings—all of which were incurred after Apple informed Plaintiffs that their "null entity"
     argument was frivolous and sanctionable.

Third, Plaintiffs have amplified the problem posed by this frivolous case through "a series of meritless motions and pleadings and delaying actions." *Chambers*, 501 U.S. at 38. For example, Plaintiffs responded to Apple's motion to transfer venue with a combined opposition and "cross-motion for judicial estoppel," Dkt. 39, that sought to preempt Apple from arguing *res judicata*—which Judge Skavdahl rightly refused to consider. Dkt. 41. Then, without warning, Plaintiffs asked the Clerk to enter default against Apple even though they had no basis for doing so and violated the Court's Professionalism Guidelines in the process. *See* Dkt. 57 at 4. And now, Plaintiffs have tried to forestall dismissal with a "null entity defense" that is pretextual, false, and asserted in bad faith. *See supra* 15–18. That "abuses the judicial process," *Chambers*, 501 U.S. at 44–45, and sanctions are needed to "put[] 'an end to [plaintiffs'] continued misuse of the federal court system.'" *Kunimoto*, 26 F. App'x at 633; *see also Lahiri*, 606 F.3d at 1221–23 (affirming sanctions under court's inherent authority for frivolous copyright claim that "even a cursory investigation" would have revealed to be without merit); *City of Santa Clarita v. U.S. Dep't of the Interior*, 249 F. App'x 502, 505 (9th Cir. 2007) (affirming sanctions under district court's inherent authority when plaintiffs brought claims barred by res judicata and where "plaintiffs had engaged in a series of unwarranted and harassing legal and administrative proceedings over many years"); *Indiezone, Inc. v. Rooke*, 720 F. App'x 333, 337 (9th Cir. 2017) (upholding inherent authority sanctions where "appellants had submitted multiple misleading and false declarations and fraudulent documents in bad faith in order to create a sham plaintiff").

## C. Plaintiffs' Counsel's Conduct Should Be Sanctioned Under 28 U.S.C. § 1927

The Court also should sanction Mathews under 28 U.S.C. § 1927. Section 1927 authorizes sanctions against "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. This requires an attorney to act with "recklessness or [in] bad faith." *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998). Mathews has done so here.

In the first place, Mathews unreasonably protracted this litigation by filing this case. Sanctions are appropriate "when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Keegan*, 78 F.3d at 436. As explained above, there is incontrovertible proof that Mathews was at least reckless in filing frivolous claims (*see supra* 10–15) and sought to harass Apple as he did so (*see supra* 12–15). Either suffices, as it is beyond

dispute that Mathews has "multipl[ied] proceedings" as a result. *See, e.g.*, *In re Peoro*, 793 F.2d 1048, 1051 (9th Cir. 1986) (affirming award of attorney fees under § 1927 where complaint was "barred by the doctrine of *res judicata* and [was] undoubtedly unmeritorious in the first instance"); *Trulis v. Barton*, 107 F.3d 685, 692 (9th Cir. 1995) (finding abuse of discretion where district court declined to impose sanctions under § 1927 for "maintenance of [a] suit" when plaintiff was "well aware" that it was precluded); *Vedatech, Inc. v. St Paul Fire & Marine Ins. Co.*, 2005 WL 1513130, at *16–17 (N.D. Cal. June 22, 2005) (finding bad faith and imposing sanctions under § 1927 where a party ignored its opponents' "repeated[] and clear[]" explanation that their claim was foreclosed by precedent).

Although that is enough to warrant sanctions, there is much more. Beginning in *Coronavirus I*, Mathews signed his name to several frivolous filings. He moved for *two* sweeping preliminary injunctions without *any* evidentiary support—the second occurring *after* Apple had cited authority demonstrating this was a fatal failure. *Coronavirus I*, Dkts. 20, 32, 52. Plaintiffs sought to "strike" Apple's motion to dismiss, claiming it "fail[ed] to meet the heightened pleading standards of *Twombly/Iqbal*," *Coronavirus I*, Dkt. 51 at 3—a nonsensical argument that proliferated briefing on Apple's straightforward motion to dismiss. *See Coronavirus I*, 2021 WL 5936910, at *18. After the Court granted Apple's motion to dismiss, Mathews filed a motion for reconsideration that ignored the requirements for such a motion while also falsely accusing Apple's attorneys of "witness intimidation." *Coronavirus I*, Dkt. 87 at 17. Mathews' misconduct has continued in this case: Apple had to file a motion to transfer to enforce a forum-selection clause Mathews knew existed and was binding on Plaintiffs (Dkt. 19), oppose Plaintiffs' meritless attempt to transfer this case into an MDL (Dkt. 28), disabuse an improper motion about judicial estoppel (Dkt. 40), move (over Plaintiffs' objection) for a briefing schedule on the transfer motion (Dkts. 38, 39), and oppose a needless attempt to enter default (Dkt. 57). And now, Plaintiffs are prolonging this case through a vexatious "null entity" defense. *See supra* 15–18.

The resulting burdens on the federal courts generally and this Court specifically, and Apple, have been significant. Between *Coronavirus I* and *Coronavirus II* alone, the docket now stretches across 197 entries—and going. Kleinbrodt Decl. ¶ 11. While Mathews has not prevailed on a substantive motion even once, Apple has spent considerable resources defending against them. *Id.* ¶¶ 10–11. And eight separate courts (and counting) have now taken time away from their busy dockets to deal

with Plaintiffs' prolific submissions. *See id.* Sanctions under Section 1927 are more than warranted. *See In re Peoro*, 792 F.3d at 1052 (imposing monetary sanctions against serial litigant who had brought repeated frivolous claims in various bankruptcy proceedings).

### D. The Court Should Award Fees, Revoke Mathews' Admission, and Enjoin Plaintiffs

By rule, statute, and inherent authority, the Court has wide discretion to impose a variety of sanctions. *See Cooter & Gell*, 496 U.S. at 407. Here, the Court should impose three: attorneys' fees to compensate Apple for the cost of defending against Plaintiffs' frivolous and vexatious claims; revocation of Mathews' *pro hac vice* admission; and a pre-filing injunction against Plaintiffs.

**1.** The Court should award Apple reasonable fees for the entirety of its defense in this case. The Court may order Plaintiffs and Mathews to pay these fees under Rule 11 and its inherent authority, and it may further order Mathews to do so pursuant to Section 1927. *See Cooter & Gell*, 496 U.S. at 406–07 (Rule 11); *Chambers*, 501 U.S. at 45 (inherent authority); *Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293–94 (9th Cir. 2015) (Section 1927). Apple is entitled to the entirety of its fees in defending this case. As the Supreme Court explained in *Goodyear*, "[i]f a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award." 581 U.S. at 110; *see also Michel v. City of Santa Rosa* 601 F. App'x 466, 468 (9th Cir. 2015) (same under Rule 11). That is the case here: Plaintiffs brought *Coronavirus II* in bad faith from its inception—asserting claims and factual assertions that any reasonable party would know were frivolous—and this case only persists because of Plaintiffs' most recent "null entity" ruse. *See supra* 15–18.

Here, Apple respectfully requests $400,000 for which Plaintiffs and Mathews should be jointly and severally liable (or, if the Court finds sanctions appropriate only under § 1927, then payable by Mathews and his firm, Associated Attorneys of New England). *See Gaskell*, 10 F.3d at 629 ("[A]ll attorney fees reasonably incurred in defending against the claims asserted in the complaint form the proper basis for sanctions."). That amount is below what Apple has in fact spent defending this case alone, and it does not even account for the significant costs it has borne to defeat Plaintiffs' claims in the cases Plaintiffs brought before this one. Kleinbrodt Decl. ¶¶ 10–11. Such fees are reasonable in light of counsel's experience, expertise, and the number of briefs counsel has had to prepare in this

case (and in other, related cases) as a result of Plaintiffs' litigation tactics. *Id.*; *see Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1158 (9th Cir. 2024) (imposing over $197,000 in sanctions on attorneys under § 1927); *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 652 & n.4 (7th Cir. 1992) (imposing over $440,000 in sanctions under Rule 11); *Lahiri*, 606 F.3d at 1222–23 (awarding over $250,000 in attorney fees and costs as sanction under court's inherent authority).[5]

**2.** The Court also should revoke Mathews' admission *pro hac vice* pursuant to its inherent authority and Rule 11. *See* Fed. R. Civ. P. 11(c)(1) (authorizing courts to "impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11] or is responsible for the violation"); *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996) (noting that district judges "have an arsenal of sanctions they can impose for unethical behavior" including "the disqualification of counsel"). In seeking admission, Mathews warranted to the Court that he would "abide by the Standards of Professional Conduct" and "become familiar with the Local Rules." N.D. Cal. L.R. 11-3(a)(2). He has violated those obligations time and again. *See, e.g.*, Dkt. 57 at 4 (explaining Mathews' failure to abide by Rules of Professional Conduct in requesting entry of default); *supra* 2–3 (listing Mathews' repeated refusal to abide by Local Rule requiring submission of corporate-disclosure information).

Mathews now has a lengthy record demonstrating his inability or unwillingness to comport himself with the professional standards required by this Court. Even after an early admonishment "caution[ing] [Mathews] about the use of *ad hominem* references to opposing counsel," *Primary Prods.*, No. 2:21-cv-00137, Dkt. 19 (D. Me. July 20, 2021), Mathews' filings have remained filled with invective. *See, e.g.*, *Coronavirus I*, Dkt. 17 at 3 (accusing Apple of "fraud on the Court"); *Coronavirus I*, Dkt. 87 at 17, 25 (accusing Apple of "witness intimidation"). Mathews has likewise shown consistent disregard for the Court's Local Rules and Guidelines for Professional Conduct—despite Apple repeatedly directing him to them. Exs. 1, 5. And he has propagated Plaintiffs' false representations, including most recently its "null entity" defense that he knows is baseless given his self-described position as "CLO" of Coronavirus Reporter. Ex. 3; *see also* Dkt. 62-4 (annual report identifying Mathews as "Treasurer or Fiscal Agent" of Coronavirus Reporter Corporation). Because "[t]he Court has no

---

[5] If the Court prefers that Apple further substantiate the amount of its fees or their reasonableness, Apple is prepared to submit a more detailed application.

assurance that [Mathews] will stop making statements in court filings that are at best disingenuous, that [Mathews] will practice with care, or that he will comply with Court Orders and the Local Rules," the Court should revoke his admission. *Methven & Assocs. Pro. Corp. v. Paradies-Stroud*, 2013 WL 12187701, at *1 (N.D. Cal. Dec. 19, 2013); *see also Robles v. City of Berkeley*, 820 F. App'x 529, 531 (9th Cir. 2020) (affirming district court's exercise of discretion to revoke *pro hac vice* admission in the interest of the "ethical and orderly administration of justice").

**3.** Pursuant to its inherent authority and the All Writs Act, 28 U.S.C. § 1651, the Court also should impose a pre-filing injunction on Plaintiffs, Mathews, and Isaacs. *See In re Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir. 1982) ("The equity power of a court to give injunctive relief against vexatious litigation is an ancient one which has been codified in the All Writs Statute, 28 U.S.C. § 1651(a)."). To deem someone a vexatious litigant and enter an attendant injunction, the Court must ensure: "(1) the plaintiff is given adequate notice and an opportunity to oppose the order; (2) the Court compiles an adequate record for review; (3) the Court makes substantive findings as to the frivolous or harassing nature of the litigant's actions; and (4) the order is narrowly tailored to closely fit the specific vice encountered." *Missud v. Nevada*, 861 F. Supp. 2d 1044, 1055 (N.D. Cal. 2012) (Chen, J.) (citing *De Long v. Hennessey*, 912 F.2d 1144, 1145–48 (9th Cir. 1990). The notice requirement is satisfied with the filing of this motion as the Court already has before it "a listing of all the cases and motions that [should] le[ad] the district court to conclude that a vexatious litigant order was needed." *Ringgold -Lockhart v. Cnty. of L.A.*, 761 F.3d 1057, 1062 (9th Cir. 2014). And the other requirements for such an injunction—which turn on "both the number and content of the filings as indicia of the frivolousness of the litigant's claims," *Missud*, 861 F. Supp. 2d at 1057 (citation omitted)—are easily met.

As the Ninth Circuit has explained, a "general pattern of litigation in a particular case may be vexatious enough to warrant an injunction in anticipation of future attempts to relitigate old claims." *Wood v. Santa Barbara Chamber of Com.*, 705 F.2d 1515, 1524 (9th Cir. 1983); *see also De Long*, 912 F.2d at 1148 ("Flagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants."). Here, Plaintiffs have "shown [their] intention continually to relitigate claims that have been previously dismissed." *Wood*, 705 F.2d at 1523–24. After this Court dismissed Plaintiffs'

24

claims, Mathews filed a copycat case in Florida, which he dismissed as soon as it was transferred to this Court. *Coring*, Dkt. 49. Isaacs similarly filed a meritless motion to reopen *Coronavirus I* after the Ninth Circuit affirmed this Court's decision, *Coronavirus I*, Dkt. 118, the denial of which is now the subject of yet another Ninth Circuit appeal, *Coronavirus I*, Dkt. 130. And, of course, Plaintiffs have now brought *Coronavirus II* even though it is barred by *res judicata*. The point is unmistakable: Plaintiffs will not stop suing Apple—ignoring this Court's prior judgment—unless and until they are enjoined from doing so. *See Missud*, 861 F. Supp. 2d at 1060 ("Without question, successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11.").

That injunction should enjoin Plaintiffs, Mathews, and Isaacs from suing Apple in any federal court. A nationwide injunction is necessary given Plaintiffs' extraordinary history of forum shopping: They have filed cases in five federal district courts, repeatedly admitting to filing outside this district to avoid the preclusive effects of this Court's ruling in *Coronavirus I*. *Coring*, Dkt. 1 ¶ 105; Dkt. 1 ¶ 127. Under the extraordinary circumstances here, an injunction limited to this district would only encourage continued forum-shopping; a nationwide injunction is needed to afford Apple complete relief from Plaintiffs' improper harassment. *See Woodhouse v. Meta Platforms*, 704 F. Supp. 3d 502, 505 (S.D.N.Y. 2023) (imposing nationwide pre-filing injunction because of vexatious litigant's "history of filing frivolous lawsuits" in district courts around the country and "making fantastical claims" against defendants and their attorneys); *Perlmutter v. Varone*, 2022 WL 1443426, at *4 (E.D. Pa. May 6, 2022) (same because plaintiffs had "filed frivolous suits in multiple districts"). And the injunction also should bind not only the *Coronavirus II* plaintiffs but also Mathews, Isaacs, and any entity owned by or affiliated with Isaacs in light of their repeated use of affiliated entities as stalking horses for Isaacs himself. *See Woodhouse*, 704 F. Supp. 3d at 505 (noting vexatious litigant's "use of [a corporation] as a vehicle for such specious litigation").

## V.    CONCLUSION

Sanctions are needed to discourage further abuse of the judicial system and to compensate Apple for the cost of litigating and relitigating Plaintiffs' frivolous claims. Apple respectfully requests that the Court: (1) impose $400,000 in joint and several compensatory sanctions; (2) revoke Mathews' *pro hac vice* admission; and (3) impose a pre-filing injunction.

1
2    DATED: May 30, 2025                    Respectfully submitted,

3                                          GIBSON, DUNN & CRUTCHER LLP

4                                          By: /s/ *Rachel S. Brass*
5                                               Rachel S. Brass

6                                          RACHEL S. BRASS
                                           rbrass@gibsondunn.com
7                                          Julian W. Kleinbrodt
                                           jkleinbrodt@gibsondunn.com
8                                          GIBSON, DUNN & CRUTCHER LLP
                                           One Embarcadero Center
9                                          Suite 2600
                                           San Francisco, California  94111-3715
10                                         Telephone:      415.393.8200
                                           Facsimile:      415.393.8306
11
                                           *Attorneys for Apple Inc.*
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT APPLE INC.'S MOTION FOR SANCTIONS
CASE NO. 3:24-CV-08660