Keith Mathews
*Pro Hac Vice*
American Wealth Protection
1000 Elm Street, Suite 800
Manchester, NH 03105
keith@awplegal.com
(603) 923-9855

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORONAVIRUS REPORTER CORPORATION, CALID INC., GREENFLIGHT VENTURE CORPORATION<br><br>*on behalf of themselves and all others similarly situated*<br><br>Plaintiffs,<br><br>vs.<br><br>APPLE INC.<br>Defendant. | Case No. 3:24-cv-8660-EMC<br><br><br>**PLAINTIFFS' MOTION PURSUANT TO CALIFORNIA CIVIL CODE PROCEDURE. § 425.16**<br><br><br>Date: August 21, 2025<br>Time: 1:30 p.m. PT<br>Place: Courtroom 5, 17th Floor<br><br>The Honorable Edward M. Chen |

**NOTICE OF MOTION PURSUANT TO CALIFORNIA CIVIL CODE PROCEDURE. § 425.16**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 21, 2025, at 1:30 p.m. Pacific Time, or as soon thereafter as the matter may be heard before the Honorable Edward M. Chen in Courtroom 5, 17th Floor of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Coronavirus Reporter Corporation, CALID Inc., and Greenflight Venture Corporation will and hereby do move:

1. Pursuant to California Code of Civil Procedure § 425.16 (the anti-SLAPP statute) for an order striking in its entirety Defendant Apple Inc.'s "Motion for Sanctions" (ECF No. 70) and awarding Plaintiffs their reasonable attorneys' fees and costs; or, in the alternative

2. Pursuant to Federal Rule of Civil Procedure 11(c)(2), 28 U.S.C. § 1927, and the Court's inherent authority, for an order (a) deferring further briefing on Apple's sanctions motion until thirty (30) days after the Court resolves Apple's pending Rule 12(b)(6)/12(d) motion (ECF No. 62) and the status conference with attorney Melissa Theriault, and (b) authorizing limited, targeted jurisdictional discovery under Rule 12(d) with respect to the  disputed "null entity" and related issues raised by Apple's motion.

This motion is based upon this Notice of Motion; the accompanying Memorandum of Points and Authorities; and exhibits thereto; the pleadings and papers on file in this action; any matters of which the Court may take judicial notice; and such oral argument as may be presented at the hearing.

Dated: June 13, 2025                    Keith A. Mathews, Esq.

# TABLE OF CONTENTS

**NOTICE OF MOTION PURSUANT TO CALIFORNIA CIVIL CODE PROCEDURE. § 425.16......I**

**TABLE OF AUTHORITIES**...................................................................................................... **II**

**INTRODUCTION** ......................................................................................................................**1**

**LEGAL STANDARD** ................................................................................................................**3**

**ARGUMENT** ..............................................................................................................................**4**

I.     ANTI-SLAPP PRONG ONE: APPLE'S SANCTIONS MOTION TARGETS PROTECTED CONDUCT; SPEECH-SUPPRESSIVE PURPOSE SATISFIES § 425.16(B)(1) ...................................... 4

II.    ANTI-SLAPP PRONG TWO: APPLE CANNOT CARRY ITS "PROBABILITY OF PREVAILING" BURDEN *(CAL. CODE CIV. PROC. § 425.16(B)(1))* ...................................................... 5

*The Statutory Regimes Apple Invokes Are Narrow, Discretionary, and Conditioned on Procedural Compliance* ..................................................................................................................... 6

*A.     Apple's Deliberate Timing and its Many Unused Procedural Alternatives Confirm the Sanctions Motion is a Strategic SLAPP, Not a Genuine Rule 11 Remedy*............................................ 7

*B.     Apple's Three-Headed Theory of Representation—Why its Own Documents Doom both the Rule 11 and the Res Judicata 12(b)(6) Motions* ....................................................................... 9

*Apple's Contradiction Is Fatal Under Rule 11, Res Judicata, and Anti-SLAPP*................................. 11

*C.     A Naming Defect, Not Misconduct:  Why the "Coronavirus Reporter" Label Cannot Sustain Rule 11 Sanctions*.......................................................................................................... 12

*D.     Apple's Own Exhibits Refute Its "Sophisticated Cloaking Scheme" Narrative*.......................... 14

*E.     Why Apple's own Developer Program rules created the "ownership disclosure" tangle it now weaponizes* ..................................................................................................................... 16

*F.     The unresolved status of former AUSA Melissa Theriault supports evidentiary development over an immediate Rule 11 decision.* ......................................................................................... 18

*G. External confirmations—from Epic, PhantomAlert, Berger Montague, Microsoft, and Hagens Berman—show that Plaintiffs are part of a legitimate, growing antitrust movement.* ......................... 19

III.   GROUNDS FOR IMMEDIATE RELIEF ................................................................. 22

IV.    BALANCING OF EQUITIES AND THE PROPER REMEDY ...................................... 24

V. ALTERNATE RELIEF: A BRIEF LANDIS / § 425.16(G) STAY PENDING THRESHOLD RULINGS .................................................................................................................. 24

**REQUESTED RELIEF** ............................................................................................................**25**

**CONCLUSION**........................................................................................................................**25**

**CERTIFICATE OF SERVICE** ..............................................................................................**26**

§ 425.16 ANTI-SLAPP SPECIAL MOTION
CASE NO. 3:24-CV-8660-EMC

# TABLE OF AUTHORITIES

## CASES

*Baral v. Schnitt,*
  1 Cal. 5th 376, 396 (2016)................................................................................................. 3, 5

*Barber v. Miller,*
  146 F.3d 707, 710–11 (9th Cir. 1998) ................................................................................. 3

*BE&K Constr. v. NLRB,*
  536 U.S. 516, 524-26 (2002) .............................................................................................. 23

*Bulletin Displays, LLC v. Regency Outdoor Advert.,*
  448 F. Supp. 2d 1172, 1180-81 (C.D. Cal. 2006) ............................................................. 22

*Chabner v. United of Omaha Life Ins. Co.,*
  225 F.3d 1042, 1048 n.3 (9th Cir. 2000) .........................................................................3,24

*Christian v. Mattel, Inc.,*
  286 F.3d 1118, 1127 (9th Cir. 2002) ................................................................................... 7

*Cooter & Gell v. Hartmarx,*
  496 U.S. 384, 393 (1990) ...................................................................................................... 6

*De Long v. Hennessy,*
  912 F.2d 1144, 1147-49 (9th Cir. 1990)............................................................................... 6

*Fink v. Gomez,*
  239 F.3d 989, 994 (9th Cir. 2001) ........................................................................................ 6

*Globetrotter Software, Inc. v. Elan Computer Grp.,*
  63 F. Supp. 2d 1127, 1130-33 (N.D. Cal. 1999) ............................................................... 22

*Goodyear Tire v. Haeger,*
  581 U.S. 101, 108 (2017) .................................................................................................... 23

*Handloser v. HCL Am., Inc.,*
  2020 WL 4700989, at *1 n.1 (N.D. Cal. Aug. 13 2020) ..................................................... 4

*Hilton v. Hallmark Cards,*
  599 F.3d 894, 901-02 (9th Cir. 2010).................................................................................. 22

*Holgate v. Baldwin,*
  425 F.3d 671, 676-78 (9th Cir. 2005)...............................................................................3,5,14

*Islamic Shura Council v. FBI,*
  757 F.3d 870, 873-74 (9th Cir. 2014).................................................................................. 14

*Jackson v. City of Cerritos,*
  2017 WL 1054980, at *3–4 (C.D. Cal. Mar. 20, 2017) ....................................................... 3

*Keegan Mgmt. Co. v. First Nat'l Bank of Boston,*
  78 F.3d 436 (9th Cir. 1996) .................................................................................................. 7

*Klein v. Cheung,*
  20 Cal. App. 5th 1045, 1061-62 (2018) ............................................................................. 19

*Landis v. North American Co.,*
  299 U.S. 248, 254–55 (1936) ............................................................................................3,24

*Makaeff v. Trump University, LLC,*
  715 F.3d 254, 261-63 (9th Cir. 2013).................................................................................. 4,6

*New Hampshire v. Maine,*
  532 U.S. 742, 749-50 (2001) ............................................................................................12,16

*Prof'l Real Estate Inv'rs v. Columbia Pictures ("PREI"),*
  508 U.S. 49, 60 (1993) ............................................................................................ 6, 23

*Radcliffe v. Rainbow Construction Co.,*
  254 F.3d 772, 788-89 (9th Cir. 2001) ................................................................... 5,8,24

*Ringgold-Lockhart v. Cnty. of L.A.,*
  761 F.3d 1057, 1062-64 (9th Cir. 2014) ..................................................................... 6

*Roadway Express v. Piper,*
  447 U.S. 752, 764 (1980) ............................................................................................. 7

*Rusheen v. Cohen,*
  37 Cal. 4th 1048 (2006) ............................................................................................... 4

*U.S. ex rel. Newsham v. Lockheed Martin,*
  190 F.3d 963, 971-73 (9th Cir. 1999) ....................................................................... 22

**INTRODUCTION**

Apple Inc.'s "Motion for Sanctions"—filed after a full year of strategic silence, and packed with more than two hundred citations to pleadings stretching back to 2021—bears all the hallmarks of a corporate SLAPP. It is directed not at any discrete procedural misstep, but at an antitrust campaign that has increasingly attracted the attention of regulators, rival developers, and the public. Invoking Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority, Apple asks this Court to impose $400,000 in fees, to revoke counsel's *pro hac vice* admission, and—most strikingly—to enter a nationwide injunction that would bar a disabled developer and his associates" (including a world-renowned scientist who saved countless lives) from petitioning any federal court about Apple's conduct. The motion thus improperly seeks to silence a movement by a developer constituency, rather than any purported sanctionable conduct. Congress and the Supreme Court have repeatedly recognized as essential private attorneys general in the enforcement of the Sherman Act and it is beyond dispute that undersigned has raised awareness of this cause and contributed to the advancement of Big Tech oversight. Apple's motion is meant to chill antitrust advocacy work by blatantly parading to the public the risk of speaking out.

Apple's sanctions gambit arrives at a telling moment. Barely a week ago the Ninth Circuit denied Apple's emergency stay request in *Epic Games v. Apple*, leaving undisturbed Judge Gonzalez Rogers' finding of civil contempt and her referral to the United States Attorney for potential criminal contempt. In the wake of that order, *Epic's* chief executive proclaimed that "the long national nightmare of the Apple tax is ended." At the same time, a coalition of antitrust scholars and former enforcement officials has urged the Department of Justice to intensify scrutiny of Apple's "broader pattern of contempt for the rule of law." See https://archive.is/Mxibw.

Microsoft and Hagens Berman have now advanced overlapping theories of liability advanced in our FAC. PhantomAlert's "identical" (in Apple's words) developer action is on appeal with the new support of the accoladed antitrust team at Berger Montague. Plaintiffs here press the next frontier—Apple's censorship and App Store lockdown— a restraint Apple once told this Court was "inseparable" from the operating system but now concedes is a profit center subject to competitive choice.

Rather than address those merits in its pending Rule 12(b)(6) motion—already overloaded with undeveloped and contradictory arguments—Apple has elected to fire a retroactive broadside. Its sanctions

1    motion recycles dozens of snippets from earlier dockets, re-characterizes an inadvertent Rule 7.1 disclosure

2    lapse as a sinister scheme, and artfully omits facts that cut the other way: that Apple itself induced the app

3    naming defect when, in the Ninth Circuit, it argued *against* the existence of the Coronavirus Reporter app as

4    a proper legal entity; that Apple determined the *CR I pro se* representation to be invalid *back in 2021*, and

5    that the second lawyer who signed the original complaint—a former AUSA—found the *non-entity argument*

6    *coupled with new violations* persuasive enough to file a multi-billion-dollar *class action* antitrust lawsuit

7    against Apple. Apple also ignores the Sur-Reply and Rule 12(d) request Plaintiffs filed on May 14, 2025,

8    which identified corroboration of post-2021 activity by third parties and seeks discovery on the core factual

9    dispute here. Rule 11 does not authorize a litigant to disregard such open factual disputes, much less to deploy

10   them as the basis for a nationwide gag order.

11        Because Apple's motion targets quintessential petitioning activity—filing Sherman Act complaints

12   about *censorship*, Dr. Roberts' interview with CNBC and dozens of attorney appearances in the press—it is

13   subject to California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16. Under the Ninth Circuit's settled

14   two-step framework, Plaintiffs need only show (1) that Apple's motion arises from protected conduct, which

15   is self-evident, and (2) that Apple cannot demonstrate a probability of prevailing. Apple fails that second step

16   for at least four independent reasons: the live factual controversy over corporate identity that Rule 12(d)

17   channels to summary judgment, the undisputed novelty and public importance of Plaintiffs' *Lawlor*-protected

18   post-2021 claims, Apple's year-long fee racking delay, and the overbreadth of the requested injunction under

19   *De Long* and *Ringgold-Lockhart*. Section 425.16 therefore entitles Plaintiffs to an order striking the sanctions

20   motion in its entirety and awarding mandatory fees.

21        In the alternative—should the Court wish to reach the merits only after deciding Apple's Rule

22   12(b)(6)/12(d) motion and after resolving counsel-of-record issues raised by former AUSA Wyoming

23   counsel—Plaintiffs respectfully request a brief, tailored order deferring all sanctions briefing until those steps

24   are complete. That staging would conserve judicial resources by preventing overlapping rounds of argument

25   on res judicata, corporate identity, and evidentiary scope, and would allow Apple to clarify whom, exactly,

26   it proposes to gag before those non-parties are deprived of notice and an opportunity to be heard.

27        For these reasons, Plaintiffs move (i) to strike Apple's sanctions motion under the anti-SLAPP statute,

28   with an award of fees (approximately $2250), or (ii) to defer the briefing schedule until thirty days after the

Court rules on Apple's pending motion to dismiss and on Mrs. Theriault's status, and until Apple effectuates service on all individuals and entities it seeks to bind.

## LEGAL STANDARD

California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, protects acts in furtherance of the constitutional rights of petition and free speech in connection with public issues from meritless litigation designed to chill such rights. Consistent with the Legislature's directive that this statute 'shall be construed broadly,' § 425.16(a), the Ninth Circuit recognizes California's anti-SLAPP statute as a substantive rule applicable in federal courts sitting in diversity, federal question, or exercising supplemental jurisdiction.

Under Ninth Circuit precedent, the anti-SLAPP analysis employs a two-step, burden-shifting framework. Initially, the moving party must make a prima facie showing that the challenged claim arises from an act of protected petitioning or speech activity, as defined in § 425.16(e). If that burden is met, the non-moving party must then demonstrate, with admissible evidence, a probability of prevailing on the merits of its claims. *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). This second prong mirrors the standard applied on a motion for summary judgment, requiring the court to consider all admissible evidence presented in the light most favorable to the non-movant.

Federal Rule of Civil Procedure 11, meanwhile, provides a mechanism for sanctions where a pleading or motion is frivolous or filed for an improper purpose. Fed. R. Civ. P. 11(b); *Holgate v. Baldwin*, 425 F.3d 671, 676–78 (9th Cir. 2005). The rule imposes a mandatory safe harbor requirement, requiring service of the exact sanctions motion at least 21 days prior to its filing with the court, thereby giving the opposing party the opportunity to correct or withdraw the contested paper. Fed. R. Civ. P. 11(c)(2); *Barber v. Miller*, 146 F.3d 707, 710–11 (9th Cir. 1998). Courts must consider whether alternative, less severe remedies are sufficient, as Rule 11 sanctions aim primarily to deter misconduct rather than compensate parties.

Federal courts also retain broad discretion under *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936), to stay or defer proceedings where doing so promotes judicial economy and serves the orderly administration of justice. The Ninth Circuit explicitly recognizes that parallel motions pending before the court—such as dispositive Rule 12(b)(6) motions—can justify deferral of ancillary matters, including sanctions motions, until the primary issue is resolved.

In an anti-SLAPP motion context, a Rule 11 motion that seeks substantial relief beyond mere sanctions—such as expansive punitive attorney fees, a sweeping injunction, or binding relief affecting non-parties—may effectively function as a standalone lawsuit or action. California courts and the Ninth Circuit have recognized that even ostensibly procedural motions, when they substantively target protected activities and seek broad relief, are treated as "claims" subject to anti-SLAPP protections. For instance, the Ninth Circuit in *Makaeff v. Trump University, LLC*, 715 F.3d 254, 261-63 (9th Cir. 2013), made clear that a pleading styled as a "counterclaim" or ancillary filing seeking expansive injunctive or monetary relief beyond mere procedural redress qualifies as a "cause of action" for anti-SLAPP analysis.

Thus, a Rule 11 motion aimed at sanctioning not only attorneys of record but also non-party advocates, litigants, or affiliated entities, or that attempts to broadly restrict petitioning or speech-related conduct, is properly analyzed as a strategic lawsuit against public participation under California Code of Civil Procedure § 425.16. If the claim fails the second prong of the Anti-SLAPP analysis, any corresponding Rule 11 request effectively becomes moot. *Handloser v. HCL Am., Inc.*, 2020 WL 4700989, at *1 n.1 (N.D. Cal. Aug. 13 2020) (denying Rule 11 request as moot after anti-SLAPP ruling).

Conversely, even if an anti-SLAPP motion does not prevail, courts routinely decline to award Rule 11 sanctions if the underlying challenged pleading or filing was reasonably grounded in fact or law, particularly given the rigorous requirements of Rule 11's safe harbor and objective reasonableness standards.

## ARGUMENT

### I.    ANTI-SLAPP STEP ONE: APPLE'S SANCTIONS MOTION TARGETS PROTECTED CONDUCT; SPEECH-SUPPRESSIVE PURPOSE SATISFIES § 425.16(B)(1)

The sanctions motion seeks a nationwide injunction against a solo practitioner, his client Greenflight Venture Corporation, a disabled physician and his "affiliates," a category that apparently sweeps in CRC co-owner Dr. Roberts and class actions pending appellate review.  California courts deem such measures classic attempts to "throttle the exercise of the right to petition" and thus concisely within § 425.16.  *Rusheen v. Cohen*, 37 Cal. 4th 1048 (2006).  Apple's deliberate one-year timing, overlapping briefing, and overbroad relief request meet the statute's "strategic litigation" prong and compel dismissal unless Apple can show a probability of prevailing—which it cannot.

1  Apple's conscious choice to litigate for a full year before pulling the sanctions trigger, despite having

2  every relevant fact, erases any notion of a genuine Rule 11 purpose.  The motion should be stricken under §

3  425.16 or, at the very least, deferred until after (i) resolution of the Rule 12(b)(6) motion, (ii) the Theriault

4  status conference, and (iii) targeted jurisdictional discovery.

5  **II.    ANTI-SLAPP PRONG TWO: APPLE CANNOT CARRY ITS "PROBABILITY OF**
6  **PREVAILING" BURDEN *(CAL. CODE CIV. PROC. § 425.16(B)(1))***

7  To survive the second step of the anti-SLAPP analysis Apple must state and substantiate a legally

8  sufficient claim. *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). The burden is "akin to that of a motion for

9  summary judgment," requiring admissible evidence that would allow a trier of fact to rule for the non-

10  movant. *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 833-34 (9th Cir. 2018).

11  Apple falls well short for four independent reasons: 1) the FAC clearly targets *post-CR I* activity, 2) Live

12  factual disputes exist, 3) Apple's delay evidences frivolousness, and 4) the Nationwide Injunction is facial

13  overreach.

14  Apple's April 23 draft targeted only the FAC and the original opposition brief.  The May 14 sur-reply

15  and Rule 12(d) motion requested discovery on the "null entity" narrative and disclosed newly filed related

16  cases corroborating new *Lawlor* claims.  Apple's filings conspicuously ignore every single reference to post-

17  2021 activity, and the sur-reply argued that point extensively. Hence the Rule 11 motion completely fails to

18  address the docket as it stood at the time of filing sanctions.  Rule 11's safe harbor provision is "strictly

19  enforced"; any substantive change after service obliges a fresh 21-day period. *Radcliffe v. Rainbow Constr.*

20  *Co.*, 254 F.3d 772, 788-89 (9th Cir. 2001); *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005). Here,

21  numerous forfeited and conceded 12(b)(6) arguments – thoroughly documented in the Sur-Reply – amounts

22  to "change" of circumstances on the Rule 11 foundation. Because Apple never re-served its motion to address

23  those intervening filings, the sanctions request is procedurally barred—foreclosing any likelihood of success

24  as a matter of law.

25  Rule 11 may not be used to resolve substantial factual disputes. *Atari Interactive, Inc. v. Redbubble,*

26  *Inc.*, 2019 WL 6723422, at *8 (N.D. Cal. Dec. 10 2019).  Plaintiffs' sur-reply and sworn declarations

27  controvert Apple's central premises (corporate identity, ownership, good-faith investigation, post-2021

28  conduct).  Until limited discovery is completed—precisely what Rule 12(d) contemplates—Apple cannot

meet its clear-and-convincing burden under the Court's inherent power. *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).

Even unsuccessful litigation is protected unless "objectively baseless" *Prof'l Real Estate Inv'rs v. Columbia Pictures ("PREI"),* 508 U.S. 49, 60 (1993), holding that litigation cannot lose its Noerr-Pennington immunity unless meritless.  Last month, Judge Gonzales Rogers found Apple in civil contempt in *Epic v. Apple*, confirming specific FAC allegations of retaliatory anticompetitive conduct against developers. The Department of Justice filed a Section 2 complaint paralleling Plaintiffs' fore-/after-market theory. *PhantomAlert*, Berger Montague, Microsoft, and Hagens Berman have independently advanced "identical" or related tying and retaliation claims. These developments collectively supply the "reasonable basis in law and fact" that defeats Rule 11. Apple cannot ignore an entire antitrust movement against its company, spelled out loud and clear in the sur-reply, and then file Rule 11 trying to stop it by scapegoating a small-town lawyer. Townsend v. Holman Consulting, 929 F.2d 1358, 1362-63 (9th Cir. 1991) (en banc).

A nationwide pre-filing bar on 'Dr. Isaacs and his associates' flunks the four-factor test for litigant injunctions: notice, adequate record, substantive findings, and narrow tailoring. *De Long v. Hennessy*, 912 F.2d 1144, 1147-49 (9th Cir. 1990); *Ringgold-Lockhart v. Cnty. of L.A.*, 761 F.3d 1057, 1062-64 (9th Cir. 2014). Apple has not served—let alone proven abuse by—Dr. Roberts, Primary Productions, PhantomAlert, or Coring, all of whom fall within the injunction's sweep.  Overbreadth alone precludes a probability of prevailing. Because Apple cannot satisfy any element of its chosen sanctions regime, its motion collapses at prong two and must be stricken with a fee-shift to Plaintiffs. *Makaeff v. Trump Univ.*, 715 F.3d 254, 262-64 (9th Cir. 2013).

### The Statutory Regimes Apple Invokes Are Narrow, Discretionary, and Conditioned on Procedural Compliance

**Rule 11 (Fed. R. Civ. P. 11)** is aimed at curbing baseless filings, not deterring novel legal arguments or legitimate advocacy. *Cooter & Gell v. Hartmarx*, 496 U.S. 384, 393 (1990).  The Rule is strictly procedural: it polices the moment counsel signs, but it does not punish counsels' refusal to capitulate to an adversary's contested merits position or resolve factual disputes that require discovery.  Cf. *Townsend v. Holman*, 929 F.2d 1358, 1366-67 (9th Cir. 1991) (en banc).  Courts therefore deny sanctions where—exactly as here—the non-movant promptly raises colorable factual issues that must be proved, not assumed. See

1    *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (reversing sanctions where "factual

2    ambiguities" remained unresolved).

3    **28 U.S.C. § 1927** reaches only counsel, not parties, and only when counsel's conduct is both

4    objectively unreasonable and undertaken in subjective bad faith. *B.K.B. v. Maui Police*, 276 F.3d 1091, 1106

5    (9th Cir. 2002). An honest mistake of law, even if the attorney should have known better, is insufficient.

6    *Keegan Mgmt. Co. v. First Nat'l Bank of Boston*, 78 F.3d 436 (9th Cir. 1996). Mathews and Theriault relied

7    on *Epic*, DOJ pleadings, and Apple's own public statements that "Coronavirus Reporter" was not an entity—

8    hardly the stuff of "reckless multiplication." Apple provides zero primary evidence that the FAC signatories

9    had any intent other than to participate in the ongoing antitrust movement against Apple and strictly enforce

10    laws Apple had successfully evaded for two decades.

11    **Inherent power** is afforded to the courts  'to manage their own affairs so as to achieve the orderly

12    and expeditious disposition of cases.' *Roadway Express v. Piper*, 447 U.S. 752, 764 (1980). The Ninth

13    Circuit insists on a specific finding of bad faith or conduct tantamount to bad faith, supported by clear and

14    convincing evidence. *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001). Accurately pleading unsettled

15    antitrust markets—even if ultimately rejected—cannot meet that daunting standard.

16    **A. Apple's Deliberate Timing and its Many Unused Procedural Alternatives Confirm the
17    Sanctions Motion is a Strategic SLAPP, Not a Genuine Rule 11 Remedy**

18    Apple served its Rule 11 "safe harbor" package on 23 April 2025 and filed the motion on 30 May

19    2025. The formal lag was five weeks but the strategic delay was much longer: Apple first began touting its

20    res judicata theory in March 2024, when it moved to transfer this action from Wyoming and—at the same

21    time—invoked the same theory before the JPML to oppose Plaintiffs' consolidation request. They were

22    testing the waters to obtain Plaintiffs' early responses, so they could refine their own defense. From early

23    2024 forward Apple 1) repeatedly paraded upcoming res judicata to the District of Wyoming, to the JPML,

24    and to this Court; 2) chose not to file a declaratory judgment action in this District (or in Wyoming) that

25    would have placed the entire question before the Court without Rule 11 theatrics; 3) chose not to present a

26    contemporaneous Rule 11 motion in Wyoming, where the pleadings originated and where fees, if any, were

27    accruing; and 4) chose not to seek JPML guidance on whether a it should promptly file its res judicata claims

somewhere and stay the consolidation proceeding, recognizing the importance of consolidating related claims when an underlying DOJ action alleged developer-targeted conduct.

To be sure, nothing changed from over a year ago[1]. Apple possessed every fact and every exhibit it now brandishes—especially the single Wyoming Secretary of State print-out from *CR I*, a clear hedge that was later disavowed to the Ninth Circuit—well over a year ago.  Rather than move promptly, it waited until after the JPML ruled, ensuring that fifty-plus MDL counsel had already expended time addressing consolidation. It waited until after Plaintiffs filed a Rule 12(d) motion and a sur-reply exposing forfeited 12(b)(6) arguments and factual gaps in Apple's naming defect reversal and requesting discovery (and completely ignored material facts therein). It conveniently filed within days of the April 2025 civil contempt findings in *Epic v. Apple* spotlighting Apple's pattern of defiance; and immediately before the July 10 scheduled MTD hearing, maximizing rhetorical overlap and forcing Plaintiffs to respond simultaneously to dense, citation laden briefs on identical issues.

That sequence betrays a tactical, speech suppressive objective, not a compensatory one.  The Ninth Circuit stresses that a movant's 'knowledge-to-filing' gap, when coupled with ongoing motion practice, undercuts any claim of bona fide Rule 11 purpose and suggests strategic or punitive motives. *Radcliffe v. Rainbow Construction Co*., 254 F.3d 772, 788-89 (9th Cir. 2001). The sur-reply cast reasonable doubt into Apple's new premise that it "expressly assumed [Coronavirus Reporter ≡ CRC]."  Rather than engage, the sanctions brief re-asserted a Wyoming Corporate extract that raises more questions than it answers,  then treated the matter as closed.  That is precisely the conduct condemned in *Holgate v. Baldwin*, 425 F.3d 671, 677-78 (9th Cir. 2005): a Rule 11 movant must confront—not sidestep—substantial factual disputes.  Because Apple's motion depends on unresolved issues of ownership, standing, and new anticompetitive conduct, evidentiary proceedings will be unavoidable; Rule 11 is therefore premature, and § 425.16 warrants either immediate dismissal or, at minimum, a stay.

---

[1] Except civil and possible criminal contempt ruling against Apple, and findings *Defendant* unnecessarily multiplies related antitrust proceedings.

§ 425.16 ANTI-SLAPP SPECIAL MOTION
CASE NO. 3:24-CV-8660-EMC

**B.  Apple's Three-Headed Theory of Representation—Why its Own Documents Doom both the Rule 11 and the Res Judicata 12(b)(6) Motions**

Apple's litigation strategy hinges on a single proposition: CRC's programmer, Isaacs, was simultaneously (i) barred from appearing *pro se* in *CR I,* (ii) validly *pro se* so as to preclude Greenflight, and (iii) never *pro se* at all because both he and Greenflight were Keith Mathews' private "clients."

Those three versions cannot coexist.  The documentary trail—Apple's own September 2021 letter, its April 2025 Reply in support of the motion to dismiss, and its May 2025 Rule 11 memorandum—shows Apple adopting whichever story seems momentarily useful, with no regard for consistency, jurisdiction, or ethical duty.  That vacillation shatters the "objective reasonableness" predicate of Rule 11, destroys the "identity-of-parties" element of Apple's res judicata defense, and confirms the sanctions motion is a tactical SLAPP.

From the first weeks of *Coronavirus Reporter I* through the present sanctions brief, Apple has marched through at least three mutually inconsistent stories about Jeffrey Isaacs' role in the 2021 action.

The metamorphosis is not a sideshow; it is the load bearing premise of both Apple's Rule 11 motion and its still pending Rule 12(b)(6) res-judicata defense.  A careful review of Apple's own exhibits, the *CR I* docket, and the Ninth Circuit filings shows why the premise fails and why Apple's motion, built on that premise, cannot possibly "prevail on the merits" under prong two of the anti-SLAPP analysis.

Apple's bid for a half-million dollars in punitive fees rests on a portrayal of Jeffrey Isaacs' role in the earlier *CR I* litigation that shifts with the wind.  When it suits the company to bar Isaacs from direct participation, he is a "neuropsychiatric impaired" layman who may not address the Court; when Apple wishes to fasten the *CR I* judgment on Greenflight, Isaacs is suddenly a valid *pro se* litigant whose personal existence tethers every entity he touches; when Apple seeks to make Mathews alone pay the bill, Isaacs and Greenflight metamorphose once more into long standing private "clients" of counsel in *CR I*.  Those three positions cannot be squared with one another, with the documentary record, or with Rule 11's baseline requirement that a sanctions movant rely on a coherent set of facts.  The contradiction fatally undermines both the pending sanctions request and the merits defense in Apple's Rule 12(b)(6) reply.

The saga begins with a five page letter dated 30 September 2021, signed by Gibson Dunn partner Rachel Brass and addressed to Keith Mathews and co-counsel Michael Kernan (Rule 11 Mot. Ex. 70-

3).  Apple had received notice that Isaacs—a cofounder of CRC—intended to appear *pro se* in CR I.  Brass's response was absolute:

> *"Federal law 'permits either counsel or pro se representation—but not both.... There is no discrete "app" for Mr Isaacs to represent.  Nor could Mr Isaacs "represent" any other app— as a pro se litigant he can only represent himself.'"* (Id. at 2, citing *Rowland v. California Men's Colony*, 506 U.S. 194 (1993).)

The letter went so far as to threaten a protective order should Isaacs persist in communicating directly with Apple's lawyers and concluded that "Isaacs may not appear *pro se*."  Apple thus staked out the position—an unequivocal hard line—that Isaacs was not a party in his own right, could bind no corporate entity or app, and must remain silent behind counsel.  Notably, it never filed a motion and never moved the Court on this position, and therefore, by definition, Isaacs was in CR I *pro se* as he attempted to represent his shareholder interest in Greenflight's Caller-ID app.

Fast forward three-and-a-half years.  To defeat the First Amended Complaint in this action, Apple anchors its Rule 12(b)(6) motion to a res judicata argument:  *CR I*, it says, decided the very claims alleged here and therefore bars the suit.  Yet one difficulty looms:  Apple had alleged that the *CR I* corporate plaintiffs were misnamed nonentities, and CR was an app, not a company.  To patch that hole Apple's reply brief pivots 180 degrees, proclaiming that jurisdiction survived in *CR I* because Jeffrey Isaacs himself appeared *pro se* and thus "at least one real plaintiff" was before the Court. ECF 64 at 4–6.  From that premise Apple leaps to a second:  because Isaacs was unquestionably "a party," Greenflight—his "controlled corporate affiliate"—is in privity and bound by CR I. Id.  In a flourish of circular logic, the very *pro se* status Apple had branded "improper" in 2021 becomes the jurisdictional keystone of its estoppel defense in 2025.

Apple's Rule 11 motion, filed one month later, unveils a third narrative.  In dozens of passages (e.g., Mot. 2, 12 n.11, 22-23) Gibson Dunn now describes Isaacs and Greenflight as "Mathews' clients," treating them as though they had been represented from the very inception of *CR I*.  The motion relies on an email in which Mathews informally referred to Isaacs as "my client"—a colloquialism that, according to Apple, proves Greenflight and Isaacs were always under counsel's aegis and must therefore shoulder Apple's fee demand. That depiction is incompatible with both prior iterations.  If, as Apple now argues, Isaacs was Mathews' client as early as 2021, then Apple's own letter falsely accused Isaacs of attempting to represent an "app" he had no standing to champion. It is simply untrue. Apple is knit-picking that Attorney Mathews' didn't use corporate vernacular "client representative" when referring to Isaacs' role as liaison between the

corporate entities in *CR I* and counsel. There is no evidence Mathews' ever attempted to represent Greenflight in *CR I*, and indeed, he never did represent Greenflight. Apple knows that, and seeks to spin "client" vs "client representative" to reach a false conclusion. It didn't happen. Whatever the Court makes of the unusual CR App vs. CRC controversy – an original creation of Gibson Dunn's Rachel Brass – remains to be seen, but Greenflight, at the very least, has a fresh slate to proceed in *CR II*, and there is no basis for sanctions against it whatsoever.

And if that wasn't complicated enough, the Gordian knot deepens further. Apple simultaneously asserts a shareholder has no Article III standing to bring a Sherman Act claim. They wish to preclude Greenflight in *CR II*, because a shareholder, Isaacs, proceeded in *CR I*. But they simultaneously move to dismiss Greenflight from *CR II*, on the grounds it has no standing as the financier of CRC (setting aside its proprietary and patented[2] Caller-ID app). This exact matter is proceeding in the underlying MTD, and a Rule 11 motion is inappropriate until it is resolved.

**Table Summarizing Legal Consequences of Apple's Contradictions**

| Apple's Position | Sept 2021 Letter | Apr 2025 MTD Reply | May 2025 Rule 11 |
|---|---|---|---|
| **Isaacs pro se?** | **NO** – "improper," violates §1654 | **YES** – saves jurisdiction, binds Greenflight | **NO** – "Mathews' client" |
| **Can Isaacs bind corporations?** | Impossible ("no discrete app") | **YES** – Isaacs's CR I role creates privity | **YES** by fee liability |
| **Mathews' client list** | Three corporations only, no Greenflight | Same corporations + Isaacs pro se | Corporations **and** Isaacs/Greenflight |
| **Ethical duty under Rule 4.2** | Apple refuses direct contact | — | Implies prior refusal was mistaken |

**Apple's Contradiction Is Fatal Under Rule 11, Res Judicata, and Anti-SLAPP**

A sanctions movant must demonstrate, by reference to a stable factual record, that the targeted filing lacked reasonable evidentiary support. See Fed. R. Civ. P. 11(b)(3). Apple's mutually exclusive depictions

---

[2] The Florida Southern District already concluded, as a matter of law, that Isaacs does not own the Caller-ID patent which enables Greenflight's app. USPTO records are unambiguous that Greenflight owns the patent, therefore, he cannot represent the app *pro se* as he is not a patent holder. Apple omits any mention of *Greenflight vs. Google*, because that court recognized that the unsuccessfully attempted definition of US Internet Content Access Market – which Apple dominates – does not "impugn" counsel and is merely reflective of the difficulty of defining new digital marketplaces. That case is under appeal, and would also improperly be bound by the Rule 11 nationwide injunction as it alleges an Apple Sherman violation.

1   of Isaacs—unrepresented layman, valid *pro se* litigant, and hidden client of counsel—show that the company

2   itself is advancing facts which must be at least partially untrue.  Where the movant's own story is internally

3   incoherent, the court cannot find Plaintiffs' contrary view objectively unreasonable. The Ninth Circuit

4   applies estoppel when a party's later position is "clearly inconsistent" with one it previously persuaded a

5   tribunal to accept.  *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

6       California Code of Civil Procedure § 425.16 requires a sanctions proponent to establish a "probability

7   of prevailing."  The Gordian knot Apple has tied around Isaacs' status demonstrates, on its face, that Apple

8   cannot carry that burden.  Apple's shifting narrative is not an innocent mistake.  By recasting Isaacs' role to

9   fit each transient procedural need, Apple weaponizes the sanctions process to (i) resurrect a preclusion

10  defense that would otherwise buckle, (ii) saddle a solo practitioner with crushing fees, and (iii) silence a

11  disabled developer who has become a visible critic of Apple's App Store practices.  That conduct is the very

12  definition of a "strategic lawsuit against public participation."  Section 425.16 exists to stop it.

13      Apple cannot plausibly maintain that Isaacs was barred from speaking, obligatorily pro se, and never

14  pro se—all at once.  The Court should reject the contradictory narrative out of hand, strike the sanctions

15  motion under the anti-SLAPP statute, or at the very least stay all Rule 11 proceedings until an evidentiary

16  hearing resolves Apple's self-inflicted factual chaos.

17
18  **C. A Naming Defect, Not Misconduct:  Why the "Coronavirus Reporter" Label Cannot**
19  **Sustain Rule 11 Sanctions**

20      Apple's Rule 11 motion leans heavily on the premise that Keith Mathews "knowingly mis-

21  represented" the identity of the *CR I* plaintiffs.  The centerpiece of that accusation is a single Wyoming

22  Secretary of State extract paired with an October 2021 Meet and Confer letter from Rachel Brass.  Yet a

23  careful reading of the same correspondence, Apple's Ninth Circuit briefing, and the present sanctions papers

24  reveals that Apple—not Mathews—has cycled through three mutually exclusive descriptions of

25  "Coronavirus Reporter."  Once those gyrations are set out in sequence, the only fair inference is that the

26  dispute concerns an ordinary pleading defect in the still evolving law of digital platform markets, not Rule

27  11 fraud.

Brass's 30 September 2021 letter (ECF 70-3) opens with a categorical assertion that "Coronavirus Reporter is a Wyoming Corporation."  Fourteen months later, defending the CR I judgment on appeal, Apple performed a *volte face*:

> *"As far as Apple can tell, there is no actual 'Coronavirus Reporter' entity—meaning Apple is being sued by at least one null party."* (9th Cir. No. 22-15166, Dkt. 38 at 7 n.4.)

This was a strategic gambit: if "Coronavirus Reporter" never existed, the Ninth Circuit could sidestep a damages challenge by holding that no real plaintiff had standing to recover.  The argument necessarily treated the phrase "Coronavirus Reporter" not as a corporation but as the name of an iPhone application—the very confusion Apple now attributes to Mathews. There was significant basis for this assertion; "Five Unnamed Apps" were identified as Plaintiffs of the pleadings that merged into the *CR I* case.

When Plaintiffs filed in Wyoming, Apple pivoted yet again.  In its Rule 12(b)(6) reply (ECF 64) Apple tells this Court that it "expressly assumed" throughout CR I that the named plaintiff was "the Wyoming entity Coronavirus Reporter Corp.," and therefore res judicata binds CRC today.  A month later the sanctions motion amplifies that theme, accusing Mathews of "repeatedly mis-represent[ing] [his] corporate identity" (Mot. 1, 14-18) even while insisting that Apple "always" understood the suit to be against a real corporation.  Three incompatible stories emerge:

| Apple Filing | Status of "Coronavirus Reporter" | Litigation Objective |
|---|---|---|
| Sept 2021 Brass Letter (ECF 70-3) | **Existing corporation** (requiring counsel) | Block Isaacs's *pro se* involvement |
| 9th Cir. Answer Br. (2022) | **Non-existent entity / mere app name** | Vacate damages exposure, preserve judgment |
| Rule 12 & Rule 11 briefs (2025) | **"Expressly assumed" corporate plaintiff CRC** | Invoke res judicata; shift fees to Mathews & CRC |

Confronted with Apple's 2022 footnote, Mathews undertook the reasonable inquiry FRAP demands.  The contemporaneous email chain (70-3 at 4) recites Mathews' surprise that his Plaintiff was a null entity. It further shows Brass replying that "to the extent you are referring to the company listed in Wyoming corporate records … that is not the entity listed on the operative complaint."

Those responses forced counsel to confront a puzzle of Apple's making:  the cover sheet of *CR I* bore an undifferentiated label—"Coronavirus Reporter."  Given the earlier "Five Unknown Apps" placeholder filed in the New Hampshire SAC, the most plausible reading was that at least some portion of *CR I* attempted to sue in the name of applications rather than their corporate owners.  That miscaption is atypical but not

13

nefarious; it reflects the novelty of digital platform antitrust where an "app" is simultaneously product, brand, and sometimes business. Correcting the defect—by naming Coronavirus Reporter Corporation in *CR II*—was thus a curative act, not a culpable one.

Rule 11 sanctions are proper only when the party's position is objectively unreasonable in light of the information available at signing. *Holgate v. Baldwin*, 425 F.3d 671, 676-78 (9th Cir. 2005). When Apple itself has espoused three different factual predicates, Mathews cannot be faulted for adopting the single construction most consistent with the record, namely that earlier pleadings mis-named an application where a corporation should have stood. Courts confronting 'shifting narrative' disputes reject sanctions outright. See *Islamic Shura Council v. FBI*, 757 F.3d 870, 873-74 (9th Cir. 2014) (extended government vacillation about facts undercuts any claim of bona fide Rule 11 purpose).

At bottom, Apple seeks to convert a Rule 15 naming correction into a punitive fee award. The Federal Rules solve such problems through amendment, substitution under Rule 17(a)(3), or limited jurisdictional discovery—not through million-dollar fee petitions. Courts routinely treat mis-captioned digital platform suits as "curable defects," granting leave to rectify rather than punishing counsel. *CR II* does exactly that: it clarifies that CRC, Calid Inc, and Greenflight are the real parties. Moreover, it pleads post-2021 *Lawlor* conduct that could not have been raised before. Apple's motion—filed only after that corrective pleading—therefore targets protected petitioning activity under § 425.16 and should be stricken.

Apple's letter, its Ninth Circuit brief, and its present motions cannot all be true. The company alternately claims "Coronavirus Reporter" was a corporation, an inexistent nullity, and ipso facto CRC—switching theories whenever expedient. Rule 11 does not tolerate such opportunism, nor does the equitable doctrine of judicial estoppel. When the moving party's factual compass spins so wildly, sanctions are not merely unwarranted; they would invert the deterrent purpose of Rule 11. The naming defect has been acknowledged and cured in CR II. The Court should treat the subject accordingly—as an ordinary pleading amendment, not a sanctionable offense—and deny or strike the sanctions motion in its entirety.

**D. Apple's Own Exhibits Refute Its "Sophisticated Cloaking Scheme" Narrative**

Apple devotes an entire subsection of its sanctions brief to the proposition that Keith Mathews orchestrated an 'elaborate scheme' to hide the true litigants in *CR I*, supposedly 'using a revolving cast of phantom corporations' so that he and his various clients and client representatives could 'harass Apple from

§ 425.16 ANTI-SLAPP SPECIAL MOTION
CASE NO. 3:24-CV-8660-EMC

the shadows.' Sanctions Mot. 15-18.  The rhetoric is vivid, but Apple's Exhibit 70-4—an email string it itself placed before the Court—obliterates the theory.  Apple's Exhibit 70-4 attaches Mathews' 18 October 2021 response to Rachel Brass, written two weeks after the very "hybrid representation" letter Apple now touts.  In that e-mail Mathews could not have been clearer:

> "As for **my status as CLO**, the fact you only seemed to have just learned this proves our concern that your firm has not conducted due diligence… We have continually **monitored and shared all of our evidence with Dr. Roberts' daughter, a bio-ethics attorney in England.**"

Mathews thus (a) identified himself as Chief Legal Officer of Coronavirus Reporter Corp., (b) confirmed Dr. Robert Roberts—an eminent cardiologist and major shareholder—was actively supervising the litigation, and (c) disclosed his family members' locations and occupation.  Whatever else that message demonstrates, it is the antithesis of a cloaking device.

If Mathews were truly executing a covert plan to obscure ownership, he chose remarkable methods: broadcasting corporate titles, medical affiliations, and familial points of contact in writing to Gibson Dunn.  Apple clearly received and archived the message—it is now Exhibit 70-4—yet its sanctions narrative ignores the disclosure entirely.  Rule 11 demands that a movant "stop, think and investigate" before charging fraud; Apple's own file cabinet contained the exculpatory evidence it now suppresses.  See *Holgate*, 425 F.3d at 677-78 (when movant failed to address evidence already in its possession, sanctions must be denied).

The alleged Rule 7.1 lapse was harmless—Apple always knew the players.  Apple's fallback is that the corporate disclosure statement required by Rule 7.1 and Local Rule 3-15 never appeared.  True; Plaintiffs should have filed it.  But Rule 11 sanctions are not automatic for an omitted form.  They require prejudice or objective concealment.  Here Apple's own correspondence shows it learned in real time that 1) Isaacs co-founder and software developer; 2) Dr. Roberts was Chief Medical Officer and major shareholder; and 3) Mathews acted as Chief Legal Officer and outside counsel.

Armed with those facts, Apple – not Mathews—filed disingenuous court papers in *CR I* claiming that Dr. Roberts was not an interested party, and that Isaacs was the only connection to medicine[3].  Apple is guilty

---

[3] In CR I Apple dismissed Coronavirus Reporter as an "app with no connection to medicine other than Isaacs' self-promotion." *Coronavirus I*, Dkt. 64 at 8.  Today, facing Roberts' damages claim under CRC, Apple pivots:  Dr. Roberts was present all along and is therefore precluded.  Compare Sanctions Mot. 23-24 with MTD Reply 8-9.  The only through-line is Apple's litigation goal:  erase Roberts when medical expertise hurts Apple, resurrect him when preclusion helps Apple, and sanction counsel for whichever theory is not currently convenient.

1    of the very practice they seek almost half a million dollars in sanctions for: casting uncertainty on the true

2    identity of the litigating parties. It is rather hypocritical that Apple now claim it was victimized by an absence

3    of 7.1 disclosures because it is beyond indisputable that Apple sought to conceal the true owners of CRC –

4    not Mathews.

5    Such self-serving shape-shifting is exactly what judicial-estoppel doctrine forbids. *New Hampshire*

6    *v. Maine*, 532 U.S. 742, 749-50 (2001). It also reinforces why Apple cannot meet its anti-SLAPP burden: a

7    movant that must juggle three incompatible factual positions ("app," "null entity," "always CRC") cannot

8    show a probability of prevailing on the merits. A naming defect in frontier digital litigation is not sanctionable

9    misconduct. Digital platform antitrust is still charting the line between apps as products and the entities that

10   publish them. The confusion that placed an app name on a federal pleading is a curable Rule 15 technicality,

11   not evidence of bad faith. *CR II* cures the caption, pleads post-2021 misconduct, and proceeds under proper

12   corporate names.

13   In short, Exhibit 70-4 does not implicate Mathews in deception; it exonerates him. Apple possessed

14   conclusive proof of corporate ownership, sat on it for years, and now urges sanctions to distract from its own

15   internal inconsistencies. The Court should reject the invitation, strike the sanctions motion under § 425.16,

16   and—in fairness—consider whether Apple's serial position shifting is itself sanctionable.

17   **E.  Why Apple's own Developer Program rules created the "ownership disclosure" tangle it**
18   **now weaponizes**

19   A final strand of the timeline involves two separate apps—Bitcoin Lottery and Coronavirus

20   Reporter—whose filing histories Apple has spun into a Rule 11 conspiracy theory. The history matters

21   because it shows that any mismatch between "account holder" and "true owner" was forced by Apple's own

22   DPLA, a classic contract of adhesion that (i) requires each app to be submitted through an Apple approved

23   "App Store Connect" account, and (ii) allows only the registered account holder—not a contractor, not a

24   friend, not a sister company—to place the software in the system. See DPLA § 3.2(f) (Apple may "terminate"

25   or "reject submissions" if the account holder is not the "owner and developer" of the software).

26   Primary Productions LLC is a two member, father & son New Jersey LLC. To avoid a second $99

27   annual developer fee, and not complicate its main business of music production, it asked a friend's company,

28   Greenflight, to upload Bitcoin Lottery through Greenflight's existing account. That benign workaround

1    violates Apple's single owner rule, but it is hardly fraudulent: Apple's internal records show the app was

2    submitted from a Greenflight login, and Apple never complained—until litigation.

3           When Primary Productions sued in the District of Maine, Apple pounced.  Citing Local Rule 7.1's

4    requirement to list any "person, association, firm, partnership, [or] LLC" holding ≥ 10 % of the plaintiff,

5    Apple filed an Objection to Corporate Disclosure (ECF 15, "Maine Obj."), insinuating that Greenflight must

6    secretly own Primary Productions because Greenflight's account had been used for the upload.  Maine Local

7    Rule 7.1, unlike Rule 7.1 in most districts, demands identification of all ten percent members—not merely

8    parent corporations.  Primary Productions promptly filed an amended disclosure (ECF 16) naming the only

9    two members (father & son).  Apple nevertheless told the Court it had "serious doubts" that Primary

10   Productions was the "real party in interest," Maine Obj. at 2, and cited Coronavirus Reporter as proof that

11   Mathews "cloak[s]" true owners.

12          Similarly, in January 2020, before COVID-19 reached U.S. shores, the founders of Coronavirus

13   Reporter raced to build a voluntary contact tracing platform but had not yet incorporated.  To get the binary

14   in the App Store review queue before the WHO alarm, they sought assistance that CALID Inc. file the

15   build.  When the Wyoming corporation (Coronavirus Reporter Corp.) was formed in due course, all assets

16   transferred to it, which under normal non-DPLA terms, would be totally appropriate for dealing with a

17   pandemic situation.  As Judge McCafferty observed in docket 32 of CR I (D.N.H.), the true party in interest

18   "remains debatable" because Apple's own user agreements allowed account-based filing, not corporate

19   substitution.

20          Apple converted these housekeeping glitches into accusations of "false filings," "concealment," and

21   "fraud."  Its Maine objection even suggested Rule 17 dismissal before discovery.  Confronted with that

22   hyperbole, Mathews' response characterized Apple and its DPLA drafters as "henchmen" for using the

23   DPLA to tell every U.S. software entrepreneur "how to run their business."  The word henchmen was pointed,

24   but in context—Apple's threat to brand a high school friend's favor as fraud—it was fair comment on a

25   trillion dollar monopolist enforcing a felonious adhesion contract.  None of this is Rule 11 fodder.

26          The disputed ownership disclosures stem directly from Apple's own single account rule; the record

27   shows full candor about ownership; and Apple's theory of a "cloaking scheme" collapses on its own

28   exhibits.  Whether Apple's DPLA itself is an unlawful leveraging contract—or an overbroad condition that

1  chills commerce—is a merits question for Rule 12 and discovery, not a predicate for sanctions. The Court

2  in *CR I* never reached it; the Maine court transferred before deciding it. Under *Lawlor*, *Epic*, and the DOJ's

3  2024 complaint, those issues belong in an evidentiary forum, not in a fee shifting sideshow.

4      In sum, the Primary Productions and Coronavirus Reporter episodes illustrate how Apple's adhesion

5  contract forces developers into awkward corporate gymnastics and then vilifies them for non-

6  conformity. That background must inform any fair reading of the "henchmen" line—and illustrates why

7  Apple's Rule 11 motion is a strategic SLAPP masquerading as a plea for order.

8      **F. The unresolved status of former AUSA Melissa Theriault supports evidentiary development
9        over an immediate Rule 11 decision.**

10     Before filing the Complaint, Plaintiff's retained a former Assistant United States Attorney with

11 internet and antitrust credentials, who entered a Notice of Appearance in Wyoming. She remained counsel

12 of record when the case transferred to this Court. On May 22, 2025—shortly after Apple served its sanctions

13 draft—Theriault filed a "Notice of Withdrawal" which has since been amended to request an *ex parte*

14 conference, which Plaintiffs and undersigned counsel also deem necessary and hereby move the Court to

15 conduct[4]. In defense of Theriault, Plaintiffs' position is that Apple filed an improper Rule 11 Motion meant

16 to intimidate all associates – including counsel. As a signatory to the FAC, Rule 11 applies to Theriault by

17 definition, and Apple's SLAPP would unjustly expand to yet another innocent party, a former federal

18 prosecutor who simply wanted to assist the ongoing Big Tech regulation movement by providing objective

19 advice on her state's local rules and extending the DOJ complaint to WCPA.

20     The requested *ex parte* conference while Apple's motion is pending would inform the Court about

21 the one lawyer with firsthand knowledge of why the complaint was filed in Wyoming and what due diligence

22 she performed before signing in response to Mathews' disclosures. Absent this, the Court would lose the

23 most efficient source of those facts and almost certainly face a round of Rule 45 subpoenas and privilege

24 fights. The same principle applies with greater force where the lawyer is a former AUSA on a *DOJ-derived*

25 case whose credibility directly rebuts Apple's narrative of "reckless" pleading. Before any retainer was

26 signed, Attorney Mathews and his client representatives met with Theriault and provided detailed

---

[4] Dkt. 71 Amended Notice was requested to be re-filed as a motion by the Court on June 11 ECF
entry. This motion hereby requests the relief noticed by Theriault and to stay Rule 11 briefing accordingly.

information about the *CR I* case and their anticipation that Apple would have "buyer's remorse" and be embarrassed by the fact their own counsel pointed out a critical defect that would permit the CRC case to actually proceed on the merits. The meeting also discussed the new *Lawlor* conduct, specifically the $99 fees and ongoing censorship of new software; all of which are matters that should be discussed further in an *ex parte* conference. But in any case, this fact alone defeats Apple's sanctions motion: Mathews' sought second opinions from objective attorneys during the retainer search process, knowing that Apple would fight vigorously to change their position.

In *Klein v. Cheung*, 20 Cal. App. 5th 1045, 1061-62 (2018*)*, the court held that a sanctions motion selectively targeting one lawyer, while ignoring others who signed the same filing, raised a strong inference of tactical abuse. Apple's decision to omit Theriault from its fee theory—after possibly coercing her to withdraw—mirrors that disapproved tactic. Sanctions litigation that cherry picks adversaries and muzzles rebuttal witnesses is the paradigm § 425.16 was enacted to deter. Until Theriault's status is resolved and a limited evidentiary hearing is completed, any disposition of Apple's motion would risk reversible error. The Court therefore should schedule the *ex parte* conference forthwith and in the interim, deny or defer Apple's sanctions motion under the "minimal merit" test that governs Plaintiffs' special motion to strike.

### G. External confirmations—from Epic, PhantomAlert, Berger Montague, Microsoft, and Hagens Berman—show that Plaintiffs are part of a legitimate, growing antitrust movement.

Over the timespan stretching from *CR I* to present, numerous independent actors, none of whom have any corporate affiliation with Plaintiffs, have converged on similar and related, if not iterative, core theories now before the Court.  Their experiences confirm (1) the objective reasonableness of the claims pleaded in the FAC; (2) that Apple's sanctions motion is meant to chill a broader public interest campaign; and (3) that discovery—not summary punishment—is the appropriate next step. There exists a line of 'domino chips' required to disassemble Apple's iPhone monopoly, roughly in the order of anti-steering (i.e. *Epic*) to competing app stores (i.e. EU DMA) to notarization. Apple knows the projected costs and monetary losses of each stage, and the qualitative effects on their ability to control and censor the internet. This was front and center in the most recent hearings with *Epic*, where Apple sought Ninth Circuit stay to prevent "significant costs". Hence, it is reasonable to assume Apple has discoverable documents researching the impact – and likely, their risk-assessment ranking—of the various enforcement stages. This information is absolutely

§ 425.16 ANTI-SLAPP SPECIAL MOTION
CASE NO. 3:24-CV-8660-EMC

1  critical to support and prove that Apple's SLAPP exists to silence the "notary stamps" "tying" "censorship"

2  Plaintiffs. The Rule 11 motion cannot fairly proceed unless and until limited discovery on this matter is

3  conducted. The FAC alleges improper tactics like lobbying and developer retaliation, hence this is a *core*

4  *matter* central to the Complaint, beyond the Rule 11 motion itself.

5  On 18 April 2025 Judge Gonzalez Rogers found Apple in civil contempt for flouting the *Epic v. Apple*

6  injunction and referred the matter to the U.S. Attorney for potential criminal contempt.  The Ninth Circuit

7  denied Apple's emergency stay on May 27, 2025.  *Epic's* CEO hailed the ruling as ending "the long national

8  nightmare of the Apple tax."  The contempt order rests on two propositions central to Plaintiffs' FAC: (i)

9  Apple uses App Store rules as a gatekeeping lever to foreclose rival distribution models; and (ii) Apple's

10  compliance representations to courts have repeatedly been inaccurate or incomplete.  Those judicial

11  findings—issued after the FAC was filed, but foreshadowed by the FAC's allegations of noncompliance—

12  seriously undercut Apple's contention that Plaintiffs' theories are "objectively frivolous." Apple has lost

13  credibility in the courts and in public opinion. Opposing counsel tolerated lies on the witness stand. USDJ

14  Gonzalez Rogers got tired of endless "whack-a-mole" litigation papers. Undersigned counsel has said the

15  very same thing, repeatedly invoking judicial estoppel, for years. It cannot be ignored any more.

16
17  **PhantomAlert and the Berger Montague engagement after Plaintiffs petitioning**

18  In early 2024, the CEO of PhantomAlert (a navigation alert developer and direct competitor of

19  Coronavirus Reporter) contacted Dr. Isaacs to discuss Apple's uniform rejection of COVID apps.  The

20  developer had read the dozens of news articles about CR App litigation and was sincerely grateful for Dr.

21  Isaacs' 'pioneering' steps towards redressing Big Tech abuses. He explained he had hoped to join the *CR*

22  *App* class action, and was disappointed in the appellate affirmance.

23  *PhantomAlert* subsequently retained a boutique Columbia Law-trained antitrust firm to file their own

24  class action for suppressed COVID-19 apps. That counsel conducted an evidentiary session with Dr. Isaacs

25  seeking his knowledge of the various Sherman markets and technology issues intertwined with the cases.

26  Their USDC D.D.C. complaint alleged the identical DOJ "smartphone foremarket / app-distribution

27  aftermarket" and similar "App Store tying" theories as first developed by Mathews and Isaacs.  Key concepts

28  Isaacs explained during that interview appear in that complaint. *PhantomAlert* recently retained the Harvard

29  Law educated team at Berger Montague—a nationwide plaintiffs' firm staffed by former DOJ and FTC

1   attorneys and renowned for antitrust work.  Berger Montague's willingness to front substantial litigation

2   resources is powerful evidence that Plaintiffs' position is not "harassment" but an emerging consensus among

3   knowledgeable practitioners.

4       Apple apparently got wind of this, and stated to the JPML that the Good Samaritan – who engaged

5   in enterprising partnership with the Ethiopian Government (an early COVID epicenter) to develop his app–

6   was simply "disgruntled like Coronavirus Reporter's team[5]" This is a preview of how Apple would abuse

7   the requested Rule 11 injunction. *PhantomAlert* had *no* knowledge of CRC and Roberts in 2020; it reached

8   its own independent conclusion that Apple violated its Sherman Act, UCL, and First Amendment rights.

9       Apple seeks an order that would bar these affiliated entities from initiating or joining any future

10  litigation against Apple.  The injunction would prevent Isaacs and Roberts from opting in to a *PhantomAlert*

11  developer class should it prevail in appeal. None of them – or Primary Productions father & son team – could

12  join any future developer – or even consumer – class actions against Apple. Berger Montague could be barred

13  from consulting with Isaacs as a fact witness as *PhantomAlert's* prior counsel did.  Such overbreadth

14  confirms that the motion is strategic: it is designed to foreclose the next wave of developer suits, not to

15  remedy any Rule 11 defect in the existing record.

16      When evaluating the "minimal merit" prong, courts look to "indicia that the challenged speech or

17  petitioning activity is shared by others in the marketplace of ideas."  715 F.3d 254, 271 (9th Cir. 2013).  The

18  *Epic* contempt findings, *PhantomAlert's* parallel action, and Microsoft and Hagens Bermans recent filings

19  together satisfy that test.  They make Apple's probability of success on its sanctions motion—particularly

20  the sweeping injunction and fee request—vanishingly small, and they reinforce why § 425.16 protection is

21  warranted.

22      These third-party developments complete the factual backdrop.  They demonstrate that what Apple

23  brands as "serial vexatious litigation" is, in truth, iterative antitrust advocacy that has already persuaded

24  global regulators and sophisticated co-plaintiffs.  Apple's attempt to weaponize Rule 11 against that

25  advocacy necessitates invoking (sparingly) California's anti-SLAPP statute. In any case, undersigned does

26  not represent any of these individuals (Isaacs, Roberts, Primary Production's team, PhantomAlert's founder,

27  etc). Undersigned's only clients are Greenflight, Calid Inc. and CRC. The Rule 11 Motion must necessarily

---

[5] Anyone who has ever met Mr. Scott would say he is the *least* disgruntled person they've ever met.

1   fail as it did not serve any of the targets in their individual capacity. None consent to service through the

2   now-defunct corporations suing Apple.

### III.    GROUNDS FOR IMMEDIATE RELIEF

4       California's anti-SLAPP statute applies in federal court so long as it does not conflict with the Federal

5   Rules, and the Ninth Circuit has held that no such conflict exists for § 425.16. See *U.S. ex rel. Newsham v.*

6   *Lockheed Martin*, 190 F.3d 963, 971-73 (9th Cir. 1999); *Makaeff v. Trump Univ*., 715 F.3d 254, 262-63 (9th

7   Cir. 2013); *DC Comics v. Pacific Pictures*, 706 F.3d 1009, 1013-14 (9th Cir. 2013). District courts have

8   applied the statute to Sherman Act and other federal question claims without difficulty. See, e.g., *Bulletin*

9   *Displays, LLC v. Regency Outdoor Advert*., 448 F. Supp. 2d 1172, 1180-81 (C.D. Cal. 2006) (antitrust

10  counterclaim); *Globetrotter Software, Inc. v. Elan Computer Grp*., 63 F. Supp. 2d 1127, 1130-33 (N.D. Cal.

11  1999) (patent and Lanham-Act claims). Nothing in Rules 11 or 12 "answers the same question" as § 425.16's

12  two-step filter for claims aimed at petitioning activity. *Hilton v. Hallmark Cards*, 599 F.3d 894, 901-02 (9th

13  Cir. 2010). Because Apple's sanctions motion demands nationwide injunctions, punitive fees, and pre-filing

14  restraints against Plaintiffs and non-parties, it functions as a "claim" within the meaning of § 425.16 and is

15  properly subject to a merits testing special motion to strike.

16      The entire sanctions brief attacks Plaintiffs' "petitioning activity": Sherman Act complaints, a JPML

17  consolidation request, press statements, and innovative market definition research. Rule 11 is merely the

18  procedural hook; the gravamen is to punish and enjoin litigation itself. Such efforts fall concisely within §

19  425.16(e)(1)–(2).

20      If Apple truly viewed this case as an "open-and-shut" res judicata repeat, it possessed multiple

21  orthodox tools: Declaratory Judgment relief in the Northern District of California (28 U.S.C. § 2201) seeking

22  a ruling that the Wyoming filing was barred; Rule 11 motion in Wyoming the moment the original complaint

23  was filed—well before transfer—eliminating any fee "accrual" it now laments; or Rule 12(c) or Rule 56

24  motion after transfer, limited to preclusion and filed contemporaneously with its Rule 12(b)(6) brief, avoiding

25  duplicative briefing.

26      Apple eschewed each path, choosing instead to bank and "test the waters," leverage, and refine its

27  sanctions brief until the external environment was most favorable (*Epic* contempt order, DOJ suit, developer

28  class certification momentum) so that the motion could chill petitioning efforts not only by Plaintiffs but also

§ 425.16 ANTI-SLAPP SPECIAL MOTION
CASE NO. 3:24-CV-8660-EMC

by *PhantomAlert*, Berger Montague, Hagens Berman, and related petitions. Apple's App Store control – whether you call it notarization or not – is almost certainly the next 'domino' to fall now that the "national tragedy" of the Apple tax is finished. Why not target the disabled physician and small-town Maine attorney who spent five years tirelessly researching the root cause of internet censorship? And to boot, muzzle all of their associates, including a scientist who transformed the field of cardiology as we know it? Apple's request borders on witness retaliation, and this Court should respond accordingly. Apple knew a Wyoming judge wouldn't sanction a well-respected former AUSA at a community serving law firm, for merely filing a complaint almost verbatim to an underlying DOJ antitrust action. That alone foils any Rule 11 motion brought down the pipeline one year later and one week after Wyoming counsel attempted departure from the case.

The Supreme Court has reiterated for over 130 years that "the right of access to the courts is an aspect of the First Amendment right to petition the Government." *BE&K Constr. v. NLRB*, 536 U.S. 516, 524-26 (2002). Even a losing lawsuit is protected unless "objectively baseless" and filed for the purpose of harassment. *Prof'l Real Estate Inv'rs v. Columbia Pictures ("PREI"),* 508 U.S. 49, 60 (1993). Apple's sanctions brief is effectively an antitrust counterclaim under PREI's "sham litigation" doctrine—only without satisfying PREI's two-step test. The Constitution forbids that short circuit.

Monetary sanctions that exceed a party's ability to pay or lack clear limiting standards violate procedural and substantive due process. *Goodyear Tire v. Haeger*, 581 U.S. 101, 108 (2017). Apple demands blanket fees accrued over twelve months of self-chosen litigation—despite no court yet finding Plaintiffs' claims frivolous. That request is punitive, untethered to compensatory necessity, and unconstitutional. In the entire year since case initiation, Plaintiffs have spent approximately one-twentieth the fees Apple now seeks, inclusive of payments to the Wyoming law firm. Apple must provide lode star accounting; none of their submitted work product on this case references post-2021 activity, raising doubts about the exorbitant fees they seek to collect. A declaratory judgement action could have been filed a year ago, and that is effectively what their Rule 11&12 motions are: they do not reference, and refuse to reference, post-2021 activity under *Lawlor*. No matter how convoluted their logic of tangles, doesn't $400,000 in fees to argue that identity exists between the CR app and CRC corporation itself *prove* that the matter is non-trivial? Had this been raised a year ago; it might have permitted JPML consolidation of national importance for developers and consumers alike.

## IV.    BALANCING OF EQUITIES AND THE PROPER REMEDY

Apple's one year delay shows no exigency, and a long, unexplained delay weighs against sanctions. *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001) (nine-month wait undermined Rule 11 motion). Prejudice exists to Plaintiffs if an immediate response is compelled. Plaintiffs—startups bankrupted by Apple's conduct, a disabled founder, and counsel confronting potential professional discipline—would be forced to address 200+ citations covering five years of comprehensive advocacy, Ninth Circuit briefing, SCOTUS petitions, and administrative complaint records within days.  The imbalance is obvious; Rule 1's mandate of "just, speedy, and inexpensive" adjudication is not a license to "overload" an opponent by attrition. The Court would be required to take a position on each and every document in Apple's revisionist account. Evidentiary hearings on intent to "multiply the proceedings" would be mandated rather before accepting Apple's word for it; Apple is a known liar to the courts and a fellow judge remarked on their "whack-a-mole" strategy *this month* – direct evidence Apple is the party that is multiplying antitrust proceedings. To Plaintiffs, it is abundantly clear that Apple created a lawsuit-within-a-lawsuit to stall this case and unnecessarily duplicate proceedings. This is not an isolated incident. Apple filed a frivolous emergency stay two weeks ago in *Epic*. Their Supreme Court petition to block the UCL Anti-Steering failed. Their Rule 60 Motion to reopen *Epic* failed. If Apple wants to scrutinize each and every of undersigned's antitrust pleadings, then fairness dictates that Apple's failed litigation tactics – and their hundreds of millions spent on lobbying and suppressing activists like Plaintiffs – must be subject to *evidentiary hearing*.

## V. ALTERNATE RELIEF: A BRIEF LANDIS / § 425.16(G) STAY PENDING THRESHOLD RULINGS

Should the Court decline to strike Apple's motion outright, it should at minimum defer briefing until the predicate issues are resolved. A district court has "broad discretion to stay proceedings" to conserve resources and promote orderly adjudication. When a stay will not prejudice the non-movant and may streamline overlapping questions, it is routinely granted. *Chabner v. United of Omaha Life Ins.*, 225 F.3d 1042, 1048 n.3 (9th Cir. 2000) citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)

All three *Landis Factors* favor a short deferral. Apple concedes its sanctions motion "substantially overlaps" the Rule 12(b)(6)/12(d) briefing.  One ruling may moot or narrow the other, avoiding duplicative analysis of res judicata, corporate identity, and *Lawlor* claims.  Requiring a full Rule 11 response by June 13

24

would force a small developer and solo counsel to digest 100 external citations and almost 200 references spanning ten dockets involving undersigned—with Attorney Theriault's withdrawal still pending—while simultaneously opposing the Rule 12 motion and a complex evidentiary hearing.  That imbalance risks error and undermines the adversary process.  Apple litigated for a full year after first raising its res judicata theory, then chose the July 10 hearing date.  A 30-day pause—or alignment following the Rule 12 disposition—does not threaten any legitimate interest, particularly given Apple's multi trillion-dollar market capitalization and experienced and resourceful team of lawyers. In any case, undersigned does not represent Roberts, Isaacs, PhantomAlert's CEO, or Primary Productions' owners in any personal capacity, and therefore is unable to respond on their behalf to the injunction which targets innocent petitioners. They need to be served under the appropriate Rules before the Rule 11 motion could proceed.

## REQUESTED RELIEF

For the reasons set forth above Plaintiffs respectfully request that the Court grant a Special Motion to Strike (Cal. Code Civ. Proc. § 425.16) finding that Apple's sanctions motion targets protected litigation activity. In the alternative, we move to defer or stay sanctions briefing and hearing until (a) the Rule 12(b)(6) motion is resolved; (b) the Court rules on counsel Theriault's withdrawal (following the ex-parte conference already requested); and (c) the parties conduct limited, targeted discovery.  Finally, direct Apple to file, within ten (10) days, a short statement identifying each person or entity (including Dr. Roberts, Dr. Isaacs, PhantomAlert, Primary Productions LLC) that would be covered by its proposed pre-filing bar.

## CONCLUSION

Apple's sanctions broadside is not a neutral plea for professional discipline; it is the latest maneuver in a long running strategy to exhaust smaller rivals, discredit lawyers and scientists who press novel antitrust theories, and freeze a nascent developer movement that now includes *Epic*, *PhantomAlert*, Microsoft, and dozens of public interest advocates.  To make that narrative work, Apple must rewrite history, re-litigating a half decade of contentious filings, ignoring its own contradictory representations about "null entities," and recasting a routine corporate disclosure misstep as if it were fraud on the Court.  Rule 11 does not authorize that kind of tactical scorched earth litigation, and California's anti-SLAPP statute was enacted precisely to curb it.

§ 425.16 ANTI-SLAPP SPECIAL MOTION
CASE NO. 3:24-CV-8660-EMC

Submitted on this 13th day of June, 2025.

/s/ Keith Mathews
Keith Mathews
Attorney for Coronavirus Reporter Corporation et al
*Pro Hac Vice*
NH Bar No. 20997
American Wealth Protection
1000 Elm Street, Suite 800
Manchester, NH 03105

## CERTIFICATE OF SERVICE

I, Keith Mathews, do declare as follows:

I certify that a copy of the foregoing Special Motion was delivered via ECF to all interested parties.

Executed on this 13th day of June, 2025.

/s/ Keith Mathews
Keith Mathews
Attorney for Coronavirus Reporter Corporation et al
*Pro Hac Vice*
NH Bar No. 20997
American Wealth Protection
1000 Elm Street, Suite 800
Manchester, NH 03105