# EXHIBIT A

# PROCEDURAL HISTORY AND FACTUAL BACKGROUND

**February 2021** — *Coronavirus Reporter v. Apple*, No. 1:21-cv-00047 (D.N.H.) is filed. CNBC reporter Kif Leswing contacts counsel, asking about the NASA cardiologist referenced in the complaint. After consulting Dr. Robert Roberts, Keith Mathews files a First Amended complaint naming Roberts and integrating the interview notes.

**March 2021** — **"*Five Unknown Apps*" Named as Plaintiffs**

Several other developers approach counsel; some feared commercial retaliation if identified too early. To keep the spotlight on Apple's conduct rather than on vulnerable innovators, counsel submits a proposed second amended complaint that captioned the matter 'Coronavirus Reporter and "Five Unknown Apps"' as anonymous placeholders. The stratagem, unorthodox but born of safety concerns not deceit, is never accepted for filing in NHD due to pending transfer motion; yet the "app as plaintiff" nomenclature lingers.

**April 2021 — Transfer Motion predicated on Apple's unilateral DPLA.**

Apple moves under the DPLA forum selection clause to drag the New Hampshire case to this Court. Plaintiffs protest that the clause is an adhesive condition of doing any business on iOS and point out the practical dilemma it created: because the DPLA allows only the "account holder" to upload software, the COVID build had been filed from CALID's App Store Connect dashboard even though the development team later incorporated as Coronavirus Reporter Corporation. During an emergency pandemic, this saved one or two months of administrative red tape at a minimum and was therefore an essential and reasonable tactic. Apple seizes on that technicality—claiming the complaint names an app, not a corporation and meanwhile hinting at Rule 7.1 foul play—while simultaneously insisting the "app" plaintiff is bound by the very clause it says it never signed. The New Hampshire court, focused on venue, grants transfer without resolving the ownership puzzle Apple itself created.

**May 2021 — Parallel filing in Maine exposes the same DPLA trap.**

To streamline the transfer order and confusion about app standing, Mathews voluntarily dismisses in New Hampshire and re-files the claims in CAND, adding CALID Inc. In the same time period he files a separate complaint for Primary Productions, LLC in the District of Maine. Bitcoin Lottery, Primary Productions' app, had likewise been submitted through a friend's Greenflight developer account to avoid a second $99 fee—another workaround necessitated (but prohibited) by Apple's single owner rule. Apple responds with an "Objection to Corporate Disclosure," insinuating (falsely) that Greenflight secretly "owns" Primary Productions because of the upload path—an accusation flatly contradicted by the amended Rule 7.1 statement listing only the father-and-son actual members. In both dockets, Apple thus tried to convert its own restrictive contract (that forces every company making an app to have its own DPLA account ) into a narrative of "concealment," setting the stage for the sanctions broadside it now asks this Court to fully unleash.

**July 2021** — Maine forum transfer granted; USDJ notes—but does not adjudicate—Mathews' "henchmen" remark, a Noerr-Pennington protected characterization of Apple's DPLA drafters and enforcers.

When the District of Maine—again applying Apple's DPLA forum clause—orders Primary Productions transferred to this Court, Gibson Dunn files a decorum letter complaining that Mathews called the firm "Apple's henchmen." The court neither sanctions nor rules on the label; it simply reminds counsel to keep filings civil. Mathews, mindful of the court's preference, now only refers to Gibson Dunn as "Top Ranked," "Big Law," "Seasoned Litigators," and makes clarifications "not to impugn Gibson Dunn's recognition for litigating complex antitrust cases." But expressly preserved is the substantive critique that Gibson Dunn is acting as Apple's contractual enforcers and likely helped draft the DPLA itself (pending discovery).

Crucially, nothing in the Maine docket resolved the merits of Mathews' rhetoric. Under the Noerr-Pennington doctrine, attorneys enjoy First Amendment immunity when petitioning courts, even if their language is sharp edged. The Maine remark rightfully comments on the aggressiveness of the DPLA, and is, again, not meant to impugn Gibson Dunn itself. Had

discovery proceeded, Plaintiffs would have shown that Apple's use of the DPLA—and its demand that developers purchase duplicative $99 accounts for each affiliated entity—amounts to the very "coercive adherence" condemned by Sherman § 2. The transfer order merely moved the venue; it did not bless Apple's contract or foreclose Plaintiffs' right to describe, in forceful terms, why that contract functions as a felonious monopoly leash on independent developers.

**August & September 2021 —** *CR I* **First Amended Complaint consolidates apps in various lawsuits.**

In the interest of judicial economy the transferred matters are consolidated. Mathews' joins the CR App NHD lawsuit with Primary Productions and CALID App. Isaacs, *pro se*, joins to "represent Greenflight's Caller-ID app." Apple's partner Rachel Brass refuses to recognize a *pro se* appearance for a corporate owned app, and instructs her team not to correspond with Isaacs; Isaacs files an (admittedly late) sanctions motion, never reached before the consolidated case is dismissed on market definition grounds.

**December 2021** — One of the "Unknown Apps" seeks independent counsel. Mathews files *Coring Co. v. Apple*, a blockchain app developer, in the Southern District of Florida (preserving the forum clause objection); the case is transferred here and voluntarily dismissed pending resolution of the main action. It remains held in abeyance to this day to prevent unnecessary duplication of proceedings.

Nothing in this chronology is sinister or even unexpected. It reflects a dynamic, $80 billion app economy in which Apple controls the lone gateway. Counsel's effort to aggregate four or five disputed apps into a single "case study" pleading was a sensible bid for judicial efficiency, not the "stalking horse chess game" of Apple's brief. An evidentiary hearing—should the Rule 11 motion survive Anti-SLAPP review—will confirm as much.

Dismissal on pleading grounds. On 15 December 2021 this Court dismissed the "CAND CR App / CR I" case claims with prejudice for failure to plead a coherent market or antitrust injury, expressly without resolving the competing representations about whether a *pro se* litigant could effectively represent Greenflight's "Caller-ID" App.

**October 22** — In their Opening Brief before the Ninth Circuit Apple leaned hard on its "null entity" theory, arguing the Court lacked Article III jurisdiction because no real corporation had sued it. Undersigned (Mathews) was confused and believed the statement to be false:

> **10/27/2022 Correspondence: Attorney Mathews seeks clarification from Gibson Dunn Partner Rachel Brass about Ninth Circuit "Null Entity" statement in Apple's Opening Brief. Brass entertains Mathews' confusion, explaining an app cannot be a Plaintiff, thus the null entity status "is true":**
>
> Mr. Mathews,
>
> The statement in Apple's brief is true.  As far as Apple is aware, there is no extant entity "Coronavirus Reporter" to which relief could be granted.  To the extent that you are referring to the company listed in Wyoming corporate records as "Coronavirus Reporter Corporation," that is not the entity listed on the operative complaint or on any of your briefs, and you have not filed corporate disclosures identifying Coronavirus Reporter Corp. as the appellant in this case—despite our repeated requests that you comply with Local Rules and file such a disclosure below.  There is no basis for Apple to retract its brief or meet-and-confer.  If you wish to dispute the statement, the proper place to do so is in your reply brief.
>
> Best,
> Rachel
>
> <<<<<<>>>>>>
>
> Rachel:
>
> The Answering Brief you filed last week contains the following false statement:
> "As far as Apple can tell, there is no actual "Coronavirus Reporter" entity—meaning Apple is being sued by at least one null party to whom no relief could be awarded."
>
> I have informed you on several occasions that I am Chief Legal Officer for Coronavirus Reporter, a Wyoming C Corp. I have informed you that Robert Roberts is a principal shareholder of same corporation. The Wyoming Secretary of State website confirms this company is Active and in Good Standing.
>
> Your representation to the Ninth Circuit that the company is a "nullity," and hence a basis to dismiss the appeal, is knowingly false.
>
> I'm asking you to retract this statement, or Meet & Confer about a Motion to Strike the Answering Brief.
>
> Best Regards
> Keith

Undersigned Counsel was not aware of the jurisdictional defect of placing an App Name on a cover sheet. Brass informed him of this, clearly referencing the app being named on cover sheet, when she wrote "to the extent that you are referring to the company." In other words, Brass told Mathews that he named an App, not a Company, as a Plaintiff. She suggested he refute this in his Reply, but instead he conceded the point. Gibson Dunn was hoping, it would appear, to close the jurisdictional defect by prompting Mathews' to correct his mistake. That didn't happen, and the defect remains. Should the Rule 11 motion persist, an evidentiary hearing is necessary along with limited discovery into Brass' corresponding work-product.

**March 2024** — Wyoming filing of Coronavirus Reporter Corporation and Greenflight Venture Corporation. The complaint added post-2021 conduct (*Epic* Anti-Steering retaliation fees, EU CTF fees, renewed $99 fees and renewed censorship, CR App v.2.0 and 3.0 losses, 5G environmental concerns, etc.) and incorporated extensive material from the DOJ's 2024 Section 2 complaint against Apple.

**June 2024** — Plaintiffs petitioned the JPML to coordinate the case with the DOJ action in NJD. Nearly fifty plaintiffs' firms did not oppose coordination; Apple did, and the JPML exercised its discretionary authority to deny transfer.

**October 2024** — Apple again invokes DPLA forum selection, contending the Northern District of California was the mandatory venue. The Wyoming court agreed and transferred the case to this Honorable Court on 12 December 2024

***Summary***: CR App lawsuit is filed in NHD and amended to identify Roberts and include his CNBC interview. An old friend of Greenflight's founder, who independently developed a lottery business plan with no contact with Isaacs since *high school* seeks to join the CR lawsuit. Isaacs joins *pro se* in attempt to represent Greenflight's app. Three years later, after Apple engages in civil contempt – and later found of guilty of lying under oath in anti-steering and CTF matters—Isaacs seeks Rule 60 review. Mathews alleges the same for the corporations, and accepts Gibson Dunn's determination that an App has no standing as a legal entity. Apple waits *thirteen* months for a declaratory judgement after learning about the null entity re-filing; meanwhile fifty law firms in a JPML MDL do not oppose consolidation of CRC.

This is pure antitrust advocacy against a *tough* opponent willing to lie under oath, lobby, and retaliate against nearly *every* antitrust petitioner. Not a single shred of evidence points towards any other motive.