1  RACHEL S. BRASS (SBN 219301)
   rbrass@gibsondunn.com
2  JULIAN W. KLEINBRODT (SBN 302085)
3  jkleinbrodt@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP
4  One Embarcadero Center
   Suite 2600
5  San Francisco, CA  94111-3715
   Telephone:    415.393.8200
6  Facsimile:    415.393.8306
7
   *Attorneys for Defendant Apple Inc.*
8

9              UNITED STATES DISTRICT COURT
10           NORTHERN DISTRICT OF CALIFORNIA
               SAN FRANCISCO DIVISION
11

12  Coronavirus Reporter Corporation, Calid Inc.,    CASE NO. 3:24-CV-08660-EMC
    Greenflight Venture Corporation, *on behalf of*
13  *themselves and all others similarly situated,*    **DEFENDANT APPLE INC.'S**
                                                       **OPPOSITION TO PLAINTIFFS' MO-**
14                                                     **TION PURSUANT TO CALIFORNIA**
                        Plaintiffs,                    **CIVIL CODE PROCEDURE § 425.16**
15          v.
16  Apple Inc.
17                      Defendant.                     The Honorable Edward M. Chen
18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

    I.    California's Anti-SLAPP Law Does Not Apply to Apple's Sanctions Motion. ......... 1

        A.    California's Anti-SLAPP Law Cannot Be Used to Strike Apple's Sanctions Motion. ....................................................................................... 2

        B.    Apple Has Not Raised State-Law Claims Subject to the Anti-SLAPP Statute. ............................................................................................................. 4

        C.    Apple Is Not Seeking to Suppress Protected Speech. .................................... 5

    II.    Plaintiffs' Motion Also Fails as Apple Is Likely to Succeed in Its Request for Sanctions. ................................................................................................................. 6

        A.    Apple's Motion for Sanctions Is Timely. ...................................................... 6

            1.    Apple Did Not Unduly Delay in Moving for Sanctions. ................... 7

            2.    Apple Complied with Rule 11's Safe Harbor Requirement. ............... 9

        B.    Apple's Requests for Sanctions Under Rule 11 Are Likely to Be Granted. ....................................................................................................... 10

            1.    Apple's Arguments About CALID Are Likely to Succeed. ............. 10

            2.    Apple's Arguments About Coronavirus Reporter Corp. and Greenflight Are Likely to Succeed. .................................................. 11

            3.    Plaintiffs Fail to Show That Their Conduct Is Not Harassing. ............ 16

        C.    Plaintiffs Offer No Meaningful Opposition to the Additional Bases for Sanctions. .................................................................................................... 18

        D.    Plaintiffs' Other Arguments Are Meritless. ............................................... 21

    III.    Apple's Proposed Remedies Are Appropriate. ........................................................ 22

CONCLUSION .................................................................................................................. 23

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A-Abart Elec. Supply, Inc. v. Emerson Elec. Co.*,
  956 F.2d 1399 (7th Cir. 1992) ................................................................................................6

*Altmann v. Homestead Mortg. Income Fund*,
  887 F. Supp. 2d 939 (E.D. Cal. 2012) ...................................................................................17

*Aptos Residents Ass'n v. Cnty. of Santa Cruz*,
  20 Cal. App. 5th 1039 (2018) ................................................................................................19

*Arizona v. Tohono O'odham Nation*,
  818 F.3d 549 (9th Cir. 2016) ................................................................................................14

*Baral v. Schnitt*,
  1 Cal. 5th 376 (Cal. 2016) ...........................................................1, 2, 3, 4, 5, 6, 18, 22

*Est. of Blue v. Cnty. of L.A.*,
  120 F.3d 982 (9th Cir. 1997) ............................................................................................ 6, 17

*Bresgal v. Brock*,
  843 F.2d 1163 (9th Cir. 1987) ..............................................................................................22

*Bulletin Displays, LLC v. Regency Outdoor Advert., Inc.*,
  448 F. Supp. 2d 1172 (C.D. Cal. 2006) ..................................................................................5

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
  498 U.S. 533 (1991) ..............................................................................................................12

*Buster v. Greisen*,
  104 F.3d 1186 (9th Cir. 1997) ..................................................................................10, 14, 17

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ..................................................................................12, 21, 23

*Cohen v. Lupo*,
  927 F.2d 363 (8th Cir. 1991) ..................................................................................................3

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ..................................................................................................5, 17, 23

*Cordova v. Univ. Hosp. & Clinics, Inc.*,
  92 F.4th 266 (5th Cir. 2024) ...................................................................................................5

*Coronavirus Reporter v. Apple Inc.*,
  85 F.4th 948 (9th Cir. 2023) ........................................................................................... 11, 19

*DC Comics v. Pac. Pictures Corp.*,
  706 F.3d 1009 (9th Cir. 2013) ................................................................................................4

*In re Distilled Spirits*,
    78 U.S. 356 (1870)..................................................................................................23

*Dotson v. Bravo*,
    321 F.3d 663 (7th Cir. 2003) ..................................................................................19

*E. Bay Sanctuary Covenant v. Biden*,
    993 F.3d 640 (9th Cir. 2021) ..................................................................................22

*Est. of Smith v. City of San Diego*,
    764 F. App'x 641 (9th Cir. 2019) .............................................................................4

*Felix v. Am. Honda Motor Co.*,
    562 F.3d 1167 (Fed. Cir. 2009) ...............................................................................20

*Geiser v. Kuhns*,
    13 Cal. 5th 1238 (Cal. 2022) .....................................................................................2

*Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*,
    63 F. Supp. 2d 1127 (N.D. Cal. 1999)....................................................................4, 5

*Goodyear Tire & Rubber Co. v. Haeger*,
    581 U.S. 101 (2017)..................................................................................................23

*In re Gottheiner*,
    703 F.2d 1136 (9th Cir. 1983) .....................................................................14, 15, 16

*Guessous v. Chrome Hearts, LLC*,
    179 Cal. App. 4th 1177 (2009) ...................................................................................3

*Gwaduri v. INS*,
    362 F.3d 1144 (9th Cir. 2004) ...........................................................................10, 12

*Handloser v. HCL Am., Inc.*,
    2020 WL 4700989 (N.D. Cal. Aug. 13, 2020)........................................................20

*Haynes v. City & Cnty. of San Francisco*,
    688 F.3d 984 (9th Cir. 2012) ...................................................................................23

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ..................................................................................4, 5

*Holgate v. Baldwin*,
    425 F.3d 671 (9th Cir. 2005) ...........................................................................6, 9, 20

*Islamic Shura Council v. FBI*,
    757 F.3d 870 (9th Cir. 2014) .............................................................................13, 14

*King v. Fleming*,
    899 F.3d 1140 (10th Cir. 2018) .................................................................................5

*Lake v. Gates*,
    130 F.4th 1064 (9th Cir. 2025) ...........................................................................6, 12

iv

Gibson, Dunn &
Crutcher LLP

*Lumasense Techs., Inc. v. Advanced Eng'g Servs.*,
    2021 WL 1197417 (N.D. Cal. Mar. 30, 2021) ........................................................... 5

*M.G. v. Time Warner, Inc.*,
    89 Cal. App. 4th 623 (2001) ................................................................................. 2

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) ........................................................................ 3, 4, 20

*Makaeff v. Trump Univ., LLC*,
    2013 WL 990918 (S.D. Cal. Mar. 12, 2013) .......................................................... 20

*In re Marriage of Benner*,
    36 Cal. App. 5th 177 (2019) ................................................................................. 2

*Mattel, Inc. v. MGA Entertainment, Inc.*,
    705 F.3d 1108 (9th Cir. 2013) .............................................................................. 20

*McDonald v. Khurshid*,
    2006 WL 1328869 (W.D. Wash. May 15, 2006) ..................................................... 17

*McMahon v. Pier 39 Ltd. P'ship*,
    2003 WL 22939233 (N.D. Cal. Dec. 5, 2003) ........................................................ 17

*Miller v. Am. Family Mut. Ins. Co.*,
    532 F. App'x 652 (9th Cir. 2013) .......................................................................... 6

*Mulay Plastics, Inc. v. Grand Trunk W. R.R. Co.*,
    742 F.2d 369 (7th Cir. 1984) ............................................................................... 3

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
    190 F.3d 963 (9th Cir. 1999) ............................................................................... 4

*Noreikas v. Roach*,
    2013 WL 28082 (S.D. Ohio Jan. 2, 2013) .............................................................. 3

*Optyl Eyewear Fashion Intern. Corp. v. StyleCos., Ltd.*,
    760 F.2d 1045 (9th Cir. 1985) ............................................................................. 18

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
    151 Cal. App. 4th 688 (2007) ..................................................................... 1, 10, 11

*Park v. Kim*,
    91 F.4th 610 (2d Cir. 2024) ................................................................................ 20

*In re Peoro*,
    793 F.2d 1048 (9th Cir. 1986) ............................................................................. 18

*Port Drum Co. v. Umphrey*,
    852 F.2d 148 (5th Cir. 1988) ............................................................................... 3

*Radcliffe v. Rainbow Constr. Co.*,
    254 F.3d 772 (9th Cir. 2001) ............................................................................... 9

*Riese v. Cnty. of Del Norte*,
   2013 WL 4732603 (N.D. Cal. Sept. 3, 2013) ............................................................. 5

*Roundtree v. United States*,
   40 F.3d 1036 (9th Cir. 1994) ....................................................................................... 14

*RZS Holdings AVV v. PDVSA Petroleo S.A.*,
   506 F.3d 350 (4th Cir. 2007) ....................................................................................... 22

*Salyers v. Metro Life Ins. Co.*,
   871 F.3d 934 (9th Cir. 2017) ....................................................................................... 23

*Sheppard v. Lightpost Museum Fund*,
   146 Cal. App. 4th 315 (2006) ....................................................................................... 3

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
   322 F.3d 1064 (9th Cir. 2003) ............................................................................... 14, 15

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ..................................................................................................... 14

*Tendler v. www.jewishsurvivors.blogspot.com*,
   164 Cal. App. 4th 802 (2008) ........................................................................................ 2

*Thompson v. Parto*,
   2024 WL 4707884 (9th Cir. Nov. 7, 2024) .................................................................. 4

*Toombs v. Leone*,
   777 F.2d 465 (9th Cir. 1985) ....................................................................................... 18

*Townsend v. Holman Consulting Corp.*,
   929 F.2d 1358 (9th Cir. 1990) ..................................................................................... 12

*Truesdell v. S. Cal. Permanente Med. Grp.*,
   209 F.R.D. 169 (C.D. Cal. 2002) .................................................................................. 9

*United Nat. Ins. Co. v. R&D Latex Corp.*,
   242 F.3d 1102 (9th Cir. 2001) ....................................................................................... 8

*United Specialty Ins. Co. v. Dorn Homes Inc.*,
   2020 WL 8416010 (N.D. Cal. Jan. 9, 2020) ................................................................ 7

*United States v. Kenney*,
   911 F.2d 315 (9th Cir. 1990) ....................................................................................... 21

*In re Way*,
   229 B.R. 11 (9th Cir. Bankr. 1998) ............................................................................... 3

*Zaldivar v. City of L.A.*,
   780 F.2d 823 (9th Cir. 1986) ....................................................................................... 17

*Zocaras v. Castro*,
   465 F.3d 479 (11th Cir. 2006) ............................................................................... 10, 12

**Statutes**

28 U.S.C. § 2072 ...................................................................................................................3

Cal. Civ. Proc. Code § 47 ......................................................................................................6

Cal. Civ. Proc. Code § 425.16 ............................................................................... 1, 2, 5,10, 23

**Rules**

Fed. R. Civ. P. 7 ....................................................................................................................2

Fed. R. Civ. P. 7.1(a)(1) .......................................................................................................13

Fed. R. Civ. P. 8 ....................................................................................................................2

Fed. R. Civ. P. 10 .................................................................................................................13

Fed. R. Civ. P. 11 ........................................................................................... 7, 9, 10, 13, 17

Fed. R. Civ. P. 13 ..................................................................................................................2

Fed. R. Civ. P. 17 ........................................................................................................... 11, 13

N.D. Cal. L.R. 3-15(b)(2) .....................................................................................................13

N.D. Cal. L.R. 7-5 ...................................................................................................17, 18, 21

N.D. Cal. L.R. 7-8(d) .............................................................................................................7

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' ANTI-SLAPP MOTION
CASE NO. 3:24-CV-08660-EMC

**INTRODUCTION**

Rather than file a brief in opposition to Apple's motion for sanctions as the Rules prescribe, Plaintiffs have added to their ever-increasing stack of meritless motions.  Plaintiffs' Motion Pursuant to California Civil Code Procedure § 425.16 (hereinafter, the "anti-SLAPP statute")—a request to strike Apple's motion for sanctions in lieu of an opposition thereto—invokes an inapplicable state law, fails on its merits several times over, and is replete with erroneous citations.  It is the capstone on a vexatious campaign of litigation, underscoring why sanctions should be imposed on Plaintiffs.

First, Plaintiffs' motion should be denied because California's anti-SLAPP statute cannot be used to strike a motion seeking relief under federal law.  The anti-SLAPP statute protects against "*lawsuits* brought primarily to chill the valid exercise of constitutional rights."  Cal. Code Civ. P. § 425.16(a) (emphasis added).  It cannot be used to strike a motion, as Plaintiffs request.  Nor can it be used to strike requests for relief made pursuant to federal law—as each of Apple's requested sanctions are.  And the notion that Apple seeks to "chill antitrust advocacy work," Mot. 1, is upside down.  Plaintiffs have had many days in court, and Apple sought sanctions as a last resort to end ongoing harassment that is draining the Court's resources and burdening Apple.

Even if Plaintiffs' motion were procedurally proper, it fails because Apple's motion for sanctions has "a probability of success."  *Baral v. Schnitt*, 1 Cal. 5th 376, 384–85 (Cal. 2016).  Plaintiffs ignore several independent bases for sanctions, all but conceding that Apple is likely to succeed—and at least has established the "minimal merit" needed to defeat an anti-SLAPP motion.  *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 700 (2007).  None of the arguments Plaintiffs offer are persuasive: In largely rehashing arguments made elsewhere, Plaintiffs fail to show that their claims were not frivolous, they have litigated this case for any proper purpose, or that their counsel's conduct was anything but vexatious.

Plaintiffs' motion to strike should be denied, and the Court should proceed to decide and grant Apple's motions to dismiss and for sanctions.

**ARGUMENT**

**I.    California's Anti-SLAPP Law Does Not Apply to Apple's Sanctions Motion.**

Plaintiffs' invocation of California's anti-SLAPP law is misplaced for three reasons.  First, the

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' ANTI-SLAPP MOTION
CASE NO. 3:24-CV-08660-EMC

anti-SLAPP law allows defendants to strike "strategic lawsuits"—not motions.  Second, the state anti-SLAPP law does not apply in this federal case, where Apple's requests for sanctions arise solely from federal law.  Third, Apple's motion for sanctions targets Plaintiffs' improper litigation conduct, not privileged speech.  For each independent reason, Plaintiffs' request to strike should be denied.

A.    **California's Anti-SLAPP Law Cannot Be Used to Strike Apple's Sanctions Motion.**

Plaintiffs' motion to strike fails at the outset because Apple's motion for sanctions is not a lawsuit subject to the anti-SLAPP statute.  California Code of Civil Procedure § 425.16 protects litigants from "strategic lawsuits against public participation" (what "SLAPP" stands for).  *Geiser v. Kuhns*, 13 Cal. 5th 1238, 1242 (Cal. 2022).  To that end, the statute's plain text provides for a "special motion to strike . . . [a] *cause of action* against a person arising from any act of that person in furtherance of the person's right of petition or free speech."  Cal. Code Civ. Proc. § 425.16 subd. (b)(1) (emphasis added).  Thus, anti-SLAPP motions are a "way of challenging particular allegations within a pleading" that "are asserted as grounds for relief," "alleged to justify a remedy," and thereby "support[] a claim for recovery."  *Baral*, 1 Cal. 5th at 394–95 (emphasis omitted); *see also M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623, 627 (2001) ("[T]he anti-SLAPP statute allows a motion to strike to be made against only a cause of action.").  They are not a device to strike motions, which are distinct from pleadings and do not assert causes of action.  *See* Fed. R. Civ. P. 7, 8, 13 (distinguishing motions from pleadings, the latter of which assert claims and counterclaims).

California courts are unanimous in rejecting attempts—like Plaintiffs'—to strike filings, like Apple's motion, that do not assert a cause of action.  For example, the California Court of Appeal held in *In re Marriage of Benner* that a petition for joinder was not subject to the anti-SLAPP statute, emphasizing that "a special motion to strike [under the anti-SLAPP statute] may *not* be brought to attack pleadings that do not contain a cause of action."  36 Cal. App. 5th 177, 190 (2019) (emphasis in original).  Another Court of Appeal refused to consider anti-SLAPP motions against a request for a subpoena, holding that anti-SLAPP motions are not proper against pleadings that do "not contain any causes of action" and do "not serve to initiate a judicial proceeding."  *Tendler v. www.jewishsurvivors.blogspot.com*, 164 Cal. App. 4th 802, 807–08 (2008).  Other examples are legion.  *See, e.g.*,

*Sheppard v. Lightpost Museum Fund*, 146 Cal. App. 4th 315, 322–24 (2006) (holding that a claim asserted in arbitration was not a cause of action and therefore not subject to section 425.16); *Guessous v. Chrome Hearts, LLC*, 179 Cal. App. 4th 1177, 1187 (2009) ("[S]ection 425.16 applies only to a cause of action, not to a remedy."). In short, an anti-SLAPP motion may only "be used to attack *parts of a count as pleaded*." *Baral*, 1 Cal. 5th at 393 (emphasis added).

Urging the Court to construe the anti-SLAPP statute "broadly," Plaintiffs argue that Apple's sanctions motion "function[s] as a standalone lawsuit or action" because it seeks "substantial relief beyond mere sanctions." Mot. 3–4; *see also id.* at 22. That is incorrect. Rules authorizing sanctions do not "confer new substantive rights" and therefore do not give rise to "cause[s] of action." *Port Drum Co. v. Umphrey*, 852 F.2d 148, 150 (5th Cir. 1988); *see also Cohen v. Lupo*, 927 F.2d 363, 365 (8th Cir. 1991) ("[T]here can be no independent cause of action instituted for Rule 11 sanctions."); *Mulay Plastics, Inc. v. Grand Trunk W. R.R. Co.*, 742 F.2d 369, 371 (7th Cir. 1984) (sanctions are not "a separate 'claim for relief'" or "substantive claim"). Under the Rules Enabling Act, it could not be otherwise. *See* 28 U.S.C. § 2072 (prohibiting procedural rules, like Rule 11, from creating or modifying substantive rights).

Nor do Apple's remedial requests transform Apple's motion for sanctions into something else. Even "the harshest sanction" does not "convert Rule 11"—or any other basis for sanctions—"from a 'rule [that] really regulates procedure' into one that instead creates new substantive rights." *Port Drum*, 852 F.2d at 150. And as Apple explained in its motion, awards of attorneys' fees, revocation of attorney admissions, and pre-filing injunctions are well within the Court's authority in cases like this. *See* Dkt. 70 at 22–25; *see also infra* 22–23. Put another way, no one claims Apple could have filed its sanctions motion as a new lawsuit. *See, e.g.*, *Noreikas v. Roach*, 2013 WL 28082, at *2 (S.D. Ohio Jan. 2, 2013) (request "to impose Rule 11 sanctions" is not "an independent cause of action" assertable as a claim).

The sole case Plaintiffs cite does not support their argument. *See* Mot. 4. In *Makaeff v. Trump University, LLC*, the Ninth Circuit confronted an anti-SLAPP motion directed at a defamation *counterclaim*. 715 F.3d 254, 261–63 (9th Cir. 2013). But "[a] counterclaim is an independent cause of action." *In re Way*, 229 B.R. 11, 14 (9th Cir. Bankr. 1998). Nothing in *Makaeff* suggests that Apple's requests for sanctions can be "treated as [a] 'claim[]'" subject to anti-SLAPP protections." Mot. 4; *see*

*Makaeff*, 715 F.3d at 261 (observing the anti-SLAPP statute authorizes motions directed at "*an action*," concerns the merit of "the plaintiff's *suit*," and allows a "*claim* [to] be dismissed") (emphasis added). Indeed, the "central purpose of the statute" is to "screen[] out meritless claims that arise from protected activity, before the defendant is required to undergo the expense and intrusion of discovery." *Baral*, 31 Cal.5th at 392. By contrast, Apple is the one that has been sued, subjected to costly litigation, and sought to protect both its rights and the integrity of the judicial process in the face of harassing, bad faith litigation. *See* Dkt. 70 at 1–2.

     **B.**     **Apple Has Not Raised State-Law Claims Subject to the Anti-SLAPP Statute.**

Even if Apple's requests for sanctions qualified as causes of action, California's anti-SLAPP law still cannot apply here because "a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims." *Hilton v. Hallmark Cards*, 599 F.3d 894, 900–01 (9th Cir. 2010). Entertaining Plaintiffs' analogy that Apple's requests for sanctions are claims (*see* Mot. 5) would mean that each of Apple's causes of action arise under federal law. *See* Dkt. 70 at 2 (seeking sanctions under Federal Rule of Civil Procedure 11, this Court's inherent authority, and 28 U.S.C. § 1927). They would therefore be immune from challenge under the anti-SLAPP statute, lest there be an impermissible conflict between state and federal law. *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 63 F. Supp. 2d 1127, 1129–30 (N.D. Cal. 1999); *see also*, *e.g.*, *Est. of Smith v. City of San Diego*, 764 F. App'x 641, 641 (9th Cir. 2019) ("California's anti-SLAPP statute cannot be used to strike a federal claim."); *Thompson v. Parto*, 2024 WL 4707884, at *2 (9th Cir. Nov. 7, 2024) (similar).[1]

None of the cases Plaintiffs cite permit a different approach. They first cite a series of cases that recognize California's anti-SLAPP statute can be used to strike *state law claims* heard in federal court. *See U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 970–73 (9th Cir. 1999); *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1011 (9th Cir. 2013); *Makaeff*, 715 F.3d at 260. The two additional cases Plaintiffs cite to suggest "courts have applied the statute to Sherman

---

[1] That Plaintiffs have filed a state law claim, Dkt. 30 ¶¶ 338–54, is irrelevant. An impermissible conflict is created between state and federal law when a state-law device is used to dismiss or strike a claim grounded in a federal substantive right. *See Globetrotter Software*, 63 F. Supp. 2d at 1129–30.

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' ANTI-SLAPP MOTION
CASE NO. 3:24-CV-08660-EMC

Act and other federal question claims without difficulty," Mot. 22, in fact say the opposite.  In *Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc.*, Judge Carney rejected an attempt to strike federal RICO and Clayton Act claims under the anti-SLAPP law because, "[a]lthough the anti-SLAPP statute does apply to state law claims brought in federal court, . . . it does not apply to federal question claims in federal court."  448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006).  And in *Globetrotter Software*, Judge Fogel likewise held that "the anti-SLAPP statute is not applicable to the federal claims."  63 F. Supp. 2d at 1130.  Contrary to Plaintiffs' contentions, "[t]he Ninth Circuit has made clear that Califor-nia's 'anti-SLAPP statute does not apply to federal law causes of action.'"  *Lumasense Techs., Inc. v. Advanced Eng'g Servs.*, 2021 WL 1197417, at *3 (N.D. Cal. Mar. 30, 2021) (quoting *Hilton*, 599 F.3d at 901); *see also Riese v. Cnty. of Del Norte*, 2013 WL 4732603, at *3, 6 (N.D. Cal. Sept. 3, 2013).

### C.    Apple Is Not Seeking to Suppress Protected Speech.

Plaintiffs' attempt to invoke the anti-SLAPP statute fails for a third threshold reason: Apple's motion does not target an "act of that person in furtherance of [Plaintiffs'] right of petition or free speech."  Cal. Code Civ. Proc. § 425.16 subd. (b)(1); *see also Baral*, 1 Cal. 5th at 396 ("At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them.").  Plaintiffs maintain that "Apple's motion targets quintessential petitioning activity—filing Sherman Act complaints about censorship."  Mot. 2.  Not so.  Rule 11 targets misconduct within and misuse of the judicial system, not free speech.  *See, e.g.*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990) (Rule 11 is "aimed at curbing abuses of the judicial system").  That is why "there is no First Amendment exception to a Rule 11 violation."  *Cordova v. Univ. Hosp. & Clinics, Inc.*, 92 F.4th 266, 274 (5th Cir. 2024), *cert. denied sub nom. Mire v. Univ. Hosp. & Clinics, Inc.*, 144 S. Ct. 2608 (2024) (quotation marks omitted).  To that end, Apple moved for sanctions because of Plaintiffs' varied misuse of the judicial system.  *See* Dkt. 70 at 10–25; *see also King v. Fleming*, 899 F.3d 1140, 1151 n.17 (10th Cir. 2018) (rejecting argument that filing a frivolous complaint is an "exercis[e]" of one's "First Amendment right to access to court" because "the First

Amendment is in no way a defense to Rule 11 violations").[2]

Under Plaintiffs' theory, a defendant could never seek sanctions for being subjected to a frivolous complaint (or other baseless filing). Nothing in law or logic suggests that filing an antitrust (or any other) claim puts a plaintiff beyond the ordinary rules imposed on litigants and their advocates. *See A-Abart Elec. Supply, Inc. v. Emerson Elec. Co.*, 956 F.2d 1399, 1407 (7th Cir. 1992) (sanctions for filing, and appealing the dismissal of, frivolous antitrust claims). The many decisions imposing sanctions for filing frivolous complaints disprove the premise of Plaintiffs' argument. *See, e.g., Lake v. Gates*, 130 F.4th 1064, 1070 (9th Cir. 2025); *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005); *Est. of Blue v. Cnty of L.A.*, 120 F.3d 982, 985 (9th Cir. 1997). If anything, Plaintiffs are turning the anti-SLAPP statute on its head by trying to short-circuit Apple's right to seek the "the proper discharge of an official duty" in a "judicial proceeding." Cal. Civ. Code § 47. The Court should deny Plaintiffs' attempt to avoid a reckoning for their misconduct and proceed to decide Apple's sanctions motion on its merits.

## II.    Plaintiffs' Motion Also Fails as Apple Is Likely to Succeed in Its Request for Sanctions.

The Court also should deny Plaintiffs' anti-SLAPP motion for the independent reason that Apple's motion for sanctions has "a probability of success." *Baral*, 1 Cal. 5th at 384–85. This "inquiry is limited to whether [Apple] has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." *Id.* Plaintiffs argue Apple's "probability of success on its sanctions motion . . . [is] vanishingly small." Mot. 5, 21. That is incorrect: Plaintiffs' arguments do not defeat the multiple, independent grounds for sanctions—many of which Plaintiffs have altogether ignored. *See Miller v. Am. Family Mut. Ins. Co.*, 532 F. App'x 652, 653 (9th Cir. 2013) (party waives opposition to arguments by failing to respond to them).

### A.    Apple's Motion for Sanctions Is Timely.

Plaintiffs first argue that Apple's motion is untimely because it was filed both too late and too early. *See* Mot. 7–8, 18–22. Each argument fails.

---

[2] Plaintiffs impugn the "timing" of Apple's motion (Mot. 4–5) but cite no authority suggesting the timing of Apple's motion affects the applicability of the anti-SLAPP statute. Apple litigated Plaintiffs' claims on the merits and moved for sanctions only as a last resort in the face of repeated, recalcitrant misconduct.

1          **1.     Apple Did Not Unduly Delay in Moving for Sanctions.**

2          There is no express time limit on motions for sanctions under Rule 11, 28 U.S.C. § 1927 or the

3     Court's inherent authority, and the Local Rules provide that such a motion should be made "as soon as

4     practicable" but no "more than 14 days after the entry of judgment."  N.D. Cal. L.R. 7-8(c)–(d).  Apple

5     did so.  After Plaintiffs improperly filed this case in the District of Wyoming, Apple sought to transfer

6     it to this Court—in accordance with the Developer Program License Agreement's forum-selection

7     clause and because of this Court's familiarity with the issues.  *See* Dkt. 20.  Once transferred, Apple

8     related this case to *Coronavirus I*, sought and obtained a briefing schedule for a motion to dismiss,

9     briefed the motion to dismiss, and moved for sanctions while resolution of the motion to dismiss was

10    pending.  *See Coronavirus I*, Dkt. 132; Dkts. 60, 62, 64, 70.  Courts recognize that sanctions motions

11    presenting issues intertwined (at least in part) with the merits of the case, like the one Apple has filed,

12    are properly brought with or after related merits motions.  *See United Specialty Ins. Co. v. Dorn Homes*

13    *Inc.*, 2020 WL 8416010, at *3 (N.D. Cal. Jan. 9, 2020) (collecting cases); *see also* Fed. R. Civ. P. 11

14    advisory committee's note to 1983 amendment ("[I]t is anticipated that in the case of pleadings the

15    sanctions issue under Rule 11 normally will be determined at the end of the litigation.").  The timing

16    of Apple's motion therefore was reasonable.

17          To the extent Plaintiffs bemoan the amount of time that has passed since they filed their com-

18    plaint, those delays fall on their shoulders.  *See* Mot. 8.  Despite being bound by a forum-selection

19    clause—and despite acknowledging that this Court is "best positioned to adjudicate" the merits of this

20    case, Dkt. 38-1 at 5—Plaintiffs filed in another jurisdiction and then resisted transfer at every oppor-

21    tunity.  *See* Dkt. 44 at 5–10 (rejecting Plaintiffs' arguments against transfer).  That included a needless

22    detour to the Judicial Panel on Multi-District Litigation, which caused the Wyoming Court to stay this

23    case for a time.  *See* Dkt. 37 (rejecting Plaintiffs' request to transfer into an MDL); *see also* Dkt. 57 at

24    1–2 (recounting procedural history).  Rather than agreeing to relation once this case came to this Court,

25    Plaintiffs also made an issue out of that straightforward administrative request.  *See* Dkt. 48.  Then,

26    Plaintiffs filed a baseless request for entry of default, Dkt. 55—spinning off another sideshow that the

27    Clerk denied, Dkt. 57.  And rather than respond to Apple's motions to dismiss and for sanctions in the

28    course prescribed by the Local Rules, Plaintiffs have responded with additional motions (each with its

own branch of briefing) to rehash their same arguments. *See*, *e.g.*, Dkts. 67, 74, 75. That more than a year of litigation will pass before Apple's motion to dismiss is heard is a testament to Plaintiffs' vexatious litigation strategy. *See* Dkt. 70 at 20–22.

Plaintiffs argue that Apple nonetheless should have moved earlier because "nothing changed from over a year ago." Mot. 7–8. Even setting aside that it is proper to file a sanctions request in tandem with (or even after the resolution of) a related merits motion, Plaintiffs ignore that Apple's motion encompasses conduct that has occurred over the past year. While Apple warned Plaintiffs repeatedly that their "null entity" defense to *res judicata* was frivolous from the moment they disclosed it (Dkt. 70 at 8–9; *see also*, *e.g.*, Dkt. 70-7; Dkt. 70-8), for example, Apple served its motion only after Plaintiffs doubled down on that position as a substantive basis for resisting dismissal. *See* Dkt. 63 at 3–9. Apple's motion also explains that Plaintiffs' other conduct over the past year is part of the corpus that gives rise to sanctions under Rule 11, the Court's inherent authority and 28 U.S.C. § 1927. *See* Dkt. 70 at 20–22. And Plaintiffs' misconduct continues. Dkt. 72 at 8–9 n.3; *see also infra* 19–21 (detailing Plaintiffs' repeated misrepresentation of cited authorities in recent filings). Plaintiffs cite no authority to support their argument that Apple's motion is untimely.

Plaintiffs also are wrong to suggest that Apple should have filed a declaratory judgment in Wyoming or filed the Rule 11 motion in Wyoming. Mot. 7. A litigant cannot file an independent action for a declaratory judgment seeking sanctions. *See supra* 3. Nor would it have made sense to file a Rule 11 motion in Wyoming. Plaintiffs likely would have argued such a motion was premature insofar as Apple had not yet moved to dismiss. *See* Mot. 24–25 (arguing the Court should defer Apple's sanctions motion until it decides Apple's motion to dismiss, which it separately argues should be deferred for discovery). And because the issues in Apple's motion are informed by *Coronavirus I*, it makes far more sense for this Court to resolve them than the Wyoming Court. *See* Dkt. 38-1 at 5 (recognizing this Court's superior position to evaluate *res judicata*).

Plaintiffs characterize Apple's stepwise approach as "testing the waters." Mot. 7. But that is how litigants should approach Rule 11 issues—with "sensitivity," proceeding "only in the most egregious situations" after ample time for the offending party to self-correct. *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001). Apple repeatedly warned Plaintiffs about their

misleading statements and offered every opportunity to retract their claims and abandon their frivolous arguments. Having pressed ahead, Plaintiffs cannot fault Apple for concluding it had no option but to move for sanctions.[3]

### 2. Apple Complied with Rule 11's Safe Harbor Requirement.

After arguing Apple waited too long to file its sanctions motion, Plaintiffs maintain Apple filed too soon in violation of Rule 11's safe harbor. *See* Mot. 5. To be clear, there is no dispute that Apple filed its motion more than 21 days after serving it. *Id.*; *see also* Dkt. 70-1 ¶ 12. As Plaintiffs tell it, their intervening decision to file a Motion for Rule 12(d) Conversion (Dkt. 67) "subtantive[ly] change[d]" the posture of this case, requiring Apple to retool and reserve its motion and thereby restart a new 21-day clock. Mot. 5. But filings or orders do not "'cut off' the 21-day 'safe harbor' period" unless they "correct[]" the challenged submissions. *Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 178 (C.D. Cal. 2002); *see also* Fed. R. Civ. P. 11(c)(2) (stating a Rule 11 motion "must not be filed . . . if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days"). Nothing in Plaintiffs' Rule 12(d) motion—which tripled down on their frivolous arguments—undermines Apple's sanctions motion. *See* Dkt. 72 at 2–5, 9–10 (explaining why Plaintiffs' arguments do not overcome the *res judicata* bar). To endorse Plaintiffs' argument would mean litigants could forestall a Rule 11 motion in perpetuity merely by filing more meritless motions before the safe harbor expired.

The three cases plaintiffs cite do not support such a nonsensical result. *See* Mot. 5. In *Holgate v. Baldwin*, the Ninth Circuit held that a party cannot satisfy the safe harbor by "styling its motion for sanctions as a joinder to [another party's] properly filed Rule 11 motion" which complied with the safe harbor—a point not at issue here. 425 F.3d at 679. And *Radcliffe v. Rainbow Construction Co.* merely states that "informal warnings" do not satisfy Rule 11's safe harbor, which requires "service of the motion"—also not an issue here. 254 F.3d 772, 788–89 (9th Cir. 2001). Most egregious is Plaintiffs' citation to "*Atari Interactive, Inc. v. Redbubble, Inc.*," 2019 WL 6723422, at *8 (N.D. Cal. Dec. 10,

---

[3] Nor was Apple's timing tactical. *See* Mot. 8. Apple sent Plaintiffs its sanctions brief on April 23. *See* Dkt. 70-1 ¶ 12. Apple filed it 37 days later. Dkt. 70. If Plaintiffs faced a tight briefing schedule, that resulted from their evident choice to delay preparing a response until Apple *filed* the motion and to instead file a Rule 12(d) motion, Dkt. 67, and now this anti-SLAPP motion, Dkt. 74.

2019).” Mot. 5. That Westlaw citation directs to an order dismissing a claim for promissory fraud in *Mesa Safe Co., Inc. v. Amazon.com Servs., Inc.*, 2019 WL 6723422, at *1 (C.D. Cal. Oct. 4, 2019). No motion for sanctions appears to have been filed in the *Atari* litigation. Kleinbrodt Decl. Ex. 1. All cited authority confirms Apple's Rule 11 motion is ripe and timely.

### B.    Apple's Requests for Sanctions Under Rule 11 Are Likely to Be Granted.

Apple identified multiple grounds for Rule 11 sanctions: Plaintiffs' claims are clearly barred by *res judicata*, their null-entity response to that argument is independently sanctionable, and Plaintiffs have prosecuted this case for a harassing purpose. Dkt. 70 at 10–18. As in past instances, Plaintiffs' attempt to show these arguments are unlikely to succeed are confused, difficult in many instances to discern, and often not "ground[ed] . . . in legal analysis" of the "factors [on which] the Court is required to solely focus." Dkt. 44 at 10 n.2. Because none shows Apple is unlikely to succeed on its motion for sanctions, Plaintiffs' anti-SLAPP motion should be denied. *Overstock.com*, 151 Cal. App. 4th at 693; *see also* Cal. Code Civ. Proc. § 425.16.

### 1.    Apple's Arguments About CALID Are Likely to Succeed.

While Plaintiffs argue at length about whether *Coronavirus I* forecloses Coronavirus Reporter Corp.'s and Greenflight's claims in this case (Mot. 9–16), they ignore CALID Inc. *See* Dkt. 70 at 17. CALID was a party to *Coronavirus I* (*Coronavirus I*, Dkt. 41 ¶ 28) and is a party to this case too, asserting claims that are direct carryovers from *Coronavirus I* (Dkt. 30 ¶¶ 48, 287–354). Those claims are clearly barred by *res judicata* and are frivolous on their face. *See* Dkt. 62 at 5–8; *see also*, *e.g.*, *Buster v. Greisen*, 104 F.3d 1186, 1188 (9th Cir. 1997) (imposing sanctions on plaintiff who sought to relitigate settled claims). What is more, Plaintiffs resisted dismissal by claiming "all three named corporate entities" in *Coronavirus I*, including CALID, were never before the Court. Dkt. 63 at 4. It is beyond dispute that this contention does not "have evidentiary support," Fed. R. Civ. P. 11(b)(3), is independently sanctionable, *Zocaras*, 465 F.3d 479, 484 (11th Cir. 2006), and that Plaintiffs have forfeited any ability to argue otherwise, *see Gwaduri v. INS*, 362 F.3d 1144, 1146 n.3 (9th Cir. 2004). Even if Plaintiffs are correct in every other argument about Apple's Rule 11 arguments (they are not), these points alone defeat Plaintiffs' anti-SLAPP motion. *See Overstock.com, Inc.*, 151 Cal. App. 4th at 700 ("Only a cause of action that lacks 'even minimal merit' constitutes a SLAPP.").

### 2. Apple's Arguments About Coronavirus Reporter Corp. and Greenflight Are Likely to Succeed.

Apple also is likely to succeed in its request for Rule 11 sanctions based on Coronavirus Reporter Corp.'s and Greenflight's assertions of claims clearly foreclosed by *res judicata*. *See* Dkt. 70 at 10–15. For these reasons, too, Plaintiffs' anti-SLAPP motion should be denied.

### i. Coronavirus Reporter Corp.'s Claims Are Clearly Barred.

As Apple explained in its motion for sanctions, all evidence indicates that "Coronavirus Reporter," one of the plaintiffs in *Coronavirus I*, is the same entity as Plaintiff "Coronavirus Reporter Corp." *See* Dkt. 70 at 15–17. Plaintiffs no longer appear to contest that there is only one "Coronavirus Reporter" entity, admitting "conclusive proof of corporate ownership" showing "Coronavirus Reporter" was Coronavirus Reporter Corp. Mot. 16. They also maintain the parties "always knew the players" in *Coronavirus I. Id.* at 15. Those admissions are dispositive: They confirm that "Coronavirus Reporter" and "Coronavirus Reporter Corp." are one in the same, Plaintiffs knew as much all along, and Plaintiffs nevertheless are pressing the same claims on behalf of the same entity in this case. That cinches the case for sanctions and defeats Plaintiffs' anti-SLAPP motion. *See Overstock.com*, 151 Cal. App. 4th at 693. The two apparent arguments with which Plaintiffs respond fail.

*First*, Plaintiffs maintain they all along meant to name "Coronavirus Reporter Corp." as the plaintiff in *Coronavirus I* yet "mis-named an application where a corporation should have stood." Mot. 12–14. But it is a basic rule that litigation "must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). There is now no apparent dispute that the Coronavirus Reporter Corp. was the only entity that could have been a real "Coronavirus Reporter" party in interest. *See* Mot. 17 (asserting the "Coronavirus Reporter" app's assets were transferred to "the Wyoming corporation (Coronavirus Reporter Corp.) [when it] was formed"). And having put forward that entity's claims for resolution—which were conclusively decided on the merits by this Court and the Ninth Circuit, *Coronavirus Reporter v. Apple Inc.*, 85 F.4th 948, 959 (9th Cir. 2023)—any argument that *Coronavirus I* does not bar Coronavirus Reporter Corp.'s claims in this case is frivolous. *See* Dkt. 70 at 10–18. Indeed, Plaintiffs distinguish none of the authority holding sanctions are appropriate where, as here, litigants "either failed to conduct the reasonable and factual legal inquiry required under Rule 11, or [] conducted

Gibson, Dunn &
Crutcher LLP

such an inquiry and filed this lawsuit anyway." *Lake*, 130 F.4th at 1069 (cleaned up); *see also* Dkt. 70 at 11–13.[4]

Plaintiffs attempt to play off their conduct as an innocent mistake, asserting Mathews was "surprise[d]" to learn in 2022 that "Coronavirus Reporter" was not a real entity and thereafter "[c]orrect[ed]" it in filing this suit. Mot. 13–14. That narrative does not survive scrutiny. Plaintiffs ignore not only that Mathews had a duty to identify and disclose the actual plaintiffs at the case's outset, *Zocaras*, 465 F.3d at 484, but also that Apple repeatedly pointed out the lack of proper disclosure, including from the near-inception of *Coronavirus I*—long before Plaintiffs' asserted epiphany. *See* Dkt. 70 at 16–17. For another thing, Plaintiffs do not explain why Mathews continued to litigate *Coronavirus I* in the name of "Coronavirus Reporter" after his supposed realization that no such entity was party to the case (and the courts, Plaintiffs say, therefore lacked jurisdiction over its asserted claims). *See id.* Plaintiffs offer no explanation for how they and their counsel could have litigated *Coronavirus I* up to the Supreme Court consistent with their obligations under the Rules.

What is more, Plaintiffs all but concede that Mathews failed to undertake the reasonable inquiry Rule 11 requires. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 554 (1991). Plaintiffs say Mathews learned "his Plaintiff was a null entity" as soon as he "undertook the reasonable inquiry FRAP demands." Mot. 13; Dkt. 63 at 4 (arguing the "defects" with Plaintiffs' "corporate entities" were "obvious"). But the first time for that inquiry was not in 2022: It was in July 2021 before Plaintiffs filed suit and in the many months thereafter when Apple repeatedly drew Plaintiffs' attention to the now-admitted failure to file required disclosures. *See* Dkt. 70 at 15–16; *see also Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (describing counsel's obligation to investigate claims before filing). By Plaintiffs' own admissions, their filings in this Court were "baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc).

---

[4] At one point, Plaintiffs try to excuse misnaming Coronavirus Reporter Corp. due to the "the novelty of digital platform antitrust." Mot. at 13–14. Nothing about the supposed novelty of Plaintiffs' claims bears on counsel's obligation to verify his clients' identities, disclose them, and comply with the basic Rules of Federal Procedure. Nor can Plaintiffs blame their desire to violate Apple's terms of service or "housekeeping glitches" that arose in the submission of their app to Apple to justify misrepresentations to the Court and repeated violations of the Federal Rules. *See id.* at 16–17.

*Second*, with no defense of their conduct, Plaintiffs train their aim at Apple—arguing that the confusion about corporate identity is a "puzzle of Apple's making." Mot. 13. But it was incumbent on *Plaintiffs* to identify the real parties in interest, Fed. R. Civ. P. 17; on *Plaintiffs* to disclose them in the Complaint, Fed. R. Civ. P. 10; and on *Plaintiffs* to avoid misrepresenting either fact, Fed. R. Civ. P. 11. There is no dispute that they violated these obligations, including Rule 11: Either all of the alleged facts in *Coronavirus I* about "Coronavirus Reporter" were false, and the entity held out in that case could not seek any relief because it did not exist, or Plaintiffs' representations in this case lack "evidentiary support." Fed. R. Civ. P. 11(b)(3). Plaintiffs were in the best position, and obligated by the Federal and Local Rules, to make clear what entities were prosecuting the suit. *See* Fed. R. Civ. P. 7.1(a)(1); N.D. Cal. L.R. 3-15(b)(2). By instead obfuscating those issues, Plaintiffs have violated Rule 11 many times over. *See* Dkt. 70 at 10–15.

Plaintiffs misconstrue the record in any event. They assert that Apple has "pivoted" its position. Mot. 13. But Apple expressly stated early in *Coronavirus I* that it understood "Coronavirus Reporter" to be the Wyoming corporation Coronavirus Reporter Corp. *Coronavirus I*, Dkt. 32 at 6 & Dkt. 33-15. Plaintiffs did not dispute or correct that assertion. *See* Dkt 70 at 2–3. Apple then stated in a footnote of its appellate brief (accurately) that Plaintiffs' allegations about the actual developer of the Corona-virus Reporter app were potentially inaccurate—ambiguity borne from Plaintiffs' failure to disclose the real parties in interest to whom relief could be granted. *Coronavirus I*, No. 22-15166, Dkt. 38 at 6, 7 n.4. In the context of making that point, Apple said there was "no actual 'Coronavirus Reporter' entity"; rather, Coronavirus Reporter Corp. was the real party in interest in *Coronavirus I*, as Apple had deduced, but Plaintiffs had failed to be forthright about that fact as the Federal and Local Rules require. *Id.* Apple's advocacy in this case is far from "sanctionable," Mot. 16, and, more to the point, irrelevant to Plaintiffs' motion: Apple's consistent objections to Plaintiffs' admitted failure to comply with the Federal and Local Rules cannot excuse Plaintiffs' decision to file this frivolous case and in-undate Apple with frivolous arguments. *See* Dkt. 70 at 16–17.

This case is nothing like *Islamic Shura Council v. FBI*, 757 F.3d 870 (9th Cir. 2014). *See* Mot. 14. Contrary to Plaintiffs' characterization, that case did not hold that "extended . . . vacillation about facts undercuts any claim of bona fide Rule 11 purpose." *Id.* There, the Ninth Circuit simply stated

13

that a Rule 11 motion is untimely if it is filed after a court has already "resolved the underlying dispute." *See* 757 F.3d at 873. That is irrelevant here. And Plaintiffs ignore the many cases affirming sanctions for misconduct like theirs. *See*, *e.g.*, *Buster*, 104 F.3d at 1188; *Roundtree v. United States*, 40 F.3d 1036, 1040 (9th Cir. 1994).[5]

### ii.    Greenflight's Claims Are Clearly Barred.

Although Greenflight was not a party to *Coronavirus I*, it shares a substantial identity with a party that was. *See* Dkt. 62 at 8. Accordingly, its claims are no less barred by *res judicata* than CALID or Coronavirus Reporter Corp.'s claims. *See id.* at 9–10. In suggesting that Apple is unlikely to succeed on its sanctions request, Plaintiffs appear to dispute that Greenflight is in privity with Isaacs. Mot. 9–10. Setting aside that this argument does not affect the frivolous nature of the Plaintiffs' claims—which independently warrant sanctions, *see supra* 10–14—Plaintiffs' arguments are meritless. Hence, this argument also fails to support an anti-SLAPP motion.

Plaintiffs do not controvert their admissions and corporate filings showing that Isaacs founded Greenflight, is its CEO and sole director, or that the company is owned and controlled by him. *See* Dkt. 62 at 9; *see also* Dkt. 63 at 8 (representing Greenflight is one of Isaacs' "controlled entities"). They also do not disavow their allegations that Greenflight is claiming the same injuries as a result of the same alleged conduct that Plaintiffs attributed to Isaacs in *Coronavirus I*. *See* Dkt. 62 at 9. Nor do they contest that a straightforward application of controlling law to these facts forecloses Greenflight's claims in this case. *See Taylor v. Sturgell*, 553 U.S. 880, 895 (2008) (stating that "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy"); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) (stating that res judicata still applies if "there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest") (citation omitted); *In re Gottheiner*, 703 F.2d 1136, 1139 (9th Cir. 1983) (finding privity between corporation and its sole, controlling shareholder).

Plaintiffs instead argue that there "is no evidence Mathews' ever attempted to represent

---

[5] Plaintiffs briefly harken back to their argument that Apple is estopped from asserting that Coronavirus Reporter Corp. was the plaintiff in *Coronavirus I*. Mot. 16. Apple has explained elsewhere why that argument fails—including that the Ninth Circuit did not adopt the alleged inconsistent position. *See* Dkt. 64 at 3–4; *see also Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 559 (9th Cir. 2016).

Greenflight" in *Coronavirus I*. Mot. 11. That is true but irrelevant. The question is not whether Greenflight shared the same counsel as the *Coronavirus I* plaintiffs (which it now does, in any event); the issue is whether Greenflight's interests are so "closely related to the interest of [Isaacs] to be fairly considered to have had [its] day in court." *In re Gottheiner*, 703 F.2d at 1139. Plaintiffs' assertion that "Isaacs does not own the Caller-ID patent," Mot. 11 n.2, does not detract from the fact that he and Greenflight share the same interests that were asserted in *Coronavirus I* (which involved no claim under patent law). Plaintiffs appear to have abandoned any pretense otherwise: In opposing Apple's motion to dismiss, Plaintiffs argued that Greenflight had no "obligation to disclose itself as an interested party," Dkt. 63 at 7, but now concede it has been one of "the real parties" to this dispute all along, Mot. 14.

That Isaacs represents Greenflight's litigation interests has become even clearer since Apple served its motion for sanctions. On June 3, 2025, Mathews wrote to Apple's counsel purportedly on behalf of "[his] clients, Greenflight and [Coronavirus Reporter Corp.]." Kleinbrodt Decl. Ex. 2. Isaacs then responded to Plaintiffs' and Apple's counsel that "Greenflight acknowledges receipt." *Id.* And in response to a subsequent email, Isaacs purported to notify Apple what "Greenflight [would] seek" from the Court. *Id.* This exchange illustrates the direct control Isaacs commands over Greenflight in litigation—underscoring that he is the controlling principal whose interests are entirely aligned with the entity. Combined with the rest of the record, there is no reasonable dispute that Isaacs is much more than a mere "shareholder," Mot. 10–11, and in fact shares a "substantial identity" and "sufficient commonality of interest" with Greenflight. *Tahoe-Sierra*, 322 F.3d at 1081.[6]

The rest of Plaintiffs' argument is a non sequitur. They appear to contend that Apple cannot bind Greenflight to Isaacs because Apple referred to Isaacs' participation in *Coronavirus I* as "improper." Mot. 11. They misread Apple's correspondence. As explained in the cited September 2021

---

[6] Plaintiffs claim Apple's argument that Greenflight lacks antitrust standing as a shareholder is inconsistent with Apple's argument that Isaacs is more than a mere shareholder in Greenflight. Mot. 11. These are distinct issues, and Apple's positions are fully consistent. Greenflight lacks antitrust standing under a well-established rule that a plaintiff cannot claim antitrust injury deriving from reduced value of shares for a company in which one has invested. *See* Dkt. 62 at 15–16. Isaacs, on the other hand, is far more than a mere shareholder in Greenflight, and the resolution of his claims in *Coronavirus I* binds Greenflight in *Coronavirus II* under the doctrine of *res judicata*. *See id.* at 9–10.

Gibson, Dunn &
Crutcher LLP

letter, it was improper for Isaacs to join *Coronavirus I pro se*—and to demand to communicate as such with Apple's counsel—while simultaneously claiming he was a represented party. Dkt. 70-3; *see also*, *e.g.*, *Coronavirus I*, Dkts. 98-3, 98-4, 98-5, 98-6 (examples of Mathews referring to Isaacs as his "client"). That is because doing so put "Apple and its counsel in an untenable position" given ethical rules prohibiting direct communication with represented parties. *See* Dkt. 70-3 at 2. Apple therefore informed Plaintiffs' counsel that Isaacs' "hybrid" role was improper, and Apple would "not respond to any direct communications from Mr. Isaacs." *Id.* at 2–3.

There is nothing "[c]ontradict[ory]" about Apple's position there and here. Mot. 11. Apple objected to Isaacs' participation as both represented client and *pro se* litigant. *See*, *e.g.*, *Coronavirus I*, Dkt. 94 at 9 n.6. But participate he did: He was named as a plaintiff in the operative complaint, filed numerous motions, argued before this Court and the Ninth Circuit, and continued to litigate the case through this year. *Coronavirus I*, Dkts. 118, 130, 135. Having "unquestionably [been] 'a party'" to *Coronavirus I*, Mot. 10, the adjudication of Isaacs' claims binds Greenflight for *res judicata* purposes. *See In re Gottheiner*, 703 F.2d at 1139 (finding privity between a corporation and its sole, controlling shareholder). And none of this suggests Apple's Rule 11 motion is likely to fail.

### 3. Plaintiffs Fail to Show That Their Conduct Is Not Harassing.

Apple is also likely to succeed in its sanctions motion because Plaintiffs have litigated this case to harass Apple in violation of Rule 11. *See* Dkt. 70 at 12–15. Most remarkable is what Plaintiffs do not say in response: Nowhere in their motion—or their other filings since Apple moved for sanctions— have Plaintiffs disclaimed that purpose, and they should not be heard to do so for the first time at this point. Nor do they dispute that they filed this case in Wyoming (and another case in Florida) to avoid the preclusive effects of this Court's judgment; that they have violated the Local Rules and the Northern District's Professional Conduct Guidelines on multiple occasions; or that they have engaged in conduct that is facially harassing, such as issuing defective subpoenas to Apple's executives to summon them for a hearing where no testimony had been authorized. *See id.*

Plaintiffs instead focus on arguing that Mathews had no "covert plan to obscure ownership." Mot. 14–15. Yet it is difficult to draw any other inference from Plaintiffs' repeated refusals to file corporate disclosures while using a revolving cast of entities to sue Apple across the country. *See* Dkt.

62 at 2–3.[7]  Regardless, Rule 11 violations do not turn on whether their scheme was covert or overt. *See Altmann v. Homestead Mortg. Income Fund*, 887 F. Supp. 2d 939, 956 (E.D. Cal. 2012) (sanctioning litigant for harassing "ploy" that involved no subterfuge).  What matters is whether their purpose, "objectively tested," was improper.  *Zaldivar v. City of L.A.*, 780 F.2d 823, 831–32 (9th Cir. 1986).  And "[w]ithout question, successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11."  *Id.*; *see also Buster*, 104 F.3d at 1190; *Est. of Blue*, 120 F.3d at 985; *McMahon v. Pier 39 Ltd. P'ship*, 2003 WL 22939233, at *6 (N.D. Cal. Dec. 5, 2003).  So too when a litigant files baseless motions.  *See, e.g., McDonald v. Khurshid*, 2006 WL 1328869, at *10 (W.D. Wash. May 15, 2006).  The only appropriate inference from the record in this case is that Plaintiffs set out to harass Apple and continue to do so.

Plaintiffs also argue in passing that Rule 11 sanctions "require prejudice" and "Apple's own correspondence shows it learned in real time" who the parties actually were.  Mot. 15.  But "the central purpose of Rule 11 is to *deter* baseless filings."  *Cooter & Gell*, 496 U.S. at 393 (emphasis added).  While a fee-shifting award under Rule 11 should not *exceed* expenses prejudicially incurred, monetary sanctions under Rule 11 can be imposed so that the litigant "pa[ys] . . . a penalty" irrespective of the degree of prejudice.  Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.  Prejudice is manifest in any event: As chronicled at length in Apple's motion for sanctions, it has spent considerable time, effort, and money litigating disputes in this case that never should have required this Court's attention.  *See* Dkt. 70 at 5–10.  That is prejudice enough.  *See Cooter & Gell*, 496 U.S. at 406–07.

*        *        *

For all these reasons, there are no "substantial factual disputes" that require discovery to decide. Mot. 5.  Plaintiffs have had a full opportunity to put forward evidence demonstrating their filings have been proper and motives pure—and come up empty.  *See* N.D. Cal. L.R. 7-5 (explaining that factual

---

[7] Plaintiffs have also made inconsistent representations about these entities.  *Compare, e.g., Coronavirus I*, Dkt. 97 at 11 (statement by Mathews that "Dr. Roberts is his senior at Coronavirus Reporter, and . . . all litigation by *that Corporation* require[s] Dr. Roberts' authorization as he is a near-majority shareholder") (emphasis added), *with* Dkt. 48 at 1 (stating that the plaintiff in *Coronavirus I* "has no identity whatsoever to [Coronavirus Reporter Corporation], a Wyoming Corporation owned by Dr. Roberts").  *Compare also, e.g.*, Dkt. 63 at 7-8 (characterizing Isaacs as a mere "shareholder" in Greenflight Venture Corp.), *with Coronavirus I*, Dkt. 41, ¶ 175 (referring to Isaacs' "controlled entities").

contentions in a motion should be supported by affidavit, declaration, or appropriate citations to the record). Because the record fully establishes multiple Rule 11 violations, Plaintiffs' anti-SLAPP motion should be denied.

**C.    Plaintiffs Offer No Meaningful Opposition to the Additional Bases for Sanctions.**

Plaintiffs motion should be denied for the independent reason that the Court should impose sanctions pursuant to its inherent authority or 28 U.S.C. § 1927 even if it declines to do so under Rule 11. *See* Dkt. 70 at 18–22. Plaintiff offers no meaningful response to these additional grounds for sanctions. And having left these arguments unrebutted, Dkt. 78, Plaintiffs cannot dispute that Apple "has stated a legally sufficient claim and made a prima facie factual showing" in support of its requests. *Baral*, 1 Cal. 5th at 384–85.

The trail of filings that warrants sanctions under Section 1927 is long. *See* Dkt. 70 at 20–22. Plaintiffs address almost none of their vexatious submissions, asserting only that Mathews made at most an "honest mistake" in filing this case. Mot. 7. But Plaintiffs adduce no evidence, even from Mathews, to that effect. It is also inconsistent with Plaintiffs' dogged insistence on advancing their claims and indefensible arguments that the *Coronavirus I* plaintiffs were null entities. *See, e.g.*, *In re Peoro*, 793 F.2d 1048, 1051 (9th Cir. 1986) (affirming award of attorneys' fees under Section 1927 where complaint was "barred by the doctrine of res judicata and [was] undoubtedly unmeritorious in the first instance"). Moreover, Plaintiffs offer no answer to the many other frivolous filings—including the motion opposed here—that demonstrate at least a reckless multiplication of proceedings. *See* Dkt. 70 at 21–22; *see also Toombs v. Leone*, 777 F.2d 465, 471 (9th Cir. 1985) (upholding sanctions where "record sets forth sufficient evidence" to support finding of recklessness or bad faith); *Optyl Eyewear Fashion Int'l Corp. v. StyleCos., Ltd.*, 760 F.2d 1045, 1050–51 (9th Cir. 1985) (similar). Apple is therefore likely to succeed on its request for sanctions under Section 1927.[8]

Plaintiffs give even less attention to Apple's request for sanctions pursuant to the Court's inherent authority. *See* Dkt. 70 at 18–20. In passing, they suggest that "[a]ccurately pleading unsettled

---

[8] Having declined to submit a declaration from Mathews (*see* N.D. Cal. L.R. 7-5), the Court need not hold an "[e]videntiary hearing[] on intent to 'multiply the proceedings.'" Mot. 24. That said, Apple has no objection if the Court prefers to call Mathews for examination on this issue.

antitrust markets—even if ultimately rejected—cannot meet th[e] daunting standard" for such sanctions. Mot. 7. But Apple is not seeking sanctions pursuant to the Court's inherent authority because Plaintiffs alleged "scattergun" markets in *Coronavirus I*, 85 F.4th at 956. As Apple explained in its motion for sanctions, the Court should exercise its inherent authority to sanction Plaintiffs' decision to file frivolous claims in this case, to do so in Wyoming in a transparent attempt to evade this forum and its prior judgment, and to inundate the Court and Apple with frivolous filings ever since. *See* Dkt. 70 at 19–20. Plaintiffs address none of these points, much less offer any authority that Apple is unlikely to succeed in its request. *See Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir. 2003) (affirming terminating sanctions under the court's inherent authority because "filing a case under a false name deliberately, and without sufficient justification, certainly qualifies as flagrant contempt for the judicial process and amounts to behavior that transcends the interests of the parties in the underlying action").

Plaintiffs have not seen Apple's sanctions motion as an opportunity for corrective conduct. For example, Plaintiffs appear to have invented numerous quotations in their recent Rule 12(d) motion and sur-reply regarding dismissal. *See* Dkt. 72 at 8–9 n.3. They have since tried to play off those misrepresentations as "typographical" errors or "paraphrased" statements. Dkt. 75 at 7 & n.1. But the mischaracterizations are far too extensive to be typographical, and, as Apple explained, they are not accurate summaries of the cited cases. *See* Dkt. 72 at 8–9 & n.3. Plaintiffs' anti-SLAPP motion is again replete with problematic citations:

- Plaintiffs cite *Klein v. Cheung*, 20 Cal. App. 5th 1045 (2018), for the proposition that "the court held that a sanctions motion selectively targeting one lawyer, while ignoring others who signed the same filing, raised a strong inference of tactical abuse." Mot. 19. But there does not appear to be any case called *Klein v. Cheung*, and Plaintiffs' citation directs to a different case, *Aptos Residents Ass'n v. Cnty. of Santa Cruz*, 20 Cal App 5th 1039 (2018), which has nothing to do with sanctions.

- Plaintiffs cite *Atari Interactive, Inc. v. Redbubble, Inc.*, 2019 WL 6723422 (N.D. Cal. Dec. 10, 2019), to argue "Rule 11 may not be used to resolve substantial factual disputes." Mot. 5. But as noted above, that Westlaw citation directs to a different case on a different issue, and no Rule 11 motion was filed in the *Atari v. Redbubble* litigation. *See supra* 9–10.

- Plaintiffs cite *Makaeff v. Trump Univ., LLC*, 715 F.3d 254 (9th Cir. 2013), for the proposition that "[w]hen evaluating the 'minimal merit' prong, courts look to 'indicia that the challenged speech or petitioning activity is shared by others in the marketplace of ideas.'" Mot. 21. The purportedly quoted language does not appear in the cited opinion and does not return any results on Westlaw.

Plaintiffs later emailed Apple (but did not file with the Court) an "errata," conceding error on a different citation. Kleinbrodt Decl. Ex. 4 (admitting *Handloser*, cited at page 4 of Plaintiffs' motion, "addresses Rule 26 discovery"). But in doing so, Plaintiffs purported to revise the citations supporting a sentence ("Federal courts routinely evaluate Rule 11 sanctions and anti-SLAPP requests together . . .") that is not in their motion. *Id.* Moreover, they suggest that this proposition remains supported by a footnote citing *Holgate v. Baldwin*, 425 F.3d at 677–78, and *Mattel, Inc. v. MGA Entertainment, Inc.*, 705 F.3d 1108, 1118 (9th Cir. 2013). There is no such footnote. Regardless, *Holgate*, cited elsewhere in the motion, does not address anti-SLAPP motions. *See* 425 F.3d at 679-80 (affirming denial of sanctions award due to noncompliance with Rule 11's safe-harbor requirement). And *Mattel*, not cited anywhere in Plaintiffs' motion, likewise has no connection to anti-SLAPP or Rule 11 (and the page of that decision Plaintiffs pincited in their email, 1118, does not exist). *See* 705 F.3d at 1110–12 (vacating verdict for erroneously joined trade-secrets counterclaim and affirming fee award to defendant under the Copyright Act).[9]

These recent submissions fall far short of Plaintiffs' and their counsel's obligation to "provid[e] full, accurate, and undistorted citations." *Felix v. Am. Honda Motor Co.*, 562 F.3d 1167, 1180 (Fed. Cir. 2009); *see also Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (observing "the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal

---

[9] In the same email, Plaintiffs also suggest that the district court in *Makaeff* "ruled on defendants' anti-SLAPP fee motion and plaintiffs' Rule 11 motion" and that on appeal the Ninth Circuit suggested the court could "address Rule 11 issues in conjunction with the anti-SLAPP matters." Kleinbrodt Decl. Ex. 4. But the magistrate judge's recommendation that they cite involved discovery disputes and attendant sanctions under Rule 37—with no mention of anti-SLAPP. *Makaeff v. Trump Univ., LLC*, 2013 WL 990918, at *4 (S.D. Cal. Mar. 12, 2013). And the cited footnote from the Ninth Circuit's opinion states that the "district court may assume the falsity of the statements [at issue] and proceed directly to the actual malice inquiry." 715 F.3d at 271 n.13. Neither decision mentions Rule 11 or suggests an anti-SLAPP motion can be used to strike a motion for sanctions.

Gibson, Dunn &
Crutcher LLP

1   authorities on which they rely"). Plaintiffs' misrepresentations militate in favor of Apple's motion for

2   sanctions and denial of Plaintiffs' anti-SLAPP motion.

3          **D.     Plaintiffs' Other Arguments Are Meritless.**

4          At the end of their motion, Plaintiffs offer two miscellaneous arguments. First, they cite to the

5   "unresolved status of former AUSA Melissa Theriault." Mot. 18. Second, they describe supposed

6   "[e]xternal confirmations" that "Plaintiffs are part of a legitimate, growing antitrust movement." *Id.* at

7   19. Neither is a basis to strike Apple's motion under the anti-SLAPP statute.

8          First, Plaintiffs maintain that sanctions cannot be entered until the Court rules on Melissa The-

9   riault's pending request to withdraw. Mot. 18–19. That is so, Plaintiffs say, because Theriault provided

10  an "objective" verification of this case's merit. *Id.* That assertion is unsupported by a declaration from

11  Theriault or anyone else. *See* N.D. Cal. L.R. 7-5. It is also beside the point: Setting aside that Theri-

12  ault's supposed (and subjective) opinions were colored by the (undisclosed) "detailed information"

13  Mathews provided, Mot. 18, Rule 11 exists because attorneys sometimes sign their names to frivolous

14  cases and filings even though their signatures on court submissions are supposed to operate as a "war-

15  ranty that the complaint is well grounded in fact and 'existing law.'" *Christian*, 286 F.3d at 1127.

16  Notably, the only case Plaintiffs cite to support their argument is *Klein v. Cheung*—a decision that

17  appears not to exist. *See supra* 19–20.

18         Nor should the Court hold an "ex parte conference." Mot. 18. Plaintiffs imply that such a

19  conference is needed because "Apple filed an improper Rule 11 Motion meant to intimidate all associ-

20  ates—including counsel." *Id.* That is a reckless accusation supported by nothing. To the contrary,

21  Theriault informed Apple that her involvement in the case was already at an end when Apple served

22  its copy of the Rule 11 motion. *See* Kleinbrodt Decl. Ex. 3. Moreover, Apple does not seek sanctions

23  against Theriault; Apple seeks sanctions against Plaintiffs and Mathews given their outsized role in the

24  full sweep of relevant conduct. *See* Dkt. 70 at 20–25. It also would be fundamentally unfair to Apple

25  to allow Plaintiffs to provide information *ex parte* about "why the complaint was filed in Wyoming

26  and what due diligence [Theriault] performed before signing in response to Mathews' disclosures"

27  outside of Apple's presence. Mot. 18; *see United States v. Kenney*, 911 F.2d 315, 321 (9th Cir. 1990)

28  (recognizing that "adversary procedures are the general rule and *ex parte* examinations are disfavored,"

particularly where they would violate a party's due process rights by depriving them of the "chance to explain or rebut" their adversary's arguments); *RZS Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350, 356 (4th Cir. 2007) (similar).

Second, Plaintiffs point to other litigation to suggest their "core theories" have merit. Mot. 19, 22–23. But as Apple has explained elsewhere, who other litigants retain as counsel, what substantive rulings foreign regulators make, and the imposition of civil contempt in the *Epic* litigation (which is pending on appeal) are irrelevant to whether sanctions should be imposed in this case. *See* Dkt. 72 at 11; Dkt. 64 at 2–3. None of those cases involve successive suits featuring repeated misconduct like Plaintiffs' and their counsel's. They are distractions that have no bearing on Apple's motion for sanctions and do not support a request to strike under California's anti-SLAPP law.

## III.    Apple's Proposed Remedies Are Appropriate.

While Plaintiffs lodged no direct objections to the sanctions Apple seeks, Dkt. 78, they appear to make two glancing comments about the scope of Apple's requests. These critiques are misplaced as arguments about the scope of potential sanctions do not affect whether Apple has "a probability of success" in moving for any sanctions. *Baral*, 1 Cal. 5th at 384–85. Regardless, Plaintiffs' arguments are meritless.

First, Plaintiffs argue that "[a] nationwide pre-filing bar on 'Dr. Isaacs and his associates' flunks the four-factor test for litigant injunctions" because "Apple has not served—let alone proven abuse by—Dr. Roberts, Primary Productions, PhantomAlert, or Coring, all of whom fall within the injunction's sweep." Mot. 6. To start, Apple does not contend that PhantomAlert—a different developer who has brought a different case—is controlled by Isaacs or will be subject to any injunction. With that exception, there is nothing improper about Apple's request. An injunction "should be no more burdensome . . . than necessary to provide complete relief to the [party seeking injunction] before the court." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (cleaned up). Accordingly, injunctive relief can extend beyond the named parties where "necessary to give prevailing parties the relief to which they are entitled." *Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir. 1987). That is what Apple seeks here: The injunction would run against Plaintiffs and their counsel, extending to Isaacs as those entities' principal due to his history of using (and creating) entities to sue Apple for the

Gibson, Dunn &
Crutcher LLP

1    same grievances.  *See* Dkt. 70 at 24–25; *see also In re Distilled Spirits*, 78 U.S. 356, 357 (1870)

2    ("[N]otice to the agent is notice to the principal."); *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940–

3    41 (9th Cir. 2017) (similar).  Plaintiffs offer no argument that a narrower injunction would be sufficient,

4    nor cite any authority holding that Apple's requested injunction is improper.

5           Second, Plaintiffs appear to object to Apple's request for monetary sanctions as "punitive" or

6    excessive.  Mot. 22–23.  It is not: Apple explained that $400,000 is less than it has spent defending this

7    meritless suit, Dkt. 70 at 22–23, and supported that request with a competent declaration, Dkt. 70-1

8    ¶¶ 10–11.  While courts may credit an attorney's "inability to pay" in calibrating awards, they do so

9    only when hardship has been substantiated.  *Haynes v. City & Cnty. of S.F.*, 688 F.3d 984, 986 (9th

10   Cir. 2012).  Plaintiffs offer no such substantiation here.  If anything, Plaintiffs' protestations underscore

11   that the amount Apple seeks would be an appropriate deterrent—the primary purpose of Rule 11 sanc-

12   tions.  *See Cooter & Gell*, 496 U.S. at 393.

13          Plaintiffs also suggest that Apple's fees were incurred through "twelve months of self-chosen

14   litigation."  Mot. 23.  This litigation is anything but self-chosen.  Apple would have preferred to spend

15   nothing on this litigation because it never should have been brought in the first place.  Plaintiffs brought

16   these frivolous claims, filed them in an improper venue, and have tried to stymie this case's orderly

17   progress at every step since.  *See supra* 6–9.  Apple therefore has had to litigate several meritless

18   motions, virtually all of which have been resolved in their entirety against Plaintiffs.  *See* Dkt. 70 at 7.

19   Plaintiffs do not dispute that courts may "make a blanket award" when "a plaintiff initiates a case in

20   complete bad faith, so that every cost of defense is attributable only to sanctioned behavior."  *Goodyear*

21   *Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110 (2017); *see also* Dkt. 70 at 22.  Such an award is

22   appropriate here.  *See Christian*, 286 F.3d at 1126 ("[T]he judiciary has little sympathy for the litigant

23   who fires a big gun, and when the adversary returns fire, complains because he was firing blanks.")

24   (cleaned up).

25                                            **CONCLUSION**

26          For the foregoing reasons, the Court should deny Plaintiffs' Motion Pursuant to California Civil

27   Code Procedure § 425.16.

28

DATED: June 24, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Rachel S. Brass*

Rachel S. Brass

RACHEL S. BRASS
rbrass@gibsondunn.com
JULIAN W. KLEINBRODT
jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
Suite 2600
San Francisco, California  94111-3715
Telephone:      415.393.8200
Facsimile:       415.393.8306

*Attorneys for Defendant Apple Inc.*