Keith Mathews
*Pro Hac Vice*
American Wealth Protection
1000 Elm Street, Suite 800
Manchester, NH 03105
keith@awplegal.com
(603) 923-9855

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORONAVIRUS REPORTER CORPORATION, CALID INC., GREENFLIGHT VENTURE CORPORATION<br><br>*on behalf of themselves and all others similarly situated*<br><br>Plaintiffs,<br><br>*vs.*<br><br>APPLE INC.<br><br>Defendant. | Case No. 3:24-cv-8660-EMC<br><br>**PLAINTIFFS' EMERGENCY MOTION FOR LITIGATION STAY AND STATUS CONFERENCE**<br><br>Date: August 21, 2025<br>Time: 1:30 p.m. PT<br>Place: Courtroom 5, 17th Floor<br><br>The Honorable Edward M. Chen |

**NOTICE OF EMERGENCY MOTION FOR TEMPORARY STAY AND STATUS CONFERENCE**

PLEASE TAKE NOTICE that on August 21, 2025, at 1:30 p.m. Pacific Time, or as soon thereafter as the matter may be heard before the Honorable Edward M. Chen in Courtroom 5, 17th Floor of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Coronavirus Reporter Corporation, CALID Inc., and Greenflight Venture Corporation will and hereby do move pursuant to Federal Rule of Civil Procedure 11(c)(2), 28 U.S.C. § 1927, and the Court's inherent authority, for an order:

(a) Deferring all further briefing and hearings on Apple's sanctions motion until after the Court has resolved the pending issues, specifically:
(b) Plaintiffs' motion for recusal pursuant to 28 U.S.C. § 455(a);
(c) Plaintiffs' request for a status conference addressing representation by attorney Melissa Theriault;
(d) Plaintiffs' request for a declaratory judgment concerning the status of Coring Inc., currently held in abeyance awaiting resolution of the "new conduct" issues unaddressed by the Court's prior dismissal;
(e) Plaintiffs' request for the Department of Justice Antitrust Division to intervene pursuant to applicable statutory authority;
(f) Plaintiffs' request to strike Apple's sanctions motion in light of the Supreme Court's recent decision in Trump v. CASA, Inc., 606 U.S. ___ (2025) (slip op. June 27, 2025), invalidating nationwide injunctions of the type sought by Apple;
(g) Granting Plaintiffs an additional thirty (30) days following resolution of the above-mentioned matters to file any further responses related to Apple's pending sanctions motion; and Authorizing limited, targeted jurisdictional discovery specifically addressing factual issues conceded by Apple's antiSLAPP opposition and related matters concerning a decade of abusive practices by Brass and opposing counsel at Gibson Dunn.
(h) Guidance from the Court as to whether Plaintiffs' cross-allegations of litigation harassment should be filed as a counter-sanctions motion under Rule 11 or consolidated and removed to an independent lawsuit to address all cross-allegations.

This motion is based upon this Notice of Motion; the accompanying Memorandum of Points and Authorities; and exhibits thereto; the pleadings and papers on file in this action; any matters of which the Court may take judicial notice; and such oral argument as may be presented at the hearing.

Dated: June 27, 2025                    Keith A. Mathews, Esq.

# TABLE OF CONTENTS

**NOTICE OF EMERGENCY MOTION FOR TEMPORARY STAY AND STATUS CONFERENCE**
................................................................................................................................................**I**

**TABLE OF AUTHORITIES**................................................................................**I**

**INTRODUCTION** .................................................................................................**1**

**ARGUMENT** ........................................................................................................**4**

I.    APPLE'S NATIONWIDE FILING BAR IS AN UNAUTHORIZED "UNIVERSAL" INJUNCTION EXCEEDING EQUITABLE AUTHORITY ....................................................... 4

II. A STAY IS NECESSARY TO RESOLVE SERIOUS QUESTIONS ABOUT JUDICIAL IMPARTIALITY ........................................................................................... 7

III. PLAINTIFFS ARE CURRENTLY WITHOUT CONFLICT-FREE COUNSEL, WARRANTING A CONTINUANCE .................................................................................. 8

IV. PARALLEL PROCEEDINGS AND UNRESOLVED CLAIMS COUNSEL IN FAVOR OF A FULL STAY .................................................................................................. 10

V.    REVELATIONS IN APPLE'S ANTI-SLAPP OPPOSITION NECESSITATE JUDICIAL INTERVENTION .......................................................................................... 11

VI.    APPLE'S CONCESSION THAT GREENFLIGHT LACKED REPRESENTATION IN CR I.... 12

VII.    APPLE'S DISREGARD FOR THE ANTI-SLAPP PROCESS AND PROCEDURE ................... 15

VIII. APPLE'S RULE 11 MOTION IS A DISGUISED VEXATIOUS LITIGATION CLAIM........... 16

IX.    APPLE SEEKS RELIEF BEYOND WHAT ANY FEDERAL SANCTION RULE PERMITS ... 18

X.    VEXATIOUS LITIGANT ALLEGATIONS REQUIRE A SEPARATE PROCEEDING – WITH FULL DUE PROCESS.......................................................................................... 19

XI.    NEED FOR A STATUS CONFERENCE AND POTENTIAL REMEDIES................................ 22

**CONCLUSION**....................................................................................................**24**

**CERTIFICATE OF SERVICE**............................................................................**25**

# TABLE OF AUTHORITIES

### CASES

*AliveCor v. Apple* ..................................................................................................................... 20

*Landis v. N. Am. Co.,*
  299 U.S. 248, 254 (1936). ...................................................................................................... 11

*Lawlor v. National Screen Service* ............................................................................................ 11

*Trump v. CASA*, Inc.,
  602 U.S. ___ (June 27, 2025) .................................................................................................. 4

*United States v. Holland*,
  519 F.3d 909, 912 (9th Cir. 2008) ........................................................................................... 8

**INTRODUCTION**

Apple Inc. has repeatedly demonstrated a shameless disregard for the rule of law and a pattern of abusing the judicial process to preserve its dominance. In antitrust disputes and beyond, Apple behaves as if courts are mere hurdles to manipulate rather than authorities to obey. Time and again, the company has flouted court orders, buried opponents in litigation, and even offered false testimony – all in service of maintaining its monopoly power. Such conduct is not just unorthodox; it is contemptuous and corrosive to the integrity of the legal system. One glaring example is Epic Games v. Apple, where Apple was recently found in contempt for willfully defying an injunction aimed at opening the App Store to competition. U.S. District Judge Yvonne Gonzalez Rogers ruled that Apple willfully chose not to comply with her injunction and instead engineered "new anticompetitive barriers" to preserve a revenue stream she had already deemed anticompetitive. Internal documents later exposed that Apple's leadership knowingly chose the most anti-competitive options at every turn – a strategy Apple then tried to hide from the court. In fact, Apple's vice president for finance lied under oath about the company's compliance efforts, giving testimony 'replete with misdirection and outright lies,' according to Judge Gonzalez Rogers. Equally disturbing, Apple's own counsel (from firms including Gibson Dunn) stood by and failed to correct these 'obvious lies' on the witness stand , effectively tolerating perjury in the courtroom. The judge was so appalled that she even referred Apple – and the lying executive – to the U.S. Justice Department for a criminal contempt investigation.

Apple's defiance in the Epic case is not an isolated incident but part of a broader playbook of obstruction that Apple employs to thwart antitrust enforcement. Even the United States Supreme Court has seen Apple's arrogance. In Apple v. Pepper, Apple attempted to escape liability by arguing that App Store consumers had no standing to sue it for monopoly pricing – a convoluted theory that Justice Kavanaugh said "does not make a lot of sense, other than as a way to gerrymander Apple out of this and similar lawsuits."

Apple's interactions with smaller competitors reinforce this picture of a company that thinks itself untouchable. AliveCor's CEO, Priya Abani, has openly described Apple as a "bully" that steals innovations and then uses overwhelming litigation to wear down any challenge. According to Abani, Apple has a habit of taking technology from smaller firms and then "bombard[ing]" those firms with expensive lawsuits and motions that it knows startups cannot afford. This scorched-earth litigation strategy allows Apple to avoid ever being held accountable – an outcome achieved not by merit, but by exhausting its opponents.

The saga of the present case is no different – it is about how Apple has abused and oppressed small developed through the litigation process itself. From the very outset, Apple and its counsel have engaged in relentless, heavy-handed tactics aimed at silencing the plaintiffs and exploiting procedural loopholes to gain advantage. This conduct has been especially egregious against Dr. Jeffrey Isaacs, a disabled pro se litigant attempting to stand up to one of the world's most powerful corporations. What should be a fair contest on the merits has devolved into Apple's war of attrition against a vulnerable opponent, marked by hypocrisy, bullying, and a perversion of the rules, muzzling Isaacs for years—with this court's shameless approval, suggesting an anti-disability sentiment, or something improper, if not that.

One need look no further than Apple's conduct in the present matter for proof of Apple's above-the-law attitude. In this dispute, Apple has responded to good-faith inquiries and legal obligations with the same obstinate stonewalling. When pressed for an explanation for non-compliance with today's SCOTUS CASA ruling, Apple provided nothing but a cursory email lacking any substantive justification, despite repeated requests for a meaningful response – an email that effectively said nothing of substance. Such non-answers and blatant delay tactics demonstrate Apple's contempt not just for its adversary, but for the Court's time and authority. It is a pattern we have seen over and over: Apple believes that if it simply refuses to engage or drags things out long enough, it might avoid the day of reckoning entirely. In effect, Apple seeks to coerce the justice system itself – exploiting procedural complexities and a court's patience in order to escape accountability. Each time a court indulges Apple's dilatory maneuvers or overlooks its defiance, Apple is emboldened to push the boundaries even further. At this point, it is criminal. It is taking a toll on Undersigned counsel, his corporate clients, and their disabled representatives. DOJ referral for criminal investigation is hereby requested, as a tag-along to Gonzales-Rogers similar request this month.

One of Apple's first moves in this case was effectively to gag Dr. Isaacs's participation. Early in the Coronavirus Reporter I proceedings, Apple's attorneys refused to communicate with Dr. Isaacs directly, claiming that he could not appear pro se and that – since Dr. Isaacs is not a lawyer – he was not entitled to speak on behalf of his own app in court. By rigidly enforcing this rule, Apple prevented Dr. Isaacs from engaging in even basic communications with opposing counsel, thereby shutting him out of discussions and strategy. The result was that a disabled plaintiff with no attorney was left voiceless in the critical early stages of his own case.

Yet, when it later suited Apple's litigation strategy, the company blatantly reversed its position on Dr. Isaacs's pro se status. In its recent filings (for example, in opposing Plaintiff's anti-SLAPP motion), Apple now conveniently concedes that Dr. Isaacs was acting pro se after all. They treat him as a valid pro se litigant – the very status they previously denied – whenever it serves to hold him accountable or to try to trip him up procedurally. This hypocrisy is jaw-dropping. Apple cannot have it both ways: first muzzling Dr. Isaacs for supposedly needing counsel, then later faulting him as a pro se party. The inconsistent stances reveal that Apple's only real goal is to game the system. They will take whichever side of an argument benefits them in the moment, even if it flatly contradicts what they argued before. Such bad-faith flip-flopping shows a profound disrespect for the judicial process and for basic fairness.

Apple's disregard for fairness is further demonstrated by how it has handled anti-SLAPP protections and other procedural safeguards. By rushing to seek a default-based punishment, Apple signaled that it prefers victory by ambush or procedural trick over a fair adjudication. This is the opposite of what anti-SLAPP is meant to ensure. Apple basically said: never mind free speech rights or the speedy resolution of baseless claims – let's punish the plaintiff first on an imaginary process foul. Taken together, these incidents paint a disturbing picture of Apple's litigation ethos in this matter. Apple has repeatedly shown that it will push the bounds of zealous advocacy into outright abuse. The company's approach here is not to transparently defend its conduct on the merits, but to drown the case in procedural quagmires, exhaust the plaintiff, and avoid a fair fight at all costs. Apple's lawyers – armed with virtually unlimited resources – have filed motion after motion, objection after objection, many of them frivolous or duplicative, knowing that an overburdened court might eventually lose patience with the plaintiff. It's a cynical calculation: overwhelm the system and the person until the clock runs out.

Everyone observing this case can see what's happening. It is Apple – not Plaintiffs, not their counsel – that has made this litigation oppressive and punitive. It is Apple that has harassed a disabled physician through duplicity and delay, all while crying foul and projecting its misdeeds onto him, his "associates" and his companies that have served hundreds of millions of customers. This pattern of conduct has undermined the integrity of the proceedings and makes a mockery of the principle of equal justice under law. When a wealthy corporation can so brazenly abuse the litigation process against small businesses and their hard-

working owners, it shakes public confidence in the courts' ability to protect the vulnerable against the powerful.

At this juncture, extraordinary relief is not only warranted but necessary. The plaintiff respectfully urges the Court to consider remedies such as recusal, sanctions, and a stay as measures to halt Apple's abuse and restore fairness. First, the presiding judge – who has witnessed Apple's tactics first-hand – should recuse himself sua sponte if any impartiality might reasonably be questioned. The plaintiff deserves a fresh adjudicator who is not fatigued by or biased from Apple's onslaught. A higher court's intervention via writ of mandamus may be needed to correct the accumulation of errors and abuses that have been allowed to occur in this litigation, particularly if procedural irregularities (like ignoring anti-SLAPP protections or muzzling a disabled pro se plaintiff) have impaired the parties rights. At the very least, a stay of all proceedings should be entered to prevent further prejudice while these serious issues are sorted out. Without a pause and a course-correction, Apple will continue to steamroll forward with its oppressive litigation machine, and any eventual victory for Apple – won under such conditions – would be tainted by profound unfairness. This Court must not allow that to happen. It is time to put a stop to Apple's abusive legal gamesmanship, re-level the playing field, and ensure that justice is not drowned out by brute force. The fate of this case should hinge on the merits of the claims and defenses – not on which side can better exploit the court. Only through decisive action now can we reinstate the principles of fairness and due process that have been trampled in Apple's pursuit of unchecked dominance. Not even the world's richest company is above the law.

## ARGUMENT

## I.    APPLE'S NATIONWIDE FILING BAR IS AN UNAUTHORIZED "UNIVERSAL" INJUNCTION EXCEEDING EQUITABLE AUTHORITY

Just today, the Supreme Court issued a decision that fundamentally alters the landscape regarding injunctive relief: *Trump v. CASA*, Inc., 602 U.S. ___ (June 27, 2025). The High Court grounded its holding in broad constitutional limits on federal judicial power. The Court reaffirmed that any equitable relief "must be tailored to redress the plaintiff's particular injury" and "must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." In other words, a decree "that sweeps beyond the parties" to a case "exceeds the judicial power conferred by Article III." Nothing in CASA confines this

EMERGENCY MOTION FOR STAY AND STATUS CONFERENCE
CASE NO. 3:24-CV-8660-EMC

principle to government-defendant cases; it is a core Article III limitation that applies a fortiori to private litigation.

This Supreme Court ruling has direct and immediate implications here. Defendant Apple's pending "Motion for Sanctions" (ECF 70) effectively seeks relief that goes far beyond addressing the instant dispute – including an oppressive attempt to enjoin Plaintiffs from pursuing their claims elsewhere or in the future (a de facto nationwide litigation injunction), or even non-party, unnamed individuals. Under CASA's clarified standard, such universal relief is plainly improper. Article III prohibits one district court from issuing an order that binds other courts or non-parties. To whatever extent Apple's motion asks this Court to bar claims outside this case or to punish protected petitioning activity on a broad scale, it "exceeds the judicial power" and cannot be granted . Apple, its decision makers, and its counsel are on notice that their defiant refusal to comply with CASA warrants follow-on litigation against them in personal capacity. Specifically, Messieurs Kleinbrodt and Brass are alleged to be taking part in vexatious litigation and harassing litigation tactics against Plaintiffs, Roberts, and a disabled individual whom Gibson Dunn has targeted for over a decade in retaliation for a separate political issue.

Accordingly, Plaintiffs submit that Apple's Rule 11/§1927 sanctions motion is now untenable and should be stricken or promptly denied as a matter of law. At minimum, Plaintiffs must be given a fair opportunity to brief the impact of Trump v. CASA on the issues before the Court. Forcing Plaintiffs to meet a filing deadline set before this landmark decision (with barely 4 hours notice to assimilate the new authority) would be highly prejudicial. The Supreme Court has dramatically shifted the legal ground under this case – basic fairness and due process warrant a brief pause so that the parties and the Court can account for this change in law. Indeed, courts routinely allow supplemental briefing or extensions when new Supreme Court precedent emerges that may affect pending motions. Plaintiffs respectfully request that the Court do so here, to ensure any decision accords with the current, binding law.

Apple's nationwide filing bar is an extraordinarily broad prohibition that operates like a prohibited "universal" injunction. It extends to all courts nationwide and covers all future potential claims, not just the case in which it was issued. It purports to bind persons who were not joined as parties or even served in the action (e.g. the "associates" of the named individuals). It is not tailored to any plaintiff's specific injury, but rather preemptively extinguishes the rights of a broad class of non-parties.

Such sweeping, preemptive relief—an injunction against the world—falls cleanly within what the Supreme Court has now identified as a "universal injunction." In its decision *Trump v. CASA, Inc.* the Court held that "universal injunctions likely exceed the equitable authority that Congress has given to federal courts." In other words, a federal court lacks power to issue an injunction that, like Apple's filing bar, extends beyond the parties and controversies properly before it. The Judiciary Act of 1789 confers jurisdiction over "all suits in equity," but that grant is limited to the types of remedies "traditionally accorded by courts of equity" at our country's inception. Because no tradition supports an injunction of this breadth, the Apple filing bar lies beyond the court's statutory equitable authority.

English court of equity at the founding era provided no precedent for an order like this. The Supreme Court noted that "universal injunctions are not sufficiently 'analogous' to any relief available in the court of equity in England at the time of the founding."  In equity practice, it was a "general rule" that "all persons materially interested [in the suit] [were] to be made parties to it."  Injunctive relief was no exception to this rule: an injunction could only bind the defendants actually before the court. As Lord Eldon famously explained, "[Y]ou cannot have an injunction except against a party to the suit." Thus, in the English Chancery there was no mechanism to enjoin the rights or actions of non-parties on a nationwide scale. Indeed, "under longstanding equity practice in England, there was no remedy 'remotely like a national injunction.'" The type of all-encompassing, *erga omnes* ban represented by Apple's filing bar simply did not exist in traditional equity jurisprudence. Nor did early American courts of equity recognize any such sweeping remedy. If anything, historical practice in U.S. courts underscores that relief must be party-specific. An unwavering line of cases established that a court cannot grant remedies to those who are not before it. Neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs. Universal or nationwide injunctions were conspicuously nonexistent for most of the Nation's history. Their absence from 18th and 19th century equity practice effectively settles the question of judicial authority. Simply put, a court never had the power to impose a blanket prospective ban on litigation by non-parties – and it does not have that power today unless Congress affirmatively expanded equitable jurisdiction (which it has not).

Under the Supreme Court's reasoning in *Trump v. CASA*, Apple's nationwide filing bar is precisely the kind of ultra vires remedy that federal courts cannot issue. Equity may be flexible in fashioning relief, but its

EMERGENCY MOTION FOR STAY AND STATUS CONFERENCE
CASE NO. 3:24-CV-8660-EMC

flexibility "is confined within the broad boundaries of traditional equitable relief." Because a "universal" injunction "lacks a historical pedigree," it "falls outside the bounds of a federal court's equitable authority under the Judiciary Act." Apple's bar lacks any analogous historical counterpart and thus exceeds the court's constitutional and statutory mandate.

Finally, even if Apple argued that such an expansive ban was necessary to obtain "complete relief" from vexatious litigation, that argument cannot justify overstepping the limits of equity. "'Complete relief' is not synonymous with 'universal relief.'" A court may ensure a plaintiff or defendant gets full relief in the case at hand, but it cannot lawfully insulate a party from all possible future claims by others – that would go beyond administering relief "between the parties" and instead confer an unauthorized windfall of immunity. As Justice Barrett's opinion makes clear, when it comes to remedial power, "the answer is not for the court to exceed its power, too." No matter how strongly Apple desired global protection from lawsuits, the judiciary cannot leap outside its jurisdiction and issue a nationwide filing embargo unsupported by equitable tradition or specific authority.

In sum, Apple's nationwide filing bar is an improper universal [or whatever label they call it in their endless contempt of courts, now including the Supreme Court] injunction that finds no warrant in the history or scope of federal equitable power. Under the Supreme Court's holding in *Trump v. CASA*, Inc., such an order "likely exceed[s] the equitable authority that Congress has granted to federal courts," and it cannot stand. It is actively harming Plaintiffs, inflicting damage – just like Apple's improper litigation ban against a disabled individual four years ago (see below) harmed him, yet was ignored by this Court. This must stop. Immediately. The injunction's breathtaking universality – covering all courts, all future claims, and numerous nonparties – makes it null and void under fundamental principles of equity. The Court should therefore strike down the Rule 11 motion, bringing the relief in line with the traditional, party-bound scope of judicial authority. Anything less would condone an arrogation of power that the Supreme Court has now emphatically rejected.

## II. A STAY IS NECESSARY TO RESOLVE SERIOUS QUESTIONS ABOUT JUDICIAL IMPARTIALITY

Plaintiffs have raised significant concerns regarding the impartiality of the presiding judge and are preparing a motion for recusal under 28 U.S.C. § 455. This is not done lightly. However, events to date – including the Court's handling of certain issues – have created an appearance of bias or prejudgment that

compels careful review. By law, a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The standard is objective: if a reasonable person, knowing all the facts, would doubt the judge's neutrality, recusal is warranted. Importantly, "if it is a close case, the balance tips in favor of recusal." *United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008). This rule exists to preserve public confidence in the justice system, and to avoid even the appearance of partiality. This is not even a close case; Apple has now conceded (see, *infra*) this Court muzzled a disabled *pro se* litigant five years ago, and struck down a sanctions plea for help when he asked the Court to unmuzzle him. This is despicable, not a close call.

Here, Plaintiffs believe there are substantial grounds for recusal (to be detailed in the forthcoming motion), including indications that the Court may have prejudged key aspects of Plaintiffs' claims. Notably, in the prior dismissal order the Court entirely ignored Plaintiffs' allegations of new misconduct and markets that arose after the initial case – suggesting a predetermined outcome. Such omission goes to the heart of Plaintiffs' ability to be heard fairly. Additionally, other developments raise concerns about potential conflicts or biases. While we will not argue the full merits of recusal in this motion, we emphasize that these issues are urgent and non-frivolous. They strike at the very integrity of the proceedings. Attorney Theriault has not responded to a request for her review of this matter, as undersigned sought a non-conflicted opinion – as he did at the outset of this case from Theriault.

Fundamental fairness dictates that major substantive decisions should be stayed until the recusal question is resolved. If the Court's impartiality is in doubt, proceeding with tight deadlines (or ruling on dispositive motions) risks tainting the process and could necessitate vacating those rulings later. Conversely, a short stay causes little harm. Staying proceedings now allows time for a proper hearing on recusal, ensuring that "justice must satisfy the appearance of justice." In the interest of justice – and given that any doubt should be resolved in favor of recusal – Plaintiffs respectfully request the Court pause current deadlines and convene a prompt hearing on the recusal motion. Resolving this threshold issue first will either restore confidence in this tribunal's neutrality or result in assignment to a new judge, before resources are expended on further briefing under a potential cloud of bias.

## III.  PLAINTIFFS ARE CURRENTLY WITHOUT CONFLICT-FREE COUNSEL, WARRANTING A CONTINUANCE

Compounding the above issues, Plaintiffs are effectively deprived of adequate counsel at this critical juncture. The only attorney currently able to act is Keith Mathews, who serves as Plaintiffs' Chief Legal Officer and corporate representative. Undersigned is a loyal and reasonable advocate, but he is laboring under a conflict of interest and practical constraints that severely prejudice Plaintiffs' case. Specifically, as a corporate officer and likely fact witness in matters at issue in the Rule 11 motion, Undersigned Mr. Mathews cannot be expected to vigorously litigate certain points without compromising his duties to the corporation or risking testimony that could be necessary. This is a classic advocate-witness and conflict-of-interest situation. Under professional ethics rules, an attorney who is a principal in the client company has inherent conflicts that can hinder objective representation (e.g., Cal. Rules of Prof. Conduct 1.7 & 3.7). Undersigned himself has acknowledged these conflicts and sought already retained independent assistance to represent Plaintiffs' interests.

That independent counsel is Melissa Theriault, Esq., a highly qualified attorney with law enforcement and DOJ AUSA experience and disability expertise directly relevant to this case. Ms. Theriault was engaged specifically to provide conflict-free, experienced representation, advised from the outset that the res judicate matters would be vigorously contested by Apple. However, despite being a signatory to the FAC, she improperly noticed withdraw (apparently threatened by Apple, see Schwartz emails) before substantive briefing was due. Critically, the Court has not granted any order permitting her withdrawal – meaning Ms. Theriault remains counsel of record for Plaintiffs at this time. Indeed, hereby requested is a status conference to address Ms. Theriault's role and the overall representation issue. The question of who will serve as Plaintiffs' lead counsel pending the antiSLAPP and Rule 11 proceedings is actively pending. Until it is resolved, Plaintiffs are left in limbo with an attorney (undersigned) who is conflicted and an attorney (Ms. Theriault) who is, for whatever reason, failing to comply with the Rules.

It would be profoundly unjust to force Plaintiffs to meet imminent briefing deadlines under these circumstances. The importance of effective, conflict-free counsel cannot be overstated – it is a bedrock of due process. Courts regularly grant continuances when a party's counsel withdraws or is unable to serve, to allow the party to retain new counsel and get up to speed. Here, Mr. Mathews himself, as an officer of the court, is affirmatively asking for such relief due to his conflict. Plaintiffs deeply need Ms. Theriault's participation given her extensive experience with antitrust and government enforcement matters. Plaintiffs

respectfully submit that a stay and new schedule should be ordered so that Ms. Theriault can be fully brought into the case (or alternate unconflicted counsel engaged) before Plaintiffs are required to file critical briefs. This will ensure Plaintiffs have a fair opportunity to be heard through competent counsel, and it will aid the Court by sharpening the quality of briefing on the complex issues in this lawsuit.

Notably, no party will suffer prejudice from a continuance to sort out representation. In contrast, denying a continuance would gravely prejudice Plaintiffs, who would effectively have to brief multiple complex issues without proper counsel. Such an outcome risks a one-sided presentation and a potential miscarriage of justice. Plaintiffs have acted in good faith and have compelling reasons for the request; Apple cannot credibly claim any real harm from a short delay, especially because the case is currently (improperly) dismissed. Therefore, an extension is not only permissible under Rule 6(b) – it is the only equitable course to ensure both sides can be fully and fairly heard.

## IV. PARALLEL PROCEEDINGS AND UNRESOLVED CLAIMS COUNSEL IN FAVOR OF A FULL STAY

Plaintiffs also seek a stay to prepare a declaratory judgment component involving "The Coring Company" ("Coring") – a related entity and claim that was carved out and held in abeyance previously. By way of background, The Coring Co. filed a sister antitrust suit against Apple in a different forum, which was later transferred to this District. Plaintiffs will request a declaratory judgment as to Apple's liability for newly emerged conduct and markets (the post-2021 developments) which directly include the Coring claims. The Court, however, never addressed those new allegations or the Coring case in its prior dismissal order (despite knowing it was held in abeyance) – effectively leaving that aspect of the case unresolved. In discussions, it was contemplated that the Coring-related claims would await further evidence of Apple's conduct in new markets (like blockchain apps generally) before adjudication. Now, with dismissal of earlier claims, and a potential nationwide ban that would target Coring(a non-party), those issues have resurfaced and become ripe for decision. Yet no ruling has been made; they remain in procedural limbo. It is critical that Plaintiffs be allowed to fully present the Coring declaratory claim so that the entire controversy is resolved on the merits. For the Court to proceed to final judgment (or to sanction Plaintiffs for supposedly repetitive

1    litigation) without ever considering the Coring/new-conduct allegations would be fundamentally unfair and

2    would deprive Plaintiffs of a chance to be heard on evolving facts.

3        For these reasons, Plaintiffs request a full stay of the case or at least a stay of all impending deadlines

4    until the Court has addressed the status of the Coring declaratory claims and whether Plaintiffs may pursue

5    them (perhaps with an amended pleading to incorporate post-dismissal developments). The Supreme Court

6    has long recognized that the power to stay proceedings is incidental to the power inherent in every court to

7    control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and

8    for litigants. *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936). Here, all those factors favor a temporary stay.

9    There are multiple moving pieces and external factors that could significantly affect the posture of this case.

10   Rather than rush piecemeal through briefing under extreme time pressure, the Court should maintain an even

11   balance and grant a stay so that these matters can be sorted out in an orderly fashion. Undersigned has been

12   fighting for a day in court for Coring for four years; we are not seeking to delay for its own sake, but to

13   ensure that when their claims are heard, it is done right – with the proper parties, under the correct law, before

14   an impartial judge, and with all key issues on the table. A short additional delay now serves the interests of

15   justice and will ultimately conserve judicial resources by reducing the need for reconsideration or appeals.

16
17   **V.      REVELATIONS IN APPLE'S ANTI-SLAPP OPPOSITION NECESSITATE JUDICIAL**
18   **INTERVENTION**

19       One major revelation from Apple's antiSLAPP opposition brief is that Apple effectively forfeited any

20   rebuttal to Plaintiffs' "new conduct" argument under *Lawlor v. National Screen Service*. In other words,

21   Apple did not dispute that the FAC alleges post-2021 misconduct by Apple – conduct which occurred after

22   the judgment in CR I. Apple's filings conspicuously ignore every single reference to post-2021 activity, even

23   though Plaintiffs' antiSLAPP motion emphasized likelihood to prevail based upon it. By failing to respond

24   on this point, Apple conceded the issue through silence. It is a well-settled principle that when a party fails

25   to oppose an argument, the court may treat it as waived or admitted. Apple's silence here amounts to an

26   admission that the "new conduct" exception to res judicata applies.

27       Under the Supreme Court's *Lawlor* doctrine, a prior judgment cannot bar a later suit if the latter is based

28   on facts or conduct that occurred after the earlier judgment. In *Lawlor*, the Court held that a second antitrust

29   action was not barred by the first judgment under the doctrine of res judicata, because the plaintiffs sought

1    relief only for injuries sustained after the first case's judgment. Even if the two suits involve "the same course

2    of wrongful conduct," res judicata will not preclude the second suit so long as the suit alleges new facts or a

3    worsening of the earlier conditions. In our case, the FAC clearly targets post-2021 Apple conduct – e.g.

4    continued or new anti-competitive acts that occurred after CR I ended. Plaintiffs raised this point to counter

5    Apple's claim-preclusion defense. By failing to address it, Apple has forfeited any contention that the CR II

6    claims lack new conduct. Apple's opposition does not contest that new injuries and events unfolded after

7    2021, which form the basis of the current claims.

8        This forfeiture is critical because the District Court's Rule 12(b)(6) dismissal earlier this week did not

9    consider any "new conduct" argument at all. The Court's dismissal order was premised on claim preclusion

10   and privity, yet it said nothing about post-judgment conduct or Lawlor. In light of Apple's concession, that

11   omission is stark. It now stands undisputed that the FAC alleges conduct by Apple that occurred after the CR

12   I judgment – meaning those claims could not have been raised in the 2021 suit and are not precluded. Any

13   12(b)(6) dismissal resting on res judicata is therefore fatally undermined. If the Court assumed the facts were

14   all pre-2021 or identical to CR I, that assumption no longer holds. Because Apple completely failed to address

15   the new-conduct point, the Court should deem it conceded. Consequently, Plaintiffs have at least some claims

16   that are independent of the prior case and must be allowed to proceed (or at minimum, the earlier dismissal

17   must be revisited and vacated). In short, Apple's own opposition confirms that *Lawlor* applies here, freeing

18   the new claims from any res judicata bar. This alone warrants immediate judicial attention and likely

19   reconsideration of the 12(b)(6) dismissal that deliberately refused to address these new facts, under a new

20   post-recusal Court,

21
22   **VI.    APPLE'S CONCESSION THAT GREENFLIGHT LACKED REPRESENTATION IN CR**
23   **I**

24
25       Perhaps the most breathtaking revelation is Apple's explicit admission that Plaintiff Greenflight Venture

26   Corp. was never represented by counsel in CR I. Apple now concedes there is "no evidence" Undersigned

27   Mathews ever attempted to represent Greenflight in CR I, and indeed, he never did represent Greenflight.

28   Apple knows that Greenflight had no counsel in the first case. This frank concession has far-reaching

29   implications for the integrity of both the prior proceedings and the current case. It means Apple acknowledges

1  – after years of suggesting otherwise – that Dr. Jeffrey Isaacs was proceeding pro se and unrepresented with

2  respect to his shareholder interests in Greenflight in CR I.

3  Why is this so important? In CR I, Apple's counsel (Ms. Rachel Brass) actively prevented Dr. Isaacs

4  from participating because he was not an attorney, but was, breathtakingly, a "represented" party [hybrid was

5  meant to instill confusion, which it did]. Apple's September 30, 2021 meet-and-confer letter accused Isaacs

6  of improperly attempting to communicate and participate in litigation. Apple took the position that Isaacs

7  could not appear pro se. In other words, Apple's shut Isaacs out of the case (e.g. barring him from meet-and-

8  confer discussions on behalf of the app or any unrepresented entity). Indeed, Apple's team cited ethical rules

9  (California Rule 4.2) to refuse direct contact with Isaacs on the theory that he was "represented" by attorney

10  Mathews or otherwise not permitted to speak for the company. The result was that Isaacs (and nd any

11  shareholder voice for Greenflight ) was silenced in CR I.  Isaacs, as a *pro se* investor/executive, was not

12  allowed to actively represent Greenflight's position, and Greenflight had no independent counsel of its own.

13  Isaacs moved for sanctions about it, in desperation, which this Court denied on "timeliness." It is now

14  abundantly clear Isaacs' sanction motion was critical to the fair adjudication of the case, and this Court

15  blocked it, a long string of years of bias towards Isaacs for unknown reasons that warrant investigation.

16  Yet now, in its 2025 filings, Apple does an about-face and admits Isaacs truly was a *pro se* participant all

17  along. Apple no longer pretends that Greenflight had an attorney in CR I – effectively conceding that

18  Greenflight was unrepresented and absent from any meaningful participation. This admission gravely

19  undercuts the foundation of the Court's prior rulings on privity and preclusion. In the Rule 12(b)(6) dismissal,

20  the Court accepted Apple's argument that Greenflight's claims were barred because Dr. Isaacs was a party

21  in CR I, thus placing Greenflight in privity with him. That is an extraordinary exception to the normal rule

22  that privity does not extent between corporations; the Court 'pierced a corporate veil' with absolutely zero

23  evidentiary discovery! The Court, in effect, treated Isaacs's role in CR I as sufficient to bind Greenflight (the

24  company) to that judgment – even though Greenflight was not named in CR I. Apple urged this outcome in

25  its motion to dismiss, arguing that Isaacs's involvement in CR I was tantamount to Greenflight being there.

26  The Court must declare what problem it has with Isaacs; it is all but evident, and if it is some grievance with

27  his disabled status, that constitutes judicial misconduct. Recusal will be necessary given these facts; there is

1    no way this Court can credibly proceed in this case, having ignored a disabled pro se Plaintiff's plea for help

2    for five years. This is shameful and the federal courts and citizens of this country deserve better.

3        Apple's newly-minted admission flips the script: if Greenflight truly had no representation in CR I, and

4    if Apple itself prevented Isaacs from acting for Greenflight, then how can Apple now claim Greenflight's

5    rights were adjudicated or forfeited in that case? Apple cannot have it both ways. It is fundamentally unfair

6    – and legally incoherent – to say on the one hand, "Isaacs cannot act for the company (so we will exclude

7    him)," and on the other hand to claim, "Isaacs's actions bind the company and preclude its claims." Yet that

8    is exactly the contradiction Apple has advanced:

9        In 2021 Apple told the Court that Isaacs acting pro se for a corporate entity was "improper" and not

10   allowed. Apple's counsel explicitly noted Isaacs was not Greenflight's representative, calling him instead

11   "Mathews' client" [a falsity, playing on 'client representative' misnomer] to emphasize that only the

12   attorney-of-record could speak. At the time, Apple's position was that any attempt by Isaacs to represent the

13   app or Greenflight "violates § 1654" (the statute allowing self-representation). In short, Apple insisted

14   Greenflight was not (and could not be) represented by Isaacs pro se in CR I.

15       Fast forward to 2025: To defeat Greenflight's claims in CR II, Apple switched its story. In its motion

16   reply, Apple argued Isaacs's role in CR I indeed created privity and "binds Greenflight" to that prior outcome.

17   Apple suddenly portrayed Isaacs as if he had functioned as Greenflight's agent or representative in the first

18   case – the exact scenario Apple had earlier fought to prevent. Apple even suggested that acknowledging

19   Isaacs's pro se status "saves jurisdiction" by ensuring Greenflight was effectively present before the Court.

20       The Court has seen this all before, and turns a blind eye. The difference today is that Apple even conceded

21   it in their antiSLAPP opposition. The only entity not conceding it at this point in time is the Court, effectively

22   taking an untenable *sua sponte* position. This is unacceptable judicial conduct, to say the least. Judicial

23   estoppel principles forbid a litigant from taking a position clearly inconsistent with one it previously

24   persuaded a court to accept. Here, Apple persuaded Judge Chen to dismiss Greenflight's claims by treating

25   Isaacs as its privy, even though Apple had earlier treated Isaacs as having no authority to represent that

26   company. Now Apple admits the truth: Greenflight was not represented in CR I at all. A post-recusal Court

27   must admit the truth as well.

These implications are admittedly profound. It means Greenflight never had its "day in court" in the first lawsuit. Greenflight did not have counsel, was not a named plaintiff, and its would-be representative (Isaacs) was barred from participating on its behalf. Basic due process dictates that a final judgment cannot bind a non-party who was prevented from appearing. If Apple's 2021 stance was correct (that Isaacs couldn't represent Greenflight), then Greenflight was a legal stranger to CR I – and thus should not be bound by that result. Conversely, if the Court is to treat Greenflight as bound through Isaacs's involvement, then it must acknowledge that Apple wrongfully hindered Greenflight's participation by silencing Isaacs. Either scenario is deeply problematic. At minimum, Greenflight has a "fresh slate to proceed in CR II" since it was not actually represented in the prior case. Apple itself now essentially concedes Greenflight was absent in CR I, so there is no equitable basis to preclude Greenflight's claims in the present action.

Furthermore, Apple's handling of this issue raises concerns of misrepresentation or abuse of process. Apple's opposition acknowledges that its prior characterization may have misled the Ninth Circuit and this Court about who the CR I plaintiffs were. For instance, Apple argued in the appeal that "as far as Apple can tell, there is no actual 'Coronavirus Reporter' entity" (implying a null, non-existent plaintiff) – a stark reversal from Rachel Brass's letter confidently stating "Coronavirus Reporter is a Wyoming Corporation". These shifting positions underscore that Apple has been willing to assert whatever version of the facts best suits its tactical needs at the time, even if that means three incompatible descriptions of the plaintiff entities. Now that Apple has let slip that Greenflight truly had no counsel in CR I, the fairness of the prior dismissal of Greenflight (on privity grounds) is impossible to maintain. The Court is left to reconcile this unfair situation. Either: CR I should be reopened or revisited to cure the fact that a pro se participant (Isaacs/Greenflight) was improperly blocked from full participation; or The Court should retract its 12(b)(6) decision and hold that Greenflight is not precluded by CR I, given that Greenflight was effectively excluded and unrepresented in that case.

## VII.    APPLE'S DISREGARD FOR THE ANTI-SLAPP PROCESS AND PROCEDURE

Apple's conduct in pressing its Rule 11 sanctions motion blatantly disrespects the intent and mandates of California's anti-SLAPP law. Under Code of Civil Procedure § 425.16, once Plaintiffs filed their anti-SLAPP motion, further litigation of the claims at issue should have been paused – at least with respect to any proceedings that implicate the allegations subject to the anti-SLAPP motion. The anti-SLAPP statute

automatically stays discovery and freezes the prosecution of targeted claims until the special motion to strike is resolved. This rule exists to prevent exactly what Apple attempted here: forcing a party to fight on other fronts (such as sanctions or evidentiary hearings) while a court is supposed to first determine whether the case has merit or is a chilling SLAPP suit. Apple nevertheless forged ahead and filed a "Reply" in support of its Rule 11 motion – even arguing, incredibly, that Plaintiffs' lack of an opposition by a normal deadline amounted to a forfeiture of the issue. In doing so, Apple brazenly ignored the automatic stay dictated by the anti-SLAPP statute and the well-settled procedure that no response was due while the anti-SLAPP motion was pending. This disregard for the law's mandatory pause on litigation not only violates the spirit of §425.16 – which is to prevent abusive litigation tactics – but also contravenes its letter and clear legislative intent. (The Legislature explicitly directed that the anti-SLAPP law "shall be construed broadly" to curb "abuse of the judicial process" aimed at chilling the right to petition .) Apple's maneuver flouts this public policy. It is more proof of a pattern of Apple being "above the law" and intent to flout their contempt of Court. The Honorable Gonzales Rogers put an end to this conduct, but literally the same month, this Court endorsed Apple's contempt and trampled on petitioners seeking to raise discussion about Big Tech's overreach – something even most Big Tech executives (ie Zuckerberg) welcome. Impermissibly, the Court allowed Apple's irregular filing and has thus far declined to enforce the anti-SLAPP stay. Such indulgence of Apple's maneuver undermines confidence in the Court's impartiality. It suggests a troubling pro-Apple bias – the Court allowed Apple to sidestep a procedure designed to protect litigants from exactly this kind of heavy-handed tactic. This one-sided dispensation to ignore the rules warrants serious concern. At a minimum, the court's failure to uphold the anti-SLAPP stay is legal error; at worst, it betrays a bias that would justify recusal to ensure a fair forum for Plaintiffs.

## VIII.   APPLE'S RULE 11 MOTION IS A DISGUISED VEXATIOUS LITIGATION CLAIM

Substance must prevail over form. Apple's so-called Rule 11 motion is, in effect, a civil state claim against Plaintiffs for vexatious litigation – a claim that Plaintiffs' filings in this and other venues constitute an abuse of process and harassment of Apple. Apple's motion repeatedly cites Plaintiffs' lawsuits and motions in other tribunals (including appeals to the Supreme Court and petitions to the JPML) as grounds for relief, and it seeks to punish Plaintiffs for pursuing those cases. Anyone (except this Court) can see that Apple and Gibson Dunn are flagrantly bullying the Plaintiffs. Stripped of rhetoric, Apple is accusing Plaintiffs of

improperly exercising their fundamental right to petition the government for redress of grievances. In California, however, any "cause of action…arising from any act" of a person's right of petition or free speech in connection with a public issue – which unquestionably includes filing lawsuits and motions in court – is subject to being stricken under the anti-SLAPP statute. Apple's sanctions demand targets Plaintiffs' acts in furtherance of their right of petition (their lawsuits and court filings), meaning Apple's motion itself triggers anti-SLAPP protections. This is precisely the "disturbing increase in lawsuits [or claims] brought primarily to chill" petitioning activity that the California Legislature sought to eradicate.

Crucially, California law provides legitimate avenues to address truly frivolous or harassing litigation – but Apple pointedly did not follow those, at least, not openly but through cloaked Rule 11 motions. For example, if Apple believes it has grounds to declare Plaintiffs "vexatious litigants," it could file a separate malicious prosecution action. Those are the proper (and high-bar) remedies for a party that believes it is the victim of baseless, repetitive litigation. Apple's choice to instead shoehorn its grievance into a Rule 11 motion is an attempt to evade the stricter standards and due process protections of those proceedings. In other words, Apple dressed up a state-law vexatious litigation claim as a sanctions motion, hoping the court would overlook that subterfuge. The anti-SLAPP law exists to prevent exactly this kind of end-run around a plaintiff's constitutional rights. Apple's disregard for the anti-SLAPP stay and its exploitation of a sanctions motion to do the work of a vexatious-litigant lawsuit demonstrate a profound disrespect for the intent of anti-SLAPP protections. Such tactics, if allowed, would severely undermine the rights of citizens (like Plaintiffs) to pursue claims against powerful entities without fear of crushing retaliation.

Apple's year-in-the-making sanctions motion is styled as a routine Rule 11 request. In reality it is a sprawling, hybrid pleading confounding three different federal doctrines Apple—Rule 11, 28 U.S.C. § 1927, or the court's inherent authority. None authorizes that relief Apple seeks. Once those doctrines' textual and doctrinal limits are applied, Apple's paper functions only as a **state-law abuse-of-process claim** aimed at silencing protected petitioning activity. California Code of Civil Procedure § 425.16 therefore supplies the correct procedural filter; Apple's motion should be denied under the anti-SLAPP statute or, alternatively, pared back to the narrow sanctions the federal rules actually permit.

## IX.  APPLE SEEKS RELIEF BEYOND WHAT ANY FEDERAL SANCTION RULE PERMITS

Apple's motion is also improper because it demands relief that **no federal rule or statute allows** in this context. The company asks for a sweeping order that would reach far beyond this case – essentially an injunction or adjudication against Plaintiffs (and unnamed associates) litigating any Apple related issues from **other proceedings or even future injury**. To say this is unprecedented is an understatement. Neither Rule 11, nor 28 U.S.C. §1927, nor the court's inherent authority provides a *carte blanche* to rewrite history or preempt a litigant's future access to courts on a wholesale basis.

**Rule 11** focuses on sanctioning specific filings in the case at bar that violate the Rule 11(b) standards (e.g. filings made for an "improper purpose, such as to harass" or legal contentions that are unwarranted). It is not a vehicle for imposing forward-looking injunctions or for revisiting the merits of *other courts' decisions*. Rule 11 sanctions, when warranted, are meant to deter misconduct *in the instant litigation* – typically by penalizing the offending filing or awarding attorneys' fees for work caused by that filing. Here, Apple tries to use Rule 11 as a cudgel to collaterally attack Plaintiffs' filings in **completely separate cases** (Supreme Court petitions, JPML motions, appeals in other circuits) which are outside the scope of this Court's purview. There is zero precedent for a Rule 11 sanction that, for example, declares a litigant's Supreme Court petition frivolous and then gags the litigant from further appeals. By design, Rule 11 does **not** confer authority to issue broad injunctions or to adjudicate the propriety of filings in *other jurisdictions*. Apple's attempt to stretch it to those ends is an abuse of the rule. And if it wasn't an abuse of the rule at filing, it certainly is today, given the SCOTUS ruling against universal injunctions.

**28 U.S.C. § 1927** allows shifting of excess costs against an attorney who "unreasonably and vexatiously" multiplies proceedings, but its reach is limited to conduct in the proceedings *before the court issuing sanctions*. It provides for monetary relief (payment of fees and costs) – not injunctions or declaratory relief – and notably applies to attorneys, not the parties themselves. Apple's motion, however, targets the Plaintiffs *themselves* and collateral, prior tribunals – and seeks non-monetary directives far beyond any costs incurred in this single case. Section 1927 simply has no application to the relief sought.

**Inherent authority** is strictly confined and limited by due process and jurisdictional principles. A court's inherent power can never justify a blanket prohibition against future lawsuits by non-parties, nor can it extend beyond the particular case and parties directly before the court. The Supreme Court reiterated these exact

18

1    limits in its recent ruling in *Trump v. CASA, Inc.*, 606 U.S. ___ (2025) (slip op. June 27, 2025), holding

2    explicitly that "[r]elief must be limited to the inadequacy that produced the plaintiff's injury in fact. A decree

3    that sweeps beyond the parties exceeds the judicial power conferred by Article III." (slip op. at 12–13).

4        Apple's requested nationwide injunction—which seeks to preemptively bar not only the plaintiffs but

5    also non-party individuals (such as Isaacs, Roberts, Mathews, and unidentified "associates") from pursuing

6    future claims in **any court in the country**—grossly exceeds this constitutional boundary. Inherent authority

7    is inherently case-specific and party-specific; it provides no vehicle for a court to police future actions not

8    yet filed, especially by non-parties who have never been served or had their day in court.

9        The Supreme Court's ruling today makes Apple's request not merely excessive, but facially invalid.

10   Plaintiffs have noticed counsel Julian Kleinbrodt and Rachel Brass of their intent to personally sue them and

11   the decision maker responsible at Apple for this harassment; they refuse to retract the filling despite a clear

12   SCOTUS mandate. Compliance with the Supreme Court is measured in *minutes* and Kleinbrodt and Brass

13   have issued a defiant, stubborn notice that they WILL NOT comply with CASA.  A nationwide injunction

14   of this kind would be unconstitutional, categorically barred under *CASA*'s binding precedent. Apple's

15   continued insistence on this patently impermissible relief—despite repeated notice and ample opportunity to

16   withdraw—is itself now sanctionable. Federal courts simply have no power to issue prophylactic injunctions

17   barring theoretical future claims, let alone to enforce such injunctions nationwide against non-parties.

18   Allowing Apple's motion to proceed under inherent authority would directly contravene the Supreme Court's

19   express limitation of equitable remedies and would dangerously expand judicial power beyond constitutional

20   limits. Apple's attempt here is plainly improper and should be swiftly denied. Litigation against Apple for

21   this conduct (post-FAC) is hereby noticed as pending.

22   **X.    VEXATIOUS LITIGANT ALLEGATIONS REQUIRE A SEPARATE PROCEEDING –**

23   **WITH FULL DUE PROCESS**

24       If Apple genuinely believes it is being victimized by "vexatious" litigation, the proper course is to file a

25   **separate action or motion** devoted to that issue – one that affords both sides the full spectrum of due process.

26   The law does not lightly permit a defendant to label a plaintiff's efforts as frivolous or harassing; stringent

27   safeguards are in place to separate genuine abuse of the legal system from a litigant's good-faith pursuit of

28   claims. Apple has shown no interest in meeting those safeguards. It wants the *headline* of "Plaintiffs declared

29   vexatious" without the inconvenience of proving it by competent evidence in a fair proceeding, to a jury. But

19

1    **Plaintiffs are entitled to defend their litigation history** in a proper forum. We have made clear that if Apple

2    wants to go down that road, then **we are entitled to a full evidentiary hearing and discovery** into Apple's

3    own conduct and litigiousness for against single antitrust advocate it ever faced. That means delving into

4    Apple's pattern of legal tactics and litigation behavior, which is highly relevant to any determination of who

5    is abusing the courts.

6        For example, in the Epic Games v. Apple case – a landmark antitrust litigation – Apple was found to

7    have **"willfully violated"** a court injunction, essentially flouting a federal judge's order until caught . Judge

8    Gonzalez Rogers issued a scathing 80-page order against Apple in 2025 for this contemptuous behavior ,

9    even emphasizing that court orders are "not a negotiation" and admonishing Apple for its blatant disregard

10    of legal mandates. This incident speaks volumes about Apple's approach to the judicial process and undercuts

11    any narrative that Apple is merely an innocent target of frivolous litigation. A party that willfully disobeys

12    court orders (to preserve its commercial dominance) has little credibility to accuse others of abusing process.

13        In the *AliveCor v. Apple*, Apple fought fiercely to avoid liability – reportedly engaging lobbyists and

14    deploying aggressive legal strategies to delay or derail its opponent's claims. We would seek discovery into

15    those efforts, as they may reveal a pattern of Apple using its vast resources to wear down adversaries and

16    influence outcomes outside of the courtroom. Such information could demonstrate that Apple's cries of being

17    "harassed" by litigation are a classic case of *the pot calling the kettle black* – Apple routinely litigates others

18    into the ground, yet protests when an individual plaintiff refuses to back down against Apple. We also would

19    examine instances where Apple or its counsel may have **misled courts or regulators**. Plaintiffs have reason

20    to believe that Apple (and the law firm representing it) have, on occasion, made deceptive statements under

21    oath or in legal proceedings to advance Apple's interests. If true, this reflects *bad faith* far more egregious

22    than anything Apple accuses Plaintiffs of. Such a track record would bolster Plaintiffs' position that our

23    allegations against Apple – including claims of serious wrongdoing – deserve to be heard and not summarily

24    dismissed as fantasy or "harassment." It would also show that Apple's resort to a punitive sanctions motion

25    is less about genuine vexation and more about **silencing a critical voice** that might expose Apple's

26    misconduct.

27        In sum, determining whether a litigant is improperly "harassing" the other with baseless filings is a fact-

28    intensive question – one that should be adjudicated in a dedicated proceeding, with both sides allowed to

1  fully develop the record. Plaintiffs emphatically assert that **our claims against Apple are brought in good**

2  **faith**, to seek redress for real injuries caused by Apple's monopolistic and unlawful practices. Apple

3  obviously disputes that. But the forum to resolve that fundamental dispute is **this lawsuit itself** (on its merits),

4  or a separate malicious-prosecution-type action – *not* a shortcut sanctions motion that presumes Apple's

5  innocence and Plaintiffs' culpability without trial. If Apple truly wants to put Plaintiffs' litigation history on

6  trial, then Apple itself must be prepared to undergo the same scrutiny. That means the "trial" should

7  encompass Apple's history of litigation and lobbying, its conduct in other cases, and its credibility before a

8  fact-finder. Needless to say, that is a tall order and a distraction from the core merits of the current case –

9  which is why such matters are normally bifurcated into separate actions. Apple's attempt to have this court

10  unilaterally decree Plaintiffs as vexatious, without those safeguards, is procedurally and constitutionally

11  improper.

12      Finally, we note that the Court's acquiescence in Apple's procedurally improper tactics so far has put

13  Plaintiffs in an unfair position. By entertaining Apple's motion (or by allowing it to progress despite the anti-

14  SLAPP stay), the Court is effectively crediting Apple's narrative that Plaintiffs' case is not legitimate –

15  without hearing Plaintiffs' evidence. This not only undermines the purpose of the anti-SLAPP statute but

16  also chills Plaintiffs' own rights. We respectfully urge the Court to reconsider the path taken. The **proper**

17  **course** is to enforce the anti-SLAPP procedures as the law requires – which would mean halting any further

18  proceedings on Apple's Rule 11 motion, and indeed striking that motion as an independent "claim" seeking

19  relief against protected petitioning activity. Anything less would reward Apple's disregard for the rules.

20  Moreover, to dispel the appearance of bias that has arisen, the Court should carefully re-evaluate its stance

21  in light of the robust protections California law affords to litigants facing exactly this kind of corporate

22  counter-attack. If the Court is unwilling or unable to do so – if it permits Apple to continue flouting the anti-

23  SLAPP stay and pressing an unauthorized sanctions gambit – then Plaintiffs submit that recusal may be

24  warranted or mandamus indicated. A fair adjudication is possible only if the tribunal scrupulously adheres to

25  the law and remains neutral. Right now, Apple's influence and the Court's tolerance of Apple's procedural

26  gamesmanship have tilted the playing field. That must be corrected, either by the Court's own action or by

27  removing the matter to a forum where the rules will be enforced evenhandedly. Plaintiffs simply ask for the

**same procedural respect and justice** that any litigant is due – no less, even if the opponent is the world's largest company. The anti-SLAPP statute, and the integrity of the courts, demand nothing less.

## XI.    NEED FOR A STATUS CONFERENCE AND POTENTIAL REMEDIES

The above revelations – Apple's forfeiture of the new-conduct issue and its concession regarding Greenflight's non-representation – demand further investigation and judicial action. They are not mere technicalities; they strike at the heart of the case's procedural and substantive fairness. It would be inappropriate for the Court to simply proceed to the next stage (or to enforce any sanctions or judgments) without first unraveling these issues. Plaintiffs have requested an emergency stay, and the newly exposed issues strongly support granting such relief until the Court can sort this out. Specifically, a status conference (and an evidentiary hearing) is urgently needed so the Court can question the parties and clarify how to administer justice going forward. At this conference, Apple should be required to explain its positions (past and present) on the record, and the Court can consider appropriate measures. The following possible actions should be on the agenda:

1. **Reconsideration of the Rule 12(b)(6) Dismissal:** The Court has authority to reconsider or vacate its prior dismissal rulings in order to correct clear error or prevent manifest injustice. In light of Apple's concessions, the premise of the dismissal (that all claims were old and that Greenflight was bound by privity) is now shown to be flawed. The Court should seriously consider **reopening Isaacs' pro se claims** and any other claims premised on post-2021 conduct. As detailed above, Apple has effectively conceded that **Lawlor new conduct** exists here, so any dismissal for claim preclusion cannot stand . Likewise, Greenflight's claim deserves to be heard on the merits, since **it was not truly litigated before**. Reconsideration is warranted to prevent an unjust result where Greenflight is shut out twice – first informally, then formally. The Court can invoke Rule 54(b) (for interlocutory orders) or Rule 60(b) (for any judgment) as needed, because these new developments amount to **"changed circumstances"** and reveal potential injustice.

2. **Evidentiary Hearing and Fact-Finding:** The contradictions in Apple's narratives create factual disputes that **must be resolved before moving forward**. The Court should consider holding a focused evidentiary hearing (as Plaintiffs have suggested) to **resolve Apple's "self-inflicted factual chaos."** Only with a clear, stable factual record can the Court determine appropriate next steps. Apple's antiSLAPP opposition still has no explanation of Brass' email claiming the CR I Plaintiffs were non existant entities. The Court must demand it, or recuse itself for bias.

3. **Sanctions or Other Disciplinary Measures:** The Court should also weigh whether Apple's conduct – in blocking a pro se party, then reversing position to suit its needs – warrants sanctions or other relief. Apple's opposition brief openly acknowledges that its positions have been **mutually exclusive** and tailored to each transient procedural need, amounting to a strategic abuse of process . If the Court finds that Apple (or its counsel) acted in bad faith or manipulated proceedings (for instance, by asserting a "null party" theory on appeal while knowing the truth of the matter), the Court can invoke its inherent powers to impose appropriate sanctions. This could include monetary sanctions, issue preclusion against Apple on certain points, or even vacating prior orders tainted by Apple's misrepresentations. At the very least, **judicial disapproval** should be voiced: a clear statement from

22

the Court that Apple's contradictory stance on Isaacs/Greenflight is not acceptable litigation conduct. The specter of sanctions is not raised lightly – but here Apple's own brief all but admits to a form of procedural gamesmanship that the anti-SLAPP statute was designed to prevent. Thus, the Court should consider whether **Apple's opposition brief has, paradoxically, made a case for sanctions against Apple itself** (even as Apple was seeking sanctions against Plaintiffs). A status conference would allow the Court to hear from Apple directly why it should not be sanctioned or at least ordered to provide sworn clarification of these issues.

4. **Possibility of Reopening CR I or Other Equitable Relief:** Although an extreme remedy, the Court could discuss whether the **prior case (CR I)** should be revisited due to these revelations. The Court does have the power under Rule 60(b) to grant relief from a judgment for, inter alia, *"fraud on the court"* or *"extraordinary circumstances."* The denial of Greenflight's ability to participate, coupled with Apple's potentially misleading representations, may rise to that level. The Court could at least indicate an openness to **equitable relief** that ensures Greenflight's claims are heard either in this case or via some renewed proceeding. Another option is crafting relief that **nullifies the privity finding** from CR I as it pertains to Greenflight, acknowledging that Greenflight cannot be held to a judgment in a case where it had no proper representation. In essence, while reopening CR I in a literal sense is unlikely (given appellate disposition), the Court can achieve the same equitable result by **allowing Greenflight to litigate now** and not treating CR I as binding on it. The status conference would be a forum to explore these possibilities with input from both sides.

Given these revelations, the Court's immediate intervention is warranted. The prudent course is to pause the current proceedings – i.e., grant the requested emergency stay – and convene a status conference to address these matters head-on. It would be unjust to allow Apple to secure a quick victory or enforce a broad sanctions order when the very foundation of those outcomes (no new conduct; Greenflight bound by prior case) has crumbled by Apple's own hand. The Court should bring Apple and Plaintiffs before it to develop a plan for moving forward in a fair manner. This plan might include vacating or reconsidering prior rulings, permitting limited discovery on the "null entity" and representation issues, and ensuring that Dr. Isaacs (and entities associated with him) are not deprived of their rights due to procedural maneuvering by Apple.

The Court has set Apple's Rule 11 sanctions hearing for the very same calendar date as the hearing on Plaintiffs' anti-SLAPP motion. Because discovery and further proceedings on the targeted claims are automatically stayed once an anti-SLAPP motion is filed (Cal. Civ. Proc. Code § 425.16(g)). The practical consequence is that Plaintiffs must defend against a sanctions request—one that directly attacks the very petitioning activity protected by the anti-SLAPP statute—without the statute's intended procedural shield. Scheduling the matters this way therefore nullifies the stay, defeats the Legislature's purpose of providing an early merits screen, and prejudices Plaintiffs' ability to prepare a complete reply. No authority permits bypassing § 425.16's stay for the convenience of a sanctions movant, and the Ninth Circuit has condemned

23

similar sequencing as legal error. Anti-SLAPP stay "is mandatory and cannot be side-stepped by collateral motions." The Court's *sua sponte* choice to advance Apple's sanctions motion in tandem with—indeed ahead of—full anti-SLAPP briefing signals an appearance of partiality in Apple's favor, compelling at minimum prompt corrective action and, if left unremedied, a renewed request for recusal or writ of mandamus to protect Plaintiffs' statutory rights.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court GRANT this emergency motion and issue an order providing all current briefing deadlines – including the deadline for Plaintiffs' reply in support of their anti-SLAPP motion (currently due within hours) – shall be stayed or extended. Plaintiffs propose an extension of at least 14 days after the Court resolves the counsel/recusal issues (or such other time as the Court deems proper) for the anti-SLAPP reply and any other affected filings. In addition, the Court should stay all other proceedings or deadlines in this case as needed to address the Coring declaratory judgment issues and to consider any input from the DOJ or other interested entities. The Court shall conduct an expedited status conference (or set deadlines) to address the representation of Plaintiffs (specifically Ms. Theriault's role or substitution of counsel) , and to schedule briefing and hearing on Plaintiffs' forthcoming recusal motion. No substantive motions should be decided until the recusal matter is decided, consistent with 28 U.S.C. § 455 and the need for a neutral tribunal.

Submitted on this 27th day of June, 2025.

/s/ Keith Mathews
Keith Mathews
Attorney for Coronavirus Reporter Corporation et al
*Pro Hac Vice*
NH Bar No. 20997
American Wealth Protection
1000 Elm Street, Suite 800
Manchester, NH 03105

1

2

3

4
## CERTIFICATE OF SERVICE

5

6
      I, Keith Mathews, do declare as follows:

7
I certify that a copy of the foregoing Emergency Motion for Stay was delivered via ECF to all interested

8
parties.

9
      Executed on this 27th day of June, 2025.

10

11

12
                        /s/ Keith Mathews

13
                        Keith Mathews

14
                        Attorney for Coronavirus Reporter Corporation et al

15
                        *Pro Hac Vice*

16
                        NH Bar No. 20997

17
                        American Wealth Protection

18
                        1000 Elm Street, Suite 800

19
                        Manchester, NH 03105

20

21

EMERGENCY MOTION FOR STAY AND STATUS CONFERENCE
CASE NO. 3:24-CV-8660-EMC