Keith Mathews
*Pro Hac Vice*
American Wealth Protection
1000 Elm Street, Suite 800
Manchester, NH 03105
keith@awplegal.com
(603) 923-9855

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORONAVIRUS REPORTER CORPORATION, CALID INC., GREENFLIGHT VENTURE CORPORATION<br><br>*on behalf of themselves and all others similarly situated*<br><br>Plaintiffs,<br><br>*vs.*<br><br>APPLE INC.<br>Defendant. | Case No. 3:24-cv-8660-EMC<br><br><br>**PLAINTIFFS' SHOW CAUSE MEMORANDUM**<br><br><br>The Honorable Edward M. Chen |

**MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO
ORDER TO SHOW CAUSE**

### Introduction

Plaintiffs submit this memorandum in response to the Court's July 10, 2025 Order to Show Cause, explaining why their recent motions – including a motion for sanctions, a motion for anti-SLAPP relief, a motion to stay, and related administrative requests – were filed in good faith and not for any frivolous, harassing, or improper purpose under Federal Rule of Civil Procedure 11(b). Plaintiffs, a group of small app developers and scientists, earnestly pursued these filings as a sincere and reasoned response to Defendant Apple Inc.'s aggressive litigation tactics and underlying conduct that seeks to subvert Sherman Act enforcement. The motions aimed to vindicate legitimate grievances about Apple's behavior: its documented retaliation against developers including Plaintiffs during this litigation, anti-competitive enforcement of App Store policies, and even defiance of court orders (as evidenced in the *Epic* litigation). Plaintiffs acknowledge that the posture of this case has become, for lack of a better word, intense. This intensity, however, reflects the severity of harm they have experienced – including censorship of their software and baseless sanctions threats to destroy their livelihoods – rather than any improper animus toward Apple or its counsel. Treating such advocacy as sanctionable "frivolity" would chill the exercise of constitutional rights to petition and to speak out against perceived injustice. Plaintiffs respectfully urge the Court to consider the substance and context of their filings – as the work product of under-resourced individuals pushing back against one of the world's most powerful corporations – and to find that Rule 11(b) has not been violated. To impose severe sanctions (potentially exceeding $500,000) in these circumstances would raise profound fairness issues, exacerbate the power asymmetry at play, and risk undermining confidence in the neutrality of the forum.

Plaintiffs, related individuals, and/or Undersigned have been attempting for years to challenge Apple's alleged monopolization of the iOS app distribution market through exclusionary App Store practices. The initial CR I case and its progeny wound through several amended complaints (only out of necessity) and appeals, ultimately resulting in a dismissal on grounds that it had not stated an antitrust claim. Undersigned maintains that this outcome was driven by aggressive procedural tactics that repeatedly prevented a full merits hearing. Indeed, between 2020 and 2024, every time Undersigned challenged the monopoly, sometimes reformulating theories, Apple would argue some non-merits-based fatal defect or preclusion.

It is against this history of hard-fought, asymmetrical litigation that Plaintiffs' recent post-dismissal motions must be understood. After the Court's dismissal order (Dkt. 82), Plaintiffs swiftly filed several motions to protect Plaintiffs' continued efforts to petition and speak out against Apple from what they perceive as retaliatory legal tactics. A Motion to Stay the proceedings and for a status conference (Dkt. 85), in light of overwhelming new matters (loss of counsel, new SCOTUS law on injunctions, etc) was (and still is) desperately necessary to allow Undersigned to fully and diligently research remaining matters and, ideally, locate new conflict-free counsel. If anything, the flurry of filings proves that Undersigned is overwhelmed with the loss of an AUSA that (could have) provided substantial help on the remaining docket items (ie sanctions and reconsideration. Plaintiffs filed these motions not to vex or burden the Court, but to preserve their rights and spotlight Apple's behavior. Notably, Apple had signaled it will still seek a "global anti-suit injunction" which we interpret as flying in the face of new SCOTUS law. Faced with these threats, Plaintiffs reasonably felt it necessary to request sanctions against Apple for what they describe as five years of bad-faith litigation tactics, and invoking anti-SLAPP protections as a shield against what they view as Apple's attempt to punish and silence them as antitrust petitioners. (*See incorporated Declaration of Keith Mathews*).

Importantly, the evidence of Apple's conduct extends beyond this case alone. Plaintiffs' grievances align with broader concerns about Apple's treatment of developers and compliance with the law. Judge Yvonne Gonzalez Rogers sharply rebuked Apple's CEO Tim Cook and other executives and even referred Apple and one of its executives to the U.S. Department of Justice for possible criminal contempt. This Epic contempt ruling exemplifies the kind of brazen behavior by Apple that Plaintiffs have endured and decried. Likewise, Apple's pattern of retaliating against developers who challenge its rules is well documented. In the Epic case, the court explicitly prohibited Apple from 'Retaliating against developers who use external payment systems' as part of its injunction, implying that such retaliation was a real concern. In short, Plaintiffs' characterizations of Apple's conduct – whether describing developer "oppression," censorship, or abuse of monopoly power – are not fantasy or personal vendetta; they are grounded in well-publicized reality. Indeed, the U.S. Department of Justice, along with 16 states, has sued Apple for exactly such anti-competitive practices, alleging that Apple's "broad-based, exclusionary conduct" in the smartphone industry has "impose[d] extraordinary costs on developers" and "throttle[d] competitive alternatives," all to the detriment of innovation and consumers. As Assistant Attorney General Jonathan Kanter put it, Apple spent years

1  playing 'Whac-A-Mole' game of rules and restrictions; Deputy Attorney General Lisa Monaco remarked in

2  that same case, no matter how powerful, no matter how prominent, no matter how popular — no company

3  is above the law. This context vindicates Plaintiffs' sense of urgency and oppression at the hands of Apple.

4  ### Legal Standard Under Rule 11(b)

5  Federal Rule of Civil Procedure 11(b) provides that when an attorney or unrepresented party presents

6  a filing to the court, they certify that to the best of their knowledge, information, and belief, after an inquiry

7  reasonable under the circumstances: (1) the filing "is not being presented for any improper purpose, such as

8  to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) the legal contentions are

9  warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing the law; (3)

10 the factual contentions have or likely will have evidentiary support; and (4) any denials of factual contentions

11 are warranted on the evidence or lack of information. The Rule is intended to prevent baseless filings and

12 abuses of the judicial system, but it is not meant to deter zealous, good-faith advocacy – especially by those

13 with legitimate grievances. Courts have cautioned that Rule 11 sanctions are a serious measure to be imposed

14 only in the clearest of cases of misconduct, lest they chill creative advocacy or the assertion of novel but

15 plausible legal theories. A filing is frivolous under Rule 11 if it is both baseless (i.e. without factual

16 foundation or legal merit) and made without a reasonable and competent inquiry.

17 In evaluating Plaintiffs' motions, the Court should be mindful that Plaintiffs are exercising their First

18 Amendment right "to petition the Government for a redress of grievances," which includes the right to seek

19 relief in court. The Supreme Court has recognized that litigation is an important form of political expression

20 and a means to seek justice, protected so long as the litigant's claims are not objectively baseless. The Noerr-

21 Pennington doctrine embodies a similar principle: those who petition the government (including courts) for

22 redress are generally immune from liability for that petitioning, unless their actions constitute a "sham."

23 Here, Plaintiffs' filings were an extension of their petition for redress – efforts to ensure their antitrust

24 theories are heard fully and fairly. They were not shams; they were earnest attempts to highlight wrongdoing

25 and preserve rights. California's anti-SLAPP statute, which Plaintiffs invoked, likewise reflects the strong

26 public policy of protecting individuals' participation in issues of public significance through the courts. The

27 statute "is intended to protect against lawsuits filed for the purpose of chilling free speech…to encourage

28 continued participation in matters of public significance." Plaintiffs here genuinely believe their cause –

challenging Apple's alleged abuse of monopoly power in a marketplace that affects billions – is such a matter of public significance. This does not excuse disregard for procedural rules, but it counsels that the Court should interpret Plaintiffs' actions in light of their good-faith intent to advocate a cause, not as harassment.

## Argument

Against this backdrop, we now provide general argument on the validity of the claims, then turn to how each motion had a proper purpose and a plausible foundation in fact and law. Plaintiffs also hereby note that the four day, ten page deadline imposed by the Court is simply unrealistic and that despite best efforts, they have not been able to fully address all of Apple's motion opposition documents in this limited time and space. If this generalized Show Cause memorandum leaves remaining issues for the Court, focused OSC items are requested, as is live evidentiary cross-examination of the parties' representatives.

**The FAC states an objectively colorable claim, because the law requires actual adjudication of a claim for res judicata (claim preclusion) to apply.**

It is well settled in the Ninth Circuit that claim preclusion (res judicata) bars only claims that were actually adjudicated or necessarily decided in prior litigation. See *Frank v. United Airlines, Inc*., 216 F.3d 845, 851 (9th Cir. 2000) (holding claim preclusion does not apply unless the claim was actually decided); *Hells Canyon Preservation Council v. U.S. Forest Serv*., 403 F.3d 683, 686-87 (9th Cir. 2005) (claim preclusion only applies to claims adjudicated explicitly or by direct implication). A claim cannot be considered adjudicated if neither the district court nor the appellate court addressed, analyzed, or even mentioned it. See *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995); *Snow-Erlin v. United States*,470 F.3d 804, 807 (9th Cir. 2006) (Res judicata does not bar claims that were not litigated and decided.)

**Plaintiffs' per se tying claim was never adjudicated in CR I at any level.** CR I explicitly pled that Apple's tying of its App Store (tied product) to ownership of Apple smartphones (tying product) was unlawful *per se* under Sherman Act § 1. This *per se* tying theory required no relevant market definition or independent antitrust injury pleading. See *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 9-15 (1984). However, Judge Chen's CR I dismissal rested exclusively on Plaintiffs' alleged failure to define relevant markets and antitrust injury under a rule-of-reason analysis. The CR I order does not mention tying claims at all—not even in passing. Similarly, the Ninth Circuit's summary affirmance in CR I addressed only the market definition and injury issues analyzed by Judge Chen; the Ninth Circuit also never referenced or adjudicated the *per se* tying claim. This complete absence of adjudication or analysis of Plaintiffs' explicitly

4

1    pleaded per se tying claim at both the district and appellate levels means no court has ever resolved it. Under

2    Ninth Circuit precedent, claims never actually decided cannot be precluded by res judicata. See *Frank*, 216

3    F.3d at 851; *Snow-Erlin*, 470 F.3d at 807. **The absence of adjudication eliminates any possible basis for**

4    **sanctions.** Because res judicata does not apply, there can be no sanctions for "frivolously" or refiling

5    "harassing" claims that were never previously adjudicated.[1] Indeed, Ninth Circuit and Supreme Court

6    precedent are unequivocal: Rule 11 sanctions cannot be imposed unless the filing is legally or factually

7    frivolous under clearly established precedent. See *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358,

8    1362-67 (9th Cir. 1991) (en banc). If no court ever addressed a properly pled *per se* tying claim, it cannot be

9    frivolous or sanctionable to reassert it. See id. at 1362 (Rule 11 sanctions are reserved for exceptional

10   circumstances; the mere fact that a party lost a prior related case does not render later litigation frivolous.)

11   Furthermore, the Ninth Circuit explicitly holds that where an appellate court has not addressed an

12   issue, that issue is not governed by the law of the case or mandate doctrine. See *United States v.*

13   *Kellington*, 217 F.3d 1084, 1092-93 (9th Cir. 2000) (law of the mandate doctrine is only as broad as the

14   mandate itself); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) ("issues not decided

15   previously do not become the law of the case"). Here, neither Judge Chen's CR I order nor the Ninth Circuit's

16   mandate discussed the per se tying claims at all. Thus, no "law of the mandate" precludes re-asserting claims.

17   Similarly, Berger Montague, one of the leading antitrust firms representing *PhantomALERT* against

18   Apple in related litigation, last Friday cited *Shields v. World Aquatics*, 92 F.4th ___, 2024 WL 4211477 (9th

19   Cir. 2024), affirming that direct anticompetitive effects (such as the forced tie-in here) obviate detailed

20   market definition pleading under the rule-of-reason analysis, let alone under the more lenient *per se* standard.

21   The fact that leading antitrust counsel, including Quinn Emanuel representing *Proton AG v. Apple*, continue

22   actively litigating these same tying claims against Apple demonstrates conclusively that Undersigned's claim

23   theories have always been—and remain—non-frivolous, plausible, and consistent with governing law. Far

24   from sanctionable, our tying theory is actively endorsed and litigated by major federal enforcers and

25   prominent antitrust practitioners today. Finally, equity strongly disfavors imposing sanctions under these

---

[1] Undersigned recognizes the Court has halted filings of new motions, but respectfully requests leave to file a (routine) Rule 60 Reconsideration Motion fully addressing these bases for reconsideration of the dismissal. Given that the subject matter of sanctions is intricately tied to the reasonableness of the underlying lawsuit (i.e. res judicata & balance of equities), briefing on the balance of equities will better inform the Court on intent re sanctions, generally, and therefore is in the interest of judicial economy.

1  circumstances. The CR I Plaintiffs pled per se tying claims that required no elaborate market definition. The

2  CR I dismissal overlooked and ignored a clearly pled *per se* tying theory. The appellate courts similarly never

3  addressed this claim. Therefore, CR I never received a fair adjudication of per se tying allegations, and res

4  judicata cannot equitably bar their pursuit in *CR II* when many others are now litigating this landmark theory.

5              **Plaintiffs' Motions Had Substantive Merit or a Good-Faith Basis and Thus Were Not Frivolous**

6              Each of the challenged motions was grounded in legitimate factual and legal concerns, even if the

7  Court ultimately disagrees with Plaintiffs' positions. The question under Rule 11 is not whether the motions

8  will succeed, but whether they were so devoid of factual or legal support as to be objectively unreasonable.

9  Here, far from being random or wanton, the motions responded directly to Apple's conduct in the litigation

10 and to new developments, seeking relief that, while assertive, was reasonably supported by evidence.

11             First, the **Motion for Sanctions** (Dkt. 86): Plaintiffs moved for sanctions against Apple and its

12 counsel under the Court's inherent powers, citing what they described as egregious litigation misconduct

13 over five years. This motion was detailed and contained specific allegations: for example, that Apple (through

14 counsel) made misrepresentations to the Court, such as flip-flopping on Roberts or Isaacs involvement and

15 standing in CR I. This is a real concern; whether it was fraud on the court is to be decided, but it is a colorable

16 issue anytime a party is blocked from participating in litigation, and therefore non-frivolous. Plaintiffs

17 pointed to Apple's effort to obtain a "global anti-suit injunction" again barring them from participating in

18 litigation – characterizing it as an abusive attempt to silence a critic from even *future* harms to *non-parties*.

19 Plaintiffs argued that Apple's conduct warranted a thorough investigation – including discovery into Apple's

20 litigation communications and an evidentiary hearing. While this is an aggressive stance, it is not frivolous.

21 Plaintiffs' belief about Apple's conduct may be debatable, but it is sincerely held and backed by notable facts

22 (e.g., Apple's counsel allegedly threatening Plaintiffs with personal ruin, repeated flip-flopping in violation

23 of judicial estoppel law, constant references to neuropsychiatric issues, etc). Filing such a motion to call

24 attention to perceived litigation abuses is consistent with Rule 11's allowance for vigorous advocacy.

25 Furthermore, we take very seriously that Gibson Dunn prevented Dr. Isaacs from participating in CR I, but

26 now want to preclude Greenflight based on his purported presence. This violates countless principles of

27 fairness and statutory laws on witness intimidation. We are willing (and hereby request) to testify on the fear

28 and harm such improper tactics caused Plaintiffs.

6

SHOW CAUSE MEMORANDUM
CASE NO. 3:24-CV-8660-EMC

**Motion for Anti-SLAPP Relief** (Dkt. 83): Plaintiffs also filed what amounts to a special motion to strike or for equivalent relief under California's anti-SLAPP statute (Cal. Code Civ. Proc. § 425.16). The deployment of anti-SLAPP in this context is novel or perhaps first impression. Here, Plaintiffs were the original claimants, so at first glance it may seem counter-intuitive for them to invoke anti-SLAPP. However, the substance of Plaintiffs' anti-SLAPP motion was to prevent Apple from using procedural motions (like the threatened anti-suit injunction and $400,000) to punish Plaintiffs for their protected advocacy. In effect, Plaintiffs argued that Apple's request was itself a form of Strategic Lawsuit Against Public Participation (SLAPP) tactic by a powerful entity to intimidate and silence a weaker opponent. The anti-SLAPP motion sought to strike or nullify Apple's attempts to obtain such punitive relief, and to recover attorney's fees for having to defend their right to continue litigating issues of public importance (App Store competition and free speech in app distribution). Plaintiffs anchored this request in the broad language of §425.16 and its purpose of protecting petitioning activity "in connection with a public issue". Given that Apple was effectively seeking to penalize Plaintiffs for bringing a lawsuit (by labeling it frivolous and asking for broad injunctions and fees), Plaintiffs had a reasonable argument that this situation fell within the spirit of anti-SLAPP protections, if not the letter. At minimum, Plaintiffs' anti-SLAPP filing served as a vehicle to force a focused discussion on whether Apple's aggressive counter-litigation moves were aimed at the issues or at the people raising them. That is a legitimate point of contention. Sanctioning Plaintiffs for this would send a message that litigants must never think outside the box or assert novel legal theories, even when motivated by legitimate (and serious) perceived free speech concerns. Rule 11 is not so draconian; it allows room for good-faith innovation in legal advocacy. Finally, case law is sparse on the underlying issue here – when can a motion qualify as an action under §425.16? Apple's opposition cites joinder motions and other narrow motions as nonqualifying. There is no case law saying a motion as wide ranging as Apple's nationwide injunction covering past JPML proceedings, SCOTUS petitions and future claims can't be considered an action. And that action, if it is one, clearly falls under state law (indeed, UCL is pled and invokes it) abuse of process claims. *See proposed reply[2]*. This is a colorable issue that could be ripe for first impression by the Ninth Circuit. Hence, it is not in violation of Rule 11 by any stretch.

---

[2] Due to the overwhelming posture of the case, Plaintiffs' sought a stay before the antiSLAPP reply was due. The stay was not granted, and it is unclear if the Courts' Order (Dkt. 92) on the briefings disallowed a Reply. In light of this, Plaintiffs' attach a proposed Reply, which the Court may recognize if it so wishes.

1    Plaintiffs sought a **Motion to Stay** (Dkt. 85) for several reasons that were plainly articulated. For

2    instance, Plaintiffs referenced the *Trump v. CASA decision*, which was issued by the Supreme Court on June

3    27, 2025, just days earlier. In *Trump v. CASA*, the Supreme Court addressed the scope of injunctive relief

4    and curtailed lower courts' ability to issue nationwide injunctions absent class certification. While that case

5    involved immigration policy (an executive order on birthright citizenship), the principle for which Plaintiffs

6    cited it is that courts are moving toward more measured, party-specific remedies and away from sweeping

7    orders like Apple seeks against unnamed non-parties ("associates" of Isaacs). Analogously, Plaintiffs

8    suggested that any relief or sanctions in their case should be narrowly tailored and mindful of due process,

9    and that a stay could ensure that any action taken does not overshoot (especially in light of high court

10   guidance). Far from frivolous, this shows Plaintiffs' awareness of current Supreme Court doctrine and an

11   attempt to align this Court's actions with emerging jurisprudence. The Court may or may not agree with

12   granting a stay, but the motion's rationale is grounded in common litigation practice (stays pending related

13   proceedings are not unusual) and certainly not filed to harass. It was an attempt to conserve judicial resources

14   and avoid irreversible prejudice. It was also an attempt of a severely under-resourced solo practitioner to

15   manage workflow accordingly.

16   Finally, the **Administrative and Miscellaneous Requests** (Dkts. 84, 87, 89): Frankly, the amicus

17   motion was a call for help from Plaintiffs, which is quite distinct, really the polar opposite from harassment.

18   Similarly, the motion to relate had objective basis: Plaintiffs are opt-outs of Cameron, like many other cases

19   that were related. Moreover, Judge Gonzalez Rogers has deep expertise with Apple retaliation claims that

20   exist here -- a second, objective basis for relation.   And while it is uncommon for a private litigant to ask a

21   court to refer a matter to DOJ, it is neither unheard-of nor prohibited. If a litigant genuinely believes their

22   opponent has violated criminal laws (e.g. obstruction in litigation, violation of criminal antitrust laws),

23   bringing that to the court's attention is not sanctionable – the court can simply decline if it finds the request

24   meritless. Finally, multiple requests for stay were in light of Undersigned being overwhelmed by the totality

25   of events currently transpiring and seeking a status conference for orderly adjudication and guidance. How

26   can that be sanctionable? It is not.

---

That Reply demonstrates colorable areas for debate, left unresolved by Apple's opposition, therefore proving
that the antiSLAPP motion is, if not meritorious, certainly objectively reasonable.

**Plaintiffs' Filings Were a Proportional and Reasonable Reaction to Apple's Litigation Tactics**

To evaluate improper purpose, context is key. As described in the background, Apple's approach to this litigation has been exceptionally aggressive. By the time of Plaintiffs' contested filings, Apple had: won dismissal of the case on procedural grounds and indicated it would seek to bar any further litigation by Plaintiffs on these issues. In other words, from Plaintiffs' perspective, Apple was attempting to shut them down entirely, not just in this case but in any forum, and to do so not by disproving the merits, but by wielding the sheer weight of its legal resources. Plaintiffs' cohort of motions was essentially an act of self-defense in the face of this [perceived] onslaught. Rather than an intent to harass Apple, the filings show an intent to level the playing field and obtain a fair opportunity to be heard.

**The Imposition of Severe Sanctions Here Would Raise Serious Questions of Fairness, Power Asymmetry, and the Appearance of Judicial Neutrality**

Finally, Plaintiffs urge the Court to consider the equities of the situation. Plaintiffs are ordinary individuals and tiny entities near or at bankruptcy; Defendant Apple is one of the most powerful and wealthy corporations in history. This lawsuit was an attempt to hold Apple accountable under laws (antitrust, etc.) that exist precisely to check concentrated power. Throughout the litigation, however, that power imbalance has loomed large. Apple is represented by a top-tier law firm, able to deploy virtually unlimited resources. Plaintiffs have proceeded without comparable means, sometimes officers appearing pro se or with minimal counsel assistance. Despite this, Plaintiffs persisted out of a belief that justice does not depend on one's bank account – that in an American court, even the lowliest can demand answers from the elite. This belief is now being tested. Apple has swung back with demands not only for dismissal but for hundreds of thousands of dollars in sanctions against Plaintiffs and their counsel. A sanctions award of that magnitude is ruinous, sending a stark warning to every other developer or small business: "Challenge us and risk annihilation."

**Undersigned and Plaintiffs have never been sanctioned before. Fairness dictates a warning before actual formal sanctions.**

A sister court recently contemplated–and rejected–the very misconduct narrative Apple now peddles. In *Greenflight Venture Corp. v. Google LLC*, (FLSD USDJ Rosenberg), Greenflight sued Google for monopolizing the "Internet Content Access Methods" ("ICAM") market and for retaliating against Greenflight. Apple was identified as a co-monopolist but was not a defendant. Judge Rosenberg dismissed

1  under Rule 12(b)(6) because the market definition was insufficient. Yet she made a point that nothing in the

2  record impugns counsel's candor or motive, but rather, relevant markets are simply a challenging obstacle.

3       Rule 11's "objective reasonableness" test (see Cooter & Gell v. Hartmarx, 496 U.S. 384, 399 (1990))

4  cannot be met where a contemporaneous district court analyzed the same lawyer's similar antitrust litigation

5  approach and deemed it appropriate. That Court, and Google's highly qualified counsel at Williams &

6  Connelly, had reviewed undersigned's antitrust and UCL theories, were fully aware of CR I, the JPML

7  docket, and even this case, and still found no bad faith to request sanctions.  Their fresh, on-the-merits

8  assessments are powerful evidence that the positions Apple now brands a five year 'pattern' of 'multiplied'

9  proceedings are, at minimum, debatable under existing law—which is all Rule 11 requires to defeat

10  sanctions.  See Christian v. Mattel, 286 F.3d 1118, 1127 (9th Cir. 2002) (court must deny sanctions where

11  argument is "warranted by existing law or a nonfrivolous extension"). Apple's selective omission of the

12  Google order is itself a reason to doubt its sanctions narrative. Apple asks this Court to scour five years of

13  filings for "vexatiousness," yet fails to mention a four-month-old decision squarely the validity of counsel's

14  antitrust filings, involving related, overlapping alleged antitrust markets and allegations, and issued with full

15  knowledge of CR I and CR II.  That omission undercuts Apple's claim of pervasive bad faith and suggests

16  the present motion is tactical overkill, not a good-faith defense of judicial economy.

17       When evaluating whether an attorney has "unreasonably and vexatiously multiplied" proceedings,

18  courts look to whether other tribunals confronting the same conduct found it sanctionable.  The unbroken

19  line of decisions declining to sanction Plaintiffs or counsel (*Greenflight v. Google*, a decade of Caller-ID

20  Patent Litigation) is compelling, contemporaneous proof that counsel and Plaintiffs' strategies, while

21  aggressive, and sometimes cringeworthy evidence that Undersigned is not a career antitrust lawyer, are not

22  "in bad faith" nor "objectively baseless."

23  <u>**Conclusion**</u>

24       Plaintiffs respectfully request that the Court discharge the Order to Show Cause and decline to impose

25  Rule 11 sanctions. Plaintiffs' recent motions were not frivolous: they were tethered to real events and genuine

26  legal arguments, aimed at protecting Plaintiffs' rights and calling out misconduct. As Justice Robert Jackson

27  famously observed, courts are not "seminaries" of genteel understatement; they are arenas for dispute where

28  feelings may run high, yet out of the clash of zeal and conviction, truth and justice can emerge.

Submitted on this 14th day of July, 2025.


/s/ Keith Mathews
Keith Mathews
Attorney for Coronavirus Reporter Corporation et al
*Pro Hac Vice*
NH Bar No. 20997
American Wealth Protection
1000 Elm Street, Suite 800
Manchester, NH 03105




**CERTIFICATE OF SERVICE**


I, Keith Mathews, do declare as follows:

I certify that a copy of the foregoing SHOW CAUSE MEMORANDUM was delivered via ECF to all interested parties.

Executed on this 14th day of July, 2025.



/s/ Keith Mathews
Keith Mathews
Attorney for Coronavirus Reporter Corporation et al
*Pro Hac Vice*
NH Bar No. 20997
American Wealth Protection
1000 Elm Street, Suite 800
Manchester, NH 03105