RACHEL S. BRASS (SBN 219301)
rbrass@gibsondunn.com
JULIAN W. KLEINBRODT (SBN 302085)
jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
Suite 2600
San Francisco, California 94111-3715
Telephone:    415.393.8200
Facsimile:    415.393.8306

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **Coronavirus Reporter Corporation, Calid Inc., Greenflight Venture Corporation**<br><br>*on behalf of themselves and all others similarly situated.*<br><br>Plaintiffs,<br><br>v.<br><br>**Apple Inc.**<br><br>Defendant. | CASE NO. 3:24-CV-08660-EMC<br><br>**DEFENDANT APPLE INC.'S RESPONSE TO PLAINTIFFS' RESPONSE TO JULY 10, 2025 ORDER TO SHOW CAUSE**<br><br>The Honorable Edward M. Chen |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION.............................................................................................................1

II.     ARGUMENT...................................................................................................................1

    A.     Plaintiffs' Response Confirms the Harassing Nature of this Litigation.................1

    B.     Plaintiffs Fail to Show Their Filings Complied with Rule 11..............................4

III.    CONCLUSION.............................................................................................................10

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S RESPONSE TO PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE
CASE NO. 24-CV-08660-EMC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Est. of Blue v. Cnty. of L.A.*,
  120 F.3d 982 (9th Cir. 1997) ................................................................................................. 2

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) .............................................................................................................. 5

*Cascade Health Sols. v. PeaceHealth*,
  515 F.3d 883 (9th Cir. 2008) ................................................................................................. 5

*Chang v. Biosuccess Biotech Co.*,
  2013 WL 12474475 (C.D. Cal. Dec. 13, 2013) ..................................................................... 8

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) .............................................................................................................. 3

*Coronavirus Reporter v. Apple Inc.*,
  2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ................................................................. 1, 2

*Cotterill v. City & Cnty. of San Francisco*,
  2010 WL 1223146 (N.D. Cal. Mar. 10, 2010) ...................................................................... 9

*G.C. & K.B. Invs., Inc. v. Wilson*,
  326 F.3d 1096 (9th Cir. 2003) ............................................................................................... 4

*Greenflight Venture Corp. v. Google LLC*,
  2024 WL 4723121 (S.D. Fla. Nov. 8, 2024) ......................................................................... 5

*Greenflight Venture Corp. v. Google LLC*,
  765 F. Supp. 3d 1267 (S.D. Fla. 2025) .................................................................................. 5

*Hall v. City of L.A.*,
  697 F.3d 1059 (9th Cir. 2012) ............................................................................................... 7

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
  403 F.3d 683 (9th Cir. 2005) ................................................................................................. 5

*Hilton v. Hallmark Cards*,
  599 F.3d 894 (9th Cir. 2010) ................................................................................................. 6

*Kunimoto v. Fidell*,
  26 F. App'x 630 (9th Cir. 2001) ............................................................................................ 2

*Navellier v. Sletten*,
  29 Cal. 4th 82 (Cal. 2002) ..................................................................................................... 7

*Park v. Kim*,
  91 F.4th 610 (2d Cir. 2024) .............................................................................................. 9, 10

Gibson, Dunn &
Crutcher LLP

*Radcliffe v. Rainbow Constr. Co.*,
    254 F.3d 772 (9th Cir. 2001) ................................................................................. 6

*Rattagan v. Uber Techs., Inc.*,
    2019 WL 3891714 (N.D. Cal. Aug. 19, 2019) ....................................................... 6

*Ross-Nash v. Almond*,
    2020 WL 11036016 (D. Nev. Feb. 18, 2020) ......................................................... 8

*Rusheen v. Cohen*,
    37 Cal.4th 1048 (Cal. 2006) ................................................................................... 7

*Sedie v. U.S. Postal Serv.*,
    2009 WL 4021666 (N.D. Cal. Nov. 19, 2009) ....................................................... 3

*Sidibe v. Sutter Health*,
    4 F. Supp. 3d 1160 (N.D. Cal. 2013) ..................................................................... 5

*Stewart v. U.S. Bancorp.*,
    297 F.3d 943 (9th Cir. 2002) ................................................................................. 2

*Trump v. CASA*,
    606 U.S. ----, 2025 WL 1773631 (U.S. June 27, 2025) ......................................... 7

*Wadsworth v. Walmart Inc.*,
    348 F.R.D. 489 (D. Wyo. 2025) ........................................................................... 10

*Wall v. Leavitt*,
    2007 WL 4219162 (E.D. Cal. Nov. 29, 2007) ....................................................... 3

*Zaldivar v. City of L.A.*,
    780 F.2d 823 (9th Cir. 1986) ............................................................................. 3, 4

**Rules & Statutes**

Cal. Civ. Proc. Code § 425.16 ........................................................................................... 6

Cal. R. Prof'l Conduct 3.10(a) .......................................................................................... 9

Fed. R. Civ. P. 11 ............................................................................................ 1, 3, 4, 6, 8, 9

N.D. Cal. Civ. L.R. 3-12 .................................................................................................... 9

N.D. Cal. Civ. L.R. 7-3 ...................................................................................................... 7

N.D. Cal. Prof'l Conduct Guideline § 18.a ....................................................................... 2

iv

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFF CORONAVIRUS REPORTER CORPORATION'S
MOTION TO SHOW CAUSE
CASE NO. 3:24-CV-08660

# I.    INTRODUCTION

The Court ordered Plaintiffs to show cause why they should not be sanctioned for a rash of filings between June 13 and July 6, 2025.  Dkt. 95.  This was Plaintiffs' opportunity to explain how their "legal contentions" are nonfrivolous and "factual contentions have evidentiary support."  Fed. R. Civ. P. 11(b)(2)–(3).  Plaintiffs do not provide such an explanation.  Beyond their assertions of being "overwhelmed" and holding sincere beliefs in "good faith," OSC Resp. 2–3, Plaintiffs offer no justification for their array of baseless accusations nor authority for their frivolous arguments.  Plaintiffs instead double down on the misconduct that led to the Show Cause Order in the first place: Their response appends an unauthorized reply and argumentative declaration (Dkt. 97-1, ¶¶ 15–26; Dkt. 97-2); contains more erroneous citations alongside counsel's statement that Plaintiffs used ChatGPT to draft a submission (with fifteen minutes of attorney review) as a "test" for the Court (Dkt. 97-1 ¶ 24); and continues Plaintiffs' *ad hominem* attacks, including asking the Court to subject Apple's counsel or executives to psychiatric evaluation (*id.* ¶¶ 25–26).  The Court should decline to discharge the Order to Show Cause and impose appropriate sanctions on Plaintiffs and their counsel.

# II.    ARGUMENT

Plaintiffs' failure to demonstrate cause is significant in two ways.  First, it underscores—and perpetuates—the harassing nature of this litigation.  Second, it underscores why additional sanctions are warranted for Plaintiffs' recent filings, separate and apart from those Apple requested in its pending motion.  *See* Dkt. 70.

## A. Plaintiffs' Response Confirms the Harassing Nature of this Litigation.

The response to the Order to Show Cause further demonstrates that the objective of this litigation is to harass Apple.  Start with the beginning of this case: Plaintiffs assert they brought "an objectively colorable claim" to "vindicate legitimate grievances about Apple's behavior" because Apple obtained dismissal of *Coronavirus I* "by aggressive procedural tactics that repeatedly prevented a full merits hearing."  OSC Resp. 1, 4.  But Apple prevailed on the merits in *Coronavirus I*, which Plaintiffs litigated all the way up to the Supreme Court.  *See Coronavirus Reporter v. Apple Inc.*, 2021 WL 5936910 (N.D. Cal. Nov. 30, 2021), *aff'd*, 85 F.4th 948 (9th Cir. 2023), *cert denied*, 144 S. Ct. 2526 (2024); *see also* Dkt. 62 at 7–8, 10–11, 16 (explaining market definition and antitrust injury are

Gibson, Dunn &
Crutcher LLP

1  substantive elements of antitrust claims).  And there was "a 'judgment on the merits' to which res

2  judicata applies." *Stewart v. U.S. Bancorp.*, 297 F.3d 953, 957 (9th Cir. 2002); *see also* Dkt. 82 at 4–

3  5.  That *res judicata* barred this case was obvious from the start, as Apple repeatedly explained.  *See*,

4  *e.g.*, Dkt. 38 at 2.  Plaintiffs' refusal to withdraw their claims—or, even now, acknowledge the basic,

5  objective facts about the history of this litigation—demonstrates a lack of good faith intent.  *See*, *e.g.*,

6  *Est. of Blue v. Cnty. of L. A.*, 120 F.3d 982, 985 (9th Cir. 1997) ("Rule 11 sanctions may be imposed"

7  where "a reasonable investigation would reveal that a claim is barred by res judicata").

8        Nor can Plaintiffs justify their recent "cohort of motions" as a response to "exceptionally ag-

9  gressive" tactics "to shut [Plaintiffs] down entirely."  OSC Resp. 9.  Apple gave Plaintiffs many

10 chances, including an extended safe harbor window, to withdraw their claims and frivolous arguments.

11 *See* Dkt. 70 at 8–9.  While Plaintiffs filed six recent motions (Dkts. 83, 84, 85, 86, 87, 89), Apple filed

12 just two motions in the last four months—a motion to dismiss, which had been granted, and a motion

13 for sanctions, which was fully briefed when the barrage began.  Dkts. 62, 70.  There is no factual basis

14 for Plaintiffs' attempt to blame Apple for their "parade of motions," which "cumulatively suggest[s] a

15 strategy of harassment."  *Kunimoto v. Fidell*, 26 F. App'x 630, 633 (9th Cir. 2001).  To the contrary,

16 Plaintiffs appear to admit they filed these motions not because they were warranted under existing law

17 (or a non-frivolous extension of it) but in retaliation to a "[perceived] onslaught" by Apple (which did

18 not exist).  OSC Resp. 9 (brackets in original).

19       The content of Plaintiffs' motions and their accompanying exhibits underscore their harassing

20 purpose.  For example, Plaintiffs repeatedly questioned the integrity of this Court, Apple, and Apple's

21 counsel.  *E.g.*, Dkt. 85-1 at 19 ("[W]e haven't yet found a single . . . judge willing to stand up and say,

22 '*Let's give these folks a fair hearing.*'"); Dkt. 86 at 2–3 (calling Apple's counsel "brutally shameless"

23 and accusing them of "jaw-dropping hypocrisy" and committing "textbook fraud on the court").  These

24 statements ran afoul of "appropriate civility, professional integrity, personal dignity, and respect for

25 the legal system," N.D. Cal. Prof'l Conduct Guideline § 18.a, and Plaintiffs do not argue otherwise.

26 Far from it: In response to the OSC, counsel continues to accuse Apple or its counsel of "DARVO"—

27 a victim-blaming strategy described as "Deny, Attack, Reverse Victim and Offender"—that he asserts

28 "is consistent with conditions that warrant forensic psychiatry evaluation."  Dkt. 97-1 ¶¶ 23, 27.

Gibson, Dunn & Crutcher LLP

2

Suggesting a party's counsel or businesspeople should be subjected to psychiatric examination for "disregard for the law and social norms," *id.* ¶¶ 23, 25–26, is the precise kind of personal attack that warrants sanctions. *See, e.g., Sedie v. U.S. Postal Serv.*, 2009 WL 4021666, at *3 (N.D. Cal. Nov. 19, 2009) ("Plaintiff's counsel's personal attacks on Defendant's counsel justify sanctions."); *Wall v. Leavitt*, 2007 WL 4219162, at *1 (E.D. Cal. Nov. 29, 2007) (similar).

Equally arresting is counsel's admission that no "human spen[t] more than about fifteen minutes" on the "Petition" thrice submitted to this Court (Dkts. 84-2, 85-1, 89-3), which Plaintiffs say was written entirely by ChatGPT. Dkt. 97-1 ¶ 24. The federal judiciary is no place for "test[s]" or "legal experiment[s]," *id.*, that not only burden the Court with baseless requests but defame Apple and its counsel. Plaintiffs wrongly suggest AI authorship cuts *against* striking the petition. *Id.* ¶¶ 24–25. But interposing baseless accusations without having investigated, edited, or possibly even read them falls far short of Rule 11's demands and is a quintessential example of bad faith conduct. Fed. R. Civ. P. 11(b); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (counsel has a duty to file papers that "are well grounded in fact, legally tenable, and 'not interposed for any improper purpose'"); *Zaldivar v. City of L. A.*, 780 F.2d 823, 830 (9th Cir. 1986) (Rule 11 "admits of no exceptions to the requirement that all reasonable attorneys will read a document before filing it in court").[1]

For these reasons, there is ample reason not to credit Plaintiffs' avowal that they "[h]ave [n]o [d]esigns to [v]ex Apple" and "will not file a third 'free app' censorship lawsuit." Dkt. 97-1 ¶ 12; *see also* OSC Resp. 1, 3, 4, 6–8, 10; Dkt. 97-1 ¶¶ 1, 3, 5, 6, 8, 9, 11, 13, 14 (making similar representations). Less than three weeks ago, Plaintiffs told Apple that they would seek to revive a long-dismissed case, *Coring Co. v. Apple Inc.*, No. 3:22-cv-01044-EMC (N.D. Cal.)—an assertion Plaintiffs repeated in subsequent court filings. Dkt. 90-1 Ex. 5; *see also* Dkt. 83 at i, 10–11, 24; Dkt. 87 at i, 10–11. Plaintiffs' willingness to subject future complaints to "pre-filing abbreviated review" (albeit only those filed in this district) similarly suggests future lawsuits against Apple are in the offing. Dkt. 97-1 ¶ 12. And although the Court "deemed submitted" all but one of Plaintiffs' recent motions, *see* Dkt. 92, Plaintiffs

---

[1] Nor are these the only examples. To take just one more, Plaintiffs assert Apple's opposition to Plaintiffs' sanctions motion (Dkt. 96) constitutes "witness intimidation of Dr. Isaacs." Dkt. 97-1 ¶ 28. That assertion is baseless—as it has been every other time Plaintiffs' accused Apple's counsel of witness intimidation or criminal offenses. *See, e.g.*, Dkt. 96 at 9 (responding to a similar accusation).

1   continue to try to multiply proceedings with two supplemental briefs—a reply supporting their Admin-

2   istrative Motion in the guise of Mathews' declaration, Dkt. 97-1 ¶¶ 15–26, and a reply supporting their

3   anti-SLAPP Motion, *see* Dkt. 97-2.  Plaintiffs do not and cannot square this conduct with their protes-

4   tations of innocence, underscoring the need for relief that will put a stop to baseless litigation in this

5   district and others.  *See* Dkt. 70 at 2–9, 22–25; *see also G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d

6   1096, 1109 (9th Cir. 2003) (the standard for judging "improper purpose" under Rule 11 "is objective,"

7   and "subjective intent . . . to file a meritorious document is of no moment").

8   **B.  Plaintiffs Fail to Show Their Filings Complied with Rule 11.**

9        Plaintiffs also fail to demonstrate their motions are not frivolous.  *See* Fed. R. Civ. P. 11(b).

10  This is an objective inquiry, *G.C. & K.B. Invs.*, 326 F.3d at 1109, into whether "a competent attorney

11  admitted to practice before the district court" would deem the representations "reasonabl[e]" based on

12  an adequate investigation, *Zaldivar*, 780 F.2d at 830.  Thus, "Rule 11 sanctions shall be assessed if the

13  paper filed in district court and signed by an attorney or an unrepresented party is frivolous, legally

14  unreasonable, or without factual foundation, even though the paper was not filed in subjective bad

15  faith." *Id.* at 831.  Tested against this standard, Plaintiffs' submissions subject to the OSC fail.

16      **1.  The Complaint.**  Plaintiffs begin with an issue the Court did not ask them to address by

17  once more trying to defend the merits of their claims.  *See* OSC Resp. 4.  The crux of their argument is

18  that Plaintiffs' tying theory was not adjudicated in *Coronavirus I* since a "*per se* tying theory required

19  no relevant market definition or independent antitrust injury pleading." *Id.*  Setting aside that this again

20  exemplifies Plaintiffs' inability to heed the Court's orders, Plaintiffs are wrong.  All of Plaintiffs'

21  claims, including their tying theories, were dismissed on the merits for failure to state a claim.  *Coro-*

22  *navirus I*, 2021 WL 5936910 at *4, 20; *see also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S.

23  477, 485–89 (1977) (antitrust injury is a substantive element of all private antitrust claims); *Cascade*

24  *Health Sols. v. PeaceHealth*, 515 F.3d 883, 913 (9th Cir. 2008) (proper market definition is required

25  for alleged *per se* ties); *Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160, 1178–79 (N.D. Cal. 2013) (dis-

26  missing *per se* tying claim for failure to define the relevant market or allege sufficient injury to com-

27  petition in any proper market).  Indeed, the Court has already recognized as much in dismissing this

28  case under the doctrine of *res judicata*.  *See* Dkt. 82 at 1–5.

Plaintiffs otherwise assert their claims were not frivolous because the court in *Greenflight Venture Corp. v. Google LLC*, No. 24-cv-80395 (S.D. Fla.) "made a point that nothing in the record impugns counsel's candor or motive" and commented that "relevant markets are simply a challenging obstacle." OSC Resp. 10. But citing another court's decision about a different case with a different record does nothing to acquit Plaintiffs' conduct in this case—which at this juncture is not about the relevant market, but about Plaintiffs' attempt to *relitigate* adjudicated claims through frivolous and harassing motion practice. What is more, the *Greenflight* court found "there [were] facts to suggest that the Plaintiffs ha[d] leveraged discovery in [the] case to harass the Defendant," *Greenflight Venture Corp. v. Google LLC*, 2024 WL 4723121, at *10 (S.D. Fla. Nov. 8, 2024), and chastised Greenflight for "rel[ying] upon a quotation that is either fabricated or hallucinated." *Greenflight Venture Corp. v. Google LLC*, 765 F. Supp. 3d 1267, 1281 (S.D. Fla. 2025). The Court further warned Greenflight, when dismissing its claims, that it could "exercise its case management discretion to summarily deny future motion practice (such as a motion for reconsideration) without explanation." *Id.* at 1283. If anything, *Greenflight* suggests Plaintiffs and their counsel have a pattern of disregarding Rule 11 in other litigation as well.[2]

**2. Motion for Sanctions.** Plaintiffs assert their motion for sanctions (Dkt. 86) was "not frivolous," OSC Resp. 6, but offer no defense of its shortcomings. They begin by trying to recast their motion as one solely "under the Court's inherent powers." *Id.* But they expressly sought relief under Rule 11 (Dkt. 86 at i, 5, 14, 18) even though they had knowingly failed to comply with the Rule's mandatory safe-harbor provision. Dkt. 96 at 5–6; *see also Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001) (reversing a sanctions award where the movant did not comply with the Rule 11 safe-harbor provision). That alone violated Rule 11. *See* Fed. R. Civ. P. 11, adv. comm. note to 1993 amd. (recognizing that "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions").

---

[2] Plaintiffs try to deflect blame from themselves by arguing that events in other cases against Apple bear on their conduct in this case. OSC Resp. 2–3. The JPML determined this case is unrelated to the multidistrict litigation following on the DOJ suit, Dkt. 37, and Judge Gonzalez Rogers already determined that this case is not related to *Epic*, Dkt. 93. None of the issues raised by Plaintiffs about those cases have any bearing on the Court's Order to Show Cause.

Nor do Plaintiffs defend the many other problems with their motion. As Apple argued in its opposition, Plaintiffs had the burden of showing an entitlement to sanctions. Dkt. 96 at 3; *see also Rattagan v. Uber Techs., Inc.*, 2019 WL 3891714, at *2 (N.D. Cal. Aug. 19, 2019) (Chen, J.). Plaintiffs' motion instead offered only an unbroken string of *ipse dixit* claims devoid of any meaningful citations to the record. *See* Dkt. 96 at 4. And rather than excuse this impropriety, Plaintiffs repeat it: They claim the motion was "backed by notable facts," OSC Resp. 6, but cite no evidence. They reassert that Apple is guilty of "flip-flopping on Roberts," *id.*, without rebutting Apple's demonstration to the contrary. Dkt. 96 at 6–7. And as one further example, Plaintiffs restate their charge that Apple "prevented Dr. Isaacs from participating in CR I," OSC Resp. 6, even though ample evidence demonstrates otherwise, Dkt. 96 at 9—indeed, and counsel admits (as he must) that Isaacs "actively participated in hearings, oral arguments, . . . and multiple rounds of briefing," including "present[ing] oral argument himself during a crucial federal court hearing." Dkt. 97-1 ¶ 5. Such self-contradiction is no Rule 11 defense.

**3. Anti-SLAPP Motion.** Plaintiffs also suggest that their anti-SLAPP motion is defensible as a "novel or perhaps [an issue of] first impression." OSC Resp. 7. But Plaintiffs fail to show that their attempt to target Apple's federal-law motion with a California statute allowing motions to strike state-law "lawsuits," Cal. Civ. Proc. Code § 425.16, is a "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). As Apple explained in prior filings, it is well-established that anti-SLAPP motions may target only causes of action—and only those arising under state law. Dkt. 81 at 1–4. Plaintiffs now try to cabin the cases Apple cited to "joinder motions and other narrow motions," OSC Resp. 7, but they fail to adduce any basis in the statute's text or caselaw that suggests their theory is even colorable. That includes ignoring binding precedent foreclosing any attempt to "entertain anti-SLAPP special motions" targeted at federal causes of action. *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010); *see also* Dkt. 81 at 4–5.[3]

---

[3] Plaintiffs' proposed anti-SLAPP reply argues that Apple's sanctions motion alleges "claims . . . unquestionably subject to anti-SLAPP," citing *Rusheen v. Cohen*, 37 Cal.4th 1048, 1056–57 (Cal. 2006). Dkt. 97-2 at 1. This misreads *Rusheen*. The anti-SLAPP motion in that case was brought against a cross-complaint for the tort of abuse of process—a pleading asserting a state-law cause of action. 37

DEFENDANT APPLE INC.'S RESPONSE TO PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE
CASE NO. 24-CV-08660

Gibson, Dunn &
Crutcher LLP

Notably, Plaintiffs nowhere defend—in their OSC Response or the proposed anti-SLAPP reply—the fake citations in their anti-SLAPP motion (and elsewhere). *See* Dkt. 81 at 19–20; Dkt. 72 at 8–9 & n.3. Worse still, Plaintiffs appear to include even more invented quotations in their current submissions. In their OSC Response, they quote *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012), as saying "issues not decided previously do not become the law of the case." OSC Resp. 5. The opinion in *Hall* does not contain the quoted language. And Plaintiffs' proposed anti-SLAPP reply also appears to invent quotations from *Navellier v. Sletten*, 29 Cal. 4th 82 (Cal. 2002) ("filing, funding, and prosecution," Dkt. 97-2 at 2) and *Rusheen*, 37 Cal. 4th 1048 ("throttle petitioning rights," Dkt. 97-2 at 2). *See, e.g.*, *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 464 (S.D.N.Y. 2023) (imposing Rule 11 sanctions for submitting, and failing to withdraw, filings with inaccurate or nonexistent citations).

**4. Stay Motions.** Plaintiffs also filed a series of post-dismissal motions seeking to stay the case and/or Apple's sanctions motion. Dkts. 83, 84, 85, 87. Here, too, Plaintiffs fail to demonstrate the propriety of their motions. *See* N.D. Cal. Prof'l Conduct Guideline § 4(e) (forbidding seeking "extensions or continuances for the purpose of harassment or extending litigation"). Plaintiffs' primary argument is that a stay was required because of the Supreme Court's recent decision in *Trump v. CASA, Inc.*, 606 U.S. ----, 2025 WL 1773631 (U.S. June 27, 2025). Dkt. 85 at 1, 3; Dkt. 87 at i, 4–7. But although they repeat their arguments about *CASA*'s implications, OSC Resp. 8—which are wrong, *see* Dkt. 96 at 8—Plaintiffs fail to explain how that opinion could justify staying an already-dismissed case. While Plaintiffs argued *CASA* affected the availability of some sanctions Apple seeks, that motion was fully briefed and the Local Rules expressly provide for other means to raise such issues when appropriate. *See* N.D. Cal. Civ. L. R. 7-3(d)(2).

Nor can Plaintiffs excuse their filings as "an attempt of a severely under-resourced solo practitioner to manage workflow accordingly." OSC Resp. 8. Plaintiffs and their counsel cite no competing obligations outside of this case. *See* Dkt. 97-1. And when Plaintiffs filed their motions, Apple's only pending motion was its Motion for Sanctions, Dkt. 70—which had been filed May 30, 2025, fully

---

Cal.4th at 1054. Nor does it matter if Plaintiffs asserted state-law claims in their Complaint, OSC Resp. 7; the issue is whether an anti-SLAPP motion can be used to target requests Apple made in a motion for sanctions pursuant to federal law. It cannot. *See* Dkt. 81 at 1–5.

Gibson, Dunn & Crutcher LLP

briefed since June 20, 2025, and was not set to be heard until August 21, 2025.  To the extent counsel became "overwhelmed" (OSC Resp. 8) by a logjam of briefing deadlines, Plaintiffs can only fault themselves: They filed an anti-SLAPP motion to strike (Dkt. 74, June 13, 2025); an emergency motion to stay (Dkt. 83, June 27, 2025); an amended emergency motion to stay (Dkt. 87, July 1, 2025); an administrative motion for amicus invitation and public-input procedure (Dkt. 84, June 28, 2025); an amended administrative motion (Dkt. 85, June 30, 2025); and a motion to relate cases and to stay (Dkt. 89, July 6, 2025).  Just as Plaintiffs are "not entitled to emergency relief when they are to blame for creating the exigent circumstances," *Ross-Nash v. Almond*, 2020 WL 11036016, at *1 (D. Nev. Feb. 18, 2020), they cannot absolve their meritless filings based on the press of self-created burdens.

More fundamentally, Plaintiffs' response addresses none of the baseless assertions in their fil-ings.  For instance, in their Emergency Motion for Litigation Stay and Status Conference, Plaintiffs charged Apple with a "war of attrition against a vulnerable opponent, marked by hypocrisy, bullying, and a perversion of the rules, muzzling Isaacs for years—with this court's shameless approval, sug-gesting an anti-disability sentiment, or something improper."  Dkt. 87 at 2.  No citation accompanied that assertion, no evidence supports the accusations, and, in their OSC Response, Plaintiffs offer no basis for it.  The same is true for Plaintiffs' assertion that "this Court muzzled a disabled *pro se* litigant five years ago, and struck down a sanctions plea for help when he asked the Court to unmuzzle him," which they called "despicable, not a close call."  *Id.* at 8.  And as one more example, Plaintiffs claimed that Apple "harassed a disabled physician through duplicity and delay."  *Id.* at 3.  But they never sub-stantiated that false claim in their Emergency Motion, nor do they do so now.  *See* Fed. R. Civ. P. 11(b)(3) (requiring filings' "factual contentions [to] have evidentiary support").[4]

**5. Administrative & Miscellaneous Requests.**  Plaintiffs state that their motion to relate this case to the *Epic* litigation "had objective basis."  OSC Resp. 8.  It did not.  When they filed their motion, this Court had already dismissed Plaintiffs' claims and Judge Gonzalez Rogers had already declined to relate this litigation to the cases pending before her.  *See Coronavirus I*, Dkt. 21.  Regardless, there was

---

[4] Plaintiffs complain the OSC imposed an "unrealistic" deadline, preventing them from "fully ad-dress[ing] all of Apple's motion opposition documents."  OSC Resp. 4.  But over the history of this case, they have filed multiple, lengthy motions in short order.  Plaintiffs also did not seek an extension of their deadline to show cause.  And if Plaintiffs had complied with Rule 11 in advance of their filings, they should have had the requisite support for their assertions at hand.

Gibson, Dunn & Crutcher LLP

no basis to contend this case "concern[ed] substantially the same parties, property, transaction, or event" as *Epic*, N.D. Cal. Civ. L.R. 3-12(a)(1), when the only pending issues were those presented by the parties' cross-motions for sanctions (Dkts. 70, 86), Plaintiffs' motion to strike (Dkt. 74), and Plaintiffs' post-dismissal "amicus invitation" and emergency stay motions (Dkts. 85, 87). Nor could Plaintiffs reasonably argue it would avoid "duplication" to move this case to another judge, N.D. Cal. Civ. L.R. 3-12(a)(2), having acknowledged this Court is "best positioned to adjudicate" this case. Dkt. 38-1 at 5.

As to Plaintiffs' request for "DOJ referral for criminal investigation," Dkt. 87 at 2, Plaintiffs say that "while it is uncommon for a private litigant to ask a court to refer a matter to DOJ, it is neither unheard-of nor prohibited." OSC Resp. 8. But Plaintiffs still have provided no substantiation for their claim that Apple or its counsel engaged in some kind of criminal obstruction. *See* Dkt. 86 at 16. Their repeated attempts to brandish unwarranted criminal investigation of Apple and its counsel are far outside the bounds of permissible conduct in civil litigation. *See Cotterill v. City & Cnty. of S.F.*, 2010 WL 1223146, at *7 (N.D. Cal. Mar. 10, 2010) (sanctioning counsel who "interacted with opposing counsel in an unprofessional manner, and frequently threatened Rule 11 sanctions against defense counsel without articulating a specific basis for doing so"); *see also* Cal. R. Prof'l Conduct 3.10(a) ("A lawyer shall not threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute.").

On top of all this, Plaintiffs cannot defend the "Petition" appended to their "Amended Administrative Motion for Amicus and Public Input." Dkts. 85, 85-1; *see also* Dkts. 84-2, 89-3. As addressed in detail above, "no human ever authored the Petition," nor did "any human spend more than about fifteen minutes on it," because he thought "there was an interesting computational legal experiment" to be done. Dkt. 97-1 ¶ 24. Rather, counsel allegedly queried ChatGPT to draft a petition based on a one-sentence prompt and "approved [the petition] for distribution" in hopes of "promot[ing] conversation." *Id.* That is not the reasonable investigation Rule 11 demands. Counsel stated that no "human spen[t] more than about fifteen minutes on" the Petition. *Id.* Assuming that the "human" was Mathews, a mere "fifteen minutes" of review could not have assured him that the 19-page, single-spaced Petition's factual contentions had "evidentiary support." Fed. R. Civ. P. 11(b)(3); *see also, e.g., Park v.*

*Kim*, 91 F.4th 610, 613–15 (2d Cir. 2024) (referring attorney to Court's Grievance Panel for filing ChatGPT-authored material without adequate verification given counsel's obligation to "ensure that her submissions to the Court are accurate"); *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 496–99 (D. Wyo. 2025) (sanctioning attorneys under Rule 11 for submitting "fake" AI citations).

### III. CONCLUSION

While Plaintiffs profess that they have been chastened, they offer no defense of their recent filings that should relieve them from Rule 11 sanctions. The Court should impose appropriate sanctions on Plaintiffs and their counsel for their recent filings in addition to those requested by Apple's pending sanctions motion.

DATED: July 17, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Rachel S. Brass*
        Rachel S. Brass

RACHEL S. BRASS
rbrass@gibsondunn.com
Julian W. Kleinbrodt
jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
Suite 2600
San Francisco, California  94111-3715
Telephone:      415.393.8200
Facsimile:       415.393.8306

*Attorneys for Apple Inc.*

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S RESPONSE TO PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE
CASE NO. 24-CV-08660