RACHEL S. BRASS (SBN 219301)
rbrass@gibsondunn.com
JULIAN W. KLEINBRODT (SBN 302085)
jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Defendant Apple Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Coronavirus Reporter Corporation, Calid Inc., Greenflight Venture Corporation<br><br>*on behalf of themselves and all others similarly situated.*<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>Apple Inc.<br><br>　　　　　Defendant. | CASE NO. 3:24-CV-08660-EMC<br><br>**DEFENDANT APPLE INC.'S RESPONSE TO COURT'S ORDER REGARDING ATTORNEY FEES**<br><br><br>The Honorable Edward M. Chen |

Gibson, Dunn &
Crutcher LLP

**INTRODUCTION**

Defendant Apple Inc. ("Apple") submits this brief and the supporting declaration pursuant to the Court's July 30, 2025, order awarding Apple all fees it incurred as a result of this "patently frivolous" litigation. Dkt. 102 at 6. After the Court issued its order, Apple attempted for months to negotiate a resolution with Plaintiffs to obviate the need for further proceedings. Plaintiffs strung those efforts along before abruptly cutting off dialogue and filing (without warning) yet another frivolous petition—this time asking the Ninth Circuit to issue a writ of mandamus. The frivolousness of that petition is underscored by the fact that it has already been denied. Apple therefore seeks $735,193.20, considerably less than what Apple in fact spent as a direct result of Plaintiffs' improper tactics to sustain this baseless case. Having been warned multiple times about the consequences of their misconduct, Plaintiffs should be ordered to pay a meaningful fraction of the significant costs they inflicted on Apple and the judicial system.

**BACKGROUND**

This case is the latest in a series of lawsuits that Plaintiffs filed against Apple over the past four years, each alleging various antitrust violations on the basis of Apple's rejection of Plaintiffs' apps from the App Store. *See* Dkt. 70 at 2–6 (detailing the history of prior suits). In 2021, this Court dismissed all of Plaintiffs' claims against Apple in *Coronavirus Reporter v. Apple Inc.*, 2021 WL 5936910 (N.D. Cal. Nov. 30, 2021). The Ninth Circuit affirmed, 85 F.4th 948 (9th Cir. 2023), and the Supreme Court denied Plaintiffs' petition for certiorari, 144 S. Ct. 2526 (2024). Rather than accept that result, Plaintiffs filed this duplicative suit in the District of Wyoming. *See* Dkts. 62 at 5–10; Dkt. 70 at 6–7 (detailing overlap between *Coronavirus I* and *Coronavirus II*). As the Court found, Plaintiffs' case was frivolous from its inception. Dkt. 102 at 6.

From the outset of this litigation, Plaintiffs embroiled the Court and Apple in laborious and unnecessary disputes. *See* Dkt. 102 at 6, 10. By way of example, before Apple moved for sanctions, Apple had to litigate (a) a disputed transfer briefing over a forum-selection clause that had already been enforced in *Coronavirus I*, *see* Dkts. 19, 26, 32, 37, 39; (b) an improper attempt by Plaintiffs to obtain default judgment, *see* Dkts. 55, 57; and (c) a motion to dismiss "patently frivolous" claims (Dkt. 102), including offshoot briefing on Plaintiffs' attempt to convert Apple's motion into one for summary

1

judgment, *see* Dkts. 67, 72 at 2–6.  Throughout this time, Apple repeatedly cautioned Plaintiffs that their conduct was sanctionable.  *See, e.g.*, Dkt. 70-1 ¶¶ 8–9.  By the time Apple moved for sanctions in April 2025, it had incurred over $400,000 in fees.  *Id.* ¶ 10.

Plaintiffs turbocharged their campaign of frivolous filings after Apple moved for sanctions. Between June 13, 2025, and July 6, 2025, Plaintiffs filed seven baseless motions.  *See* Dkts. 74, 83, 84, 85, 86, 87, 89.  That barrage of filings asked the Court to stay the litigation, to sanction Apple, and for the Court to provide an open public forum in which the public at large could announce their grievances against Apple.  *See id.*  Apple had to file multiple briefs in response to these filings as well.  *See* Dkts. 81, 90, 91, 96.  In all, Apple had to file fourteen substantive briefs[1] over the course of the litigation even though it filed just three substantive motions (to transfer, to dismiss, and to sanction)— in addition to several more administrative and procedural submissions.[2]  The Gibson Dunn attorneys retained by Apple spent well over 750 hours litigating this case between March 5, 2024 (when this case was filed), and July 30, 2025 (when sanctions were authorized), and Apple incurred well over $730,000 in fees as a result.  Kleinbrodt Decl. ¶¶ 7–10 & Ex. A.

On July 30, 2025, the Court granted Apple's motion for sanctions.  Dkt. 102.  The Court found Plaintiffs had sought to relitigate frivolous claims, frequently using generative AI and submitting filings with hallucinated quotations and citations to nonexistent or misattributed cases.  *Id.* at 6–9.  The Court concluded that "[t]he fees incurred by [Apple] in connection with this litigation are a direct result of the sanctionable conduct" and determined that Apple is entitled to "the fees and costs reasonably incurred in connection with this litigation."  *Id.* at 10.  The Court directed Apple to "submit declarations from its attorneys detailing the fee request, and corresponding time sheets and a brief defining the number of hours of attorney work and associated costs that Defendant has incurred as a result of Plaintiffs' sanctionable misconduct."  *Id.*

Apple then sought to resolve this matter with Plaintiffs to avoid burdening the Court with further disputes.  *See* Kleinbrodt Decl. ¶¶ 11–14.  Between July and December 2025, Apple's counsel spoke with Plaintiffs' counsel on multiple occasions—and exchanged over a dozen emails and letters—

---

[1] Dkts. 20, 40, 57, 62, 64, 70, 72, 74, 78, 81, 90, 96, 98, 100.

[2] Dkts. 28, 38, 42, 91; *see also* Case No. 21-cv-05567, Dkt. 132 (administrative motion to relate case).

2

Gibson, Dunn &
Crutcher LLP

in attempt to reach mutual, final resolution. *Id.* That included offering to hold a mediation session with a magistrate judge, tendering to Plaintiffs an offer sheet and, after further discussion, a draft settlement agreement. *Id.* But after Apple sent that draft agreement on October 28, 2025, Plaintiffs stopped responding—ignoring repeated follow-up emails through the end of November. *Id.* And while Plaintiffs to date have still failed to respond to Apple's multiple outstanding overtures, *id.*, they filed a petition for a writ of mandamus in the Ninth Circuit on December 10, 2025, *see* No. 25-7761, Dkt. 1.1 (9th Cir.), and a notice of appeal in the Ninth Circuit less than two weeks later on December 22, 2025, *see* No. 25-8111. The mandamus petition sought to countermand this Court's dismissal and sanctions orders, recycling the arguments this Court rightly rejected. The Court denied this petition on January 28, 2026, holding that Plaintiffs "have not demonstrated a clear and indisputable right to the extraordinary remedy of mandamus." No. 25-7761, Dkt. 9. Plaintiffs have since sought rehearing on their mandamus petition by the en banc Ninth Circuit. No. 25-7761, Dkt. 11.

Plaintiffs' Ninth Circuit proceedings squarely contradict their representation to this Court that they would not persist in this litigation further. *See* Dkt. 97-1 at 6 (asserting "[t]here is nothing left that requires deterrence" because "termination [of the Amended Complaint] effectively concludes the matter from our perspective"). Far from treating the matter as "effectively conclude[d]," *id.*, Plaintiffs' latest filings show that their earlier assurance was untrue, and that they will continue their pattern of vexatious conduct until forced to stop. Having exhausted opportunities to resolve this matter without the Court's involvement, Apple now seeks an award of attorney fees pursuant to the Court's direction.

## LEGAL STANDARD

The Court found that Apple "is entitled to the fees and costs reasonably incurred in connection with this litigation." Dkt. 102 at 10. "In most cases, the lodestar figure is presumptively a reasonable fee award." *Stonebrae, L.P. v. Toll Bros., Inc.*, 2011 WL 1334444, at *6 (N.D. Cal. Apr. 11, 2011) (Chen, J.) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.4 (1983)). The lodestar is determined by multiplying the hours worked by the rate charged. *See Hensley*, 461 U.S. at 433–34. In assessing the reasonableness of a fee request, courts may look to:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or

contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–20 (5th Cir. 1974)).

### ARGUMENT

Apple seeks $735,193.20, only a portion of the fees and costs it has incurred in this case. In doing so, Apple does not seek reimbursement for other costs, including printing, administrative support, and paralegal support. Nor does it seek reimbursement for fees charged by local counsel in Wyoming or the fees incurred in ancillary aspects of this litigation, such as opposing Plaintiffs' frivolous attempts to transfer this litigation to an unrelated multidistrict action. The time billed was carefully vetted to ensure that it is reasonable, and the fees Apple now seeks represent the exercise of careful billing judgment to compensate for work that directly contributed to the successful resolution of this case—work that, as the Court found, would never have been necessary "but for Plaintiffs' filing of a complaint clearly barred by *res judicata*." Dkt. 102 at 10.

### I.      Gibson Dunn's Rates Are Reasonable

When Plaintiffs sued, Apple retained Gibson Dunn to defend it. Kleinbrodt Decl. ¶ 3. Gibson Dunn has represented (and continues to represent) Apple in several antitrust cases challenging practices related to the App Store, including the prior cases that merged into *Coronavirus I. Id.* That experience and other features of this case—including the considerable "amount involved" in Plaintiffs' damages claims and counsel's experience litigating in the Northern District of California—made it reasonable for Apple to retain experienced antitrust counsel from Gibson Dunn. *Kerr*, 488 F.2d at 717–20. Those attorneys included Ms. Brass, one of the Global Co-Chairs of Gibson Dunn's Antitrust and Competition practice group; Mr. Kleinbrodt, another partner in Gibson Dunn's Antitrust and Competition practice group; and three associates with both Apple and antitrust experience. Kleinbrodt Decl. ¶¶ 2, 5. Given their familiarity with this litigation, the parties, and the issues, Gibson Dunn's attorneys were well positioned to represent Apple vigorously and efficiently. *Id.* ¶¶ 3–5; *see Kerr*, 488 F.2d at 717–20 (reasonableness of rates is informed by "experience, reputation, and ability of the attorneys").

Gibson Dunn's hourly rates were reasonable. To begin, when (as here) a party seeks reimbursement for attorney fees that are not based on contingency, "[t]hat a lawyer charges a particular hourly rate, and gets it" provides evidence of "what the market is" because "the lawyer and his clients are part of the market." *Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006); *accord Safety Dynamics, Inc. v. Glen Star Indem. Co.*, 2013 WL 11299004, at *4 (9th Cir. Sept. 9, 2013) (stating that, in the context of "corporate and commercial litigation between fee-paying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case"); *Stonebrae*, 2011 WL 1334444, at *6 (similar). That is particularly true here because Apple is a sophisticated company headquartered in Northern California—well-equipped to ensure that it pays a fair market rate for the services it receives from attorneys litigating in this Court. *See Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*, 2020 WL 5522993, at *7 (N.D. Cal. March 4, 2020) (finding rates large firm charged to Apple presumptively reasonable because "[t]hey are the rates a sophisticated client actually paid" and "were generated through a competitive process"). As attested in the supporting declaration, these rates are the product of arms-length negotiation in which Apple received discounts from Gibson Dunn's standard hourly rates. Kleinbrodt Decl. ¶ 6.

Gibson Dunn's rates in this case are in line with those that other courts in the Ninth Circuit have found reasonable—including in other antitrust cases. *See*, *e.g.*, *Global Indus. Inv. Ltd. & China Fortune Land Dev. Co. v. 1955 Cap. Fund I GP LLC*, No. 23-2662, Dkt. 42.1 (9th Cir. Oct. 21, 2024) (approving Gibson Dunn fee request with rates ranging from $960 per hour for associates to $2,170 per hour for partners); *Netlist Inc. v. Samsung Electronics, Ltd.*, 341 F.R.D. 650, 675 (C.D. Cal. 2022) (approving as reasonable Gibson Dunn fee request based on rates ranging from $845 to $1,370 per hour); *Woodhouse v. United States Govt.*, 2022 WL 17222248, at *1–2 (C.D. Cal. Aug. 16, 2022) (approving Gibson Dunn fee application with rates ranging from $1,310 to $1,440 per hour). Moreover, "the results [Apple] obtained" were uniformly favorable: Gibson Dunn secured a dismissal of all claims and an entitlement to reimbursement of all fees reasonably incurred in the defense of the suit. *See Kerr*, 488 F.2d at 717–20; *see also* Dkt. 102.

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC'S RESPONSE TO COURT'S ORDER RE: ATTORNEY FEES
CASE NO. 3:24-CV-08660-EMC

## II.    The Hours Billed Are Reasonable

Courts usually "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). That approach is particularly well suited to this case: Because an antitrust defendant will not ordinarily recover its attorneys' fees even if it prevails, Apple had no incentive to incur unnecessary fees. *See Syufy Enters. v. Am. Multicinema, Inc.*, 602 F. Supp. 1466, 1468 & n.3 (N.D. Cal. 1983). The attached billing records bear out that Apple and its outside counsel at Gibson Dunn took an efficient course through this litigation. *See* Kleinbrodt Decl. ¶ 8 & Ex. A. Apple is also applying discretion in its fees request, seeking fees only for time spent responding to the complaint; briefing on motions to transfer, for sanctions, to relate cases, and to dismiss the action; oppositions to Plaintiffs' motions; and responding to Plaintiffs' response to the Court's show-cause order. This time understates the total number of hours Apple's counsel in fact expended on this case: For example, Apple does not seek fees for time spent opposing transfer to the MDL; for drafting briefs and preparing oppositions for proceedings the Court ultimately deemed unnecessary; for local counsel retained in Wyoming; or for the fees incurred on the myriad other tasks that litigation entails—such as formulating and coordinating strategy, corresponding with clients and opposing counsel, internal meetings, efforts to resolve the case informally, or time spent on this fee application. Kleinbrodt Decl. ¶ 8.

A few facts illustrate Apple's efficient approach to litigating this case and avoiding unnecessary fees. To start, Apple sought an expeditious resolution of this case. It filed just three substantive motions: first to transfer from the District of Wyoming to this Court, Dkts. 19, 42; then to dismiss all claims, Dkt. 62; and finally, as a last resort, for sanctions, Dkt. 70. Each of those requests was necessary. Apple had to prepare a motion to transfer the case because Plaintiffs refused to stipulate to that request, Dkt. 19 at 2; a motion to dismiss because Plaintiffs refused to voluntarily dismiss their claims, *see* Dkt. 70-1 ¶¶ 8–9; and a motion for sanctions because Plaintiffs refused repeated requests to withdraw their baseless claims and frivolous filings, *id.* And each of Apple's requests was well-founded, as Apple prevailed in each instance. *See* Dkts. 44, 53, 82, 92, 93, 102. The quality of Apple's filings speaks for itself, and the time spent preparing those filings was appropriate, particularly in light of the voluminous record spanning multiple prior cases. *See, e.g.*, *In re Toys R Us-Delaware, Inc.--*

DEFENDANT APPLE INC'S RESPONSE TO COURT'S ORDER RE: ATTORNEY FEES
CASE NO. 3:24-CV-08660-EMC

*Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 466 (C.D. Cal. 2014) (approving as reasonable a request for 68.1 hours for significantly shorter, substantive motion); *Grandson v. W. Lake Superior Piping Indus. Pension Plan*, 2025 WL 877589, at *4 & n.5 (D. Minn. Mar. 21, 2025) (similar).

Aside from those substantive filings, Apple spent most of the remaining share of its time in response to Plaintiffs' litigation tactics. *See* Kleinbrodt Decl. ¶ 10. For example, Apple prepared supplemental briefing supporting its request to transfer because Plaintiffs filed an unauthorized supplemental brief in opposition thereto. Dkts. 38, 40, 42. Apple had to oppose Plaintiffs' request for entry of default because Plaintiffs moved for such relief without advance notice, in violation of the Court's Guidelines for Professional Conduct. *See* Dkt. 55. And when Plaintiffs launched an onslaught of improper filings late in the case, Apple successfully sought an order from the Court barring Plaintiffs from filing further motions and relieving Apple of its obligation to respond to certain pending motions. *See* Dkt. 92. Apple submitted oppositions against only the motions to which it was required to respond or when Plaintiffs sought plainly improper relief. Dkts. 28, 57, 72, 81, 90, 91, 96, 98, 100. Indeed, Gibson Dunn's efforts to track the needs of the case and conduct itself accordingly is evident from the fact that billed time dropped considerably during times of relative inactivity—such as July to August 2024, when the case was paused while Plaintiffs sought transfer into an unrelated MDL, and in May 2025, while Apple awaited resolution of its motion to dismiss but prior to submitting its motion for sanctions. *See* Kleinbrodt Decl. Ex. A.

In sum, Apple's filings were limited to three requests for affirmative relief, responses to Plaintiffs' myriad motions, and procedural submissions required by the Local Rules or designed to economize the Court's and parties' resources. Apple thus prevailed by litigating this case efficiently, and it has limited its fee request to work central to defending against Plaintiffs' claims. As a result, Apple's request is far less than Plaintiffs' estimate that Apple's fees "if uncapped, would be in the tens of millions of dollars" given the volume of work in this case. Case No. 25-7761, Dkt. 1.1 at 7 (9th Cir.). That Apple seeks less than $1 million in fees, all of which is supported by "evidence supporting the hours worked," underscores that its request is reasonable by any measure (including Plaintiffs' own estimates). *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

**III.    The Requested Fee is Reasonable in Light of the Results Achieved**

The Court has already concluded that Apple is entitled to all fees incurred in response to Plaintiffs' frivolous claims.  *See* Dkt. 102 at 10.  Regardless, Apple's counsel achieved an excellent result, to the extent such a consideration continues to bear on the reasonableness of its request.  The Court granted Apple's substantive motions and dismissed all claims with prejudice.  Dkts. 44, 82, 102.  By contrast, none of Plaintiffs' substantive motions were granted over Apple's opposition.  Dkts. 37, 44, 92, 93, 102.  Courts recognize that complete dismissal of a case is a "complete success." *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 653 (9th Cir. 2020).  And Apple did not undertake—and does not seek any fees related to—work untethered to achieving this result.

**CONCLUSION**

Apple respectfully requests an award of attorney fees totaling $735,193.20 for the costs incurred in defending this action.

DATED: March 23, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Julian W. Kleinbrodt*
Julian W. Kleinbrodt

RACHEL S. BRASS
rbrass@gibsondunn.com
JULIAN W. KLEINBRODT
jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
Suite 2600
San Francisco, California  94111-3715
Telephone:       415.393.8200
Facsimile:       415.393.8306

*Attorneys for Apple Inc.*

Gibson, Dunn & Crutcher LLP